# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


VLSI TECHNOLOGY LLC,          )
                Plaintiff, ) Civil Action No.
                           ) 18-00966-CFC-CJB
v.                          )
                           )
INTEL CORPORATION,          )
              Defendant. )


Monday, February 1, 2021
3:00 p.m.
Teleconference


BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States Magistrate Judge


APPEARANCES:


    FARNAN LLP
    BY:  BRIAN E. FARNAN, ESQ.

            - and -

    IRELL & MANELLA LLP
    BY:  MICHAEL HARBOUR, ESQ.
         CHRISTOPHER ABERNETHY, ESQ.
         IAN R. WASHBURN, ESQ.

              Counsel for the Plaintiff

```
1      APPEARANCES, CONTINUED:

2


3          MORRIS NICHOLS ARSHT & TUNNELL
           BY:  JACK B. BLUMENFELD, ESQ.
4
                    - and -
5
           WILMER CUTLER PICKERING HALE AND DORR LLP
6          BY:  AMANDA L. MAJOR, ESQ.
                LIV HERRIOT, ESQ.
7

8
                    -  -  -  -  -  -
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                    THE COURT:  Why don't we go on
 2      the record, and as we do, I'll just say a few
 3      things for the record.  The first of which is
 4      that we're here this afternoon by way of a
 5      protective order dispute teleconference in the
 6      matter of VLSI Technology LLC versus Intel
 7      Corporation; it's Civil Action Number
 8      18-966-CFC-CJB here in our court.
 9                    Before we go further, let's have
10      counsel for each side identify themselves for
11      the record.  We'll start first with counsel on
12      the plaintiff's side, and we'll begin there
13      with Delaware counsel.
14                    MR. FARNAN:  Good afternoon,
15      Your Honor.  Brian Farnan on behalf of the
16      plaintiff, and with me is Michael Harbour,
17      Chris Abernethy, and Ian Washburn, all from
18      Irell & Manella, and Mr. Harbour will argue on
19      behalf of the plaintiff today.
20                    THE COURT:  Thank you.  We'll do
21      the same for counsel on defendants' side;
22      we'll begin with Delaware counsel.
23                    MR. BLUMENFELD:  Thank you, Your
24      Honor.  It's Jack Blumenfeld from Morris
```

 1    Nichols for Intel.  Also on are Amanda Major

 2    and Liv Herriot from Wilmer Hale and Mashhood

 3    Rassam from Intel.

 4                    THE COURT:  And Mr. Blumenfeld,

 5    who is going to be speaking for your side?

 6                    MR. BLUMENFELD:  I will.  Thank

 7    you, Your Honor.

 8                    THE COURT:  All right.  Thank

 9    you.

10                    All right.  So the dispute has

11    to do with an issue raised by Intel, and so

12    I'll turn to their counsel first, and

13    Mr. Blumenfeld, it will be you.  And I guess

14    I'll let you address what you heard from the

15    other side in their letter first, and then I

16    have a couple of specific questions for you

17    that I'll follow up on.

18                    MR. BLUMENFELD:  Sure.  Thank

19    you, Your Honor.

20                    First, just a couple of updates.

21    I know in the letters we said that in the

22    California antitrust case that we had until

23    this Friday, February 5th to file an amended

24    complaint.  The parties have since stipulated

1    and Judge Chen has ordered an extension until
2    March 8, so the time pressure has changed a
3    little bit.  That's the first thing.
4              The second thing is that there
5    was a similar motion and litigation between
6    the parties in the Western District of Texas.
7    And I'm not terribly familiar with the details
8    of that, but there was I understand a
9    telephone hearing on that this morning, and
10   Judge Albright denied Intel's motion in that
11   case.  We think this case is a little
12   different because what we're seeking, the
13   documents we're seeking relief for are
14   different, and also we think the Third Circuit
15   law is a little different, and I will address
16   that in a couple of minutes.
17             Where I'd like to start, Your
18   Honor, is with the provisions of the
19   protective order, because that's something
20   that VLSI didn't address, but they did say in
21   their letter that they relied on the terms of
22   the protective order and accused us of
23   violating the protective order by even
24   bringing this request.  And I just wanted to

1    point out a couple of things.

2                    One, paragraph 16, 17, and 43 of

3    our protective order, that's DI 96, on access

4    of use all start with the words "unless

5    ordered by the Court."  So they clearly permit

6    the Court to order otherwise.

7                    And something we didn't cite,

8    but paragraph 65 of that order specifically

9    says that the order is without prejudice to

10   the right of any party to apply to the Court

11   at any time for additional protection or to

12   relax or rescind the restrictions of the

13   order.  So I just wanted to get past

14   especially that somehow we violated the

15   Court's order by following the procedure that

16   the order said we should follow.

17                    THE COURT:  Mr. Blumenfeld, is

18   there anything you want to say relatedly about

19   the suggestion at the end of VLSI's brief that

20   due to Intel's kind of work in the Apple case

21   and the contemplation of or maybe actual

22   preparing of some amended pleading in that

23   case that you violated the protective order

24   because you "used the material any other way"

1    from there?

2                    MR. BLUMENFELD:  Your Honor,

3    yeah.  I don't think there can be any

4    violation when, one, we haven't prepared any

5    amended pleading.  We're seeking permission to

6    use documents to do that.

7                    Also, when the protective order

8    expressly has a provision permitting us to

9    come to Your Honor or to Judge Connolly and to

10   seek relief from the order, I don't know how

11   else we could do it other than ask you.  But

12   we certainly have not disclosed anything to

13   the antitrust lawyers or prepared anything;

14   we're seeking your permission to be able to do

15   that.  If we get your permission, we will.  If

16   we don't get your permission, we won't.  But I

17   don't see how you could use those provisions

18   in any way other than asking the Court.  That

19   doesn't mean we've used the information in

20   California or to prepare a pleading.  We

21   haven't done either of those things.

22                    THE COURT:  Okay.  Let me let

23   you continue.

24                    MR. BLUMENFELD:  Just to make

1    clear what we're doing and not doing and what

2    we're trying to do or not trying to do, we're

3    not trying to make anything public.  This is

4    not one of those cases like *Pansy* where

5    someone wanted to put things in a newspaper.

6    We're not trying to disclose anything to

7    anyone other than outside counsel in the

8    California case, and outside counsel there is

9    Wilmer Hale; it's the same firm as outside

10   counsel here.

11        What we are trying to do is to

12   use a limited number of documents in the

13   California antitrust action, and I know

14   there's something in their brief that says we

15   haven't said what we want.  I think the order

16   that we attached to our motion is exactly what

17   we want.  We want to be able to use two

18   documents: The cost to VLSI of acquiring two

19   of the patents-in-suit in this case, the '331

20   and '633 patent; and statements by VLSI's

21   damages expert about the value of the '331

22   patent and VLSI's damages claim.  We don't

23   have a similar request for the '633 because

24   there hasn't been any expert discovery there

```
 1      and we don't have those contentions.
 2                  THE COURT:  Mr. Blumenfeld,
 3      before you move on, in that regard, in terms
 4      of exactly what you want disclosed, I saw the
 5      documents attached as exhibits to your letter.
 6      It looks like in Exhibits A and B, two
 7      agreements; and then Exhibit C, some excerpts
 8      from the expert's report as to the '331, I
 9      think.
10                  I guess the question I had was,
11      are you literally asking to disclose the
12      entirety of that information?  It struck me,
13      for example, that it might be the case -- I
14      don't know, maybe this isn't really where the
15      fight is -- that some portion of those docs
16      don't necessarily actually relate to the cost
17      to acquire the patents, or statements about
18      the alleged value or significance of the '331.
19      For example, there's probably some portions of
20      those contracts -- and I guess could say maybe
21      you need the whole thing for completeness.
22      But there's probably some portions of the
23      contracts don't relate to the cost, and
24      there's probably some portion of the excerpt
```

1    from the expert, like, for example, some of

2    the content on that second page, it may not

3    necessarily go to value.

4              So I wanted to be clear exactly

5    from those docs what were you asking to

6    disclose, the entirety of them or just some

7    substance?

8              MR. BLUMENFELD:  Your Honor, we

9    did ask for the entirety, but we don't need

10   the entirety.  That's a very good point.  What

11   we need are the acquisition costs from the

12   contracts, and I guess that would also have to

13   include what it is that was being acquired,

14   because it wasn't just the one patent.  But we

15   certainly would be happy to redact other

16   information out of them.

17              And the same with Exhibit C, to

18   the extent that there is information on the

19   second page that doesn't go to the damages

20   request, we're happy to redact that, too.  If

21   Your Honor rules we can use the information,

22   we will be glad to go back and do that and try

23   to work with VLSI's counsel to do that.  But I

24   think that's correct, Your Honor, that we

```
 1    don't need the entire agreements.

 2              THE COURT:  Okay.  Let me let

 3    you continue.

 4              MR. BLUMENFELD:  So the issue

 5    here I think is largely good cause.  And this

 6    is an odd situation at least in my experience

 7    because we don't disagree that we have to show

 8    good cause to modify a protective order.  On

 9    the other hand, under Pansy and other Third

10    Circuit law, the party seeking to maintain

11    confidentiality has the burden to show good

12    cause to keep it confidential, so there's a

13    little bit of a burden on both sides.  And I

14    think here, it actually is important because

15    our good cause, in the January 6 order in the

16    Northern District of California, Judge Chen

17    has given us the opportunity to amend our

18    complaint.  And the issue is that in his

19    order, he found that our allegations about

20    super competitive prices were not sufficient,

21    and that included a comparison of the prices

22    VLSI paid for the patents compared to what he

23    called the exorbitant damages, I think quoting

24    us, that VLSI has claimed for infringement.
```

1              And I know we didn't give you,

2       at least I don't think we gave you Judge

3       Chen's opinion, but I'm happy to do that, too.

4              THE COURT:  I should say I do

5       have, we were able to find it.  We only were

6       able to get the redacted version, though it's

7       lightly redacted, so I have the opinion before

8       me.  We could not get the transcript, which I

9       think is not on the docket.  But at least for

10      what it's worth, I have the opinion.

11             MR. BLUMENFELD:  I'm glad you

12      have it.  We should have given it to you.  But

13      in footnote 9, I'm sure Your Honor saw that

14      Judge Chen said the plaintiffs did not ask the

15      courts presiding over the VLSI suits against

16      Intel for leave from the protective order so

17      they could make a filing under seal in this

18      case, and that's not what we're trying to do.

19      We get it that we should or could have done it

20      earlier, but we are trying to do it now.

21             And we are seeking very limited

22      information.  As Your Honor suggests, we can

23      make it more limited.  We do have an interest

24      in getting that limited information to use

1    under seal, not to use publicly in the
2    California action.  And we have an interest in
3    those documents, and we'll keep them
4    confidential to outside counsel.
5                 But I do want to address
6    specifically Exhibit C to our motion, because
7    as to the '331 damages expert's claim, which
8    is a number and a little bit more, we don't
9    even understand why VLSI's contention is
10   confidential to begin with.  I know we've had
11   issues with other judges on this court and
12   with Your Honor where it's been pretty
13   consistently held that contentions that don't
14   reflect that party's confidential information
15   aren't confidential.
16                 Now, as to the two agreements,
17   the VLSI acquisition agreements, we don't
18   argue that they're not confidential.  But
19   there is balancing, and the issue on the other
20   side is, is there a clearly defined and
21   serious injury alleged with specificity from
22   disclosure to outside counsel in the antitrust
23   case, and we just don't see it.
24                 And the Third Circuit law is I

1    think pretty much in our favor on this, which

2    may be different than the law that applied in

3    the Fifth Circuit.  But the burden of the

4    party claiming confidentiality to maintain

5    that confidentiality I think is pretty

6    squarely on the party claiming it.

