United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VLSI TECHNOLOGY LLC,
Plaintiff,

v.

INTEL CORPORATION,
Defendant.

Case No. 17-cv-05671-BLF (NC)

**ORDER ISSUED TEMPORARILY UNDER SEAL GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE DAMAGES EXPERT REPORTS**

Re: ECF 473

Before the Court is the parties' joint letter brief, wherein Intel moves to strike numerous portions of VLSI's damages experts' reports. The issue animating each of Intel's requests is whether VLSI failed to disclose the bases for its experts' opinions in its Damages Contentions. While most of the opinions were supported, VLSI failed to adequately disclose certain factual material underlying Sullivan's '836 Patent damages opinion. Therefore, the Court GRANTS in part, and DENIES in part, Intel's motion to strike.

## I. BACKGROUND

VLSI alleges Intel infringed several of its patents pertaining to semiconductor and microprocessor technology. *See generally* ECF 1. VLSI's Patent L.R. 3-8 damages contentions have presented a recurring issue between the parties. In 2018, Intel moved to compel VLSI to supplement its initial damages contentions. ECF 152. On October 24,

2018, this Court granted Intel's motion, ordering VLSI to describe its bases for damages with more specificity. ECF 172.

Over four years later, Intel filed a joint discovery letter claiming VLSI's Fourth Amended Damages Contentions failed to comply with the Court's October 2018 Order. ECF 354. Among other things, Intel moved to strike any reliance on patent agreements, including the MicroUnity or WARF settlements, from VLSI's damages contentions. *Id.* at 3. Intel's motion was broadly based on VLSI's alleged failure to connect the litigation settlement agreements with its $5.4 billion damages number. *Id.* at 1. With respect to the MicroUnity and WARF agreements, Intel asserted VLSI's contention that they would "adjust the payment of these agreements up or down, depending on similarities or differences between the agreements and the hypothetical negotiation" was impermissibly vague. ECF 365 at 16:18-17:3. This Court denied the motion, finding VLSI's disclosures were sufficiently specific. *See id.* at 41:20-24.

Fact discovery closed on February 24, 2023. ECF 388. That same day, VLSI served its Fifth Supplemental Damages Contentions (the "Contentions"). ECF 477, Ex. 1 ("FSDC") at 224. Approximately two months later, VLSI served damages expert reports from Mark Chandler and Ryan Sullivan. Intel filed a joint discovery letter brief, asserting these experts asserted "entirely new and undisclosed damages theories. ECF 473 ("Br.") at 1. The Court granted the parties supplemental briefing on the issues. ECF 497. VLSI filed a supplemental brief. ECF 502 ("Pl.'s Suppl."). Intel filed a supplemental brief as well. ECF 507 (Def.'s Suppl.").

## II. LEGAL STANDARD

Patent Local Rule 3-8 requires each party asserting infringement to "[i]dentify each of the category(-ies) of damages it is seeking for the asserted infringement, as well as its theories of recovery, factual support for those theories, and computations of damages within each category." The party claiming infringement has a duty to supplement or amend its damages contentions if the party's damages theory "shifts in 'some material respect.' " *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D.

Cal. 2019) (quoting Fed. R. Civ. P. 26(e)(1)(A)). Unlike the amendment of infringement contentions, a party is not required to seek leave to amend its damages contentions. *Id.* at 1232; *see also Twilio, Inc. v. Telesign Corp.*, No. 16-cv-06925-LHK (SVK), 2017 WL 5525929, at *2 (N.D. Cal. Nov. 17, 2017) ("there is no 'good cause' threshold for amendment of damages contentions"). But, it is well established that an aggrieved party may move to strike an opponent's expert report that exceeds the scope of its damages contentions. *Looksmart*, 386 F. Supp. 3d at 1232.

## III. DISCUSSION

### A. Chandler Opinions

Intel moves to strike VLSI expert Mark Chandler's MicroUnity and WARF opinions for the '836 patent. Intel's argument relies on two interrelated claims. First, Intel avers Chandler employs an undisclosed "performance comparison" theory, which compares the benefit of the WARF patent with the alleged benefit of the '836 patent. Def.'s Suppl. at 1. Second, Intel contends Chandler uses an undisclosed performance metric for the WARF patent to support this theory. *Id.* These factors culminate in a "performance multiplier" that increases the WARF payment by 13.6X to 18.75X. ECF 477, Ex. 2 ("Chandler Rep.") ¶ 525.

