**PUBLIC REDACTED VERSION**

Mark D. Selwyn (CA SBN 244180)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Mark.Selwyn@wilmerhale.com

William F. Lee (*pro hac vice*)
Louis W. Tompros (*pro hac vice*)
Dominic E. Massa (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
William.Lee@wilmerhale.com
Louis.Tompros@wilmerhale.com
Dominic.Massa@wilmerhale.com

Amanda L. Major (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Amanda.Major@wilmerhale.com

David C. Marcus (CA SBN 158704)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 S. Grand Avenue, Suite 2400
Los Angeles, CA  90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
David.Marcus@wilmerhale.com

*Attorneys for Defendant*
INTEL CORPORATION

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>INTEL CORPORATION,<br><br>                    Defendant. | Case No. 5:17-cv-05671-BLF-NC<br><br>**INTEL CORPORATION'S REPLY IN SUPPORT OF OMNIBUS DAUBERT MOTION TO EXCLUDE AND/OR STRIKE THE IMPROPER OPINIONS AND TESTIMONY OF DR. RYAN SULLIVAN, MR. MARK CHANDLER, DR. THOMAS CONTE, DR. WILLIAM MANGIONE-SMITH, AND DR. DEAN NEIKIRK** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  DR. SULLIVAN'S IMPROPER OPINIONS SHOULD BE EXCLUDED ........................... 1

    A.  Dr. Sullivan's '806 Opinion Should Be Excluded. ...................................... 1

    B.  Dr. Sullivan's '922 Opinion Should Be Excluded. ...................................... 2

    C.  Dr. Sullivan's '836 Opinion Should Be Excluded. ...................................... 3

    D.  Dr. Sullivan's '672 Opinion Should Be Excluded. ...................................... 5

    E.  Dr. Sullivan's Opinions Are An Improper Attempt At Disgorgement. ......................... 5

III.  MR. CHANDLER'S IMPROPER OPINIONS SHOULD BE EXCLUDED. ......................... 6

    A.  Mr. Chandler's '836 Opinion Should Be Excluded. .................................... 6

        1.  Mr. Chandler Fails to Perform Proper Economic Comparability Analyses. .............................................. 6

        2.  VLSI's Built-In Apportionment Argument Fails. ............................. 8

        3.  Mr. Chandler's 3 to 4 Times WARF Adjustment Is Unreliable. ...................... 9

    B.  Mr. Chandler Should Be Precluded From Testifying About Four Intel Settlement Agreements He Admits Are Not Comparable And That He Did Not Apportion. .......................................................................... 10

    C.  Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Involving Running Royalties. ........................... 11

    D.  Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Identified In Third-Party Surveys And Databases. .......................................................................... 12

    E.  Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Involving "Patent Licensing Entities." ................ 12

    F.  Mr. Chandler Should Be Precluded From Casting Intel As A "Patent Holdout." .......................................................................... 12

IV.  DR. CONTE'S IMPROPER OPINIONS SHOULD BE EXCLUDED. .............................. 13

    A.  Dr. Conte's '836 Performance Benefit Opinion Should Be Excluded. .................. 13

    B.  Dr. Conte's '806 Power Savings Opinion Should Be Excluded. ....................... 13

    C.  Dr. Conte's 1:1 Power To Frequency Opinion Should Be Excluded. ................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.      DR. MANGIONE-SMITH'S IMPROPER OPINIONS SHOULD BE EXCLUDED. .......... 14

    A.      Dr. Mangione-Smith's '922 Infringement Opinions Should Be Excluded................ 14

    B.      Dr. Mangione-Smith's Cost Savings Opinions Should Be Excluded........................ 15

VI.     DR. NEIKIRK'S IMPROPER OPINIONS SHOULD BE EXCLUDED. ............................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ........................................................................8, 11, 12

*Omega Patents, LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021) ................................................................... *passim*

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
   927 F.3d 1292 (Fed. Cir. 2019).............................................................................11

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018).............................................................4, 5, 10, 15

*Franklin Life Ins. Co. v. Mast*,
   435 F.2d 1038 (9th Cir. 1970) ...............................................................................10

*GREE, Inc. v. Supercell Oy*,
   2020 WL 4288345 (E.D. Tex. July 27, 2020) ........................................................12

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983)................................................................................2

*Intel Corp. v. Future Link Sys., LLC*,
   2017 WL 2482881 (D. Del. June 1, 2017)...............................................................2

*Intel Corp. v. Tela Innovations, Inc.*,
   2021 WL 1222622 (N.D. Cal. Feb. 11, 2021), Opp. 18 .........................................11

*Intel Corporation v. Tela Innovations, Inc.*,
   18-cv-02848, Dkt. 368 (N.D. Cal. May 11, 2021) .................................................11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)......................................................................... *passim*

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ...............................................................................9

*Mobile Equity Corp. v. Walmart Inc.*,
   2022 WL 4492403 (E.D. Tex. Sept. 27, 2022) ........................................................2

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)................................................................................4

*VLSI Tech. LLC v. Intel Corp.*,
   6:21-cv-57 (W.D. Tex. Feb. 19, 2021 .....................................................................13

*Water Techs. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988)...................................................................................................6

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)..................................................................................................10

**Other Authorities**

Fed. R. Evid. 702 (Am. Dec. 1, 2023) ......................................................................................5, 15

Fed. R. Evid. 403 ..........................................................................................................................13

**Exhibits**

The exhibits cited in the motion as "Ex. __" are attached to the Declaration of Mark Selwyn filed herewith.

