**PUBLIC REDACTED VERSION**

1  Mark D. Selwyn (CA SBN 244180)
   WILMER CUTLER PICKERING
2    HALE AND DORR LLP
   2600 El Camino Real, Suite 400
3  Palo Alto, California 94306
   Telephone: (650) 858-6000
4  Facsimile: (650) 858-6100
   Mark.Selwyn@wilmerhale.com
5
6  William F. Lee (*pro hac vice*)
   Louis W. Tompros (*pro hac vice*)
7  Dominic E. Massa (*pro hac vice*)
   WILMER CUTLER PICKERING
8    HALE AND DORR LLP
   60 State Street
9  Boston, MA  02109
   Telephone: (617) 526-6000
10 Facsimile: (617) 526-5000
   William.Lee@wilmerhale.com
11 Louis.Tompros@wilmerhale.com
   Dominic.Massa@wilmerhale.com
12

   Amanda L. Major (*pro hac vice*)
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   2100 Pennsylvania Avenue NW
   Washington, DC 20037
   Telephone: (202) 663-6000
   Facsimile: (202) 663-6363
   Amanda.Major@wilmerhale.com

   David C. Marcus (CA SBN 158704)
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   350 S. Grand Avenue, Suite 2400
   Los Angeles, CA  90071
   Telephone: (213) 443-5300
   Facsimile: (213) 443-5400
   David.Marcus@wilmerhale.com

   *Attorneys for Defendant*
   INTEL CORPORATION

13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

14

15

16

17  VLSI TECHNOLOGY, LLC,

                            Plaintiff,

18

19      v.

20  INTEL CORPORATION,

                            Defendant.

21

22

23

Case No. 5:17-cv-05671-BLF-NC

**INTEL CORPORATION'S OPPOSITION TO PLAINTIFF VLSI TECHNOLOGY LLC'S MOTION FOR SUMMARY JUDGMENT ON INTEL'S LICENSE DEFENSE AND OF NO INVALIDITY BASED ON IPR ESTOPPEL**

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION ............................................................................................ 1

II.    VLSI'S MOTION FOR SUMMARY JUDGMENT ON INTEL'S LICENSE
       DEFENSE SHOULD BE DENIED. ................................................................. 1

       A.     The License's Plain Language Binds VLSI As An "Affiliate." .................. 2

       B.     The Asserted Patents Are "Finjan's Patents." ............................................ 4

              1.     The definition of "Finjan's Patents" includes "Affiliates'" patents
                     because the definition of "Finjan" includes "Affiliates." .................. 4

              2.     VLSI does not owe consideration to license its patents. ................... 5

       C.     VLSI Is Bound By The Terms Of The License. ......................................... 7

       D.     VLSI Implicitly Adopted The License By Accepting Its Benefits. ............. 8

       E.     Res Judicata And Collateral Estoppel Do Not Preclude Intel's License
              Defense. ................................................................................................... 11

              1.     Claim preclusion is inapplicable because the Texas action does not
                     involve the same cause of action. .................................................... 11

              2.     Issue preclusion is inapplicable for multiple reasons. ..................... 13

III.   VLSI'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY BASED
       ON IPR ESTOPPEL SHOULD BE DENIED. .............................................. 15

       A.     IPR Estoppel Does Not Bar Intel's '922 Patent Obviousness Combination
              Based On The Nehalem Processor. ............................................................ 15

       B.     IPR Estoppel Does Not Bar Intel's Prior Art Obviousness Combination For
              The '672 Patent Based On Intel's P1264 Process. ..................................... 21

       C.     IPR Estoppel Does Not Bar Intel's Prior Art Obviousness Combination For
              The '672 Patent That Relies On Applicant Admitted Prior Art And The Lee
              Book. ........................................................................................................ 23

       D.     Intel Should Not Be Estopped From Raising Its Other Obviousness Grounds
              For The '922 And '672 Patents. ................................................................. 24

IV.    CONCLUSION ............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4 *Acceleration Bay, LLC v. Activision Blizzard Inc.*,
  908 F.3d 765 (Fed. Cir. 2018)...................................................................................20

5

6 *Acceleron, LLC v. Dell, Inc.*,
  No. 1:12-cv-4123-TCB, 2020 WL 10353767 (N.D. Ga. Mar. 30, 2020) ...............................18

7 *Acumed LLC v. Stryker Corp.*,
  525 F.3d 1319 (Fed. Cir. 2008)................................................................................12

8

9 *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*,
  989 F. Supp. 1237 (N.D. Cal. 1997) .........................................................................12

10 *Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
   435 F.3d 1356 (Fed. Cir. 2006)...............................................................................13

11

12 *Arkla, Inc. v. United States*,
   37 F.3d 621 (Fed. Cir. 1994)..................................................................................13

13

14 *Boston Sci. Corp. v. Cook Grp. Inc.*,
   No. 1:17-cv-03448-JRS-MJD, 2023 WL 1452172 (S.D. Ind. Jan. 31, 2023) ...................17, 20

15 *California Institute of Technology v. Broadcom Ltd.*,
   No. CV 16-3714-GW (AGRx), 2019 WL 8192255 (C.D. Cal. Aug. 9, 2019)..........................21

16

17 *California Institute of Technology v. Broadcom Ltd.*,
   25 F.4th 976 (Fed. Cir. 2022) ............................................................................24, 25

18

19 *Central Delta Water Agency v. United States*,
   306 F.3d 938 (9th Cir. 2002) .................................................................................12

20

21 *Chemours Co. FC, LLC v. Daikin Industries, Ltd.*,
   No. 17-1612 (MN), 2022 WL 2643517 (D. Del. July 8, 2022)...............................................16

22 *CliniComp International, Inc. v. Athenahealth, Inc.*,
   No. A-18-CV-00425-LY, 2020 WL 7011768 (W.D. Tex. Oct. 28, 2020)........................18, 19

23

24 *Comair Rotron, Inc. v. Nippon Densan Corp.*,
   49 F.3d 1535 (Fed. Cir. 1995)................................................................................14

25

26 *Contour IP Holding, LLC v. GoPro, Inc.*,
   No. 3:17-cv-04738-WHO, 2020 WL 109063 (N.D. Cal. Jan. 9, 2020)..................................22

27 *Cordis Corp. v. Bos. Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009).................................................................................20

28

*Depomed, Inc. v. Purdue Pharma L.P.*,
   No. 13-571 (MLC), 2016 WL 8677317 (D.N.J. Nov. 4, 2016)................................22

*e.Digital Corp. v. Futurewei Technologies, Inc.*,
   772 F.3d 723 (Fed. Cir. 2014)................................................................13

*In re Federal-Mogul Global, Inc.*,
   526 B.R. 567 (D. Del. 2015)....................................................................9

*Finjan LLC v. Trustwave Holdings, Inc.*,
   No. 20-371-LPS, 2021 WL 5051147 (D. Del. Oct. 29, 2021).............................10

*Foster v. Hallco Manufacturing Co.*,
   947 F.2d 469 (Fed. Cir. 1991)................................................................12

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994)................................................................14

*Fujifilm Corp. v. Motorola Mobility LLC*,
   182 F. Supp. 3d 1014 (N.D. Cal. 2016)....................................................17

*Hafeman v. LG Electronics, Inc.*,
   No. 6:21-cv-00696-ADA, 2023 WL 4362863 (W.D. Tex. Apr. 14, 2023)............20

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 88 (9th Cir. 2000)....................................................................13

*IMX, Inc. v. LendingTree, LLC*,
   405 F. Supp. 2d 479 (D. Del. 2005)........................................................20

*Intellectual Ventures II LLC v. Kemper Corp.*,
   No. 6:16-cv-0081, 2016 WL 7634422 (E.D. Tex. Nov. 7, 2016).......................16

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   607 F. Supp. 3d 464 (D. Del. 2022)................................................16, 18, 19

*Kearns v. General Motors Corp.*,
   94 F.3d 1553 (Fed. Cir. 1996)................................................................12

*In re Koninklijke Philips Patent Litigation*,
   No. 18-cv-01885-HSG, 2020 WL 7392868 (N.D. Cal. Apr. 13, 2020)..........15-16, 18, 19, 21

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*,
   140 S. Ct. 1589 (2020)..........................................................................12

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996)................................................................18

*Medline Industries, Inc. v. C.R. Bard, Inc.*,
   No. 17 C 7216, 2020 WL 5512132 (N.D. Ill. Sept. 14, 2020).........................17, 22

*Microchip Technology Inc. v. Aptiv Services US LLC,*
    No. 1:17-cv-01194-JDW, 2020 WL 4335519 (D. Del. July 28, 2020) ......................16, 22, 23

*Milwaukee Electric Tool Corp. v. Snap-On Inc.,*
    271 F. Supp. 3d 990 (E.D. Wis. 2017)......................................................................................21

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,*
    138 S. Ct. 1365 (2018)...............................................................................................................25

*Pact XPP Schweiz AG v. Intel Corp.,*
    No. 1:19-cv-01006-JDW, 2023 WL 2631503 (D. Del. Mar. 24, 2023) ...........................22, 23

*Polaris Industries, Inc. v. Arctic Cat Inc.,*
    No. 15-4475 (JRT/TNL), 2019 WL 3824255 (D. Minn. Aug. 15, 2019)...............................16

*Qualcomm Inc. v. Apple Inc.,*
    24 F.4th 1367 (Fed. Cir. 2022) .................................................................................................24