7                  And as to the relevance, we

8    think it's relevant, but ultimately that's up

9    to Judge Chen, but we think we've shown good

10   cause, and there's really no serious

11   confidentiality concerns.

12                  And unless Your Honor has more

13   questions, that concludes my presentation.

14                  THE COURT:  Okay.  I guess,

15   Mr. Blumenfeld, you don't currently know what

16   rationale Judge Albright used to deny the

17   request earlier today, do you?

18                  MR. BLUMENFELD:  I do not know.

19   I was not on the call, though I was told that

20   he denied the request, and I really don't know

21   anything more than that.

22                  THE COURT:  Okay.  All right.

23   Thank you.  I'll come back to you for brief

24   rebuttal.

1                    Let me turn to plaintiff's side.
2       And I can't recall, who is going to speak on
3       behalf of plaintiff's side?
4                    MR. HARBOUR:  Hi, Your Honor.
5       This is Michael Harbour from Irell & Manella.
6                    THE COURT:  Hi, Mr. Harbour.
7       I'll give you the chance to respond to what
8       you heard from Mr. Blumenfeld, then I'll jump
9       in with a question or two, as well.
10                   MR. HARBOUR:  Thank you, Your
11      Honor.  I'd like to start with Judge
12      Albright's decision this morning in the
13      Western District of Texas.  I was on the call
14      and was able to hear Judge Albright's
15      reasoning.  And essentially Judge Albright
16      held that the motion should be denied because
17      this was a specifically negotiated and agreed-
18      upon protective order.  VLSI has abided by
19      that protective order.
20                   For example, even though we had
21      access based on discovery in these patent
22      cases to Intel's source codes, other
23      discovery, we have not used or intended to use
24      or proposed using that information to file

1    separate infringement claims against Intel in

2    other actions.  And I suspect that if we did

3    try to do that, Intel would be up in arms that

4    that was a clear violation of the protective

5    order, specifically the provisions of the

6    protective order that state that the

7    information produced in this case will be used

8    for this case only.  That language is sweeping

9    and fairly unequivocal.

10                THE COURT:  Mr. Harbour, let me

11    jump in because this goes to one of the points

12    Mr. Blumenfeld made and it was something that

13    I was thinking when I was reading the letters

14    which is, for example, paragraph 43, it

15    certainly says that the part of that paragraph

16    that you quote in your letters, it certainly

17    does say that designated material is only

18    going to be used for purposes of this case and

19    the other ND Cal case that's referenced there,

20    but it starts out by saying "unless otherwise

21    ordered by the Court."

22                So I think as a minimum, one

23    could pretty clearly infer that both sides

24    understood that it's metaphysically impossible

```
 1        for one side or the other to obtain an order
 2        in this case that some amount of designated
 3        material for some purpose could possibly be
 4        used in some other action other than those
 5        two.  Of course, it has to be ordered by a
 6        court or the parties could agree to it, but
 7        it's possible, and both sides knew that; they
 8        understood it.  Maybe the instances would be
 9        relatively rare, but it was certainly a
10        possibility.  Isn't that fair?
11                    MR. HARBOUR:  Yes, Your Honor.
12        I think it's fair that the parties anticipated
13        that there might be limited circumstances in
14        which use would be permissible and it can seek
15        court permission for that use.  An example of
16        that would be where you have discovery going
17        on in multiple cases that overlap or are
18        related in some way.  For efficiency purposes,
19        it's not at all uncommon for there to be minor
20        modification of the protective order that
21        allows cross-use of discovery, so you don't
22        have to go through the rigamarole of
23        requesting the information in the other case
24        and producing it in the other case; the
```

1    interest of efficiency allows you to have

2    cross-use.  And I believe there has even been

3    such provisions in this case.

4              But what Intel is proposing here

5    is categorically different than that.  They're

6    not saying that is some need for efficiency

7    where they're going to have discovery obtained

8    in the antitrust action and we might as well,

9    you know, allow cross-use.  They're trying to

10   bring a new litigation against VLSI based on

11   this information that they've used in this

12   case, that they obtained in this case, subject

13   to the protective order.

14             It would be analogous if Irell &

15   Manella representing VLSI took information

16   regarding Intel source code and tried to bring

17   an entirely different infringement action

18   against Intel.  I think Intel would think that

19   that was completely inaccessible and a

20   violation of the protective order and did not

21   fall into these narrow circumstances where in

22   the interest of efficiency you might modify a

23   protective order to allow cross-use of

24   discovery in a related case.

1              THE COURT:  Mr. Harbour, I hear

2      you there, and certainly I can see how it

3      could be a slippery slope.  And discovery,

4      particularly sensitive discovery in one case,

5      you know, the parties wouldn't necessarily

6      want it to be used to initiate lots of

7      litigations all around the country for other

8      unrelated matters.

9              I think the question that Intel

10     might point to, I think they are pointing to

11     here, is that, look, doesn't this look a

12     little different here?  In this other case,

13     we've got a district court judge who was

14     issuing an opinion and who is basically saying

15     in the opinion, look, this is certain

16     information that it might not have won the

17     day, but it could have at least been relevant,

18     and perhaps might have won the day, who knows.

19     But it was certainly information that if you

20     had it, your motion would be a lot stronger.

21              And he goes on to say, I think,

22     look, you could have asked the other district

23     court for permission to provide it, almost

24     suggesting that such a request makes sense.

1    And if it makes sense and if Intel could have

2    done it and they didn't do it, shame on them,

3    but almost like he's kind of blessing it.

4                    And indeed, I think Intel

5    pointed in one of their -- in an attachment to

6    their email that made it appear as if in that

7    case before Judge Chen, VLSI actually faulted

8    Intel and said, hey, Intel, if you thought it

9    was so important, if you think this is really

10   helpful, you could have asked for this; you

11   could have asked the District of Delaware and

12   you didn't do it, so shame on you.

13                   So how come I don't read what

14   Judge Chen said in his opinion and what VLSI

15   said in that email as a suggestion that, hey,

16   this was a perfectly appropriate thing for

17   Intel to try to do, they didn't do it the

18   first time and that's their fault, and now

19   Intel is trying to remedy that.

20                   MR. HARBOUR:  Well, Your Honor,

21   I don't think I read Judge Chen's opinion

22   exactly in that same way.  I don't think he

23   was blessing this procedure or saying this was

24   what they should do now that the complaint has

1    been dismissed.  And several points on that.

2                        First, given the background of

3    the case, Intel came to VLSI and requested use

4    of this information before they filed their

5    amended complaint.  Our position was that

6    there was a protective order that prohibited

7    this use, and we're not going to agree to it,

8    and if Intel wanted to seek this relief, it

9    needs to file a request for relief in this

10   court and we can have that dispute adjudicated

11   in the proper way.

12                        We weren't saying that the

13   request is proper or that it should be

14   granted.  In fact, we wanted the opportunity

15   to be able to brief it and explain why we

16   thought the request was improper.

17                        I think likewise, what Intel

18   then tried to do in front of Judge Chen is

19   say, well, VLSI -- they could have just done

20   that at that point; they didn't.  Instead,

21   they tried to use the fact that VLSI had

22   refused the request to argue why there should

23   be essentially a lesser pleading standard, a

24   fact, because they didn't have access to the

1    information.

2                    Now, what Judge Chen held was

3    two things.  I think he, one, said the

4    information doesn't seem to be particularly

5    relevant, because what they're seeking is

6    information about the purchase price of these

7    patents at issue and then what VLSI had sought

8    in damages to show super competitive pricing,

9    or at least alleged super competitive pricing.

10                   And what Judge Chen said, this

11   is all of limited probative value, were his

12   exact words, because a damage demand is just

13   that, it's a demand, it's not an actual price,

14   and it hasn't even been adjudicated in this

15   court yet.

16                   THE COURT:  Mr. Harbour, I was

17   just going to say on the flip side, he didn't

18   seem to say it would be, in and of itself

19   would be the most powerful evidence in the

20   world, but you can read what he's saying as

21   saying, well, is it a piece, is it a piece of

22   the puzzle, is it relevant?  Yeah.  Now, look,

23   you've got to do some extra work.  Just

24   knowing that a demand was made or knowing what

 1     the demand was that was made in another case
 2     is one thing; making the further case that the
 3     differential between that demand and maybe
 4     what you paid for the patents is attributable
 5     to the aggregation of patent substitutes, it's
 6     a different thing, you're going to have to do
 7     more work there.  But isn't it a fair read
 8     that he's saying it's a relevant piece to the
 9     puzzle, if not the entire puzzle?
10                 MR. HARBOUR:  Again, we might
11     have different readings of it, but I
12     appreciate what Your Honor is saying.  I think
13     he -- I think he was noting that Intel could
14     have sought this relief; it didn't.  But that
15     was in a footnote.  His main point was it
16     doesn't seem to solve the -- to get them what
17     they need to state an antitrust claim.
18                 But again, I want to address
19     another point, which I think is regardless of
20     whether Judge Chen was saying this information
21     was relevant or not, I don't think he was
22     necessarily condoning what plaintiffs --
23     sorry, what Intel is seeking to do here.
24                 And again, I'll just go back to

```
 1        what I think was the basis for Judge
 2        Albright's decision this morning.  If the shoe
 3        were on the other foot and Intel had filed a
 4        separate infringement claim not related to the
 5        patents at issue here against Intel before
 6        Judge Chen, and Judge Chen had dismissed that
 7        complaint twice; and then we came to this
 8        court and said, you know, we actually want to
 9        use Intel's source code that was discovered in
10        this case in order to resurrect that case in
11        which there is no discovery, in fact, in which
12        discovery is stayed, I think Intel would
13        scream bloody murder about that as being a
14        violation of the protective order.  And I'm
15        curious what their position is on this call
16        regarding that, but I'd be quite shocked if
17        Intel thought that was permissible.
18                    So I guess there's two separate
19        issues.  I think it does have to be relevant,
20        and I appreciate that I might have a different
21        read of Judge Chen's opinion than Your Honor
22        does.  But I think even if it is relevant,
23        that doesn't mean that this is an appropriate
24        way to replead an antitrust claim , basically
```

1    trying to use discovery from this case to

2    support a whole new entire action against

3    VLSI.

4                    THE COURT:  And I guess

5    relatedly, I see the point you're making and

6    the power of it in terms of what if we had

7    tried to do something similar and how would

8    Intel react, and I'll certainly ask Intel for

9    their view on that when I go back to them on

10   rebuttal.

11                   But one thing I'm thinking about

12   in terms of the position, though, is I think

13   it's correct that in our circuit, I have to

14   look at the *Pansy* factors here to try to

15   determine what are the relative benefits and

16   harms.  In their letter, Intel made the case

17   as to why those various factors came out their

18   way.  I didn't really see you in your letter

19   responding as to the substance of those

20   factors and stating your argument into the

21   factors that I have to consider, so I just

22   want to give you a chance to address that.

23                   MR. HARBOUR:  Thank you, Your

24   Honor.  I think that our letter does address

1    the particular factors that we believe are

2    relevant.  So one of those factors is if the

3    moving party has to show that they're using

4    the information for a legitimate purpose.  And

5    as we noted in our letter, we don't believe

6    that there is a legitimate purpose here,

7    because the purpose that Intel wants to use

8    this for is essentially to resurrect a

9    complaint that has been twice dismissed.  And

10   two principles are relevant here.