Intel's position appears to be an outgrowth of the previous dispute concerning these agreements. VLSI's Contentions disclose that its expert may "adjust the royalty upwards or downwards to account for similarities and differences between" the WARF/MU licenses and a hypothetical license for the Asserted Patents. FSDC at 117, 122. The Contentions further state this expert analysis may include a "comparability analysis" that incorporates "[t]he technology of the WARF Patent and the technologies of the Asserted Patents provide value to Intel by improving aspects of performance." *Id.* at 117. Likewise, Chandler's report describes adjusting the royalty by applying "a multiplier based on the additional performance benefit provided by the '836 Patent over the WARF Patent." Chandler Rep. ¶ 521. Contrary to Intel's arguments, Chandler's theory mirrors VLSI's Contentions.



United States District Court
Northern District of California

The issue remains as to whether Chandler's report impermissibly relies on a 0.8% performance benefit for the WARF patent used in his comparison theory. Intel alleges the 0.8% metric derives from a trial transcript from a separate litigation between Apple and WARF. Def.'s Suppl. at 1. However, Patent L.R. 3-8 "does not require certainty" and was not intended to replace "the robust analysis of a patent damages expert report." *Twilio*, 2017 WL 5525929, at *2. VLSI complied with this rule by disclosing the category of damages (reasonable royalty), the theory of recovery (comparable licensing), and factual support (WARF/MU license agreements). Moreover, the Contentions were served on February 24, 2023. FSDC at 2224. Thus, Intel had ample opportunity to seek additional specificity and prepare for expert depositions. *See MasterObjects*, 2022 WL 4856269, at *4. Intel's motion to strike portions of Chandler's expert report is denied.

**B. Sullivan Opinions**

**1. '922 Patent**

Intel moves to strike Sullivan's '922 opinion that relies on an allegedly undisclosed cost savings analysis concerning on-package capacitors. According to Intel, Sullivan impermissibly advances an undisclosed methodology where the on-package capacitor and area savings are added to calculate the total cost saving benefit. Br. at 2. Moreover, Intel claims the benefit metrics were gleaned from undisclosed or inapparent documents. *Id.*

VLSI accuses aspects of Intel's Fully Integrated Voltage Regulator ("FIVR") of infringing the '922 Patent. The FIVR provides more efficient voltage regulation using smaller components. Pl.'s Suppl. at 5; ECF 477, Ex. 3 ("Sullivan Rep.") ¶ 102. VLSI claims the FIVR allows Intel to reduce the number of on-package capacitors, leading to a $0.15/unit in capacitor savings. Additionally, the smaller footprint provides area savings for Intel to employ for other uses, saving $0.42/unit in reduced substrate area savings. Sullivan Rep. ¶ 339.

First, Intel claims VLSI never disclosed it would calculate on-package capacitor benefits. Br. at 2. However, VLSI disclosed it will calculate damages by determining the economic benefit to Intel by way of the latter's cost savings per unit. FSDC at 125. The



United States District Court
Northern District of California

section detailing the potential benefits of the ’922 Patent appears earlier in the Contentions. Turning to these benefits, VLSI states the accused “FIVR rails . . . on die-capacitance [is] provided by a Metal-Insulator-Metal (MIM) capacitor” and “a system without an accused reference voltage would . . . need larger capacitors than the on-die MIM capacitors.” *Id.* at 26. VLSI further discloses the additional capacitors “would increase Intel’s cost to manufacture the Accused Products . . . through increased BOM and substrate costs.” *Id.* Therefore, VLSI adequately disclosed that it would use on-package capacitor benefits as part of its cost savings analysis.

Second, Intel claims VLSI never disclosed it would “add capacitor and area benefits” for a $0.57/unit cost savings. Br. at 2. VLSI did disclose that it may calculate the total benefit “by multiplying the number of accused products . . . by its approximate cost savings benefit.” FSDC at 127. Intel fails to articulate how the combination of benefits fails to fall under this disclosure, or why this distinction is important. As to Intel’s claim that VLSI failed to disclose the Intel documents its experts rely upon to reach the cost savings, such granular detail is not required under the Patent Local Rules or the policies underlying these rules. Therefore, Intel’s motion to strike Sullivan’s ’922 opinion is denied.

**2. ’672 Patent**

Intel alleges that Sullivan’s report contains undisclosed two undisclosed theories for the ’672 Patent: (1) the “area = sales” theory, and (2) the “product pair graphics comparison” (“Product Pair”) theory. Br. at 2-3. The area = sales theory posits that Intel’s infringement of the ’672 Patent results in reduced die areas, meaning without this process the products would be 6.4% larger. The additional yield “provides direct benefits to Intel in the form of additional revenues and profits by way of the production of additional units.” Sullivan Rep. ¶ 363. VLSI stated in its Contentions that Intel’s infringement “enables at least improved die yield and increased computing density” the latter of which produces “area reduction.” FSDC at 39. VLSI further disclosed that its experts may quantify these benefits by “measur[ing] competing die areas between accused and non-



United States District Court
Northern District of California

accused products." *Id.* at 43. The Court finds VLSI adequately disclosed its area = sales theory.