## I.    INTRODUCTION

VLSI's opposition (Dkt. 573-02, "Opp.") confirms that its experts violate Federal Circuit damages law by failing to properly apportion.  Intel's *Daubert* motion (Dkt. 536-03, "Mot.") therefore should be granted.

## II.    DR. SULLIVAN'S IMPROPER OPINIONS SHOULD BE EXCLUDED

### A.    Dr. Sullivan's '806 Opinion Should Be Excluded.

VLSI concedes that Dr. Sullivan's regression analysis—which he uses to manufacture his $125 million damages number for the '806 patent—does ***not*** include the accused feature (sleep transistors) and ***does*** include millions of non-accused products.  Opp. 4.  VLSI asserts this is acceptable because Dr. Sullivan multiplies the result of his regression (0.769%) by Dr. Conte's power benefit number (0.353%) that is purportedly tied to the accused feature.  *Id.*  But multiplying the regression number, which VLSI concedes has nothing to do with the accused feature, by a number that VLSI claims is tied to the accused feature does not lead to a result tailored only to what is accused.  By including in his multiplication the regression number that reflects the value of only ***non-accused*** features, Dr. Sullivan's result includes the value of features not at issue.  This methodological error requires exclusion of Dr. Sullivan's opinion under *Daubert*.  *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) ("[A] patentee must take care to seek only those damages attributable to the infringing features.").

None of VLSI's arguments overcomes this flaw.  VLSI first argues that Dr. Sullivan used non-accused features only as "control variables" in his regression.  Opp. 4.  But no matter how he labels it, Dr. Sullivan did not include the accused feature as ***any*** type of variable.  Mot. 3-5; Dkt. 537-02 [Sullivan Dep.] 233:3-5.  That is what makes the result of his regression disconnected from what is accused.

VLSI next asserts that Dr. Sullivan had to include non-accused products to increase his model's "reliability."  Opp. 4.  But that only highlights the problem:  Dr. Sullivan chose a methodology that he concedes required non-accused products, while Federal Circuit law required him to use a methodology that limited his analysis ***just*** to the value of the specific accused features of the accused products.  Mot. 4-5.  That choice of a legally flawed model requires its exclusion.

Finally, VLSI argues that Dr. Sullivan has "used regression" before. Opp. 3. But the issue is not whether regression, generally, has been used. The issue is whether anyone has ever used the **regression methodology** Dr. Sullivan used to value a single feature in a product with thousands of features. Mot. 3; Opp. 3 (conceding Dr. Sullivan's regression has never been used or peer-reviewed).[1] No one has. *See* Rubinfeld, Reference Guide to Multiple Regression, in Reference Manual on Scientific Evidence 303, 308 (Federal Judicial Center, 3d ed. 2011) ("[W]hen inappropriately used, regression analysis can confuse important issues while having little, if any, probative value.").

### B.    Dr. Sullivan's '922 Opinion Should Be Excluded.

Intel's opening brief demonstrated that even though FIVR includes dozens of non-accused features and VLSI accuses only a single feature of FIVR (the use of two different circuits to regulate the voltage of cores and the last level cache), Dr. Sullivan used the value of **the entirety of FIVR** to produce his $289 million damages number. Mot. 5-7. Further, Dr. Sullivan concededly made no effort to determine whether "non-accused aspects of FIVR" contribute to the alleged $0.15 and $0.42 savings of FIVR he uses to calculate his damages. Mot. 5-7. In response, VLSI does not even attempt to claim that Dr. Sullivan performed the required apportionment to ensure he was not capturing the value of non-accused aspects of FIVR. Instead, VLSI contends that it was acceptable for Dr. Sullivan to "consider savings associated with non-accused features." Opp. 5. VLSI is wrong.

**First**, VLSI argues that Dr. Sullivan can capture the value of non-accused features because he used a "cost savings analysis." Opp. 5. But there is no exception that allows patentees to avoid apportionment by purporting to quantify cost savings. Mot. 1. The cases VLSI cites do not hold otherwise. In both *Hanson* and *Mobile Equity* (Opp. 5), the plaintiff tailored its analysis to cost savings of the accused feature. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1077 (Fed. Cir. 1983); *Mobile Equity Corp. v. Walmart Inc.*, 2022 WL 4492403, at *3 (E.D. Tex. Sept. 27, 2022). VLSI cites

---

[1] VLSI incorrectly suggests that *Intel Corp. v. Future Link Sys., LLC*, 2017 WL 2482881 (D. Del. June 1, 2017) approved Dr. Sullivan's regression methodology. Opp. 3. It did not. In fact, that opinion does not mention "regression" a single time, much less find that the methodology Dr. Sullivan uses in this case is reliable.

no case in which a court found that the apportionment requirement was met based on cost savings attributed to ***non***-accused features, as Dr. Sullivan did here.

*Second*, VLSI argues that even if Dr. Sullivan failed to deduct the value of non-accused features, Dr. Mangione-Smith performed the required apportionment. Opp. 6. That argument is wrong because Dr. Mangione-Smith made no effort to apportion. In fact, he testified that the entirety of Dr. Sullivan's cost savings is due to non-accused MIM capacitors. Mot. 6; Dkt. 536-20 [Mangione-Smith Dep.] 195:8-196:3 ("Q. So the entirety of that $0.57 benefit is attributable to MIM capacitors … ? [objection] A. Yeah, I believe so. …").