*Senju Pharmaceutical Co. v. Apotex Inc.,*
    746 F.3d 1344 (Fed. Cir. 2014).................................................................................................12

*Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.,*
    817 F.3d 1293 (Fed. Cir. 2016).................................................................................................25

*SiOnyx, LLC v. Hamamatsu Photonics K.K.,*
    330 F. Supp. 3d 574 (D. Mass. 2018) .................................................................................16, 17

*SK Hynix Inc. v. Rambus Inc.,*
    No. C-00-20905 RMW, 2013 WL 1915865 (N.D. Cal. May 8, 2013)....................................15

*Sonoscan, Inc. v. Sonotek, Inc.,*
    936 F.2d 1261 (Fed. Cir. 1991).................................................................................................17

*SPEX Technologies Inc. v. Kingston Technology Corp.,*
    No. SACV 16-01790 JVS (AGRx), 2020 WL 4342254 (C.D. Cal. June 16, 2020)..........18, 19

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.,*
    200 F.3d 795 (Fed. Cir. 1999)...............................................................................................6, 19

*VLSI Technology LLC v. Intel Corp.,*
    No. 6:21-CV-57-ADA, 2022 WL 1261322 (W.D. Tex. Apr. 21, 2022) ...........................13, 14

*Wasica Finance GmbH v. Schrader International, Inc.,*
    432 F. Supp. 3d 448 (D. Del. 2020)..........................................................................................20

*WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.,*
    844 F.3d 473 (5th Cir. 2016) .......................................................................................................4

*Willis Electric Co. v. Polygroup Macau Ltd.,*
    No. 15-cv-3443 (WMW/DTS), 2023 WL 112733 (D. Minn. Jan. 5, 2023) .....................16, 19

*Zitovault, LLC v. International Business Machines Corp.*,
No. 3:16-cv-0962-M, 2018 WL 2971178 (N.D. Tex. Apr. 4, 2018) ....................................16

**State Cases**

*American Legacy Foundation v. Lorillard Tobacco Co.*,
831 A.2d 335 (Del. Ch. 2003)...........................................................................................8, 9

*Boulden v. Albiorix, Inc.*,
No. 7051-VCN, 2013 WL 396254 (Del. Ch. Jan. 31, 2013) ...............................................9

*First Mortgage Co. of Pennsylvania v. Federal Leasing Corp.*,
456 A.2d 794 (Del. 1982) ....................................................................................................9

*GS Petroleum, Inc. v. R & S Fuel, Inc.*,
No. 07C-09-023 RRC, 2009 WL 1554680 (Del. Super. Ct. June 4, 2009) .........................9

*Medicalgorithmics S.A. v. AMI Monitoring, Inc.*,
No. 10948-CB, 2016 WL 4401038 (Del. Ch. Aug. 18, 2016)..............................................7

*MicroStrategy Inc. v. Acacia Research Corp.*,
No. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010)..............................................7

*In re PersonalWeb Technologies, LLC, et al. Patent Litigation*,
No. 18-md-02834-BLF, 2019 WL 1455332 (N.D. Cal. Apr. 2, 2019)..................................12

*In re Shorenstein Hays-Nederlander Theatres LLC Appeals*,
213 A.3d 39 (Del. 2019) .......................................................................................................7

*Westendorf v. Gateway 2000, Inc.*,
No. 16913, 2000 WL 307369 (Del. Ch. Mar. 16, 2000)......................................................11

**Federal Statutes**

35 U.S.C. § 102..................................................................................................................22

35 U.S.C. § 311.............................................................................................................15, 20

35 U.S.C. § 315.........................................................................................................15, 16, 25

**Other Authorities**

Local Rule 3-15(b)................................................................................................................6

Restatement (Second) of Judgments § 27 ........................................................................14

Non-Confidential Brief for Defendant-Appellant Intel Corporation,
*VLSI Technology LLC v. Intel Corp.*, No. 22-1906, ECF No. 17
(Fed. Cir. Sept. 14, 2022).....................................................................................................14

**Exhibits**

The exhibits cited in the motion as "Ex. __" are attached to the Declaration of Mark Selwyn filed herewith.

## I.   INTRODUCTION

VLSI's summary judgment motions should be denied because they seek to avoid Intel's meritorious defenses by mischaracterizing the record, misapplying the proper legal framework, and relying on erroneous estoppel arguments.

*First*, VLSI's motion with respect to Intel's license defense ignores the unambiguous language of the 2012 Patent License Agreement ("License") that Intel entered into with Finjan, Inc. and Finjan Software, Inc. ("Finjan Parties").  That License provided Intel a "perpetual, irrevocable license" to "all Patent Rights that are owned or controlled at any time on or after November 6, 2012" by the Finjan Parties and their "Affiliates."  Because VLSI is an Affiliate under the License's plain terms, Intel is licensed to practice VLSI's asserted patents.  VLSI attempts to escape that result by relying on arguments that are legally incorrect and that conflict with the License's plain language and the underlying factual record—none of which can serve as the basis for summary judgment.

*Second*, VLSI also seeks summary judgment on certain of Intel's obviousness defenses for two asserted patents, U.S. Patent Nos. 8,004,922 ("'922 patent") and 8,268,672 ("'672 patent").  But Intel's obviousness defenses are not subject to IPR estoppel, including because multiple of Intel's obviousness grounds involve product or process prior art that could not have been raised in an IPR.  VLSI's motion also should be denied because it misapplies the law for IPR estoppel and mischaracterizes the underlying factual record—including by seeking summary judgment on an obviousness combination that Intel's technical expert does not even make.

## II.   VLSI'S MOTION FOR SUMMARY JUDGMENT ON INTEL'S LICENSE DEFENSE SHOULD BE DENIED.

Intel's license defense is based on a simple precept:  contractual promises should be enforced. In 2012, the Finjan Parties promised that Intel would receive a "perpetual, irrevocable license" to "Finjan's Patents."  Dkt. 579-17 [License] Preamble, §§ 3.1, 4.1, 4.2, 5.1.  The License (1) defines "Finjan's Patents" to include "all Patent Rights that are owned or controlled at any time on or after November 6, 2012" by "Finjan," *id.* § 1.10, (2) defines "Finjan" to include both the Finjan Parties *and* their "Affiliates," *id.*, Preamble, and (3) defines "Affiliates" to include any company that "now or hereafter, directly or indirectly through one or more entities, controls or is controlled by, or is under

common control with" the Finjan Parties, *id.*, Preamble, § 1.2. The License thus gave Intel a broad

license to the patents of current and future "Affiliates" of the Finjan Parties. In exchange, Intel made

an ▮▮▮▮▮▮▮▮▮▮ to Finjan, Inc. and gave the Finjan Parties and their Affiliates a release and ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in which Intel agreed not to ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. *Id.* §§ 2.1, 2.5, 5.2.

In 2020, entities under the common control of Fortress Investment Group ("Fortress") acquired

Finjan Holdings, Inc. ("FHL"), and Fortress conducted extensive due diligence on FHL's licenses

before the acquisition. Dkt. 579-3 [Intel Mot.] 20. Fortress thus knew the benefits and burdens that

came with the License, and voluntarily chose (via the acquisition) to bring itself and any "Affiliate"

under the License. VLSI is just such an "Affiliate" because it is controlled by Fortress. *Id.* 19.

Although Intel has kept its promises under the License, VLSI now attempts to escape the

license rights that Intel obtained under that License by insisting that VLSI has no relationship with

Finjan and therefore could not be bound by the terms of the License as an Affiliate. VLSI is not

entitled to summary judgment because its arguments are legally incorrect, conflict with the License's

plain language, and depend on assertions that contradict the documents and the testimony of its own

witnesses.

### A. The License's Plain Language Binds VLSI As An "Affiliate."

The License expressly and unambiguously defines "Affiliate" to include entities under the

"common control" of a third party, Dkt. 579-17 [License] § 1.2, and the License defines "control" to

mean "the possession, direct or indirect, of the power to direct the management and policies of a

Person, whether through the ownership of any percentage of voting interests of such Person, through

contract or otherwise," *id.* Fortress clearly possesses "common control" over both FHL and VLSI,

as VLSI's, Fortress's, and FHL's own employees' testimony and documents demonstrate that Fortress

directs the management and policies of both VLSI and FHL.