11                   One, under Iqbal, a party is not

12   entitled to discovery in order to basically

13   state a claim.  And courts in this

14   jurisdiction and other jurisdictions have held

15   you can't modify a protective order, it's not

16   good cause to modify a protective order in

17   order to circumvent a limitation on discovery

18   in another case.  That's one limitation, the

19   basic Iqbal limitation.

20                   But in addition, discovery in

21   that case has been stayed pending whether or

22   not Intel can actually state a claim, which

23   they have so far failed to do.  So we don't

24   think there's a legitimate purpose here, and

1    that's one of the factors.

2              Another factor is relevance,

3    which we've discussed.  Or at least it's a

4    factor that courts will consider in forming

5    that analysis.  But another factor is reliance

6    interest.  Here I think the reliance interest,

7    for the reasons we've noted, and I think that

8    Judge Albright was convinced of this morning,

9    are quite significant.  The parties negotiated

10   the protective order.  They both benefitted

11   from that protective order.  There are

12   trade-offs in any negotiation about what you

13   can and cannot use.

14              And I know that Intel filed this

15   antitrust complaint well over a year ago.  It

16   could have at that point, you know, flagged

17   this issue and said, hey, there might be

18   related issues in the two cases and sought

19   relief in the protective order, and then we

20   could have had a discussion at that point

21   whether or not such relief was appropriate and

22   what its scope would be.

23              They didn't do that.  They filed

24   a complaint without mentioning any of this

1      information.  They then tried to raise this

2      information without actually seeking relief

3      from the protective order, and now that they

4      have this twice-dismissed complaint are

5      basically trying to use, and after a year and

6      a half of VLSI relying on that protective

7      order to produce information, not anticipating

8      that this information could be used against it

9      in the antitrust case, that is when Intel

10     decides to come forward and seek this relief.

11     So I do think the reliance interests do weigh

12     significantly against modification of the

13     protective order.

14                  So those I think are the key

15     relevant factors that we discuss in our

16     motion.

17                  Now, one other thing I'd like to

18     note, opposing counsel makes much of the fact

19     that this information will remain confidential

20     and it won't be publicly disclosed.  And that

21     can be a relevant factor.  But I want to note

22     that it's not the sole purpose of a protective

23     order.  Protective orders don't just protect

24     against public disclosure, they also guard

1    against misuse of information produced in

2    litigation.

3                    One example that's common in

4    patent infringement cases, including this one,

5    is you have a patent prosecution bar that

6    limits the ability of attorneys who have

7    access to confidential information from filing

8    or prosecuting patents in front of the PTO in

9    related areas.  The concern there is not that

10   there's going to be necessarily public

11   disclosure of the information, it's that once

12   that side obtains that information, they could

13   use it to their advantage in another legal

14   proceeding, and parties have interest in

15   preventing that.  So I think that factor, as

16   well, weighs against modifying the protective

17   order.

18                    THE COURT:  Okay.  And

19   Mr. Harbour, one last question.  I think maybe

20   this is to come back to the issue of what was

21   kind of said in the case before Judge Chen

22   about what Intel could or couldn't do in these

23   other matters with regard to this info.  I

24   think the thing I was thinking of is at the

1    end, and this is attached to I think your

2    letter, the email string -- let's see, it's

3    Exhibit B, and it's on the last page.

4                  Now, it's admittedly I think

5    Intel's counsel responding to you, to your

6    side, and quoting from what they say is your

7    reply brief on the motion to dismiss in the

8    Northern District of California case, the

9    Fortress case, and they quote you as saying to

10   that court, "If Intel really felt it needed

11   the information [VLSI confidential information

12   from the VLSI v. Intel litigations] to state a

13   claim, Intel should have sought relief from

14   the courts that issued the orders."

15                  So is what you're saying, if

16   that's an accurate representation of what was

17   in the reply brief, is what you're saying when

18   you wrote those words, what you meant Judge

19   Chen to understand was, Judge, if Intel really

20   felt it needed the information that we're

21   talking about, it could have sought relief

22   from the other courts.  But by the way,

23   there's no chance in the world that those

24   courts would ever grant it because we're going

1   to fight it tooth and nail and it would be

2   absolutely inappropriate for them to seek it

3   or to get it.

4              Doesn't the suggestion to the

5   Court that Intel should have done this at

6   least in some way suggest that it might be not

7   the craziest thing to do, not an outrageous

8   thing to do?  What did you mean by those

9   points?

10              MR. HARBOUR:  Well, Your Honor,

11   as I noted before, our position, and we've

12   taken this position in front of Judge Chen,

13   including in the hearing on the motion to

14   dismiss, is we've always opposed what Intel is

15   trying to do here.  That's why we denied their

16   request to use the information.  What we were

17   noting is the proper procedure is not what

18   Intel then did.  Intel then filed their

19   amended complaint and said, well, we shouldn't

20   be held to the same pleading standard as the

21   cases cited by VLSI to survive a motion to

22   dismiss, because we asked VLSI for this

23   information and they refused to give it to us.

24              So in responding to that

1    argument, what we said was that makes no

2    sense.  If Intel thought it was really

3    important information, they should have sought

4    relief in the protective order.  They

5    shouldn't be able to use our refusal to get a

6    lower pleading standard.

7              So our argument was not that

8    would have been proper or this is what they

9    should have done or had they simply went

10   through the right procedural hoops there would

11   be no issue here; we were specifically

12   responding to an argument that they were

13   making about why they should not have to plead

14   sufficient facts to submit a claim.  They were

15   trying to essentially shift the blame to us.

16             Now, the reason why we thought

17   that they needed to go through the proper

18   procedure is precisely because we did not

19   think this relief was appropriate, and we

20   noted that to Judge Chen during the motion to

21   dismiss hearing, that we didn't think the

22   information was relevant, and that there was a

23   discovery stay in the antitrust action, and

24   what Intel was trying to do was circumvent

1    that stay after having twice failed to state a

2    complaint.

3            So I'm not suggesting that the

4    quote that opposing counsel provided is

5    inaccurate on its face, but I think it is

6    misleading in that we responded to a

7    particular argument they were making, not

8    suggesting that this would have been proper,

9    and, in fact, what we wanted was an

10   opportunity to brief these issues before this

11   court and Judge Albright and other courts.

12            THE COURT:  All right.  Thank

13   you, Mr. Harbour.  Fair enough.

14            Let me turn back to Mr.

15   Blumenfeld.  Mr. Blumenfeld, the first thing

16   I'll ask you is the point that Mr. Harbour

17   made, which I think is a good one, which is,

18   look, you can think of lots of scenarios where

19   a suit is brought here in this case and the

20   defendant says, man, we're going to have to

21   give up some really confidential information,

22   we do not love it, but look, they brought suit

23   against us.  But we're going to engage in a

24   protective order, and the protective order,

1    one of the general provisions is you can't use

2    the info in this case to bring other suits in

3    other cases absent a further order of the

4    court.

5             And Intel would get pretty upset

6    if VLSI looked at its source code or its other

7    very confidential docs in this case and

8    thought, you know, I think we could bring a

9    claim against Intel for some separate product

10   that's not even a part of this case, and we

11   only found that out because we got the

12   confidential info in this case.  And they

13   suggest that Intel would be up in arms about

14   that.  Isn't that right?  Wouldn't Intel be up

15   in arms about a scenario like that?  And how

16   is what is going on here any different than

17   the scenario Mr. Harbour posited?

18             MR. BLUMENFELD:  Yeah, Your

19   Honor, I think it is very different.  This is

20   not a situation like getting to use Intel's

21   source code so they could bring a new patent

22   infringement case on other patents.  That's

23   not at all what it's like.

24             These patents that we're seeking

1    information about, they're already in play.
2    We're not trying to raise new patents here.
3    They've sued us on these patents; we're
4    litigating them in your court.  And the claim
5    is California is already made.  It's not to
6    get information to bring a claim, it's to
7    bolster the allegations, and it is to get some
8    facts relating to a claim that's already
9    brought.
10              But I will say, and the other
11   lawyers know this very well, that when we've
12   had issues about cross-use of information
13   between this case and the Western District of
14   Texas, there have been times when they've come
15   to us and said we want to use something that
16   was disclosed under the Delaware protective
17   order in the Texas case, and we've discussed
18   it with them, and in certain instances, we
19   have agreed.  So I think this is very
20   different, using information that's already
21   out there in an existing case and saying we
22   want to use your source code in order to bring
23   new patent infringement claims.  I think
24   that's just very different.

1          And with respect to the
2   procedures, they made their points about what
3   Judge Chen said about the stay of discovery,
4   and he still included that footnote in his
5   order.  So he obviously doesn't view that as a
6   prohibition on seeking relief from this court.
7   Maybe we should have sought it earlier; they
8   suggested we should have sought it earlier.
9   But I don't know how they could suggest that
10  it's wrong for us to seek it from Your Honor.
11          And particularly, I know you
12  cited the "unless otherwise ordered by the
13  Court," but there's also paragraph 65 of the
14  protective order which specifically has a
15  provision saying that any party can seek to
16  modify the protective order, including to
17  relax or rescind provisions.
18          So the notion that somehow they
19  relied on this and when they entered into this
20  protective order, they knew that there was
21  never going to be anything outside the
22  protective order, that's just wrong.  It
23  hasn't been the way that this has worked, and
24  it wasn't what anyone contemplated.  I mean,

1    the fact is we have litigation between these
2    parties in several courts in the United States
3    now, five that I can think of; we have
4    litigation overseas.  And the notion that
5    anyone thought that there would be strict laws
6    and nothing that was ever said in one case
7    could be used in another, I just don't think
8    is realistic or the way it's happened.
9                     That's not to say that, yes, we
10   agreed that they can use our source code or
11   would have agreed they could use our source
12   code.  That's very different than using two
13   agreements about documents about patent
14   infringement cases that are already existing
15   here and that are alleged to be part of the
16   antitrust case in California.
17                     THE COURT:  Okay.  I guess,
18   Mr. Harbour, if I could just go back to a
19   follow-up question based on what
20   Mr. Blumenfeld said and maybe one other
21   question.  The follow-up question, is there
22   anything you want to say?  He suggests that in
23   the Western District of Texas case, there have
24   been some instances where VLSI has wanted to

1    use some information that it obtained in this

2    case that, you know, may not be helpful to

3    Intel, and Intel said it was okay.  Is there

4    anything you want to say about why what

5    happened there isn't the same as what's

6    happening here?

7              MR. HARBOUR:  I think the cases

8    are entirely different in the following sense.

9    In each of the patent cases, the issue is not

10    whether or not VLSI can state a claim.  Those

11    cases are in discovery, and the issue is just

12    sort of for efficiency purposes.  Should we be

13    able to have cross-use of material, or should

14    the parties have to independently obtain that

15    discovery in each case?  And in those

16    instances, it does make sense to have limited

17    modification of the protective order.  There's

18    no real dispute that the information is

19    available and can be obtained through

20    discovery, it's just it would just be far more

21    cumbersome to do it in each case individually

22    rather than allow for such process.

23              This is entirely different.

24    Intel has not yet stated an antitrust claim.

1   It is not entitled to discovery in order to do

2   so, both under Iqbal and because that case is

3   currently stayed.

4           So again, I think this is

5   analogous to a case if we had, VLSI had

6   learned through examining Intel's source code

7   on related technology that we could have a

8   better infringement claim in a completely

9   separate case if we could use that source

10  code, Intel, as I just told you, would object

11  to it.