Intel also takes issue with Sullivan's Product Pair theory. Under this theory, Intel utilized VLSI's patented technology "to package and sell third-party graphics dies with memory and Intel processor dies." Sullivan Rep. ¶ 376. Intel could then sell its products as a single package without requiring the customer to purchase separate graphics dies. *Id.* ¶ 377. As a result, "Intel capture[s] profits that it otherwise would not have been able to." *Id.* ¶ 378. To calculate such benefits, Sullivan compares the Intel products to non-accused products, hence the comparison element. VLSI asserts it disclosed this theory by stating its experts may address "additional revenue and profits of using the '672 patented invention to package multiple dies together and sell them as a single unit." FSDC at 40. Although bare bones, this statement discloses the key elements of Sullivan's Product Pair theory. *See MasterObjects*, 2022 WL 4856269, at *4. Importantly, Sullivan's theory does not shift away from this disclosure "in some material respect." *Looksmart*, 386 F. Supp. 3d at 1231. Intel's motion to strike Sullivan's '672 opinions is denied.

**3. '836 Patent**

Intel contends VLSI only disclosed a regression analysis for calculating damages for the '836 Patent. Br. at 2. Sullivan's report, however, exceeds this disclosure by relying upon net present value ("NPV") and value per unit ("VPU") methods. *Id.* VLSI fairly refutes Intel's first assertion because its Contentions stated its experts may rely on "Intel data and testimony *or* through the regression methods." FSDC at 82 (emphasis added).

However, scattershot references to Intel data or documents do not support Sullivan's application of the NPV or VPU calculations. VLSI claims Sullivan's analysis applies the following formula disclosed in its Contentions:

- **Reasonable Royalty = <u>Economic Value of Accused Feature × Accused Revenues (or Accused Units)</u> × Cost Apportionment Factor x Contribution Apportionment Factor**

FSDC at 99. The NPV and VPU purportedly represent different approaches for calculating reasonable royalty under the above formula. *See* Br. at 5; Sullivan ¶ 27. The "economic value" input for each of these methods relies on Intel's internal valuation documents. Pl.'s Suppl. at 8; Sullivan ¶¶ 28, 29.

VLSI claims the disclosure of expert analysis and final damages computations are not required under the local rules. While the disclosure rules were not intended to replace the "robust analysis of a patent damages expert report," Patent L.R. 3-8 does expressly require disclosure of the "theories of recovery" and "factual support for those theories." *Twilio*, 2017 WL 5525929, at *2. VLSI does not disclose either the NPV or VPU as theories of recovery in its Contentions. Even assuming VLSI's position that these "computations" represent inputs for Sullivan's application of the reasonable royalty formula, they would still be factual bases for its reasonable royalty theory. VLSI asserts the NPV and VPU values derive from two Intel documents – 89699DOC01565734 and 93000DOC03579403. Pl.'s Suppl. at 8.

The first document was cited three times in the Contentions. The first two references appear in the VLSI's description of the technical benefits of the 836 Patent. *See* FSDC at 49, 57. The third reference appears in a separate section describing the costs associated with implementing the accused features, as opposed to the value the technology brings to Intel. *Compare* FSDC at 101 (discussing costs associated with the accused technology) *with* Sullivan ¶ 408 ("Intel anticipated TBMT 3.0 to generate $345 million in net present value ("NPV") for desktop ("DT") and mobile ("MB") products"). Due to the disparate placement of such references, it would be unreasonable for Intel to infer that VLSI would implement the computations to demonstrate economic value.

The second document suffers from similar infirmities. For example, VLSI points to one citation among over ten pages of string citations. *See* FSDC at 85. Such vague and imprecise citations to internal documents and analyses does not give Intel notice of VLSI's theory and promotes the "type of inferential guesswork . . . [the] damages contentions are intended to avoid." *Looksmart*, 386 F. Supp. 3d at 1234. The motion to strike Sullivan's

conclusions that rely upon the NPV and VPU calculations is granted.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES Intel's motions to strike (1) Chandler's expert report, (2) Sullivan's '672 Patent damages theory, and (3) Sullivan's '922 Patent damages theory. The Court GRANTS Intel's motion to strike Sullivan's '836 Patent damages theory to the extent it relies upon the NPV or VPU calculations. The parties must meet and confer and jointly file an annotated report identifying the portions of Sullivan's report to be struck by September 12, 2023.

Additionally, the Court provisionally issues this Order under seal. The parties must also meet and confer and file a motion to seal any portions of this Order according to the requirements of Civil Local Rule 79-5 by September 12, 2023.

**IT IS SO ORDERED.**

Dated: August 29, 2023

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California