*Third*, VLSI argues that Dr. Sullivan could properly include the value of the non-accused MIM capacitors because the '922 patent "is what allowed Intel to use MIM capacitors." Opp. 6-7. But under that theory, if a patent allows space savings, the patentee can recover the value of anything and everything the defendant puts in that space, even if it has nothing to do with what is claimed. *Id.* 7. This is directly contrary to Federal Circuit law holding that patent infringement damages cannot include the value of non-patented features. *Omega*, 13 F.4th at 1376 (excluding testimony where expert failed to apportion value between patented and non-patented features contained in the accused product). Contrary to VLSI's assertion (Opp. 7), this rule is not limited to situations where the plaintiff seeks the value of an "entire … product." *Omega* itself makes clear that any attempt to capture the value of non-patented features requires exclusion. 13 F.4th at 1376.[2]

*Finally*, VLSI asserts that Intel moved to exclude Dr. Sullivan simply because he relied on Dr. Mangione-Smith. Opp. 6. Intel argued no such thing. Instead, Intel explained that Dr. Sullivan relied on Dr. Mangione-Smith for apportionment, but Dr. Mangione-Smith (like Dr. Sullivan) failed to apportion. Mot. 6. The resulting lack of apportionment in Dr. Sullivan's opinion requires exclusion.

### C.   Dr. Sullivan's '836 Opinion Should Be Excluded.

As Intel explained in its opening brief (Mot. 7-9, 21-22), TBMT is a broad technology that

---

[2] VLSI does not respond to Intel's argument that VLSI entirely failed to substantiate its allegation that the '922 accused feature somehow enables the MIM capacitors. Mot. 7. As Intel explained in its opening brief, VLSI cannot overcome *Daubert* through unsupported allegations. *Id.*

includes many non-accused features.  Dr. Sullivan's '836 opinion should be excluded because he made no attempt to identify the portion of his '836 damages number attributable to ***non-accused*** features of TBMT, such as the user interface and inclusion list.  Mot. 7-9.  VLSI asserts that Dr. Sullivan did not need to apportion because Dr. Conte opined that "all of TBMT's core functionality and operation infringes," Opp. 7, but that argument is wrong on both the facts and the law.

*First*, as a matter of fact, Dr. Conte admitted that the '836 patent does not claim or refer to a user interface or inclusion list.  Mot. 8; Dkt. 537-04 [Conte Dep.] 122:17-123:5.  Because TBMT has both these features, this is dispositive: without satisfying the entire market value rule (which VLSI does not even try to do), VLSI cannot recover the value of non-patented TBMT features by simply accusing TBMT—just as the owner of a patent covering a steering wheel (a single feature of a car, like the '836 accused feature is a single feature of TBMT) cannot, without meeting the entire market value rule, recover the value of the engine, brakes, and radio by simply accusing a car.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328-29 (Fed. Cir. 2014) (expert opinion should be excluded where it "included various features indisputably not claimed").

*Second*, even if VLSI could overcome Dr. Conte's admission and argue that some aspects of the user interface and inclusion list were patented, Dr. Sullivan still was required to apportion by removing the value of the portions of the user interface and inclusion list ***not*** at issue.  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (damages must "account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone").  For example, Dr. Conte never accuses the use of the interface and inclusion list when multiple cores are running.  Mot. 8; Dkt. 537-04 [Conte Dep.] 98:16-99:3.  Dr. Sullivan never accounts for these other aspects of the user interface and inclusion list—he simply captures the full value of these features, contrary to law.  Mot. 8.

Nor can VLSI excuse Dr. Sullivan's failure to apportion by asserting that "the interface and list do not provide any additional performance benefit" and that all benefits of TBMT are attributable to "the patented technology."  Opp. 8.  VLSI points to no evidence to justify these claims.  It cites only the unsupported say-so of Dr. Conte.  *Id.*  VLSI's burden to apportion cannot be met with conclusory assertions like these, unbacked by any "facts and data"; otherwise, a plaintiff in every case could avoid

1    apportionment simply by asserting, without proof or justification, that the accused feature provides all

2    the benefits and value.  *See Exmark*, 879 F.3d at 1350-51 (court erred by not excluding expert's

3    "unsupported conclusory opinion"); Fed. R. Evid. 702 (Am. Dec. 1, 2023) (opinion only admissible if

4    "the proponent demonstrates … that it is more likely than not … based on sufficient facts and data").

5    **D.**    **Dr. Sullivan's '672 Opinion Should Be Excluded.**

6    VLSI concedes that the '672 patent does not claim, reference, or describe a graphics

7    component, and that Intel is not accused of infringing the '672 patent based on any graphics

8    functionality.  Opp. 8; Mot. 9.  Yet, Dr. Sullivan inexplicably calculates damages for the '672 patent

9    using the value of the graphics component.  Exclusion is required because this analysis violates

10    apportionment law, Mot. 9-10, and nothing in VLSI's opposition overcomes this fatal flaw.

11    *First*, VLSI argues that the '672 patent "allow[ed]" Intel to sell products containing a graphics

12    die.  Opp. 9.  This argument fails for the same reasons described above in Section II.B for the '922

13    patent: a patentee cannot avoid apportionment and recover damages on the value of unclaimed features

14    by simply claiming they are "enabled" by the patented invention.  *See LaserDynamics, Inc. v. Quanta*

15    *Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (apportionment required unless patentee satisfies

16    "entire market value rule" by showing that the patented feature is "the basis" for customer demand).

17    *Second*, VLSI argues that Dr. Sullivan compares only the difference in ***profits*** of products with

18    and without the graphics component, not ***price***.  Opp. 9.  But regardless of whether he uses revenue,

19    price, or profit, Dr. Sullivan violates damages law by basing his calculation on graphics features that

20    have nothing to do with the '672 patent—because the profits from unaccused features are just as

21    irrelevant as the price or revenue of those same features.  Mot. 9.