Specifically, with respect to VLSI: (1) Fortress formed VLSI in 2016 to purchase patents from

NXP Semiconductors and directed and led the negotiations for that patent purchase; (2) Fortress

assigns VLSI's board members; (3) Fortress's employees, who are paid by Fortress, constitute a

majority of VLSI's board; (4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

1   (5) ███████████████████████████████; and (6) Fortress has direct access to VLSI's bank

2   account and keeps limited funds in it.  Dkt. 579-03 [Intel Mot.] 19 (citing exhibits); Dkt. 583-2 [VLSI

3   Rpt.] 913, 915; Dkt. 583-3 [Fortress Investment Overview] 1713; Dkt. 583-4 [Slan Dep.] 46:2-16,

4   54:2-16, 54:23-55:4, 85:20-86:5, 113:4-15, 121:15-123:10; Dkt. 583-5 [Shah Dep.] 50:6-10, 72:16-

5   73:19; Dkt. 583-6 [Zur Dep.] 30:13-18, 69:18-70:5, 124:8-125:8; Dkt. 583-7 [Furstein Email] 754-55;

6   Dkt. 583-8 [Brogden Email] 944; Dkt. 583-9 [Brogden Dep.] 41:5-21, 117:16-23; Dkt. 583-10 [VLSI

7   Financial Statements] 619, 621; Ex. 1 [Stolarski Dep.] 108:13-109:13, 253:7-18, 255:12-258:11.

8          Likewise, with respect to FHL:  (1) Fortress ██████████████████████████████;

9   (2) Fortress employees, compensated by Fortress, hold the majority of FHL's Board seats; (3) FHL

10  must request funding from Fortress employees; and (4) Fortress ██████████████

11  ████.  Dkt. 579-3 [Intel Mot.] 19; Dkt. 584-2 [Anderson Dep.] 43:6-13, 43:21-44:12, 45:18-22,

12  47:15-48:6, 51:14-52:13, 94:17-95:8; Dkt. 580-37 [Schedule Tender Offer] 3, 8, 71-74; Dkt. 584-3

13  [Hartstein Dep.] 73:20-24, 82:10-20; Dkt. 584-4 [FHC LLC Agreement] 2453-54, 2457-58; Ex. 2

14  [James Dep.] 20:10-19, 21:9-22:3, 32:10-33:2, 34:8-15, 37:8-11, 39:3-41:3, 43:10-15, 50:19-51:1,

15  78:19-79:14, 81:2-10, 100:22-102:1, 121:24-122:6.

16         VLSI's only argument for why Fortress supposedly does not control FHL or VLSI (under the

17  License's "common control" provision) is that Fortress does not own either entity.  Dkt. 588-2

18  ("Mot.") 14-15.  But that argument ignores the plain language of the License, which explains that

19  "control" can be achieved "through the ownership of any percentage of voting interests of such

20  Person," but also "***through contract or otherwise***," Dkt. 579-17 [License] § 1.2 (emphasis added)—

21  i.e., ownership is ***not*** required.  Because Fortress can "direct the management and policies" of FHL

22  and VLSI, "directly or indirectly, through one or more entities," Fortress has "common control" over

23  both FHL and VLSI, making them "Affiliates" under the License.  *Id.*  And because VLSI is an

24  "Affiliate" of FHL, VLSI is included within the definition of "Finjan," thereby giving Intel a license

25  to VLSI's asserted patents (discussed below).  *Id.*, Preamble ("Finjan Software, Inc. … and Finjan,

26  Inc … each signing on their own behalf ***and on behalf of their respective Affiliates*** (collectively

27  '***Finjan***')" (italicized emphasis added)).  VLSI's argument that neither it nor FHL controls the other

28

1    is irrelevant.  Mot. 14.  Both entities are under the "common control" of Fortress, which is all that is

2    needed.  Dkt. 579-17 [License] §1.2.

3         **B.    The Asserted Patents Are "Finjan's Patents."**

4              **1.    The definition of "Finjan's Patents" includes "Affiliates'" patents because**

5                   **the definition of "Finjan" includes "Affiliates."**

6         The License defines "Finjan's Patents" to include "all Patent Rights" that "Finjan" "owned

7    or controlled at any time on or after November 6, 2012 … or to which Finjan has the right to grant

8    licenses ███████████████████████████" on or before November 20, 2022, the close of

9    the "Capture Period."  Dkt. 579-17 [License] §§ 1.4, 1.10.  As explained above, the definition of

10   "Finjan" in the License's Preamble includes the Finjan Parties and their Affiliates.  Accordingly,

11   because VLSI is included within the definition of "Finjan" as an "Affiliate," "Finjan's Patents"

12   licensed to Intel include the asserted patents that VLSI owns.

13        VLSI argues that the License "does not transform VLSI into Finjan."  Mot. 12.  But no such

14   transformation is needed.  As noted above, the Preamble's definition of "Finjan," as applied in the

15   definition of "Finjan's Patents," is not limited to Finjan; rather, it broadly covers all patent rights

16   owned by Finjan, Inc., Finjan Software, *and their Affiliates*, whether collectively or individually.

17   *See, e.g., WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 478

18   (5th Cir. 2016) ("From a holistic standpoint of interpretation," the term "Borrower" defined as each

19   entity "collectively," refers "to each borrowing entity individually or collectively.").

20        VLSI also argues that, under Section 3.4, Intel licensed only patents owned by Finjan at the

21   time of the License plus any ████████████████████████████████████████████

22   ████████████████████████████████     Mot. 12-13.  But the License grant is not so

23   narrow.  It instead covers all patents ███████████████████████" including patents

24   acquired by "Affiliates" (based on the License's definition of "Finjan").  Dkt. 579-17 [License]

25   Preamble, § 3.4.  Section 3.4 merely serves as a catchall to ensure that the Finjan Parties and their

26   Affiliates could not escape the License's requirements.  Section 3.4 does not purport to narrow the

27   clear and express definition of what "Finjan's Patents" are, and the definition of "Finjan's Patents"

28   in Section 1.10 therefore still controls.

1           **2.**      **VLSI does not owe consideration to license its patents.**

2          The definition of "Finjan's Patents" excludes patents for which "Finjan"—as defined to

3    include "Affiliates" such as VLSI—would be required "to pay consideration ████████

4    for the grant of a license ████████████." Dkt. 579-17 [License] § 1.10. VLSI's arguments

5    under this provision are misplaced because VLSI is not required to pay consideration ████

6    ████ for its patents to be licensed to Intel under the License.

7          *First*, VLSI argues that its patents are excluded from the scope of "Finjan Patents" because,

8    ████████████████████████████████████████ VLSI

9    supposedly cannot license the asserted patents to Intel "without VLSI being obliged to provide

10   consideration to NXP." Mot. 13. But VLSI fails to cite any such ████████████████

11   because there is none.  VLSI instead cites ████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████

14         Nor does VLSI's other cited provision ████████████████ Mot. 13; Ex. 4

15   ████████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████  This contract language does not support VLSI's claim that it cannot license

26   the asserted patents to Intel "without VLSI being obliged to provide consideration to NXP."  In fact,

27   ████████████████████████████████████████

28

1 ████████████████████████████████████████████████ and a percentage

2 of zero is zero.

3      **Second**, VLSI suggests that it would be required to pay consideration to its counsel if it licensed

4 the asserted patents. Mot. 13. But VLSI provides no details concerning this conclusory assertion and

5 thus it cannot serve as the basis for summary judgment. *See Vivid Techs., Inc. v. American Sci. &*

6 *Eng'g, Inc.*, 200 F.3d 795, 812 (Fed. Cir. 1999) ("Unsworn statements set forth in a brief or

7 memorandum of law submitted by a party generally are not proper summary judgment evidence."

8 (internal quotation marks omitted)).[1]

9      **Finally**, VLSI suggests that its patents are not "Finjan's Patents" because FHL allegedly

10 "never had a right" to license VLSI's patents. Mot. 13. But this argument adds a requirement to the

11 agreement that is not there. Section 1.10 defines "Finjan's Patents" to ***include*** those patents to which

12 "Finjan" (defined to include "Affiliates") "█████████████████████████████████████

13 ██████████████████ without the requirement to pay consideration █████████." Dkt. 579-

14 17 [License] § 1.10. And the asserted patents fall within the scope of Section 1.10 because VLSI is

15 an Affiliate of Finjan (as discussed above) and has the right to "████████████████████

16 without the requirement to pay consideration █████████" (as also discussed above). Nothing

17 in Section 1.10 requires FHL ***itself*** to also have the right to license VLSI's patents. Indeed, if VLSI's

18 unreasonable interpretation were accepted, Finjan, Inc. could have used the money obtained from

19 the Intel settlement to acquire a new subsidiary and then immediately sued Intel again on that

20 subsidiary's patents, claiming that the patents owned by the new Finjan subsidiary fell outside the

21 scope of patents licensed to Intel under Section 1.10. This would have completely defeated a core

---

23 [1] Intel requested all documents relating to parties with an interest in this litigation, but VLSI did not

24 produce anything that purported to show its counsel's alleged interest in the litigation. Moreover,

25 under Local Rule 3-15(b), VLSI was also required to identify any parties with an interest in this

26 litigation, but it did not identify any alleged interest by its counsel. Dkt. 4. To the extent VLSI claims

27 that the details of such an agreement are shielded by privilege, it cannot also rely on them as a sword

28 to avoid its liabilities.

purpose of the license between the Finjan Parties and Intel (i.e., patent peace), which is precisely why the plain language of the License precludes it.

### C. VLSI Is Bound By The Terms Of The License.

In an attempt to escape the License's plain language, VLSI argues that it is not bound by the License because it is not a signatory to the agreement. Mot. 7-11. But it is black letter Delaware law (which governs the License, Dkt. 579-17 [License] § 11.4) that non-signatories, including entities created after a contract is signed, can be bound to a contract.