12          And the fact that the antitrust

13  claim was already on file, I don't see why

14  that's relevant.  I think, again, if we had

15  filed an infringement claim, a separate one

16  involving different patents and Judge Chen had

17  dismissed it twice and said, hey, I'm just not

18  seeing enough factual detail here, and we came

19  to this court and said, well, now we want to

20  use the source code, again, I think Intel

21  would think it was completely impermissible.

22  And the fact that there's cross-use in cases

23  that are already well into discovery and have

24  overlapping discovery I don't think is

1     analogous at all.

2                      The one last point that I would

3     like to make is just --

4                      THE COURT:  Actually,

5     Mr. Harbour, we don't usually do surrebuttal;

6     I was just asking you to answer the questions

7     I had, and I have a few others.  But if it's

8     very brief, I'll let you make it.

9                      MR. HARBOUR:  No, Your Honor,

10    please go ahead with your questions.

11                     THE COURT:  Okay.  How is your

12    expert's damages number on the '331 patent

13    something that's confidential?  I mean, how is

14    that confidential and protected by the

15    protective order?

16                     MR. HARBOUR:  So Your Honor, I

17    think there are two issues here.  One, I did

18    not understand the request to be limited to

19    just that damage demand.  What the request

20    specifically called for is statements made by

21    our expert regarding the significance of value

22    of patents.  It was much broader than just the

23    damages.  It was much broader than just the

24    damage demand.

```
 1              That said, even with respect to
 2      the damage demand itself, paragraph 43 is very
 3      clear, it's information that either it's
 4      produced in this litigation or derived from
 5      the designated material produced in this
 6      litigation and cannot be used in other cases.
 7      And again, I think the issue is not --
 8              THE COURT:  On that point, I
 9      mean, part of the question is, well, I mean,
10      if in this -- I guess -- it certainly is a
11      piece of information that has come up in this
12      case.  And so I guess based on that paragraph
13      of the protective order, it falls within the
14      default, it can't be used.  But if it is a
15      piece of information that literally if trial
16      were tomorrow, you would stand up and say our
17      expert is going to say we're owed X amount of
18      money in a reasonable royalty, and that was
19      going to be public and anyone could hear it,
20      wouldn't you acknowledge that the case for why
21      there shouldn't be an exception at least as to
22      that demand that's going to be public, is
23      going to come out, is less intense maybe than
24      some of the other information that Intel is
```

1    trying to obtain?

2              MR. HARBOUR:  Well, I do think

3    there are differences of degrees here; I would

4    agree with that.  That certain information is

5    more confidential and constitutes a more

6    problematic modification of the protective

7    order.

8              I would have to consider what --

9    you know, again, I think we're not quite at

10   that stage yet where we're at trial and what

11   information is going to be disclosed or what's

12   going to be subject to -- is going to be under

13   seal or not.

14             But again, I think Intel should

15   be at this point held to its bargain, which it

16   agreed it wouldn't use this information.  Now,

17   I understand the Court's point that some

18   information, it seems like it may be not as

19   much a concern, and I appreciate that.  But I

20   do think that is what the agreement says.

21             THE COURT:  Okay.  And the other

22   thing I was going to ask is, you know,

23   obviously I have to make my own decision here

24   and will, and Third Circuit law is different

```
1    than that of other circuits.
2                 On the other hand, Judge
3    Albright is a great colleague and someone who
4    I respect, so if he's dealing with a similar
5    issue, it's always nice to see what another
6    judge said about it, whether or not you agree
7    in a particular case.  Is there a way you can
8    get me his decision in the Western District of
9    Texas case in the very short term?
10               MR. HARBOUR:  I believe so.  I'd
11   have to look into that procedurally.  There
12   was a transcript; his decision was sort of
13   made on the record.  Typically they will issue
14   a decision later today, although it might just
15   be a docket entry.  But I don't know what the
16   current status of that transcript is and
17   whether or not it's going to be subject to
18   sealing or what the procedures are in the
19   Western District of Texas.  But we will make
20   every effort to touch base with local counsel
21   and see if we can get that to this court as
22   soon as possible.
23               THE COURT:  Okay.  All right.  I
24   mean, I'd like to make a decision relatively
```

1    soon here.  I know that there's a little more

2    wiggle room now, but I'd like to kind of make

3    a decision within the next -- well, but for

4    that, I think I'd make it within the next day.

5    But I can give a little time if it's not too

6    hard to get that before me.

7              So why don't we say this then.

8    I'll ask that to the extent that plaintiff's

9    counsel is able to make available the

10   district's court decision on a related issue

11   in the Western District of Texas to the Court,

12   that they provide it to the Court no later

13   than close of business on Wednesday of this

14   week, if you're able, and then I'll issue a

15   decision on this issue by no later than the

16   end of this week, so that the parties will

17   have my call and they can move forward one way

18   or the other with regard to the California

19   litigation.

20             With that said, then, I'll take

21   the matter under advisement and expect to

22   issue a short order that will resolve the

23   dispute by the end of the day on Friday this

24   week.  And to the extent that plaintiffs are

1    able to provide that information by Wednesday,

2    it can go ahead and do so on the docket under

3    seal.

4                    If there's nothing further, I

5    appreciate counsel's arguments today and wish

6    everybody health and safety in the weeks

7    ahead.  The Court will end its teleconference

8    today.  Thank you.

9                    (Hearing adjourned at 3:48 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    State of Delaware)
                     )
2    New Castle County)

3

4                    CERTIFICATE OF REPORTER

5

6         I, Jennifer M. Guy, Registered

7    Professional Reporter and Notary Public in the

8    State of Delaware, do hereby certify that the

9    foregoing record, Pages 1 to 46 inclusive, is

10   a true and accurate record of the

11   above-captioned proceedings held on the 1st

12   day of February, 2021, in Wilmington.

13

14

15

16              /S/  Jennifer M Guy, RPR
                Jennifer M. Guy, RPR
17

18

19

20

21

22

23

24

**'**

**'331** [6] - 8:19, 8:21, 9:8, 9:18, 13:7, 40:12
**'633** [2] - 8:20, 8:23

**/**

**/S** [1] - 46:16

**1**

**1** [2] - 1:9, 46:9
**16** [1] - 6:2
**17** [1] - 6:2
**18-00966-CFC-CJB** [1] - 1:4
**18-966-CFC-CJB** [1] - 3:8
**1st** [1] - 46:11

**2**

**2021** [2] - 1:9, 46:12

**3**

**3:00** [1] - 1:9
**3:48** [1] - 45:9

**4**

**43** [3] - 6:2, 16:14, 41:2
**46** [1] - 46:9

**5**

**5th** [1] - 4:23

**6**

**6** [1] - 11:15
**65** [2] - 6:8, 36:13

**8**

**8** [1] - 5:2

**9**

**9** [1] - 12:13
**96** [1] - 6:3

**A**

**ABERNETHY** [1] - 1:19
**Abernethy** [1] -

3:17
**abided** [1] - 15:18
**ability** [1] - 29:6
**able** [11] - 7:14, 8:17, 12:5, 12:6, 15:14, 21:15, 32:5, 38:13, 44:9, 44:14, 45:1
**above-captioned** [1] - 46:11
**absent** [1] - 34:3
**absolutely** [1] - 31:2
**access** [4] - 6:3, 15:21, 21:24, 29:7
**accurate** [2] - 30:16, 46:10
**accused** [1] - 5:22
**acknowledge** [1] - 41:20
**acquire** [1] - 9:17
**acquired** [1] - 10:13
**acquiring** [1] - 8:18
**acquisition** [2] - 10:11, 13:17
**Action** [2] - 1:3, 3:7
**action** [7] - 8:13, 13:2, 17:4, 18:8, 18:17, 25:2, 32:23
**actions** [1] - 16:2
**actual** [2] - 6:21, 22:13
**addition** [1] - 26:20
**additional** [1] - 6:11
**address** [7] - 4:14, 5:15, 5:20, 13:5, 23:18, 25:22, 25:24
**adjourned** [1] - 45:9
**adjudicated** [2] - 21:10, 22:14
**admittedly** [1] - 30:4
**advantage** [1] - 29:13
**advisement** [1] - 44:21
**afternoon** [2] - 3:4, 3:14
**aggregation** [1] - 23:5
**ago** [1] - 27:15
**agree** [4] - 17:6, 21:7, 42:4, 43:6
**agreed** [5] - 15:17,

35:19, 37:10, 37:11, 42:16
**agreement** [1] - 42:20
**agreements** [5] - 9:7, 11:1, 13:16, 13:17, 37:13
**ahead** [3] - 40:10, 45:2, 45:7
**Albright** [6] - 5:10, 14:16, 15:15, 27:8, 33:11, 43:3
**Albright's** [3] - 15:12, 15:14, 24:2
**allegations** [2] - 11:19, 35:7
**alleged** [4] - 9:18, 13:21, 22:9, 37:15
**allow** [3] - 18:9, 18:23, 38:22
**allows** [2] - 17:21, 18:1
**almost** [2] - 19:23, 20:3
**Amanda** [1] - 4:1
**AMANDA** [1] - 2:6
**amend** [1] - 11:17
**amended** [5] - 4:23, 6:22, 7:5, 21:5, 31:19
**amount** [2] - 17:2, 41:17
**analogous** [3] - 18:14, 39:5, 40:1
**analysis** [1] - 27:5
**AND** [1] - 2:5
**answer** [1] - 40:6
**anticipated** [1] - 17:12
**anticipating** [1] - 28:7
**antitrust** [13] - 4:22, 7:13, 8:13, 13:22, 18:8, 23:17, 24:24, 27:15, 28:9, 32:23, 37:16, 38:24, 39:12
**appear** [1] - 20:6
**APPEARANCES** [2] - 1:14, 2:1
**Apple** [1] - 6:20
**applied** [1] - 14:2
**apply** [1] - 6:10
**appreciate** [4] - 23:12, 24:20, 42:19, 45:5
**appropriate** [4] -

20:16, 24:23, 27:21, 32:19
**areas** [1] - 29:9
**argue** [3] - 3:18, 13:18, 21:22
**argument** [5] - 25:20, 32:1, 32:7, 32:12, 33:7
**arguments** [1] - 45:5
**arms** [3] - 16:3, 34:13, 34:15
**ARSHT** [1] - 2:3
**attached** [3] - 8:16, 9:5, 30:1
**attachment** [1] - 20:5
**attorneys** [1] - 29:6
**attributable** [1] - 23:4
**available** [2] - 38:19, 44:9

**B**

**background** [1] - 21:2
**balancing** [1] - 13:19
**bar** [1] - 29:5
**bargain** [1] - 42:15
**base** [1] - 43:20
**based** [4] - 15:21, 18:10, 37:19, 41:12
**basic** [1] - 26:19
**basis** [1] - 24:1
**BEFORE** [1] - 1:12
**begin** [3] - 3:12, 3:22, 13:10
**behalf** [3] - 3:15, 3:19, 15:3
**benefits** [1] - 25:15
**benefitted** [1] - 27:10
**better** [1] - 39:8
**between** [4] - 5:5, 23:3, 35:13, 37:1
**bit** [3] - 5:3, 11:13, 13:8
**blame** [1] - 32:15
**blessing** [2] - 20:3, 20:23
**bloody** [1] - 24:13
**Blumenfeld** [11] - 3:24, 4:4, 4:13, 6:17, 9:2, 14:15, 15:8, 16:12, 33:15, 37:20
**BLUMENFELD** [11]