22    **E.**    **Dr. Sullivan's Opinions Are An Improper Attempt At Disgorgement.**

23    VLSI's attempt to rebrand the last step of Dr. Sullivan's methodology as calculating

24    "incremental value" and "allocating" the value between the parties to the hypothetical negotiation

25    (Opp. 10) fails for two reasons.  *First*, Dr. Sullivan does not "allocate" value.  He gives VLSI ***all*** of

26    Intel's profits.  Dr. Sullivan calculates all of Intel's supposed revenues from the alleged infringement

27    and then gives VLSI everything that remains after he deducts costs (first removing sales, marketing,

28    and manufacturing costs and then G&A and R&D costs).  Opp. 9-10; Mot. 10-11.  The result is that

VLSI receives the entirety of Intel's profits (revenues minus costs).  The issue thus is not only that Dr. Sullivan "us[es]" Intel's profits as one step in this analysis, Opp. 10; rather, it is that Dr. Sullivan improperly gives VLSI the entirety of Intel's profits.  *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988) ("[I]nfringer's profits are not … a measure of the patent[ee]'s damages.").

*Second*, VLSI fails to address, much less rebut, Intel's argument that Dr. Sullivan does not have any factual basis to justify his profit split, whether it be 100/0 or something less than 100/0 as VLSI now claims.  Mot. 11; Opp. 9-11.  This separately requires exclusion of his opinion.  Mot. 11.

## III. MR. CHANDLER'S IMPROPER OPINIONS SHOULD BE EXCLUDED.

### A. Mr. Chandler's '836 Opinion Should Be Excluded.

VLSI fails to overcome any of the flaws in Mr. Chandler's '836 opinion, let alone all of them as would be required to render Mr. Chandler's opinion reliable.

#### 1. Mr. Chandler Fails to Perform Proper Economic Comparability Analyses.

Intel demonstrated that Mr. Chandler's '836 damages opinion should be excluded because he relies on Intel's settlements with WARF and MicroUnity without performing the required economic comparability analysis.  Mot. 12-15.  None of VLSI's arguments shows otherwise.

*First*, VLSI fails to show that Mr. Chandler's use of litigation settlements is reliable.  VLSI attempts to cast Intel's motion as arguing that litigation settlements can never be used.  Opp. 12.  That is not Intel's position.  Instead, Intel explained that the Federal Circuit has made clear that litigation settlements can be used only in specific circumstances not present here.  Mot. 12-13.  For example, the Federal Circuit has allowed settlements when the proponent shows they are the "most reliable" agreements, such as when they are the only agreements involving the asserted patents.  *LaserDynamics*, 694 F.3d at 77.  That is not the case here.  Neither the WARF nor MicroUnity settlement covers the asserted patents, and there are other agreements involving the patents that Mr. Chandler improperly dismisses.  Ex. 1 [Kindler Rep.] ¶¶ 527-29; Dkt. 536-06 [Chandler Rep.] ¶ 351.[3]

---

[3] VLSI incorrectly argues that Mr. Chandler—"in intent if not in exact words"—opined that the WARF and MicroUnity settlements are the "most comparable" agreements.  Opp. 12, n.1.  Not so.  Indeed, VLSI merely cites Mr. Chandler's assertion that the settlements are "comparable."  *Id.* (citing Dkt.

***Second***, VLSI's assertion that Mr. Chandler can rely on the WARF and MicroUnity settlements simply because the agreements were entered after the parties had "gained the benefit of fact discovery" (Opp. 13) is contrary to Federal Circuit law.  Under VLSI's argument, any settlement entered after discovery can be used to show damages.  That is backwards.  The Federal Circuit has made clear that settlements are inherently "tainted" and admissible only if the proponent overcomes the factors that skew the payment terms often made to settle litigation, *LaserDynamics*, 694 F.3d at 77-78, which Mr. Chandler never does.  *Prism Techs. LLC v. Sprint Spectrum L.P*., Opp. 13, does not hold otherwise.  VLSI asserts that *Prism* found that settlements can be probative, but critically omits the sentence immediately before the portion it quotes where the Federal Circuit limited its comments to "a settlement involving the patented technology."  849 F.3d 1360, 1369 (Fed. Cir. 2017).   That is the problem:  Mr. Chandler relies on litigation settlements that do not cover the asserted patents and never accounts for that fact.  Mot. 13-15.

***Third***, VLSI concedes that Mr. Chandler was required to account for the differences between the WARF and MicroUnity settlements and the hypothetical license to the '836 patent, Opp. 13-15, but fails to show that he did.  Instead, VLSI demonstrates only that Mr. Chandler summarily dismissed relevant differences without adjusting his opinion:

- VLSI argues that Mr. Chandler did not need to account for WARF's broader scope (█████████ █████████████████████) as compared to the hypothetical license (U.S. rights) because the settlement was "effectively" a U.S. agreement "for past use only."  Opp. 14.  But the agreement unambiguously covers ███████████████████████.  Mot. 16; Dkt. 536-16 [WARF Agreement] § 3.2.  VLSI cannot rewrite the agreement to compensate for Mr. Chandler's failure to perform the required comparability analysis.

- VLSI argues that the provision of the WARF settlement stating that the agreement ███████ █████████████████████████████████ should not apply.  Opp. 13,

536-06 [Chandler Rpt.] ¶ 429).  It does not and cannot identify anywhere where Mr. Chandler opined (much less demonstrated) that the agreements are more reliable than the hundreds of other Intel agreements produced in the case, because he never did.

n.2.  But the point is that Mr. Chandler relies on the settlement without acknowledging this provision exists or accounting for it in any way.