For example, the Delaware Supreme Court has held that, where a signatory was defined to include "an Affiliate of a Member," non-signatory entities satisfying the definition of "Affiliate" were bound by the agreement at issue, and rejected the same argument VLSI makes here that "only formal parties … are bound by the terms of the … Agreement." *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 57 (Del. 2019). Other Delaware decisions have similarly found non-signatory affiliates bound by agreements they did not sign. *See, e.g.*, *Medicalgorithmics S.A. v. AMI Monitoring, Inc.*, 2016 WL 4401038, at *18 (Del. Ch. Aug. 18, 2016) (holding that where an agreement included "Affiliates" within the definition of "Parties," the agreement imposed obligations on a contractually-defined affiliate under the control of a party to the agreement, even where the affiliate was not a signatory); *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *12 (Del. Ch. Dec. 30, 2010) (finding where an agreement defines the term "affiliate" to include "any entity which either party now or hereafter, directly or indirectly, owns or controls," the phrase "now or hereafter" contemplates the agreement would apply to later-acquired or formal entities owned or controlled by the parties to the agreement, even though not signatories).

Other courts have similarly found that a non-signatory can be bound to a contract as an affiliate, even when the entity did not exist at the time the contract was executed. For example, the Federal Circuit in *Oyster Optics, LLC v. Infinera Corp.*, examined a patent agreement granting a license to the signatories and "their Affiliates," which the license defined as "any Person, now or in the future" who "has Control of a Party hereto." 843 F. App'x 298, 300 (Fed. Cir. 2021). The court held that the license was binding on the defendant, an entity created after the agreement was signed (and thus, not a signatory), because the defendant satisfied the definition of "Affiliate." *Id.* at 301.

1    Therefore, that VLSI was not a signatory to the License is legally irrelevant, and so too is the date

2    of VLSI's incorporation, which VLSI recites for the same argument, Mot. 1, 2, 8.  Indeed, that the

3    License defines "Affiliates" as companies that "now or *hereafter*" are "under common control with"

4    the Finjan Parties shows that the License specifically contemplates covering entities—like VLSI—

5    that did not exist at the time the License was executed.  *See* Dkt. 579-17 [License] § 1.2 (emphasis

6    added).  VLSI's cited cases, Mot. 7, are inapposite:  none of the signatories in these cases was

7    expressly defined to include the term "Affiliate."  Because VLSI satisfies the definition of "Affiliate"

8    under the License, it is legally bound by its terms.

9            VLSI argues that the term ████ in the License only includes Intel and the Finjan Parties.

10   Mot. 8.  Although the term █████████████████████████████, the License

11   covers Affiliates of the Finjan Parties as well.  Indeed, the License expressly says that it was "entered

12   into by and between Finjan Software, Inc. … and Finjan, Inc. … each signing on their own behalf

13   and on behalf of their respective Affiliates (collectively '**Finjan**')."  Dkt. 579-17 [License] Preamble

14   (emphasis in original).  Thus, as explained above, the License binds VLSI as an "Affiliate."  *See*

15   *supra* § II.A.

16           Moreover, VLSI's argument that Finjan lacked authority to bind VLSI at the time the

17   agreement was signed is irrelevant because Fortress bound VLSI when it acquired FHL, thereby

18   making both companies "Affiliates."  Mot. 8-9.  VLSI's argument that one cannot sell that which

19   one does not own, *id.*, is similarly misplaced.  The Finjan Parties represented that ████████

20   ████████████████████████████████, Dkt. 579-17 [License] §§ 8.1, 8.3,

21   and Fortress knew this when it orchestrated the acquisition of FHL and brought VLSI under the

22   License.  Dkt. 579-03 [Intel Mot.] 20 (and exhibits cited).[2]

23           **D.    VLSI Implicitly Adopted The License By Accepting Its Benefits.**

24           As explained above, there is no need to look beyond the License's plain language, which

25   expressly binds VLSI.  However, it also is black letter law that non-signatory affiliates can implicitly

26   adopt a contract, as happened here.  *See, e.g., American Legacy Found. v. Lorillard Tobacco Co.*,

27

28   [2] Further, as discussed in the next section, Fortress and VLSI also implicitly adopted the License.

831 A.2d 335, 343-44 (Del. Ch. 2003) ("One does not have to be a signatory to a contract … to become bound by it.  Third parties to an agreement may become parties to it by either expressly or implicitly adopting the agreement."), *aff'd*, 903 A.2d 728, 745 (Del. 2006).  Indeed, a common situation in which a non-signatory affiliate is bound to an agreement it did not sign happens—just as it did in the case of VLSI—when an affiliate entity is created following contract formation, and subsequently accepts the contract or its benefits.  *E.g.*, *Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *12 (Del. Ch. Jan. 31, 2013), *as revised* (Feb. 7, 2013); *GS Petroleum, Inc. v. R & S Fuel, Inc.*, 2009 WL 1554680, at *3 (Del. Super. Ct. June 4, 2009).

For a non-signatory to adopt a contract, "[t]he contract itself … [first] must contemplate that non-signatories may adopt it."  *Am. Legacy Found.*, 831 A.2d at 344.  That requirement is met here because the License contemplates such non-signatory adoption by ███████████████████████████ "Affiliates."  *E.g.*, Dkt. 579-17 [License] §§ 5.1, 5.2, 6.1, 8.1, 8.3; *see Am. Legacy Found.*, 831 A.2d at 344 (finding intent to allow later adoption by a non-signatory where, as here, a contract "explicitly provides that it will bind [others]").  If that requirement is met, Delaware law then provides that a non-signatory may implicitly adopt a contract by accepting the benefits of the contract.  *Am. Legacy Found.*, 831 A.2d at 343-44; *In re Federal-Mogul Glob., Inc.*, 526 B.R. 567, 576 (D. Del. 2015) ("Courts will often find implicit adoption when a party who has received benefits of a contract then tries to avoid burdens imposed by the same contract." (citations omitted)).  Here, VLSI clearly received a benefit under the License: ██████████████████████████████████████████████████.  *See First Mortg. Co. of Pa. v. Fed. Leasing Corp.*, 456 A.2d 794, 795-96 (Del. 1982) ("[C]onsideration for a contract can consist of either a benefit to the promiser or a detriment to the promisee.").

VLSI attempts to escape its implicit adoption by stating that it took no affirmative steps to be bound and confirmed in writing to Intel that it was not bound by the License. Mot. 9-10. But one does not need to take affirmative steps to be bound to a contract; implicitly accepting the benefits of a contract with knowledge of its terms is enough, which is precisely what happened here. *Am. Legacy Found.*, 831 A.2d at 343-44.  It is also irrelevant for VLSI to claim it was not aware of the License.

As noted above, Fortress, which has common control over both Finjan and VLSI, reviewed the License before it acquired Finjan and knowingly brought VLSI under it.  Dkt. 579-03 [Intel Mot.] 20; Dkt. 584-3 [Hartstein Dep.] 49:20-50:14, 50:24-54:9, 69:6-12, 86:5-14; Dkt. 584-2 [Anderson Dep.] 23:5-13, 24:2-21, 31:9-32:12, 32:23-33:11; Dkt. 584-5 [Finjan Holdings, Inc. Schedule 14D-9] 3859-60; Ex. 2 [James Dep.] 16:15-16, 42:18-23; Ex. 5 [Northrop Dep.] 18:7-19, 40:8-16, 41:10-42:11, 46:17-47:23, 48:8-21, 50:4-12, 52:7-18, 54:23-55:5; 60:6-62:3, 62:4-25, 93:21-94:4.  *See also Finjan LLC v. Trustwave Holdings, Inc.*, 2021 WL 5051147, at *9 (D. Del. Oct. 29, 2021) (explaining where an acquirer conducts due diligence of an agreement before an acquisition, there is "no doubt" that the acquirer is aware of the agreement and its requirements).

The case law VLSI cites in support of its argument is inapposite.  Mot. 10-11.  *Alliance Data Systems v. Blackstone Capital Partners V* was not an implicit adoption case and the provision at issue did not involve a term defined to include "Affiliates."  963 A.2d 746, 760 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009).  *Sheehan v. Assured Partners, Inc.* was also not an implicit adoption case, and unlike here, the agreement there did not define "affiliates" to include companies that later become affiliates."  2020 WL 2838575, at *9 (Del. Ch. May 29, 2020).  The Report and Recommendation in *Truinject Corp. v. Nestle Skin Health, S.A.* likewise did not consider implicit adoption, the agreement did not define "Affiliates," and there was no evidence that the parent company performed any due diligence.  2020 WL 70981, at *9-12 (D. Del. Jan. 7, 2020; *see Finjan*, 2021 WL 5051147, at *9 (distinguishing *Truinject*).  In *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates S.A.S.*, the agreement signed by DuPont's subsidiaries did not purport to bind "Affiliates" to the arbitration clause, and DuPont was not a third-party beneficiary.  269 F.3d 187, 196-97 (3d Cir. 2001).  In *Meyers v. Quiz-DIA LLC*, the agreement defined one set of signatories as "QCE" without including subsidiaries, unlike how the License here expressly incorporates "Affiliates" into the definition of "Finjan."  2017 WL 76997, at *7-8 (Del. Ch. Jan. 9, 2017).  And *Arcadia Biosciences, Inc. v. Vilmorin & Cie* recognized that "there are cases in which parties can bind non-parties to a contract," did not address implicit adoption, and did not address whether a party that accepts a contract's benefits consequently adopts it, as happened here

1   when the acquisition extended the benefits of the License to Fortress and VLSI.  356 F. Supp. 3d

2   379, 391-93 (S.D.N.Y. 2019).