- 2:3, 3:23, 4:6, 4:18, 7:2, 7:24, 10:8, 11:4, 12:11, 14:18, 34:18
**bolster** [1] - 35:7
**Brian** [1] - 3:15
**BRIAN** [1] - 1:16
**brief** [8] - 6:19, 8:14, 14:23, 21:15, 30:7, 30:17, 33:10, 40:8
**bring** [7] - 18:10, 18:16, 34:2, 34:8, 34:21, 35:6, 35:22
**bringing** [1] - 5:24
**broader** [2] - 40:22, 40:23
**brought** [3] - 33:19, 33:22, 35:9
**burden** [3] - 11:11, 11:13, 14:3
**BURKE** [1] - 1:12
**business** [1] - 44:13
**BY** [4] - 1:16, 1:19, 2:3, 2:6

**C**

**Cal** [1] - 16:19
**California** [10] - 4:22, 7:20, 8:8, 8:13, 11:16, 13:2, 30:8, 35:5, 37:16, 44:18
**cannot** [2] - 27:13, 41:6
**captioned** [1] - 46:11
**case** [59] - 4:22, 5:11, 6:20, 6:23, 8:8, 8:19, 9:13, 12:18, 13:23, 16:7, 16:8, 16:18, 16:19, 17:2, 17:23, 17:24, 18:3, 18:12, 18:24, 19:4, 19:12, 20:7, 21:3, 23:1, 23:2, 24:10, 25:1, 25:16, 26:18, 26:21, 28:9, 29:21, 30:8, 30:9, 33:19, 34:2, 34:7, 34:10, 34:12, 34:22, 35:13, 35:17, 35:21, 37:6,

37:16, 37:23,
38:2, 38:15,
38:21, 39:2, 39:5,
39:9, 41:12,
41:20, 43:7, 43:9
**cases** [13] - 8:4,
15:22, 17:17,
27:18, 29:4,
31:21, 34:3,
37:14, 38:7, 38:9,
38:11, 39:22,
41:6
**Castle** [1] - 46:2
**categorically** [1] -
18:5
**certain** [3] - 19:15,
35:18, 42:4
**certainly** [9] - 7:12,
10:15, 16:15,
16:16, 17:9, 19:2,
19:19, 25:8,
41:10
**CERTIFICATE** [1] -
46:4
**certify** [1] - 46:8
**chance** [3] - 15:7,
25:22, 30:23
**changed** [1] - 5:2
**Chen** [18] - 5:1,
11:16, 12:14,
14:9, 20:7, 20:14,
21:18, 22:2,
22:10, 23:20,
24:6, 29:21,
30:19, 31:12,
32:20, 36:3,
39:16
**Chen's** [3] - 12:3,
20:21, 24:21
**Chris** [1] - 3:17
**CHRISTOPHER** [2]
- 1:12, 1:19
**Circuit** [5] - 5:14,
11:10, 13:24,
14:3, 42:24
**circuit** [1] - 25:13
**circuits** [1] - 43:1
**circumstances** [2]
- 17:13, 18:21
**circumvent** [2] -
26:17, 32:24
**cite** [1] - 6:7
**cited** [2] - 31:21,
36:12
**Civil** [2] - 1:3, 3:7
**claim** [18] - 8:22,
13:7, 23:17, 24:4,
24:24, 26:13,
26:22, 30:13,
32:14, 34:9, 35:4,

35:6, 35:8, 38:10,
38:24, 39:8,
39:13, 39:15
**claimed** [1] - 11:24
**claiming** [2] - 14:4,
14:6
**claims** [2] - 16:1,
35:23
**clear** [4] - 8:1, 10:4,
16:4, 41:3
**clearly** [3] - 6:5,
13:20, 16:23
**close** [1] - 44:13
**code** [10] - 18:16,
24:9, 34:6, 34:21,
35:22, 37:10,
37:12, 39:6,
39:10, 39:20
**codes** [1] - 15:22
**colleague** [1] - 43:3
**common** [1] - 29:3
**compared** [1] -
11:22
**comparison** [1] -
11:21
**competitive** [3] -
11:20, 22:8, 22:9
**complaint** [11] -
4:24, 11:18,
20:24, 21:5, 24:7,
26:9, 27:15,
27:24, 28:4,
31:19, 33:2
**completely** [3] -
18:19, 39:8,
39:21
**completeness** [1] -
9:21
**concern** [2] - 29:9,
42:19
**concerns** [1] -
14:11
**concludes** [1] -
14:13
**condoning** [1] -
23:22
**confidential** [15] -
11:12, 13:4,
13:10, 13:14,
13:15, 13:18,
28:19, 29:7,
30:11, 33:21,
34:7, 34:12,
40:13, 40:14,
42:5
**confidentiality** [4] -
11:11, 14:4, 14:5,
14:11
**Connolly** [1] - 7:9
**consider** [3] -

25:21, 27:4, 42:8
**consistently** [1] -
13:13
**constitutes** [1] -
42:5
**contemplated** [1] -
36:24
**contemplation** [1] -
6:21
**content** [1] - 10:2
**contention** [1] -
13:9
**contentions** [2] -
9:1, 13:13
**continue** [2] - 7:23,
11:3
**CONTINUED** [1] -
2:1
**contracts** [3] -
9:20, 9:23, 10:12
**convinced** [1] -
27:8
**Corporation** [1] -
3:7
**CORPORATION** [1]
- 1:5
**correct** [2] - 10:24,
25:13
**cost** [3] - 8:18,
9:16, 9:23
**costs** [1] - 10:11
**counsel** [17] - 3:10,
3:11, 3:13, 3:21,
3:22, 4:12, 8:7,
8:8, 8:10, 10:23,
13:4, 13:22,
28:18, 30:5, 33:4,
43:20, 44:9
**Counsel** [1] - 1:21
**counsel's** [1] - 45:5
**country** [1] - 19:7
**County** [1] - 46:2
**couple** [4] - 4:16,
4:20, 5:16, 6:1
**course** [1] - 17:5
**COURT** [25] - 1:1,
3:1, 3:20, 4:4,
4:8, 6:17, 7:22,
9:2, 11:2, 12:4,
14:14, 14:22,
15:6, 16:10, 19:1,
22:16, 25:4,
29:18, 33:12,
37:17, 40:4,
40:11, 41:8,
42:21, 43:23
**court** [17] - 3:8,
13:11, 17:6,
17:15, 19:13,
19:23, 21:10,

22:15, 24:8,
30:10, 33:11,
34:4, 35:4, 36:6,
39:19, 43:21,
44:10
**Court** [10] - 6:5,
6:6, 6:10, 7:18,
16:21, 31:5,
36:13, 44:11,
44:12, 45:7
**Court's** [2] - 6:15,
42:17
**courts** [8] - 12:15,
26:13, 27:4,
30:14, 30:22,
30:24, 33:11,
37:2
**craziest** [1] - 31:7
**cross** [7] - 17:21,
18:2, 18:9, 18:23,
35:12, 38:13,
39:22
**cross-use** [7] -
17:21, 18:2, 18:9,
18:23, 35:12,
38:13, 39:22
**cumbersome** [1] -
38:21
**curious** [1] - 24:15
**current** [1] - 43:16
**CUTLER** [1] - 2:5

**D**

**damage** [4] - 22:12,
40:19, 40:24,
41:2
**damages** [8] - 8:21,
8:22, 10:19,
11:23, 13:7, 22:8,
40:12, 40:23
**dealing** [1] - 43:4
**decides** [1] - 28:10
**decision** [10] -
15:12, 24:2,
42:23, 43:8,
43:12, 43:14,
43:24, 44:3,
44:10, 44:15
**default** [1] - 41:14
**Defendant** [1] - 1:6
**defendant** [1] -
33:20
**defendants'** [1] -
3:21
**defined** [1] - 13:20
**degrees** [1] - 42:3
**Delaware** [6] - 3:13,
3:22, 20:11,
35:16, 46:1, 46:8

**DELAWARE** [1] -
1:1
**demand** [9] - 22:12,
22:13, 22:24,
23:1, 23:3, 40:19,
40:24, 41:2,
41:22
**denied** [4] - 5:10,
14:20, 15:16,
31:15
**deny** [1] - 14:16
**derived** [1] - 41:4
**designated** [3] -
16:17, 17:2, 41:5
**detail** [1] - 39:18
**details** [1] - 5:7
**determine** [1] -
25:15
**DI** [1] - 6:3
**differences** [1] -
42:3
**different** [19] - 5:12,
5:14, 5:15, 14:2,
18:5, 18:17,
19:12, 23:6,
23:11, 24:20,
34:16, 34:19,
35:20, 35:24,
37:12, 38:8,
38:23, 39:16,
42:24
**differential** [1] -
23:3
**disagree** [1] - 11:7
**disclose** [3] - 8:6,
9:11, 10:6
**disclosed** [5] -
7:12, 9:4, 28:20,
35:16, 42:11
**disclosure** [3] -
13:22, 28:24,
29:11
**discovered** [1] -
24:9
**discovery** [23] -
8:24, 15:21,
15:23, 17:16,
17:21, 18:7,
18:24, 19:3, 19:4,
24:11, 24:12,
25:1, 26:12,
26:17, 26:20,
32:23, 36:3,
38:11, 38:15,
38:20, 39:1,
39:23, 39:24
**discuss** [1] - 28:15
**discussed** [2] -
27:3, 35:17
**discussion** [1] -

27:20
**dismiss** [4] - 30:7, 31:14, 31:22, 32:21
**dismissed** [5] - 21:1, 24:6, 26:9, 28:4, 39:17
**dispute** [5] - 3:5, 4:10, 21:10, 38:18, 44:23
**DISTRICT** [2] - 1:1, 1:1
**District** [10] - 5:6, 11:16, 15:13, 20:11, 30:8, 35:13, 37:23, 43:8, 43:19, 44:11
**district** [2] - 19:13, 19:22
**district's** [1] - 44:10
**docket** [3] - 12:9, 43:15, 45:2
**docs** [3] - 9:15, 10:5, 34:7
**documents** [7] - 5:13, 7:6, 8:12, 8:18, 9:5, 13:3, 37:13
**done** [6] - 7:21, 12:19, 20:2, 21:19, 31:5, 32:9
**DORR** [1] - 2:5
**due** [1] - 6:20
**during** [1] - 32:20

**E**

**efficiency** [5] - 17:18, 18:1, 18:6, 18:22, 38:12
**effort** [1] - 43:20
**either** [2] - 7:21, 41:3
**email** [3] - 20:6, 20:15, 30:2
**end** [5] - 6:19, 30:1, 44:16, 44:23, 45:7
**engage** [1] - 33:23
**entered** [1] - 36:19
**entire** [3] - 11:1, 23:9, 25:2
**entirely** [3] - 18:17, 38:8, 38:23
**entirety** [4] - 9:12, 10:6, 10:9, 10:10
**entitled** [2] - 26:12, 39:1
**entry** [1] - 43:15

**especially** [1] - 6:14
**ESQ** [7] - 1:16, 1:19, 1:19, 1:20, 2:3, 2:6, 2:6
**essentially** [4] - 15:15, 21:23, 26:8, 32:15
**evidence** [1] - 22:19
**exact** [1] - 22:12
**exactly** [4] - 8:16, 9:4, 10:4, 20:22
**examining** [1] - 39:6
**example** [7] - 9:13, 9:19, 10:1, 15:20, 16:14, 17:15, 29:3
**exception** [1] - 41:21
**excerpt** [1] - 9:24
**excerpts** [1] - 9:7
**Exhibit** [4] - 9:7, 10:17, 13:6, 30:3
**exhibits** [1] - 9:5
**Exhibits** [1] - 9:6
**existing** [2] - 35:21, 37:14
**exorbitant** [1] - 11:23
**expect** [1] - 44:21
**experience** [1] - 11:6
**expert** [5] - 8:21, 8:24, 10:1, 40:21, 41:17
**expert's** [3] - 9:8, 13:7, 40:12
**explain** [1] - 21:15
**expressly** [1] - 7:8
**extension** [1] - 5:1
**extent** [3] - 10:18, 44:8, 44:24
**extra** [1] - 22:23