- VLSI argues that Mr. Chandler was permitted to ignore differences between the MicroUnity settlement and the hypothetical negotiation because "Mr. Chandler's royalty rate is not based directly on the MicroUnity royalty."  Opp. 14.  But Mr. Chandler plainly uses the MicroUnity payment to justify and support his number.  Dkt. 536-06 [Chandler Rep.] ¶¶ 397-419, 518.  He thus was required to explain how any differences between the agreement and the hypothetical negotiation affected the payment amount.  *Omega*, 13 F.4th at 1380-81.[4]

Mr. Chandler's failure to account for these differences requires exclusion of his opinion.  *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (when relying on comparable licenses, "we require a party to 'account for differences in the technologies and economic circumstances of the contracting parties.'" (citation omitted)).

### 2.      VLSI's Built-In Apportionment Argument Fails.

VLSI concedes that Mr. Chandler did not perform an apportionment analysis in arriving at his damages number.  Mot. 15-16; Opp. 15-16.  Instead, VLSI argues that Mr. Chandler was not required to do so because apportionment was "built-in" to his licensing analysis.  Opp. 15.  But VLSI does not come close to satisfying the standard for relying on "built-in apportionment."

***First***, VLSI incorrectly asserts that there is "no basis in law" requiring Mr. Chandler to compare the products covered by the WARF and MicroUnity settlements to the products at issue in this case before relying on built-in apportionment.  Opp. 16.  The Federal Circuit has held that the "built in apportionment" exception only applies where the expert methodically compares the products covered by the license agreement to the products accused of infringement to demonstrate how the

---

[4] VLSI also attempts to gloss over that the WARF and MicroUnity agreements provide lump sums, and not running royalties, by arguing that Mr. Chandler advocates a lump sum.  Opp. 15.  But Mr. Chandler repeatedly argued in his report for a running royalty (not a lump sum), *e.g.*, Dkt. 536-06 [Chandler Rpt.] ¶¶ 420-24, as VLSI concedes later in its brief.  Opp. 19 (acknowledging Mr. Chandler opined that damages should be "equivalent to a per-unit royalty").

payment in the license already accounted for any differences in features, price, demand, etc., between the two groups of products. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021) (no built-in apportionment where expert "conducted no assessment of the licensed technology versus the accused technology to account for any differences"); *Omega*, 13 F.4th at 1379-81 (built-in apportionment requires that expert compare licenses and account for differences).

Mr. Chandler fails to perform the required comparison to justify "built-in apportionment." As Intel showed (and VLSI acknowledges), Mr. Chandler admits he did not compare the price, features, or profit of any products covered by the WARF and MicroUnity settlements to the accused products in this case. Mot. 16; Opp. 16. Without this analysis, Mr. Chandler cannot show that the WARF and MicroUnity payments accounted for the non-accused features of the products at issue in this case.

***Second***, VLSI fails in its attempt to distinguish *MLC* and *Omega*. Opp. 15-16. VLSI asserts that in *MLC*, the Federal Circuit rejected built-in apportionment because the expert "conducted no assessment of the licensed technology versus the accused technology to account for any differences." *Id.* 15. That is the point: neither does Mr. Chandler. He never addresses whether the products covered by the WARF and MicroUnity agreements have the same value as the products at issue here or how differences between the sets of products impacted the payment amounts. VLSI also argues that built-in apportionment was rejected in *Omega* because the expert provided only "generic testimony [that] simply does not 'account[] for the technological and economic differences'" between what was accused and what was covered by the prior agreement. *Id.* 15-16. Again, Mr. Chandler's analysis suffers from the same deficiency. He simply asserts, without explanation, that the WARF and MicroUnity payments that cover different products with different features somehow accounted for the non-accused features of the products at issue. That error requires exclusion of his opinion. *Omega*, 13 F.4th at 1379 (excluding expert analysis that attempts to "avoid the task of apportionment").

### 3.   Mr. Chandler's 3 to 4 Times WARF Adjustment Is Unreliable.

Intel demonstrated that Mr. Chandler's 3 to 4 times upward adjustment of the WARF payment is unreliable. Mot. 16-18. None of VLSI's arguments shows reliability. ***First***, VLSI argues that Mr. Chandler's adjustment is justified because the WARF patent provided a 0.8% performance benefit versus the 15% benefit allegedly provided by the '836 patent. Opp. 16. But as Intel explained and

VLSI does not dispute, the problem here is that Mr. Chandler **wholly ignored** WARF's own assertion that its patent provided a 20% to 25% performance benefit, not a 0.8% benefit. Mot. 17. Experts cannot simply ignore evidence they disagree with or find unhelpful. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 32-33 (Fed. Cir. 2012) (rejecting expert testimony that is "conclusory, speculative and, frankly, out of line with economic reality").

**Second**, VLSI asserts that Mr. Chandler properly concluded Intel would have paid 3-4 times what it paid WARF because the WARF settlement was limited to 343.7 million ███████████ ████████████. Opp. 16-17. But to reach this conclusion, Mr. Chandler simply dismissed the evidence to the contrary: (1) the WARF settlement ███████████████████████ ██ and (2) Intel sold 1.2 billion licensed processors after executing the WARF agreement. Mot. 16-17. Again, Mr. Chandler cannot turn a blind eye to evidence that contradicts his opinion by asserting that WARF supposedly had a subjective "belief" that the settlement ███████████████. Opp. 17. This attempt to rewrite an unambiguous agreement using conclusory assertions of "intent" is improper and unreliable. *See Exmark*, 879 F.3d at 1350-51 (court erred by not excluding expert's "unsupported conclusory opinion"); *Franklin Life Ins. Co. v. Mast*, 435 F.2d 1038, 1045 (9th Cir. 1970) ("The parties are bound by their covenants or promises which are put down in writing, judged by objective standards and not by their secret intentions or motives.").