3          Having accepted the benefits of the License through Fortress, VLSI cannot now disclaim the

4   resulting burdens and license rights flowing to Intel under the same License.  *See Westendorf v.*

5   *Gateway 2000, Inc.*, 2000 WL 307369, at *4 (Del. Ch. Mar. 16, 2000) ("[O]ne who knowingly

6   accepts the benefits … under a contract voluntarily made by another in [sic] his or her behalf,

7   becomes bound by reason of such acceptance to perform his or her part of the contract."), *aff'd*, 763

8   A.2d 92 (Del. 2000).  Moreover, even without VLSI's implicit adoption of the License, Fortress's

9   own implicit adoption of the License still binds all companies under its control—including VLSI

10  (because Fortress sits at the top of the corporate family pyramid and asserts its authority to bind the

11  entities below it).

12          **E.      Res Judicata And Collateral Estoppel Do Not Preclude Intel's License Defense.**

13          Apparently recognizing the strength of Intel's license defense, VLSI seeks to avoid the merits

14  by arguing that Intel's license defense is barred by res judicata and collateral estoppel based on a

15  judgment from the Western District of Texas, which is currently on appeal to the Federal Circuit and

16  directly conflicts with an earlier District of Delaware ruling.   The Court should reject VLSI's

17  arguments.

18                **1.      Claim preclusion is inapplicable because the Texas action does not involve

19                        the same cause of action.**

20          VLSI asserts that Intel is barred from raising its license defense because it attempted to raise

21  "the same defense" in the Western District of Texas.  Mot. 4-6.  But VLSI ignores that the relevant

22  claim for purposes of res judicata is ***VLSI's infringement claim*** and that res judicata does not apply

23  to Intel's license defense here because the litigation in the Western District of Texas did not involve

24  the same claim or cause of action as this case.

25          Specifically, res judicata, or claim preclusion, applies where "(1) the same parties, or their

26  privies were involved in the prior litigation, (2) the prior litigation involved the same claim or cause

27  of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits."

28

1   *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (quoting *Central Delta Water*

2   *Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002)).

3           VLSI focuses its motion on whether the Texas action involved the "same license defense" as

4   this action.  Mot. 5.  The Supreme Court has noted there "may be good reasons to question any

5   application of claim preclusion to defenses."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp.,*

6   *Inc.*, 140 S. Ct. 1589, 1595 n.2 (2020).  But to the extent that claim preclusion can apply to a defense,

7   "a defense can be barred" under claim preclusion "only if the '***causes of action*** are the same' in the

8   two suits.'"  *Id.* at 1595 (emphasis added); *see Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir.

9   1991) ("While defenses to a 'claim' are extinguished by application of the doctrine of claim preclusion,

10  the facts related to the defense do not in themselves constitute the transaction or 'claim.'").  And in

11  evaluating whether two patent cases involve the same causes of action, courts "consider whether the

12  *same patents* are involved in both suits" and whether the "products or processes" accused in the two

13  suits "are essentially the same."  *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir.

14  2014); *see Foster*, 947 F.2d at 479-80 (holding the relevant "claim" for an invalidity defense is the

15  "same" only where the accused "devices in the two suits [are] essentially the same"); *In re*

16  *PersonalWeb Techs., LLC, et al. Patent Litig.*, No. 18-md-02834-BLF, 2019 WL 1455332, at *10

17  (N.D. Cal. Apr. 2, 2019) ("The Federal Circuit considers two factors to determine whether the same

18  cause of action is present for claim preclusion purposes:  (1) 'whether the same patents are involved

19  in both suits' and (2) whether 'the products or processes are essentially the same' in both suits.").

20          Here, there is no dispute that the action in the Western District of Texas involved ***different***

21  patents, ***different*** accused products, and ***different*** features from the patents that are asserted, and

22  products/features that are accused, in this case.  Therefore, the Texas action does not involve the same

23  claim or cause of action as this case, and VLSI's reliance on res judicata thus fails.  *See Kearns v.*

24  *General Motors Corp.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996) (holding that "[e]ach patent asserted

25  raises an independent and distinct cause of action"); *Advanced Cardiovascular Sys., Inc. v. SciMed*

26  *Life Sys., Inc.*, 989 F. Supp. 1237, 1245 (N.D. Cal. 1997) (holding that "the fact that the validity or

27  unenforceability of" two patents "was raised or could have been raised as a defense in previous

28

1 litigation between the parties does not preclude [defendant] from asserting invalidity or

2 unenforceability defenses to these patents in the context of different accused devices").

3 **2.      Issue preclusion is inapplicable for multiple reasons.**

4 VLSI also incorrectly argues that collateral estoppel (issue preclusion) bars Intel's license

5 defense because the Texas court previously "considered and rejected" Intel's arguments regarding the

6 license defense in denying Intel's motion to amend its answer in that case.  Mot. 6-7.  Contrary to

7 VLSI's argument, however, collateral estoppel does not bar Intel's license defense here because the

8 Texas court's ruling with respect to the merits of Intel's license defense was not essential to the

9 judgment, and the Texas court did not address all the issues relating to the license defense now before

10 this Court.

11 In particular, collateral estoppel, or issue preclusion, only "applies if:  (1) the issue necessarily

12 decided in the previous proceeding is identical to the one which is sought to be relitigated; (2) the first

13 proceeding ended with a final judgment on the merits; and (3) the party against whom collateral

14 estoppel is asserted was a party or in privity with a party at the first proceeding."  *e.Digital Corp. v.*

15 *Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014) (citing *Hydranautics v. FilmTec Corp.*, 204

16 F.3d 880, 885 (9th Cir. 2000)); *see Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d

17 1356, 1361 (Fed. Cir. 2006) ("Collateral estoppel is appropriate only if:  (1) the issue to be decided is

18 identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3)

19 resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full

20 and fair opportunity to litigate the issue in the first action." (quoting *Arkla, Inc. v. United States*, 37

21 F.3d 621 (Fed. Cir. 1994))).  Here, collateral estoppel is inapplicable because the license defense was

22 not "necessarily decided at the previous proceeding" and the issue decided in the Texas case is not

23 "identical" to the issue here.

24 ***First***, Judge Albright's ruling denying Intel's motion seeking leave to amend its answer to add

25 the license defense in the Western District of Texas does not trigger collateral estoppel because it

26 rested primarily on an alleged procedural default unique to the Texas litigation.  *See VLSI Tech. LLC*

27 *v. Intel Corp.*, 2022 WL 1261322, at *2-4 (W.D. Tex. Apr. 21, 2022).  In addition to concluding that

28 Intel's license defense was futile (a conclusion the Delaware court rejected), the Texas court held that

1    Intel waited too long to file its motion to amend and that allowing amendment so late in the case would

2    prejudice VLSI. *Id.* Both rulings are wrong because Intel put VLSI on notice of its defense less than

3    a month after Fortress acquired Finjan, moved to stay proceedings two weeks later, and filed its motion

4    to amend in the Texas action before it had even completed the mandatory dispute resolution process

5    with Finjan. *See VLSI Tech. LLC v. Intel Corp.*, No. 22-1906, ECF No. 17 at 66-72 (Fed. Cir. Sept.

6    14, 2022). But the existence of those other stated procedural grounds for denying leave to amend

7    mean that the Texas court's futility ruling was not essential to the judgment. *See* Restatement (Second)

8    of Judgments § 27, Comment i, at 259 ("If a judgment of a court of first instance is based on

9    determinations of two issues, either of which standing independently would be sufficient to support

10   the result, the judgment is not conclusive with respect to either issue standing alone."); *Comair Rotron,*

11   *Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1538 (Fed. Cir. 1995) ("[W]hen a judgment may have

12   been based on alternative grounds, any of which would be sufficient to support the result, the judgment

13   is not preclusive with respect to any ground standing alone.").

14        ***Second***, issue preclusion cannot apply because the Texas court did not actually address all the

15   license issues now before this Court. For example, while VLSI asserts that the Texas court found that

16   "VLSI is not owned or controlled by any of [the] part[ies] to the Finjan Settlement," Mot. 6-7, the

17   Texas court never addressed whether VLSI and FHL are under "common control" of Fortress—the

18   critical question in determining whether VLSI is an "Affiliate" under the License, and thus whether

19   VLSI's patents are included in that License. *See supra* § II.A. The Texas court also did not address

20   the issue of implicit adoption. Moreover, the Texas court denied Intel's motion to amend its answer

21   without a complete factual record. Here, by contrast, VLSI consented to Intel amending its answer to

22   add the license defense and there is a complete factual record that confirms Fortress's acquisition of

23   FHL brought VLSI under the License as an Affiliate. *See supra* § II.A.

24        ***Finally***, this Court should exercise its discretion not to apply res judicata or collateral estoppel

25   here, particularly where Intel has appealed the Texas court's ruling to the Federal Circuit and oral

26   argument will be held on October 5, 2023. *See VLSI Tech. LLC v. Intel Corp.*, No. 22-1906, ECF No.

27   17 at 66-72 (Fed. Cir. Sept. 14, 2022); *see also In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994)

28   ("[A] court is not without some discretion to decide whether a particular case is appropriate for

application of [issue preclusion]."); *SK Hynix Inc. v. Rambus Inc*., 2013 WL 1915865, at *3 (N.D. Cal. May 8, 2013) ("[A]pplication of the collateral estoppel doctrine is discretionary …."). This Court should deny VLSI's motion for summary judgment where a ruling by the Federal Circuit in Intel's favor will negate VLSI's purported basis for preclusion.