**F**

**face** [1] - 33:5
**fact** [9] - 21:14, 21:21, 21:24, 24:11, 28:18, 33:9, 37:1, 39:12, 39:22
**factor** [5] - 27:2, 27:4, 27:5, 28:21, 29:15
**factors** [8] - 25:14, 25:17, 25:20, 25:21, 26:1, 26:2,

27:1, 28:15
**facts** [2] - 32:14, 35:8
**factual** [1] - 39:18
**failed** [2] - 26:23, 33:1
**fair** [4] - 17:10, 17:12, 23:7, 33:13
**fairly** [1] - 16:9
**fall** [1] - 18:21
**falls** [1] - 41:13
**familiar** [1] - 5:7
**far** [2] - 26:23, 38:20
**Farnan** [1] - 3:15
**FARNAN** [3] - 1:16, 1:16, 3:14
**fault** [1] - 20:18
**faulted** [1] - 20:7
**favor** [1] - 14:1
**February** [3] - 1:9, 42:6, 46:12
**felt** [2] - 30:10, 30:20
**few** [2] - 3:2, 40:7
**Fifth** [1] - 14:3
**fight** [2] - 9:15, 31:1
**file** [4] - 4:23, 15:24, 21:9, 23:10
**filed** [6] - 21:4, 24:3, 27:14, 27:23, 31:18, 39:15
**filing** [2] - 12:17, 29:7
**firm** [1] - 8:9
**first** [9] - 3:3, 3:11, 4:12, 4:15, 4:20, 5:3, 20:18, 21:2, 33:15
**five** [1] - 37:3
**flagged** [1] - 27:16
**flip** [1] - 22:17
**follow** [4] - 4:17, 6:16, 37:19, 37:21
**follow-up** [2] - 37:19, 37:21
**following** [2] - 6:15, 38:8
**foot** [1] - 24:3
**footnote** [5] - 12:13, 23:15, 36:4
**FOR** [1] - 1:1
**foregoing** [1] - 46:9
**forming** [1] - 27:4
**Fortress** [1] - 30:9

**forward** [2] - 28:10, 44:17
**Friday** [2] - 4:23, 44:23
**front** [3] - 21:18, 29:8, 31:12

**G**

**general** [1] - 34:1
**given** [3] - 11:17, 12:12, 21:2
**glad** [2] - 10:22, 12:11
**grant** [1] - 30:24
**granted** [1] - 21:14
**great** [1] - 43:3
**guard** [1] - 28:24
**guess** [10] - 4:13, 9:10, 9:20, 10:12, 14:14, 24:18, 25:4, 37:17, 41:10, 41:12
**Guy** [3] - 46:6, 46:16, 46:16

**H**

**HALE** [1] - 2:5
**Hale** [2] - 4:2, 8:9
**half** [1] - 28:6
**hand** [2] - 11:9, 43:2
**happy** [3] - 10:15, 10:20, 12:3
**HARBOUR** [13] - 1:19, 15:4, 15:10, 17:11, 20:20, 23:10, 25:23, 31:10, 38:7, 40:9, 40:16, 42:2, 43:10
**Harbour** [13] - 3:16, 3:18, 15:5, 15:6, 16:10, 19:1, 22:16, 29:19, 33:13, 33:16, 34:17, 37:18, 40:5
**hard** [1] - 44:6
**harms** [1] - 25:16
**health** [1] - 45:6
**hear** [3] - 15:14, 19:1, 41:19
**heard** [2] - 4:14, 15:8
**hearing** [3] - 5:9, 31:13, 32:21
**Hearing** [1] - 45:9
**held** [7] - 13:13,

15:16, 22:2, 26:14, 31:20, 42:15, 46:11
**helpful** [2] - 20:10, 38:2
**hereby** [1] - 46:8
**HERRIOT** [1] - 2:6
**Herriot** [1] - 4:2
**hi** [2] - 15:4, 15:6
**Honor** [26] - 3:15, 3:24, 4:7, 4:19, 5:18, 7:2, 7:9, 10:8, 10:21, 10:24, 12:13, 12:22, 13:12, 14:12, 15:4, 15:11, 17:11, 20:20, 23:12, 24:21, 25:24, 31:10, 34:19, 36:10, 40:9, 40:16
**HONORABLE** [1] - 1:12
**hoops** [1] - 32:10

**I**

**IAN** [1] - 1:20
**Ian** [1] - 3:17
**identify** [1] - 3:10
**impermissible** [1] - 39:21
**important** [3] - 11:14, 20:9, 32:3
**impossible** [1] - 16:24
**improper** [1] - 21:16
**IN** [1] - 1:1
**inaccessible** [1] - 18:19
**inaccurate** [1] - 33:5
**inappropriate** [1] - 31:2
**include** [1] - 10:13
**included** [2] - 11:21, 36:4
**including** [3] - 29:4, 31:13, 36:16
**inclusive** [1] - 46:9
**indeed** [1] - 20:4
**independently** [1] - 38:14
**individually** [1] - 38:21
**infer** [1] - 16:23
**info** [3] - 29:23,

34:2, 34:12
**information** [53] -
7:19, 9:12, 10:16,
10:18, 10:21,
12:22, 12:24,
13:14, 15:24,
16:7, 17:23,
18:11, 18:15,
19:16, 19:19,
21:4, 22:1, 22:4,
22:6, 23:20, 26:4,
28:1, 28:2, 28:7,
28:8, 28:19, 29:1,
29:7, 29:11,
29:12, 30:11,
30:20, 31:16,
31:23, 32:3,
32:22, 33:21,
35:1, 35:6, 35:12,
35:20, 38:1,
38:18, 41:3,
41:11, 41:15,
41:24, 42:4,
42:11, 42:16,
42:18, 45:1
**infringement** [10] -
11:24, 16:1,
18:17, 24:4, 29:4,
34:22, 35:23,
37:14, 39:8,
39:15
**initiate** [1] - 19:6
**injury** [1] - 13:21
**instances** [4] -
17:8, 35:18,
37:24, 38:16
**instead** [1] - 21:20
**Intel** [56] - 3:6, 4:1,
4:3, 4:11, 12:16,
16:1, 16:3, 18:4,
18:16, 18:18,
19:9, 20:1, 20:4,
20:8, 20:17,
20:19, 21:3, 21:8,
21:17, 23:13,
23:23, 24:3, 24:5,
24:12, 24:17,
25:8, 25:16, 26:7,
26:22, 27:14,
28:9, 29:22,
30:10, 30:12,
30:13, 30:19,
31:5, 31:14,
31:18, 32:2,
32:24, 34:5, 34:9,
34:13, 34:14,
38:3, 38:24,
39:10, 39:20,
41:24, 42:14
**INTEL** [1] - 1:5

**Intel's** [7] - 5:10,
6:20, 15:22, 24:9,
30:5, 34:20, 39:6
**intended** [1] -
15:23
**intense** [1] - 41:23
**interest** [7] - 12:23,
13:2, 18:1, 18:22,
27:6, 29:14
**interests** [1] -
28:11
**involving** [1] -
39:16
**Iqbal** [3] - 26:11,
26:19, 39:2
**IRELL** [1] - 1:18
**Irell** [3] - 3:18, 15:5,
18:14
**issue** [18] - 4:11,
11:4, 11:18,
13:19, 22:7, 24:5,
27:17, 29:20,
32:11, 38:9,
38:11, 41:7, 43:5,
43:13, 44:10,
44:14, 44:15,
44:22
**issued** [1] - 30:14
**issues** [6] - 13:11,
24:19, 27:18,
33:10, 35:12,
40:17
**issuing** [1] - 19:14
**itself** [2] - 22:18,
41:2

**J**

**JACK** [1] - 2:3
**Jack** [1] - 3:24
**January** [1] - 11:15
**Jennifer** [3] - 46:6,
46:16, 46:16
**judge** [2] - 19:13,
43:6
**Judge** [33] - 1:12,
5:1, 5:10, 7:9,
11:16, 12:2,
12:14, 14:9,
14:16, 15:11,
15:14, 15:15,
20:7, 20:14,
20:21, 21:18,
22:2, 22:10,
23:20, 24:1, 24:6,
24:21, 27:8,
29:21, 30:18,
30:19, 31:12,
32:20, 33:11,
36:3, 39:16, 43:2

**judges** [1] - 13:11
**jump** [2] - 15:8,
16:11
**jurisdiction** [1] -
26:14
**jurisdictions** [1] -
26:14

**K**

**keep** [2] - 11:12,
13:3
**key** [1] - 28:14
**kind** [4] - 6:20,
20:3, 29:21, 44:2
**knowing** [1] - 22:24
**knows** [1] - 19:18

**L**

**language** [1] - 16:8
**largely** [1] - 11:5
**last** [3] - 29:19,
30:3, 40:2
**law** [5] - 5:15,
11:10, 13:24,
14:2, 42:24
**laws** [1] - 37:5
**lawyers** [2] - 7:13,
35:11
**learned** [1] - 39:6
**least** [8] - 11:6,
12:2, 12:9, 19:17,
22:9, 27:3, 31:6,
41:21
**leave** [1] - 12:16
**legal** [1] - 29:13
**legitimate** [3] -
26:4, 26:6, 26:24
**less** [1] - 41:23
**lesser** [1] - 21:23
**letter** [8] - 4:15,
5:21, 9:5, 25:16,
25:18, 25:24,
26:5, 30:2
**letters** [3] - 4:21,
16:13, 16:16
**lightly** [1] - 12:7
**likewise** [1] - 21:17
**limitation** [3] -
26:17, 26:18,
26:19
**limited** [8] - 8:12,
12:21, 12:23,
12:24, 17:13,
22:11, 38:16,
40:18
**limits** [1] - 29:6
**literally** [2] - 9:11,
41:15

**litigating** [1] - 35:4
**litigation** [8] - 5:5,
18:10, 29:2, 37:1,
37:4, 41:4, 41:6,
44:19
**litigations** [2] -
19:7, 30:12
**Liv** [1] - 4:2
**LIV** [1] - 2:6
**LLC** [2] - 1:3, 3:6
**LLP** [3] - 1:16, 1:18,
2:5
**local** [1] - 43:20
**look** [9] - 19:11,
19:15, 19:22,
22:22, 25:14,
33:18, 33:22,
43:11
**looked** [1] - 34:6
**looks** [1] - 9:6
**love** [1] - 33:22
**lower** [1] - 32:6

**M**

**Magistrate** [1] -
1:12
**main** [1] - 23:15
**maintain** [2] -
11:10, 14:4
**MAJOR** [1] - 2:6
**Major** [1] - 4:1
**man** [1] - 33:20
**MANELLA** [1] -
1:18
**Manella** [3] - 3:18,
15:5, 18:15
**March** [1] - 5:2
**Mashhood** [1] - 4:2
**material** [5] - 6:24,
16:17, 17:3,
38:13, 41:5
**matter** [2] - 3:6,
44:21
**matters** [2] - 19:8,
29:23
**mean** [8] - 7:19,
24:23, 31:8,
36:24, 40:13,
41:9, 43:24
**meant** [1] - 30:18
**mentioning** [1] -
27:24
**metaphysically** [1]
- 16:24
**Michael** [2] - 3:16,
15:5
**MICHAEL** [1] - 1:19
**might** [12] - 9:13,
17:13, 18:8,