**Finally**, VLSI argues that Mr. Chandler was permitted to use for his adjustment the entire alleged 15% improvement of TBMT—without any apportionment—because Dr. Conte accused all TBMT. Opp. 17. But as explained above, Dr. Conte admitted that the '836 patent does not reference or claim features of TBMT such as the user interface and inclusion list. *Supra* § II.C; *infra* § IV.A.

### B. Mr. Chandler Should Be Precluded From Testifying About Four Intel Settlement Agreements He Admits Are Not Comparable And That He Did Not Apportion.

VLSI's attempts to justify Mr. Chandler's reliance on four Intel litigation settlement agreements that he admits are not comparable, Opp. 18-19, fail as a matter of law. *First*, VLSI argues that Mr. Chandler can use non-comparable settlements to "rebut" the comparable agreements identified by Intel's expert Ms. Kindler. Opp. 18. There is no authority allowing a party to respond to **comparable** agreements with **non-comparable** ones. Nor would such a rule make any sense because

it would allow parties to circumvent the comparability requirement by simply labeling non-comparable agreements "rebuttal."  That is not and should not be the law.  *Apple.*, 25 F.4th at 972 n.5 ("Sufficient comparability is a threshold requirement for licenses to be admissible.").

**Second**, VLSI is wrong in claiming that Intel's cited cases state that comparability is required only when agreements are "offered to support a damages number under *Georgia-Pacific* Factor 2." Opp. 18-19.  The Federal Circuit has been clear that comparability is required **in all instances** before an agreement is presented to the jury.  *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299-1300 (Fed. Cir. 2019) (licenses must be "sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for" (quotation and citation omitted)); *LaserDynamics*, 694 F.3d at 80-81 (reversing damages award based on licensing survey where "comparability between it and a hypothetical license to the [asserted] Patent was absent").

**Third**, VLSI's reliance on *Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *33 (N.D. Cal. Feb. 11, 2021), Opp. 18, is misplaced.  That ruling did not allow the plaintiff to use non-comparable agreements to rebut the defendant's use of comparable agreements, as Mr. Chandler seeks to do.  In fact, the case ended before trial—the court never allowed non-comparable agreements into evidence.  *Intel Corporation v. Tela Innovations, Inc.*, 18-cv-02848, Dkt. 368 (N.D. Cal. May 11, 2021).  Further, VLSI cannot use its flawed reading of *Tela* to supersede Federal Circuit precedent holding that Mr. Chandler cannot introduce non-comparable agreements for any purpose and that allowing him to do so would improperly skew the damages analysis with evidence of payments that are disconnected from the facts of the case.  *LaserDynamics*, 694 F.3d at 80.

## C.    Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Involving Running Royalties.

VLSI does not dispute that Mr. Chandler attempts to rely on non-comparable and non-apportioned agreements involving running royalties (Mot. 19) but argues that the Court should permit him to do so to rebut Ms. Kindler's opinion that the hypothetical license would result in a lump sum. Opp. 19.  But as noted above, VLSI asserts in other parts of its opposition that Mr. Chandler intends at trial to testify that the hypothetical license would have resulted in a lump sum, not a running royalty (Opp. 15), which refutes any claim by VLSI that Mr. Chandler needs to rely on non-comparable

1    licenses to try to justify a running royalty payment.  In any event, evidence of non-comparable licenses

2    does not become admissible simply by asserting that it is offered in "rebuttal."  *Supra* § III.B.  Nor

3    does VLSI's citation to *GREE*, Opp. 19, save Mr. Chandler's opinion.  Neither side in that case used

4    non-comparable agreements to try to show a damages number, as Mr. Chandler does, and *GREE*

5    cannot supplant Federal Circuit law holding that non-comparable agreements are inadmissible.  *GREE,*

6    *Inc. v. Supercell Oy*, 2020 WL 4288345, at *3-4 (E.D. Tex. July 27, 2020).

7
8        **D.    Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Identified In Third-Party Surveys And Databases.**

9        VLSI concedes that Mr. Chandler never argues or shows that the LES and ktMINE databases

10    cover comparable agreements.  Mot. 19-20; Opp. 19.  VLSI argues instead that reliance on these non-

11    comparable datapoints is proper to show "industry standards and norms."  Opp. 19.  That argument

12    invites legal error as the Federal Circuit has excluded the ***very same non-comparable databases*** on

13    which Mr. Chandler relies, *LaserDynamics*, 694 F.3d at 80 (reliance on LES database improper where

14    "comparability between it and a hypothetical license to the [asserted] Patent was absent"), and VLSI

15    cannot avoid that law based on a citation to a single unpublished district court decision, Opp. 19.

16
17        **E.    Mr. Chandler Should Be Precluded From Testifying About Non-Comparable And Non-Apportioned Agreements Involving "Patent Licensing Entities."**

18        Intel explained, and VLSI does not dispute, that Intel's agreements with so-called "patent

19    licensing entities" are not comparable.  Mot. 20; Opp. 20.  VLSI argues only that Mr. Chandler should

20    be able to introduce these non-comparable agreements to "rebut" the fact that VLSI's only business

21    has been to assert patents in litigation.  Opp. 20.  But the fact that Intel entered agreements with third

22    party licensing entities does not show anything about VLSI's business.  Mot. 20; *Apple*, 25 F.4th at

23    972 n.5 ("Sufficient comparability is a threshold requirement for licenses to be admissible.").