## III. VLSI'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY BASED ON IPR ESTOPPEL SHOULD BE DENIED.

Across ten pages of its motion (and two pages of an appendix, which result in the motion exceeding the 25-page limit in violation of the Local Rules and this Court's Standing Order), VLSI asserts that IPR estoppel entitles it to summary judgment of no invalidity with respect to three obviousness combinations for the '922 patent and three obviousness combinations for the '672 patent. But IPR estoppel applies only to "any ground that [a] petitioner raised or reasonably could have raised during" an IPR, 35 U.S.C. § 315(e)(2), and a petitioner in an IPR may only "request to cancel as unpatentable" claims "on a ground that could be raised under section 102 or 103 and ***only on the basis of prior art consisting of patents or printed publications***," *id.* § 311(b) (emphasis added). Here, multiple of Intel's obviousness combinations are not subject to IPR estoppel because they include product or process prior art that could not have been raised in an IPR. VLSI's motion also mischaracterizes the legal framework for IPR estoppel, misidentifies Intel's prior art references and grounds, and ignores important facts that undermine its position. Therefore, VLSI's motion should be rejected.

### A. IPR Estoppel Does Not Bar Intel's '922 Patent Obviousness Combination Based On The Nehalem Processor.

For the '922 patent, Intel's technical expert, Dr. Alyssa Apsel, has opined that the asserted claims are invalid as obvious based on Intel's prior art Nehalem processor product in combination with two references (Gunther and Willingham). Intel could not have raised this prior art combination in an IPR because the Nehalem processor product is neither a patent nor a printed publication. Therefore, IPR estoppel cannot block this obviousness combination because IPR estoppel does not bar combinations that include product prior art, even when the product prior art is combined with patents or printed publications. *See, e.g.*, *In re Koninklijke Philips Pat. Litig.*, 2020 WL 7392868, at *26-27

(N.D. Cal. Apr. 13, 2020) (holding "IPR estoppel does not apply to [] product prior art grounds" even where the product was described by product guides and manuals); *Microchip Tech. Inc. v. Aptiv Servs. US LLC*, 2020 WL 4335519, at *4 (D. Del. July 28, 2020) ("Section 311 therefore does not estop references based on physical prior art, whether standing alone or in combination with a printed reference."); *Polaris Indus., Inc. v. Arctic Cat Inc.*, 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019) (holding "products embodying patents or printed publications are not subject to § 315(e)(2) estoppel"); *Zitovault, LLC v. Int'l Bus. Machs. Corp.*, 2018 WL 2971178, at *4 (N.D. Tex. Apr. 4, 2018) (rejecting argument that IPR estoppel may apply "where all of the teachings of the system also exist in patents or printed publications"); *Intellectual Ventures II LLC v. Kemper Corp.*, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016) ("[R]egardless of any estoppel, … [t]his ability to raise such prior art systems in a subsequent district court litigation ***is always present***." (emphasis added)); *Willis Elec. Co. v. Polygroup Macau Ltd.*, 2023 WL 112733, at *18-20 (D. Minn. Jan. 5, 2023) ("Because a physical product is *not* a type of prior art reference that can be raised in IPR proceedings, IPR estoppel cannot bar [defendant] from advancing invalidity theories of anticipation or obviousness based on the [prior art product]."); *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 2022 WL 2643517, at *2 (D. Del. July 8, 2022) ("IPR estoppel does not apply to … anticipation and obviousness counterclaims and defenses based on the asserted prior-art products in this case.").  VLSI ignores these cases and asserts that IPR estoppel bars that obviousness theory, but none of its arguments has merit.

***First***, VLSI begins by arguing that because Dr. Apsel did not "actually examine[] a physical Nehalem product … Intel should be estopped from relying on the documents its experts did review." Mot. 21 (emphasis omitted).  But VLSI cites no legal authority for that new per se rule—which would require a finding of IPR estoppel for all product prior art absent an expert's inspection of the actual product—because that is not the law.  In fact, multiple courts have held that an expert need not examine a prior art product, particularly where a plaintiff "does not contend that the documentation fails to describe the product accurately." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 604 (D. Mass. 2018); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 512 (D. Del. 2022) (holding "expert need not have inspected or tested the devices in order to rely upon them for purposes of invalidity" because "[c]ourts … have allowed the functions of prior art devices

1  to be established through the use of documents and testimony" (citing *SiOnyx*, 330 F. Supp. 3d at

2  604)); *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1028-29 (N.D. Cal. 2016)

3  (rejecting argument that defendant's invalidity theory failed where the prior art device was not

4  admitted at trial because the Federal Circuit has held "that materials other than the invalidating device

5  itself may provide substantial evidence of the device's functionality for the purposes of proving

6  invalidity" (citing *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1263 (Fed. Cir. 1991))).[3]

7       ***Second***, VLSI contends that IPR estoppel applies to Dr. Apsel's Nehalem-based obviousness

8  combination because, in describing the Nehalem processor, she cites two presentations (Nehalem HC

9  and Nehalem IDF) that could have been asserted in an IPR as printed publications.  Mot. 20-23.  As

10  an initial matter and as explained above, however, multiple courts have held that IPR estoppel cannot

11  apply to an obviousness combination that includes ***product*** prior art ***regardless*** of whether the relevant

12  aspects of the product were also described in printed publications.  *See supra* pp. 15-16.  Ignoring

13  those decisions, VLSI instead relies exclusively on other decisions stating that invalidity grounds

14  involving product prior art can be estopped if all relevant aspects of the product are "adequately

15  described" in or "materially identical" to the disclosure contained in a printed publication that could

16  have been asserted in an IPR.  Mot. 20-21.

17       But IPR estoppel still would not apply here under those decisions because the Nehalem product

18  is neither "adequately described in" or "materially identical" to the disclosures in the Nehalem HC

19  and Nehalem IDF presentations.  Indeed, contrary to VLSI's claim, Dr. Apsel's Nehalem-based

20  opinions do not "rel[y] ***entirely***" on the Nehalem HC and Nehalem IDF presentations, Mot. 22

21

22  [3] VLSI's only cited decision merely held that the defendant "cannot rely *solely* on otherwise estopped

23  printed publications or patents to describe how a physical device works and then argue that they are

24  actually relying on a physical device."  *Boston Sci. Corp. v. Cook Grp. Inc.*, 2023 WL 1452172, at *33

25  (S.D. Ind. Jan. 31, 2023).  And even that decision noted that the defendant ***can*** rely on "some ***other***

26  product-related evidence that could not have been introduced in an IPR proceeding as a prior art

27  reference," which is what Dr. Apsel did here (as discussed further below).  *Id.* (emphasis added)

28  (quoting *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2020 WL 5512132, at *5 (N.D. Ill. Sept. 14, 2020)).

1  (emphasis added), and instead rely on **additional** evidence describing Nehalem that could **not** have

2  been raised in the IPR.  *See In re Koninklijke Philips*, 2020 WL 7392868, at *26-27 (holding estoppel

3  does not apply where defendant did not rely entirely on published documents, but instead relied upon

4  additional product evidence that would have been unavailable in the IPR); *SPEX Techs. Inc. v.*

5  *Kingston Tech. Corp.*, 2020 WL 4342254, at *15 (C.D. Cal. June 16, 2020) ("[R]eliance on some

6  printed publications in an overall collection of documents being used to describe a system invalidity

7  theory should not lead to estoppel of the overall system invalidity theory itself, nor piecemeal

8  exclusion of the printed publications underlying that system invalidity theory[.]"); *CliniComp Int'l,*

9  *Inc. v. Athenahealth, Inc.*, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020) (finding no IPR estoppel

10  when expert "does not rely solely on publicly available documents" but "opinions [we]re [also]

11  supported by non-public documents and other information that are not 'printed publications'" that

12  could have been raised in IPR proceeding); *IOENGINE*, 607 F. Supp. 3d at 512 (IPR estoppel does

13  not apply where defendant asserted that some of the documents on which it relies to describe prior art

14  device "would not have been publicly available and could not reasonably have been relied upon in an

15  IPR proceeding" and plaintiff "has not demonstrated that there is no genuine dispute of material fact

16  with respect to whether the documents relating to the [product] could have been raised in an IPR").

17  For example, for her Nehalem-based opinions, Dr. Apsel relies extensively on a completely

18  different document—the Intel Tech Journal—for over 25 limitations across every asserted claim of

19  the '922 patent.  *E.g.*, Dkt. 588-7 [Apsel Rpt.] ¶¶ 780-83, 804, 807, 820-21, 827, 833, 836, 839-40,

20  844, 847, 851-52, 854-55, 860, 862, 870, 872, 890, 894, 902, 915, 921, 923, 930, 935-37, 940, 943,

21  946, 949, 953, 956-57, 959-60.  Although the Intel Tech Journal is dated in 2010—i.e., after the '922

22  patent was filed on June 5, 2009—it discloses details regarding how the prior-art Nehalem product

23  worked before the '922 patent was filed.  Because the Intel Tech Journal is not itself prior art, however,

24  it could not have been asserted as a printed publication in the IPR.  *See Mahurkar v. C.R. Bard, Inc.*,

25  79 F.3d 1572, 1576 (Fed. Cir. 1996) ("[A] document is prior art only when published before the

26  invention date."); *Acceleron, LLC v. Dell, Inc.*, 2020 WL 10353767, at *3 (N.D. Ga. Mar. 30, 2020)

27  (holding IPR estoppel does not apply where defendant relied on "corroborating references" for a prior

28  art system "dated after the priority date of the [asserted] patent and could not have been used in [an]

IPR"). This alone precludes summary judgment even under VLSI's theory that IPR estoppel applies where a prior art product is "adequately described" in or "materially identical" to a prior art printed publication. *See In re Koninklijke Philips*, 2020 WL 7392868, at \*26-27; *SPEX Techs.*, 2020 WL 4342254, at \*15; *CliniComp Int'l*, 2020 WL 7011768, at \*2; *Willis Elec.*, 2023 WL 112733, at \*19 n.5; *IOENGINE*, 607 F. Supp. 3d at 512.