18:22, 19:10,
19:16, 19:18,
23:10, 24:20,
27:17, 31:6,
43:14
**minimum** [1] -
16:22
**minor** [1] - 17:19
**minutes** [1] - 5:16
**misleading** [1] -
33:6
**misuse** [1] - 29:1
**modification** [4] -
17:20, 28:12,
38:17, 42:6
**modify** [5] - 11:8,
18:22, 26:15,
26:16, 36:16
**modifying** [1] -
29:16
**Monday** [1] - 1:9
**money** [1] - 41:18
**morning** [4] - 5:9,
15:12, 24:2, 27:8
**MORRIS** [1] - 2:3
**Morris** [1] - 3:24
**most** [1] - 22:19
**motion** [11] - 5:5,
5:10, 8:16, 13:6,
15:16, 19:20,
28:16, 30:7,
31:13, 31:21,
32:20
**move** [2] - 9:3,
44:17
**moving** [1] - 26:3
**MR** [23] - 3:14,
3:23, 4:6, 4:18,
7:2, 7:24, 10:8,
11:4, 12:11,
14:18, 15:4,
15:10, 17:11,
20:20, 23:10,
25:23, 31:10,
34:18, 38:7, 40:9,
40:16, 42:2,
43:10
**multiple** [1] - 17:17
**murder** [1] - 24:13

**N**

**nail** [1] - 31:1
**narrow** [1] - 18:21
**ND** [1] - 16:19
**necessarily** [5] -
9:16, 10:3, 19:5,
23:22, 29:10
**need** [6] - 9:21,
10:9, 10:11, 11:1,

18:6, 23:17
**needed** [3] - 30:10, 30:20, 32:17
**needs** [1] - 21:9
**negotiated** [2] - 15:17, 27:9
**negotiation** [1] - 27:12
**never** [1] - 36:21
**new** [5] - 18:10, 25:2, 34:21, 35:2, 35:23
**New** [1] - 46:2
**newspaper** [1] - 8:5
**next** [2] - 44:3, 44:4
**nice** [1] - 43:5
**Nichols** [1] - 4:1
**NICHOLS** [1] - 2:3
**Northern** [2] - 11:16, 30:8
**Notary** [1] - 46:7
**note** [2] - 28:18, 28:21
**noted** [4] - 26:5, 27:7, 31:11, 32:20
**nothing** [2] - 37:6, 45:4
**noting** [2] - 23:13, 31:17
**notion** [2] - 36:18, 37:4
**number** [3] - 8:12, 13:8, 40:12
**Number** [1] - 3:7

## O

**object** [1] - 39:10
**obtain** [3] - 17:1, 38:14, 42:1
**obtained** [4] - 18:7, 18:12, 38:1, 38:19
**obtains** [1] - 29:12
**obviously** [2] - 36:5, 42:23
**odd** [1] - 11:6
**OF** [2] - 1:1, 46:4
**offs** [1] - 27:12
**once** [1] - 29:11
**one** [28] - 6:2, 7:4, 8:4, 10:14, 16:11, 16:22, 17:1, 19:4, 20:5, 22:3, 23:2, 25:11, 26:2, 26:11, 26:18, 27:1, 28:17, 29:3, 29:4, 29:19, 33:17, 34:1, 37:6,

37:20, 39:15, 40:2, 40:17, 44:17
**opinion** [8] - 12:3, 12:7, 12:10, 19:14, 19:15, 20:14, 20:21, 24:21
**opportunity** [3] - 11:17, 21:14, 33:10
**opposed** [1] - 31:14
**opposing** [2] - 28:18, 33:4
**order** [60] - 3:5, 5:19, 5:22, 5:23, 6:3, 6:6, 6:8, 6:9, 6:13, 6:15, 6:16, 6:23, 7:7, 7:10, 8:15, 11:8, 11:15, 11:19, 12:16, 15:18, 15:19, 16:5, 16:6, 17:1, 17:20, 18:13, 18:20, 18:23, 21:6, 24:10, 24:14, 26:12, 26:15, 26:16, 26:17, 27:10, 27:11, 27:19, 28:3, 28:7, 28:13, 28:23, 29:17, 32:4, 33:24, 34:3, 35:17, 35:22, 36:5, 36:14, 36:16, 36:20, 36:22, 38:17, 39:1, 40:15, 41:13, 42:7, 44:22
**ordered** [5] - 5:1, 6:5, 16:21, 17:5, 36:12
**orders** [2] - 28:23, 30:14
**otherwise** [3] - 6:6, 16:20, 36:12
**outrageous** [1] - 31:7
**outside** [6] - 8:7, 8:8, 8:9, 13:4, 13:22, 36:21
**overlap** [1] - 17:17
**overlapping** [1] - 39:24
**overseas** [1] - 37:4
**owed** [1] - 41:17
**own** [1] - 42:23

## P

**p.m** [2] - 1:9, 45:9
**page** [3] - 10:2, 10:19, 30:3
**Pages** [1] - 46:9
**paid** [2] - 11:22, 23:4
**Pansy** [3] - 8:4, 11:9, 25:14
**paragraph** [7] - 6:2, 6:8, 16:14, 16:15, 36:13, 41:2, 41:12
**part** [4] - 16:15, 34:10, 37:15, 41:9
**particular** [3] - 26:1, 33:7, 43:7
**particularly** [3] - 19:4, 22:4, 36:11
**parties** [10] - 4:24, 5:6, 17:6, 17:12, 19:5, 27:9, 29:14, 37:2, 38:14, 44:16
**party** [7] - 6:10, 11:10, 14:4, 14:6, 26:3, 26:11, 36:15
**party's** [1] - 13:14
**past** [1] - 6:13
**patent** [12] - 8:20, 8:22, 10:14, 15:21, 23:5, 29:4, 29:5, 34:21, 35:23, 37:13, 38:9, 40:12
**patents** [13] - 8:19, 9:17, 11:22, 22:7, 23:4, 24:5, 29:8, 34:22, 34:24, 35:2, 35:3, 39:16, 40:22
**patents-in-suit** [1] - 8:19
**pending** [1] - 26:21
**perfectly** [1] - 20:16
**perhaps** [1] - 19:18
**permissible** [2] - 17:14, 24:17
**permission** [6] - 7:5, 7:14, 7:15, 7:16, 17:15, 19:23
**permit** [1] - 6:5
**permitting** [1] - 7:8
**PICKERING** [1] - 2:5
**piece** [5] - 22:21,

23:8, 41:11, 41:15
**plaintiff** [2] - 3:16, 3:19
**Plaintiff** [2] - 1:3, 1:21
**plaintiff's** [4] - 3:12, 15:1, 15:3, 44:8
**plaintiffs** [3] - 12:14, 23:22, 44:24
**play** [1] - 35:1
**plead** [1] - 32:13
**pleading** [6] - 6:22, 7:5, 7:20, 21:23, 31:20, 32:6
**point** [14] - 6:1, 10:10, 19:10, 21:20, 23:15, 23:19, 25:5, 27:16, 27:20, 33:16, 40:2, 41:8, 42:15, 42:17
**pointed** [1] - 20:5
**pointing** [1] - 19:10
**points** [4] - 16:11, 21:1, 31:9, 36:2
**portion** [2] - 9:15, 9:24
**portions** [2] - 9:19, 9:22
**posited** [1] - 34:17
**position** [5] - 21:5, 24:15, 25:12, 31:11, 31:12
**possibility** [1] - 17:10
**possible** [2] - 17:7, 43:22
**possibly** [1] - 17:3
**power** [1] - 25:6
**powerful** [1] - 22:19
**precisely** [1] - 32:18
**prejudice** [1] - 6:9
**prepare** [1] - 7:20
**prepared** [2] - 7:4, 7:13
**preparing** [1] - 6:22
**presentation** [1] - 14:13
**presiding** [1] - 12:15
**pressure** [1] - 5:2
**pretty** [5] - 13:12, 14:1, 14:5, 16:23, 34:5
**preventing** [1] - 29:15

**price** [2] - 22:6, 22:13
**prices** [2] - 11:20, 11:21
**pricing** [2] - 22:8, 22:9
**principles** [1] - 26:10
**probative** [1] - 22:11
**problematic** [1] - 42:6
**procedural** [1] - 32:10
**procedurally** [1] - 43:11
**procedure** [4] - 6:15, 20:23, 31:17, 32:18
**procedures** [2] - 36:2, 43:18
**proceeding** [1] - 29:14
**proceedings** [1] - 46:11
**process** [1] - 38:22
**produce** [1] - 28:7
**produced** [4] - 16:7, 29:1, 41:4, 41:5
**producing** [1] - 17:24
**product** [1] - 34:9
**Professional** [1] - 46:7
**prohibited** [1] - 21:6
**prohibition** [1] - 36:6
**proper** [6] - 21:11, 21:13, 31:17, 32:8, 32:17, 33:8
**proposed** [1] - 15:24
**proposing** [1] - 18:4
**prosecuting** [1] - 29:8
**prosecution** [1] - 29:5
**protect** [1] - 28:23
**protected** [1] - 40:14
**protection** [1] - 6:11
**protective** [42] - 3:5, 5:19, 5:22, 5:23, 6:3, 6:23, 7:7, 11:8, 12:16, 15:18, 15:19,

16:4, 16:6, 17:20, 18:13, 18:20, 18:23, 21:6, 24:14, 26:15, 26:16, 27:10, 27:11, 27:19, 28:3, 28:6, 28:13, 28:22, 28:23, 29:16, 32:4, 33:24, 35:16, 36:14, 36:16, 36:20, 36:22, 38:17, 40:15, 41:13, 42:6
**provide** [3] - 19:23, 44:12, 45:1
**provided** [1] - 33:4
**provision** [2] - 7:8, 36:15
**provisions** [6] - 5:18, 7:17, 16:5, 18:3, 34:1, 36:17
**PTO** [1] - 29:8
**Public** [1] - 46:7
**public** [5] - 8:3, 28:24, 29:10, 41:19, 41:22
**publicly** [2] - 13:1, 28:20
**purchase** [1] - 22:6
**purpose** [6] - 17:3, 26:4, 26:6, 26:7, 26:24, 28:22
**purposes** [3] - 16:18, 17:18, 38:12
**put** [1] - 8:5
**puzzle** [3] - 22:22, 23:9

## Q

**questions** [4] - 4:16, 14:13, 40:6, 40:10
**quite** [3] - 24:16, 27:9, 42:9
**quote** [3] - 16:16, 30:9, 33:4
**quoting** [2] - 11:23, 30:6

## R

**raise** [2] - 28:1, 35:2
**raised** [1] - 4:11
**rare** [1] - 17:9
**Rassam** [1] - 4:3
**rather** [1] - 38:22

**rationale** [1] - 14:16
**react** [1] - 25:8
**read** [5] - 20:13, 20:21, 22:20, 23:7, 24:21
**reading** [1] - 16:13
**readings** [1] - 23:11
**real** [1] - 38:18
**realistic** [1] - 37:8
**really** [9] - 9:14, 14:10, 14:20, 20:9, 25:18, 30:10, 30:19, 32:2, 33:21
**reason** [1] - 32:16
**reasonable** [1] - 41:18
**reasoning** [1] - 15:15
**reasons** [1] - 27:7
**rebuttal** [2] - 14:24, 25:10
**record** [6] - 3:2, 3:3, 3:11, 43:13, 46:9, 46:10
**redact** [2] - 10:15, 10:20
**redacted** [2] - 12:6, 12:7
**referenced** [1] - 16:19
**reflect** [1] - 13:14
**refusal** [1] - 32:5
**refused** [2] - 21:22, 31:23
**regard** [3] - 9:3, 29:23, 44:18
**regarding** [3] - 18:16, 24:16, 40:21
**regardless** [1] - 23:19
**Registered** [1] - 46:6
**relate** [2] - 9:16, 9:23
**related** [7] - 17:18, 18:24, 24:4, 27:18, 29:9, 39:7, 44:10
**relatedly** [2] - 6:18, 25:5
**relating** [1] - 35:8
**relative** [1] - 25:15
**relatively** [2] - 17:9, 43:24
**relax** [2] - 6:12, 36:17