24        **F.    Mr. Chandler Should Be Precluded From Casting Intel As A "Patent Holdout."**

25        VLSI cannot justify Mr. Chandler's attempt to label Intel a "patent holdout."  Mot. 20-21.

26    VLSI incorrectly asserts that "Mr. Chandler's opening report does not once mention either holdup or

27    holdout," and that his opinions are offered solely in reply to Ms. Kindler.  Opp. 20.  But Mr. Chandler's

28    opening report—which he submitted before Ms. Kindler submitted any opinion—asserts that Intel has

a "policy of resisting large payments unless the patent owner demonstrates commitment to move forward with litigation and potentially significant damages claims."  Dkt. 536-06 [Chandler Rpt.] ¶¶ 271-76, 278-85.  His reply report repeatedly labels Intel a "holdout" and criticizes it for defending itself against baseless infringement allegations made by patent assertion entities.  Mot. 20-21.  These opinions should be excluded as unsupported and unfairly prejudicial.  *See VLSI Tech. LLC v. Intel Corp.*, 6:21-cv-57, Dkt. 508 at 2 (W.D. Tex. Feb. 19, 2021) (holding Mr. Chandler is "[n]ot allowed to testify on Intel's unwillingness to license absence a lawsuit"); FRE 403.  Indeed, VLSI appears to recognize this testimony would be improper, as it concedes that Mr. Chandler will not make these allegations if Ms. Kindler does not call VLSI a "patent holdup" (which she will not do).  Opp. 20.

## IV.   DR. CONTE'S IMPROPER OPINIONS SHOULD BE EXCLUDED.

### A.   Dr. Conte's '836 Performance Benefit Opinion Should Be Excluded.

Intel explained that Mr. Chandler's damages opinion is flawed for the additional reason that he relies on Dr. Conte's unsupported assertion that the accused aspects of TBMT provide a 15% benefit.  Mot. 21-22.  VLSI fails to overcome this.  ***First***, this is not a dispute over "infringement" as VLSI alleges.  Opp. 21.  The issue is that Dr. Conte himself admitted that TBMT contains unclaimed features, such as the user interface and inclusion list, but nonetheless includes the value of these unclaimed features in the 15% input he provides to Mr. Chandler.  Mot. 8, 17, 21; *supra* § II.C.  That is not an infringement dispute; it is a basic failure to apportion.  ***Second***, VLSI attempts to justify Dr. Conte's failure to apportion for TBMT's non-accused ability to operate with two cores running by asserting that this feature does not exist.  Opp. 21.  But Dr. Conte's own reply report explicitly describes this feature.  Ex. 2 [Conte Reply Rpt.] ¶¶ 105-106 (showing scenarios involving 2-8 "active cores" and explaining that the more cores active at the same time, the lower the operating frequency for each core).  ***Third***, for the reasons explained above, VLSI cannot ignore the non-patented features of TBMT by simply asserting without any evidence that they do not provide any benefit.  *Supra* § II.C.

### B.   Dr. Conte's '806 Power Savings Opinion Should Be Excluded.

VLSI fails to fix the flaws in the 0.353% input that Dr. Conte provides to Dr. Sullivan for his '806 damages calculation.  Mot. 22.  VLSI argues that Dr. Conte relied on multiple documents, Opp. 22, but VLSI does not dispute that the 0.353% "power savings benefit" that Dr. Conte provided to Dr.

Sullivan comes exclusively from █████████████████████████████████████

██████████████████.   Mot. 22; Dkt. 536-08 [Conte Rpt.] ¶¶ 989-994.   Thus, whether Dr.

Conte's calculation is based on the presentation's ███████████████████████ Opp. 22, is

beside the point:  there is no evidence (and VLSI cites none) that the document reflects the power

measurements in the actual accused products.   Mot. 22.   VLSI also suggests that the document's

reference to ████████████ means it reflects the final product design, Opp. 22, but the document uses

the same term to refer to the ████████████████████████████████████ Opp.

22; Ex. 3 [93799DOC00914759] 5.

### C. Dr. Conte's 1:1 Power To Frequency Opinion Should Be Excluded.

VLSI does not justify Dr. Conte's opinion that a 1% power savings is valued as a 1% increase

in frequency.   Mot. 22-23; Opp. 22-23.   *First*, VLSI fails to respond to Intel's showing that the

documents Dr. Conte relies on for his 1:1 opinion are not tied to the accused products.   Mot. 22; Opp.

22-23.  Instead, VLSI points to generic assertions of "general proportionality" and a "general equation"

that also are divorced from the specifics of the accused products.   Opp. 23.   VLSI's reference to Intel's

"design rules" does not help.   VLSI concedes those rules discuss only the relationship between ██████

██████████████; they say nothing about a relationship between power and *frequency*.   *Id.*; Mot. 23.

*Second*, VLSI also fails to respond to Intel's showing that the documents Dr. Conte relies on show the

power/performance relationship is highly variable and not always 1:1.   Mot. 23; Opp. 22-23.