VLSI asserts that the Intel Tech Journal does not provide any additional detail about the prior-art Nehalem product beyond the disclosures in the Nehalem HC and Nehalem IDF presentations. Mot. 23. However, VLSI offers no support for that assertion, which thus can be disregarded as conclusory. *See Vivid Techs.*, 200 F.3d at 812. VLSI also ignores that, for the "power island" limitations of the asserted '922 claims, Dr. Apsel relies on infrared emission physical device images of Nehalem from the Intel Tech Journal as evidence that the Nehalem cores "[we]re controlled separately from the rest of the SoC (the 'uncore') by powering [on or] off while the uncore remains powered":



*Figure 6: Infrared emission images of the Lynnfield (a product based on Nehalem architecture) die during various power states*

Dkt. 588-7 [Apsel Rpt.] ¶¶ 782-83; Ex. 6 [Intel Tech Journal] 56, 58-59. Because these images and related disclosures *are not found anywhere in the Nehalem HC or Nehalem IDF presentations*, VLSI cannot meet its burden on summary judgment to show that the relevant aspects of the Nehalem processor products are "adequately described" in or "materially identical" to the disclosures contained in the Nehalem HC and IDF presentations.

Likewise, for her conclusion that there would have been a reasonable expectation of success in modifying Nehalem's power gates to operate as voltage regulators (relevant to the "power converter" limitations of the asserted claims), Dr. Apsel relies on an internal Intel Nehalem Microarchitectural Specification (MAS) document that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ████████████████████████████████████████—a fact also not disclosed in the Nehalem

2   HC or IDF presentations.  Dkt. 588-7 [Apsel Rpt.] ¶ 824; Ex. 7 [Nehalem MAS] 8.  Nor could the

3   Nehalem MAS document have been used in the IPR proceeding because it is a confidential Intel

4   document, and thus not a public "printed publication" under 35 U.S.C. § 311(b).  *See Acceleration*

5   *Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 772-74 (Fed. Cir. 2018) ("Whether a reference

6   qualifies as a printed publication under § 102 is a legal conclusion based on underlying fact findings,"

7   including "the touch-stone" issue of whether the reference was "publicly accessible."); *Cordis Corp.*

8   *v. Bos. Sci. Corp.*, 561 F.3d 1319, 1333-35 (Fed. Cir. 2009) ("In general, '[a]ccessibility goes to the

9   issue of whether interested members of the relevant public could obtain the information[.]'" (first

10  alteration in original) (citation omitted)); *IMX, Inc. v. LendingTree, LLC*, 405 F. Supp. 2d 479, 491

11  (D. Del. 2005) ("[T]he Mortrade User's Manual was designated 'Highly Confidential—Attorneys

12  Eyes Only' under the protective order of this case, suggesting that it is a confidential document that

13  was not and is not publicly accessible.").

14          Because Dr. Apsel's Nehalem combination relies on documents unavailable in the IPR that

15  also disclose details absent from the Nehalem HC or IDF presentations, VLSI's cited cases are

16  distinguishable.  In *Avanos Medical Sales, LLC v. Medtronic Sofamor Danek USA, Inc*, the court

17  applied estoppel because it found that, unlike here, all the limitations "were adequately described in

18  the publicly available documents."  2021 WL 8693677, at *2 (W.D. Tenn. Oct. 8, 2021).  And in

19  *Boston Scientific*, *Wasica*, and *Hafeman*, the courts found estoppel after concluding that a prior art

20  patent or printed publication was "materially identical" to the device—again, which is not the case

21  here given that Dr. Apsel relies on multiple aspects of Nehalem disclosed in the non-prior art Intel

22  Tech Journal and confidential Nehalem MAS document that are not found in the Nehalem HC or IDF

23  presentations.  *Bos. Sci. Corp.*, 2023 WL 1452172, at *34, *36; *Wasica Fin. GmbH v. Schrader Int'l,*

24  *Inc.*, 432 F. Supp. 3d 448, 455 (D. Del. 2020); *Hafeman v. LG Elecs., Inc.*, 2023 WL 4362863, at *1

25  (W.D. Tex. Apr. 14, 2023).  And because Dr. Apsel's Nehalem grounds substantively rely on

26  documents that could not have been asserted in an IPR, Intel is not attempting to "skirt" estoppel by

27  "simply swapping labels," as VLSI contends, Mot. 21, 23, and so the grounds are distinguishable from

28  the situations described in *California Institute of Technology* and *Milwaukee Electric*—neither of

1  which applied IPR estoppel to a product prior art reference in any event.  *See California Inst. of Tech.*

2  *v. Broadcom Ltd.*, 2019 WL 8192255, at \*7-8 (C.D. Cal. Aug. 9, 2019); *Milwaukee Elec. Tool Corp.*

3  *v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017).  Thus, summary judgment of estoppel

4  cannot enter even under VLSI's cited cases.

5        ***Finally***, VLSI argues that Intel could have brought the same ground in the IPR using the

6  Nehalem HC and Nehalem IDF presentations.  Mot. 22-23.  As discussed above, however, there are

7  material differences between Dr. Apsel's invalidity arguments in this proceeding and those that VLSI

8  alleges could have been raised based on the lesser detail disclosed in the two presentations.  *See supra*

9  pp. 17-21.  Moreover, VLSI's suggested IPR ground would have required ***four*** references (Nehalem

10  HC, Nehalem IDF, Gunther, and Willingham), while Dr. Apsel relies on a different ***three***-reference

11  combination (Nehalem processor combined with Gunther and Willingham).  Dkt. 588-7 [Apsel Rpt.]

12  ¶¶ 771-961.  Because VLSI's added references would have required further proof not required for Dr.

13  Apsel's actual obviousness argument (e.g., at the very least, evidence concerning a motivation to

14  combine the added references with the other references), the grounds are not even the "same."  *See In*

15  *re Koninklijke Philips*, 2020 WL 7392868, at \*27 ("Had ASUS used the same references in an IPR,

16  some of the evidence would have been unavailable, and ASUS would have had to show motivation to

17  combine for the remaining printed publications.  ASUS therefore could not have brought its product

18  prior art invalidity grounds using the same theory, evidence, and arguments in the IPR, and they

19  constitute different 'grounds.'  Accordingly, ASUS could not have raised the product prior art grounds

20  in the IPR and is not estopped on that basis." (footnote omitted)).

21       **B.**    **IPR Estoppel Does Not Bar Intel's Prior Art Obviousness Combination For The**

22            **'672 Patent Based On Intel's P1264 Process.**

23        For the '672 patent, Intel's technical expert Dr. Patrick Fay has opined that the asserted claims

24  of the '672 patent are invalid as obvious in view of Intel's P1264 prior art process in combination with

25  a prior art Japanese Patent Application ("Okada") and prior art book ("Lee Book").  Like with the

26  Nehalem product prior art combination discussed above, Intel could not have raised this combination

27  involving the P1264 prior art process in an IPR because the P1264 prior art process is neither a patent

28  nor a printed publication.  Therefore, IPR estoppel ***cannot*** apply to the P1264 process at issue here

asserted under 35 U.S.C. § 102(g), even when combined with patents and/or printed publications.  *See supra* pp. 15-16; *see also Medline Ind., Inc. v. C.R. Bard, Inc.*, 2020 WL 5512132, at *4-5 (N.D. Ill. Sept. 14, 2020) (noting IPR estoppel generally does not apply where litigation invalidity ground "relies upon at least one product or non-patent/non-printed publication as a prior art reference"); *Depomed, Inc. v. Purdue Pharma L.P.*, 2016 WL 8677317, at *8 (D.N.J. Nov. 4, 2016) (holding defendant's use of confidential documents and publications did not transform a § 102(g) prior art product into a statutory ground that could have been raised in an IPR).  VLSI ignores the cases that hold that IPR estoppel cannot apply to this combination and asserts that IPR estoppel bars this obviousness defense, Mot. 23-25, but VLSI's argument fails for multiple additional reasons.

*First*, VLSI argues that because Dr. Fay did not "actually examine[] . . . the P1264 process for [his] analyses, instead relying on Intel documents describing their products," Intel "should be estopped from relying on the ***documents*** its experts did review."  Mot. 21 (emphasis in original).  But as explained above in Section III.A, the law does not impose an inspection requirement as a predicate to rely on product/process prior art following an unsuccessful IPR.  To be sure, it would be particularly unfair to do so in circumstances like here where Dr. Fay is relying on a prior art process used two decades ago and no longer in use today.