**relevance** [2] - 14:7, 27:2
**relevant** [14] - 14:8, 19:17, 22:5, 22:22, 23:8, 23:21, 24:19, 24:22, 26:2, 26:10, 28:15, 28:21, 32:22, 39:14
**reliance** [3] - 27:5, 27:6, 28:11
**relied** [2] - 5:21, 36:19
**relief** [14] - 5:13, 7:10, 21:8, 21:9, 23:14, 27:19, 27:21, 28:2, 28:10, 30:13, 30:21, 32:4, 32:9, 36:6
**relying** [1] - 28:6
**remain** [1] - 28:19
**remedy** [1] - 20:19
**replead** [1] - 24:24
**reply** [2] - 30:7, 30:17
**report** [1] - 9:8
**REPORTER** [1] - 46:4
**Reporter** [1] - 46:7
**representation** [1] - 30:16
**representing** [1] - 18:15
**request** [13] - 5:24, 8:23, 10:20, 14:17, 14:20, 19:24, 21:9, 21:13, 21:16, 21:22, 31:16, 40:18, 40:19
**requested** [1] - 21:3
**requesting** [1] - 17:23
**rescind** [2] - 6:12, 36:17
**resolve** [1] - 44:22
**respect** [3] - 36:1, 41:1, 43:4
**respond** [1] - 15:7
**responded** [1] - 33:6
**responding** [4] - 25:19, 30:5, 31:24, 32:12
**restrictions** [1] - 6:12
**resurrect** [2] -

24:10, 26:8
**rigamarole** [1] - 17:22
**room** [1] - 44:2
**royalty** [1] - 41:18
**RPR** [2] - 46:16, 46:16
**rules** [1] - 10:21

## S

**safety** [1] - 45:6
**saw** [2] - 9:4, 12:13
**scenario** [2] - 34:15, 34:17
**scenarios** [1] - 33:18
**scope** [1] - 27:22
**scream** [1] - 24:13
**seal** [4] - 12:17, 13:1, 42:13, 45:3
**sealing** [1] - 43:18
**second** [3] - 5:4, 10:2, 10:19
**see** [9] - 7:17, 13:23, 19:2, 25:5, 25:18, 30:2, 39:13, 43:5, 43:21
**seeing** [1] - 39:18
**seek** [7] - 7:10, 17:14, 21:8, 28:10, 31:2, 36:10, 36:15
**seeking** [11] - 5:12, 5:13, 7:5, 7:14, 11:10, 12:21, 22:5, 23:23, 28:2, 34:24, 36:6
**seem** [3] - 22:4, 22:18, 23:16
**sense** [5] - 19:24, 20:1, 32:2, 38:8, 38:16
**sensitive** [1] - 19:4
**separate** [6] - 16:1, 24:4, 24:18, 34:9, 39:9, 39:15
**serious** [2] - 13:21, 14:10
**several** [2] - 21:1, 37:2
**shame** [2] - 20:2, 20:12
**shift** [1] - 32:15
**shocked** [1] - 24:16
**shoe** [1] - 24:2
**short** [2] - 43:9, 44:22
**show** [4] - 11:7,

11:11, 22:8, 26:3
**shown** [1] - 14:9
**side** [12] - 3:10, 3:12, 3:21, 4:5, 4:15, 13:20, 15:1, 15:3, 17:1, 22:17, 29:12, 30:6
**sides** [3] - 11:13, 16:23, 17:7
**significance** [2] - 9:18, 40:21
**significant** [1] - 27:9
**significantly** [1] - 28:12
**similar** [4] - 5:5, 8:23, 25:7, 43:4
**simply** [1] - 32:9
**situation** [2] - 11:6, 34:20
**slippery** [1] - 19:3
**slope** [1] - 19:3
**sole** [1] - 28:22
**solve** [1] - 23:16
**someone** [2] - 8:5, 43:3
**soon** [2] - 43:22, 44:1
**sorry** [1] - 23:23
**sort** [2] - 38:12, 43:12
**sought** [8] - 22:7, 23:14, 27:18, 30:13, 30:21, 32:3, 36:7, 36:8
**source** [11] - 15:22, 18:16, 24:9, 34:6, 34:21, 35:22, 37:10, 37:11, 39:6, 39:9, 39:20
**speaking** [1] - 4:5
**specific** [1] - 4:16
**specifically** [7] - 6:8, 13:6, 15:17, 16:5, 32:11, 36:14, 40:20
**specificity** [1] - 13:21
**squarely** [1] - 14:6
**stage** [1] - 42:10
**stand** [1] - 41:16
**standard** [3] - 21:23, 31:20, 32:6
**start** [4] - 3:11, 5:17, 6:4, 15:11
**starts** [1] - 16:20
**state** [7] - 16:6, 23:17, 26:13, 26:22, 30:12,

33:1, 38:10
**State** [2] - 46:1, 46:8
**statements** [3] - 8:20, 9:17, 40:20
**STATES** [1] - 1:1
**States** [2] - 1:12, 37:2
**stating** [1] - 25:20
**status** [1] - 43:16
**stay** [3] - 32:23, 33:1, 36:3
**stayed** [3] - 24:12, 26:21, 39:3
**still** [1] - 36:4
**stipulated** [1] - 4:24
**strict** [1] - 37:5
**string** [1] - 30:2
**stronger** [1] - 19:20
**struck** [1] - 9:12
**subject** [3] - 18:12, 42:12, 43:17
**submit** [1] - 32:14
**substance** [2] - 10:7, 25:19
**substitutes** [1] - 23:5
**sued** [1] - 35:3
**sufficient** [2] - 11:20, 32:14
**suggest** [3] - 31:6, 34:13, 36:9
**suggested** [1] - 36:8
**suggesting** [3] - 19:24, 33:3, 33:8
**suggestion** [3] - 6:19, 20:15, 31:4
**suggests** [2] - 12:22, 37:22
**suit** [3] - 8:19, 33:19, 33:22
**suits** [2] - 12:15, 34:2
**super** [3] - 11:20, 22:8, 22:9
**support** [1] - 25:2
**surrebuttal** [1] - 40:5
**survive** [1] - 31:21
**suspect** [1] - 16:2
**sweeping** [1] - 16:8

**T**

**technology** [1] - 39:7
**TECHNOLOGY** [1] - 1:3

**Technology** [1] - 3:6
**Teleconference** [1] - 1:10
**teleconference** [2] - 3:5, 45:7
**telephone** [1] - 5:9
**term** [1] - 43:9
**terms** [4] - 5:21, 9:3, 25:6, 25:12
**terribly** [1] - 5:7
**Texas** [8] - 5:6, 15:13, 35:14, 35:17, 37:23, 43:9, 43:19, 44:11
**THE** [27] - 1:1, 1:1, 1:12, 3:1, 3:20, 4:4, 4:8, 6:17, 7:22, 9:2, 11:2, 12:4, 14:14, 14:22, 15:6, 16:10, 19:1, 22:16, 25:4, 29:18, 33:12, 37:17, 40:4, 40:11, 41:8, 42:21, 43:23
**themselves** [1] - 3:10
**they've** [3] - 18:11, 35:3, 35:14
**thinking** [3] - 16:13, 25:11, 29:24
**Third** [4] - 5:14, 11:9, 13:24, 42:24
**today** [5] - 3:19, 14:17, 43:14, 45:5, 45:8
**tomorrow** [1] - 41:16
**took** [1] - 18:15
**tooth** [1] - 31:1
**touch** [1] - 43:20
**trade** [1] - 27:12
**trade-offs** [1] - 27:12
**transcript** [3] - 12:8, 43:12, 43:16
**trial** [2] - 41:15, 42:10
**tried** [5] - 18:16, 21:18, 21:21, 25:7, 28:1
**true** [1] - 46:10
**try** [4] - 10:22, 16:3, 20:17, 25:14

**trying** [16] - 8:2, 8:3, 8:6, 8:11, 12:18, 12:20, 18:9, 20:19, 25:1, 28:5, 31:15, 32:15, 32:24, 35:2, 42:1
**TUNNELL** [1] - 2:3
**turn** [3] - 4:12, 15:1, 33:14
**twice** [5] - 24:7, 26:9, 28:4, 33:1, 39:17
**twice-dismissed** [1] - 28:4
**two** [12] - 8:17, 8:18, 9:6, 13:16, 15:9, 17:5, 22:3, 24:18, 26:10, 27:18, 37:12, 40:17
**typically** [1] - 43:13

**U**

**ultimately** [1] - 14:8
**uncommon** [1] - 17:19
**under** [9] - 11:9, 12:17, 13:1, 26:11, 35:16, 39:2, 42:12, 44:21, 45:2
**understood** [2] - 16:24, 17:8
**unequivocal** [1] - 16:9
**UNITED** [1] - 1:1
**United** [2] - 1:12, 37:2
**unless** [4] - 6:4, 14:12, 16:20, 36:12
**unrelated** [1] - 19:8
**up** [10] - 4:17, 14:8, 16:3, 33:21, 34:13, 34:14, 37:19, 37:21, 41:11, 41:16
**updates** [1] - 4:20
**upset** [1] - 34:5

**V**

**value** [5] - 8:21, 9:18, 10:3, 22:11, 40:21
**various** [1] - 25:17
**version** [1] - 12:6
**versus** [1] - 3:6

**view** [2] - 25:9, 36:5
**violated** [2] - 6:14, 6:23
**violating** [1] - 5:23
**violation** [4] - 7:4, 16:4, 18:20, 24:14
**VLSI** [27] - 1:3, 3:6, 5:20, 8:18, 11:22, 11:24, 12:15, 13:17, 15:18, 18:10, 18:15, 20:7, 20:14, 21:3, 21:19, 21:21, 22:7, 25:3, 28:6, 30:11, 30:12, 31:21, 31:22, 34:6, 37:24, 38:10, 39:5
**VLSI's** [5] - 6:19, 8:20, 8:22, 10:23, 13:9

**W**

**wants** [1] - 26:7
**WASHBURN** [1] - 1:20
**Washburn** [1] - 3:17
**Wednesday** [2] - 44:13, 45:1
**week** [3] - 44:14, 44:16, 44:24
**weeks** [1] - 45:6
**weigh** [1] - 28:11
**weighs** [1] - 29:16
**Western** [7] - 5:6, 15:13, 35:13, 37:23, 43:8, 43:19, 44:11
**whole** [2] - 9:21, 25:2
**wiggle** [1] - 44:2
**Wilmer** [2] - 4:2, 8:9
**WILMER** [1] - 2:5
**Wilmington** [1] - 46:12
**wish** [1] - 45:5
**won** [2] - 19:16, 19:18
**words** [3] - 6:4, 22:12, 30:18
**world** [2] - 22:20, 30:23
**worth** [1] - 12:10
**wrote** [1] - 30:18

**Y**

**year** [2] - 27:15, 28:5