## V. DR. MANGIONE-SMITH'S IMPROPER OPINIONS SHOULD BE EXCLUDED.

### A. Dr. Mangione-Smith's '922 Infringement Opinions Should Be Excluded.

Intel demonstrated that Dr. Mangione-Smith's opinion is unreliable because he claims to rely

on Intel's source code to allege infringement of the '922 patent, but concedes that he actually did not

analyze any code.   Mot. 23-24.   VLSI fails to show otherwise.   VLSI first claims that Dr. Mangione-

Smith did not rely on source code, and only "reserve[ed]" the right to do so.   Opp. 23-24.   That is not

true.   Dr. Mangione-Smith's infringement analysis cites to Intel source code for every limitation of

the asserted claims—totaling 39 source code files.   Dkt. 536-21 [Mangione-Smith Suppl.] ¶¶ 181, 187,

195, 204, 217, 226, 228, 234, 239, 243, 247.   VLSI then asserts that Dr. Mangione-Smith relied on

source code only "early in expert discovery."   Opp. 23-24.   That, too, is false.   Dr. Mangione-Smith

relied on source code in his supplemental report, and again in his reply report.  Dkt. 536-21 [Mangione-Smith Suppl.]; Dkt. 536-12 [Mangione-Smith Reply Rpt.] ¶¶ 72, 121, 130, 133, 166, 168.

### B.    Dr. Mangione-Smith's Cost Savings Opinions Should Be Excluded.

As explained above in Section II.B, Dr. Sullivan fails to apportion his '922 damages number, instead deferring to Dr. Mangione-Smith.  But VLSI fails to overcome Intel's showing that Dr. Mangione-Smith similarly failed to apportion the input he provided to Dr. Sullivan.  Mot. 24.  VLSI asserts that Dr. Mangione-Smith never valued "the entire FIVR feature" or included "non-accused MIM" capacitors in the cost savings he provided Dr. Sullivan.  Opp. 24.  But the record shows the opposite.  When asked if the alleged FIVR savings he provides to Dr. Sullivan "is attributable to [non-accused] MIM capacitors," Dr. Mangione-Smith answered, without qualification, "*Yeah, I believe so.*"  Dkt. 536-20 [Mangione-Smith Dep.] 195:21-196:3.  VLSI also admits that "the documents [Dr. Mangione-Smith] discusses *are about FIVR generally*."  Opp. 24.  That is fatal to his opinion.

## VI.    DR. NEIKIRK'S IMPROPER OPINIONS SHOULD BE EXCLUDED.

VLSI's opposition confirms that the Court should exclude Dr. Neikirk's opinion that the '672 patent provides a 6.4% increase in sales.  Mot. 25; Opp. 25.  *First*, VLSI asserts that Dr. Neikirk can rely on Dr. Ingerly's testimony from a Delaware litigation because the Federal Rules of Civil Procedure allow using material from prior actions.  Opp. 25.  But Intel's argument is that the relevant protective orders bar using Dr. Ingerly's Delaware deposition testimony in this case (whether the Federal Rules might permit such use absent those orders is irrelevant).  Mot. 25.  *Second*, VLSI fails to justify Dr. Neikirk's assertion that Intel's sales increase by 6.4% because of Intel's alleged infringement.  Opp. 25.  Dr. Neikirk asserts that without the '672 patent, Intel's chips would be 6.4% larger.  Mot. 25.  But he never shows why the specific claimed method of the patent (as opposed to any method of assembly) provides that purported benefit and fails to explain why the supposed 6.4% chip size increase would translate exactly into a 6.4% decrease in sales.  He just says it would.  That is the type of unsupported "say-so" that requires exclusion under *Daubert*.  *See Exmark*, 879 F.3d at 1350-51; Fed. R. Evid. 702.  *Finally*, Intel's requested relief is not "overbroad."  Mot. 25.  Intel appropriately moved to exclude each paragraph of Dr. Neikirk's report relating to his 6.4% opinion that improperly relies on Dr. Ingerly's deposition—and nothing more.

1

2    Respectfully submitted,

3
     Dated: August 25, 2023
4

5                                            */s/ Mark D. Selwyn*

6                                            Mark D. Selwyn (CA SBN 244180)
                                             WILMER CUTLER PICKERING
7                                               HALE AND DORR LLP
                                             2600 El Camino Real, Suite 400
8                                            Palo Alto, California 94306
                                             Telephone:  (650) 858-6000
9                                            Facsimile:  (650) 858-6100
                                             Mark.Selwyn@wilmerhale.com
10

11                                           William F. Lee (*pro hac vice*)
                                             Louis W. Tompros (*pro hac vice*)
12                                           Dominic E. Massa (*pro hac vice*)
                                             WILMER CUTLER PICKERING
13                                              HALE AND DORR LLP
                                             60 State Street
14                                           Boston, MA  02109
                                             Telephone: (617) 526-6000
15                                           Facsimile: (617) 526-5000
                                             William.Lee@wilmerhale.com
16                                           Louis.Tompros@wilmerhale.com
                                             Dominic.Massa@wilmerhale.com
17
                                             Amanda L. Major (*pro hac vice*)
18                                           WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
19                                           2100 Pennsylvania Avenue NW
                                             Washington, DC 20037
20                                           Telephone: (202) 663-6000
                                             Facsimile: (202) 663-6363
21                                           Amanda.Major@wilmerhale.com

22                                           David C. Marcus (CA SBN 158704)
23                                           WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
24                                           350 S. Grand Avenue, Suite 2400
                                             Los Angeles, CA  90071
25                                           Telephone: (213) 443-5300
                                             Facsimile: (213) 443-5400
26                                           David.Marcus@wilmerhale.com

27                                           *Counsel for Defendant*
                                             Intel Corporation
28