*Second*, VLSI argues that IPR estoppel applies because the P1264 prior art process is "entirely duplicative" or cumulative of Okada and the Lee Book that Dr. Fay relies upon for his obviousness combination.  Mot. 23-24.  But VLSI's argument has been repeatedly rejected, including by courts in this District.  *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 109063, at *6 (N.D. Cal. Jan. 9, 2020) ("GoPro can assert invalidity based on grounds that might be 'cumulative or redundant' of grounds raised during IPR as long as it does so by relying on references or combinations of references that were unavailable."); *Pact XPP Schweiz AG v. Intel Corp.*, 2023 WL 2631503, at *6 (D. Del. Mar. 24, 2023) ("PACT tries to string together printed references that it claims are 'cumulative' of the physical products.  But PACT hasn't pointed me to any legal basis to parse Intel's legal contentions to decide whether the physical device portion is 'cumulative.'"); *Microchip Tech.*, 2020 WL 4335519, at *4  ("Microchip has not pointed the Court to any legal basis to parse Aptiv's

1   invalidity contentions to decide whether the physical device portion is gratuitous.").[4]

2          In any event, Dr. Fay disputes VLSI's claim that Intel's P1264 prior art process is "cumulative"

3   of Okada and the Lee Book, Ex. 8 [Fay Reply] ¶ 38 (explaining "Okada did not teach the ███████

4   used in the P1264 Package Process"), and the existence of that factual dispute also precludes summary

5   judgment.  *See Microchip Tech.*, 2020 WL 4335519, at *4 ("Aptiv's expert will testify that the

6   combination is significant.  The Court has no basis to disregard such testimony and disregard those

7   references."); *Pact XPP*, 2023 WL 2631503 at *6 ("Intel disputes whether the documents PACT cites

8   were either available to it or include all the relevant features of the physical product, and its expert

9   will testify that the combination of the physical and printed prior art is significant.  I have no basis to

10  disregard such testimony and those references.").

11         ***Finally***, VLSI alternatively alleges that IPR estoppel applies because the P1264 process was

12  disclosed in "Yeoh, a prior art publication written by its own engineers," and that Intel "cannot dispute

13  that it could have raised Yeoh … during IPR to disclose the use of copper die bumps."  Mot. 25.  But

14  that is simply not true.  By VLSI's own admission, Mot. 25, Yeoh was published in *2006*—i.e., ***after***

15  VLSI's claimed priority date of May 6, *2004* and the April 28, *2005* U.S. filing date of the '672 patent.

16  Dkt. 1-7 ['672 patent] Cover; Dkt. 407-2 [Infringement Contentions] 14; Dkt. 586-42 [Yeoh].  In short,

17  Yeoh is ***not*** prior art, and thus could not have been asserted as a prior at reference in the IPR.

18         C.      **IPR Estoppel Does Not Bar Intel's Prior Art Obviousness Combination For The**

19                 **'672 Patent That Relies On Applicant Admitted Prior Art And The Lee Book.**

20         For the '672 patent, Dr. Fay has disclosed a separate invalidity opinion that relies on applicant

21  ────────────

22  [4] VLSI cites *Singular Computing LLC vs. Google LLC*, but that case in fact rejected VLSI's argument.

23  *See* 2023 WL 2839282, at *4 (D. Mass. Apr. 6, 2023) ("The Patent Act says nothing about estopping

24  invalidity claims that are 'cumulative' or 'duplicative' of those raised in an IPR proceeding.").

25  Contrary to VLSI's argument that *Singular Computing* supposedly requires exclusion of the P1264

26  process, the decision explicitly explained that nothing in the Patent Act "specif[ies] that evidence

27  outside of patents or publications is permissible only when the evidence provides the *sole* support for

28  a claim limitation."  *Id.* (emphasis in original).

1   admitted prior art ("AAPA")—i.e., admissions regarding prior art contained in the '672 patent—in

2   combination with the Lee Book. Dkt. 588-8 [Fay Rpt.] ¶¶ 139-88 (explaining why claim 2 of the '672

3   patent is invalid as obvious over AAPA and the Lee Book). VLSI does not move for summary

4   judgment based on that combination, and instead argues that "VLSI is entitled to summary judgment

5   of no invalidity concerning Intel's combination of Okada, Zakel, and Lee Book." Mot. 20. But that

6   argument should be rejected because Intel does not rely on any such prior art combination.

7   Nor would it be proper for VLSI to equate the AAPA portion of Dr. Fay's opinion with Okada

8   and Zakel. Although the '672 patent mentions both Okada and Zakel, they are described as mere

9   examples of what was known in the art. Dkt. 1-7 ['672 patent] 1:4-24 (describing the method and

10  assembly that "the invention" "relates to," and stating that "[s]uch a method and such an assembly are

11  *for instance* known from [Okada] …." (emphasis added)), 3:23-26 ("The solder composition of the

12  invention is preferably applied using a technique that is known per se as immersion soldering. This

13  technique is *for instance* disclosed in [Zakel]." (emphasis added)). Therefore, Okada and Zakel are

14  not substitutes for the applicant's *broader* admissions about the prior art.

15  VLSI also has not even attempted to address whether Intel could have raised the AAPA in an

16  IPR. VLSI does not even mention the Federal Circuit's holding that AAPA does not "constitute[]

17  'prior art consisting of patents or printed publications.'" *See Qualcomm Inc. v. Apple Inc.*, 24 F.4th

18  1367, 1372-75 (Fed. Cir. 2022). And although the Federal Circuit held that AAPA cannot form the

19  "basis" of a ground in an IPR, *id.*, VLSI has not even attempted to address whether the applicant

20  admitted prior art here forms the "basis" of Intel's prior art combination.

21          **D.      Intel Should Not Be Estopped From Raising Its Other Obviousness Grounds For**

22                   **The '922 And '672 Patents.**

23  Intel also has provided separate invalidity grounds based on a combination of Rakshani and

24  Khellah for the '922 patent, a combination of Rakshani and Willingham for the '922 patent, and a

25  combination of Paul, Shibata, and Basol for the '672 patent. VLSI argues that IPR estoppel blocks

26  these grounds because Intel could have raised them in IPRs. Mot. 18, 28. But although the Federal

27  Circuit has held that IPR estoppel attaches to "all grounds … which reasonably could have been

28  asserted against the claims *included in the petition*," *California Inst. of Tech. v. Broadcom Ltd.*, 25

F.4th 976, 991 (Fed. Cir. 2022) (emphasis added), Intel respectfully preserves its position that IPR estoppel should not bar these prior art grounds because the plain text of the estoppel statute provides that IPR estoppel applies to "any ground that the petitioner raised or reasonably could have raised *during that inter partes review*," 35 U.S.C. § 315(e)(2) (emphasis added). An IPR does not begin until after institution. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1371 (2018) (distinguishing between the pre-institution and post-institution stages and describing the period after institution as occurring "[d]uring the inter partes review"); *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016) ("The IPR does not begin until it is instituted."), *overruled by California Inst. of Tech.*, 25 F.4th at 991. And the ability to include a ground in a petition does not guarantee the ability to raise the ground during an instituted IPR, especially given the discretion that the Patent Office exercises to deny review. *See Oil States*, 138 S. Ct. at 1371 ("The decision whether to institute inter partes review is committed to the Director's discretion.").

There is no dispute that Intel did *not* raise obviousness grounds in any IPR petitions for the '922 patent based on a combination of Rakshani and Khellah or a combination of Rakshani and Willingham, and for the '672 patent based on a combination of Paul, Shibata, and Basol. Therefore, Intel respectfully preserves its argument that under a correct reading of 35 U.S.C. § 315(e)(2), it should not be estopped from raising these obviousness grounds.

IV.   **CONCLUSION**

For these reasons, VLSI's motions for summary judgment should be denied.

1    Respectfully submitted,

2    Dated: September 21, 2023

3                                                      */s/ Mark D. Selwyn*

4                                          Mark D. Selwyn (CA SBN 244180)
                                           WILMER CUTLER PICKERING
5                                             HALE AND DORR LLP
                                           2600 El Camino Real, Suite 400
6                                          Palo Alto, California 94306
                                           Telephone:  (650) 858-6000
7                                          Facsimile:  (650) 858-6100
                                           Mark.Selwyn@wilmerhale.com

8                                          William F. Lee (*pro hac vice*)
                                           Louis W. Tompros (*pro hac vice*)
9                                          Dominic E. Massa (*pro hac vice*)
                                           WILMER CUTLER PICKERING
10                                            HALE AND DORR LLP
                                           60 State Street
11                                         Boston, MA  02109
                                           Telephone: (617) 526-6000
12                                         Facsimile: (617) 526-5000
                                           William.Lee@wilmerhale.com
13                                         Louis.Tompros@wilmerhale.com
                                           Dominic.Massa@wilmerhale.com
14

15                                         Amanda L. Major (*pro hac vice*)
                                           WILMER CUTLER PICKERING
16                                            HALE AND DORR LLP
                                           2100 Pennsylvania Avenue NW
17                                         Washington, DC 20037
                                           Telephone: (202) 663-6000
18                                         Facsimile: (202) 663-6363
                                           Amanda.Major@wilmerhale.com
19

20                                         David C. Marcus (CA SBN 158704)
                                           WILMER CUTLER PICKERING
21                                            HALE AND DORR LLP
                                           350 S. Grand Avenue, Suite 2400
22                                         Los Angeles, CA  90071
                                           Telephone: (213) 443-5300
23                                         Facsimile: (213) 443-5400
                                           David.Marcus@wilmerhale.com
24

25                                         *Counsel for Defendant*
                                           Intel Corporation
26

27

28