# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>INTEL CORPORATION,<br><br>　　　　Defendant. | Case No. 17-cv-05671-BLF<br><br>**ORDER GRANTING ADMINISTRATIVE MOTION TO SEAL; GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED; DENYING ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**<br><br>[Re: ECF Nos. 537, 538, 539, 540, 551, 552, and 617] |

Before the Court are Intel Corporation's ("Intel") Administrative Motions regarding its Omnibus Daubert Motion and Exhibits (ECF No. 541):

1. Administrative Motion to File Under Seal (Renewed) Portions of Its Omnibus Daubert Motion and Exhibits 1-11, 13, 16-18, 20, and 22-24. ECF No. 617.
2. Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in Connection with Intel's Memorandum of Points and Authorities in Support of Its Omnibus Daubert Motion and Exhibits 1-15, 18, 20, 22, and 23 Thereto. ECF No. 537.
3. Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in Connection with Exhibits 1 and 2 to Intel's Memorandum of Points and Authorities in Support of Its Omnibus Daubert Motion. ECF No. 538.
4. Administrative Motion to Consider Whether Another Party's Material Should Be

1  Sealed in Connection with Exhibit 5 to Intel's Memorandum of Points and Authorities
2  in Support of Its Omnibus Daubert Motion.  ECF No. 539.
3  5. Administrative Motion to Consider Whether Another Party's Material Should Be
4  Sealed in Connection with Intel's Memorandum of Points and Authorities In Support
5  Of Its Omnibus Daubert Motion and Exhibits 1, 2, 3, 4, 13, 16, and 17 filed by Intel
6  Corporation.  ECF No. 540.
7  6. Administrative Motion to Consider Whether Another Party's Material Should Be
8  Sealed in Connection with Intel's Memorandum of Points and Authorities in Support of
9  Its Omnibus Daubert Motion and Exhibits 1, 2, 3, 4, 13, 16, and 17.  ECF No. 551.
10 7. Administrative Motion to Consider Whether Another Party's Material Should Be
11 Sealed in Connection with Exhibits 1 and 2 to Intel's Memorandum of Points and
12 Authorities in Support of Its Omnibus Daubert Motion 541 filed by Intel Corporation.
13 ECF No. 552.
14 For the reasons described below, the motions are GRANTED.

## I. BACKGROUND

Intel filed its Omnibus *Daubert* Motion ("Motion") on July 25, 2023.  ECF No. 541.  That same day, Intel filed an Administrative Motion to File Under Seal regarding Intel's information in the Motion.  ECF No. 536.  The Court denied that administrative motion (*see* ECF No. 577) without prejudice, and Intel filed a renewed motion on September 5, 2023.  ECF No. 617.

Intel filed four additional motions on July 25, 2023 seeking to seal other parties' information in connection with the Motion.  ECF No. 537 (VLSI); ECF No. 538 (NXP USA, Inc. ("NXP") and Franklin FundingCo, LLC); ECF No. 539 (Microsoft Corporation, HP, Inc., and Lenovo Group Limited); ECF No. 540 (Wisconsin Alumni Research Foundation, MicroUnity Systems Engineering, Inc., NVIDIA Corporation, International Business Machines Corporation, Foundation for Advancement of International Science, Daedalus Prime LLC, Daedalus Group LLC, UNM Rainforest Innovations, Tahoe Research, Ltd., IP Value Management Group, LLC, IPValue Management, Inc., Longitude Licensing Limited).

On July 27, Intel filed two additional sealing motions seeking to seal other parties'

information in connection with the Motion.  ECF No. 551 (Dell Inc.); ECF No. 552 (Test Research, Inc., VIA Technologies, Inc., Catalyst Semiconductor, Inc., Acer Incorporated, and/or Sharp Corporation).

On August 21, 2023, Intel notified the Court that it had served the following parties (*see* ECF No. 578): Microsoft Corporation, HP, Inc., Lenovo Group Limited, International Business Machines Corporation, Daedalus Group LLC, Daedalus Prime LLC, Longitude Licensing Limited, Tahoe Research Ltd., IP Value Management Group LLC, IPValue Management, Inc., and Dell Inc.);

On September 1, 2023, Intel notified the Court that it had served the following parties (see ECF No. 610): NVIDIA Corporation UNM Rainforest Innovations Acer Incorporated Sharp Corp. Test Research USA, Inc. VIA Technologies, Inc. Allied Security Trust I (AST) Casio Computer Co. Ltd. International Business Machines Corporation Contour Semiconductor Inc. KLA-Tencor, which acquired Luminescent Technologies, Inc. P&IB Co., Ltd. Verayo, Inc. TechInsights Inc., which acquired Chipworks Inc. Fortress Investment Group LLC Finjan Software, Inc. and Finjan, Inc. Foundation for Advancement of International Science (FAIS) Wisconsin Alumni Research Foundation Microsoft Corporation.  Intel further notified the Court the Plaintiff VLSI served NXP.

Plaintiff and several non-parties provided declarations regarding Intel's Administrative Motions:

1. ECF No. 617: no declarations in support of sealing other than those filed with ECF No. 617.
2. ECF No. 537: Corrected Declaration of Charlotte J. Wen and exhibits (VLSI).  The Court disregards ECF Nos. 631 and 632, which ECF No. 635 appears to correct.
3. ECF No. 538: Declaration of Charlotte J. Wen and exhibits (NXP).  ECF Nos. 621, 625.
4. ECF No. 539: no declarations in support of sealing.
5. ECF No. 540:
    a. Declaration of Mavrakakis and exhibits (IBM).  ECF No. 608, 630.
    b. Declaration of Boaz Brickman (IPValue Management, Inc., IPValue

3

Management Group, LLC, and Tahoe Research, Ltd.). ECF No. 609.

    c.    Declaration of Elizabeth J. Kuttilla (UNMRI). ECF No. 615.

6. ECF No. 551: no declarations in support of sealing.

7. ECF No. 552: no declarations in support of sealing.

## II. LEGAL STANDARD

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178–79.

Records attached to motions that are "not related, or only tangentially related, to the merits of a case," however, are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action."). Parties moving to seal the documents attached to such motions must meet the lower "good cause" standard of Rule 26(c). *Kamakana*, 447 F.3d at 1179 (internal quotations and citations omitted). This standard requires a "particularized showing," *id.*, that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

4

## III. DISCUSSION

The documents at issue in Intel's motions to seal are associated with its *Daubert* motions. These opinions concern infringement and invalidity of the patents at issue in the case, available damages for the alleged infringement, and efforts to strike or exclude expert opinions. These issues are "more than tangentially related to the merits of [the] case" and therefore Intel must provide "compelling reasons" for maintaining the documents under seal. *See Ctr. for Auto Safety*, 809 F.3d at 1101; *see also Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-5659 WHA, 2021 WL 1091512, at *1 (N.D. Cal. Feb. 10, 2021).

### A. ECF No. 617

Intel seeks to seal selected excerpts from its Motion for Summary Judgment and several of the exhibits. Intel argues that compelling reasons exist to seal the material it seeks to seal "because maintaining the confidentiality of the technical information regarding Intel's product design and operation, including proposed designs, and manufacturing processes is critical to Intel's business." ECF No. 617 at 11. Intel further explains that "[k]nowledge of this information by third parties would put Intel at a competitive disadvantage in future product development and in its business dealings as its competitors could incorporate that information into their own development strategies and products to gain an unfair advantage over Intel in the market." *Id.* Intel bolsters these arguments by providing additional details in the declaration of Mark Selwyn. See Selwyn Decl. (ECF No. 617-1).

The Court finds that compelling reasons exist to seal the highlighted portions of the document. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored. The Court's ruling is summarized below:

\\

| ECF or Exhibit No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
|  | Intel's Omnibus Daubert Motion | Green-boxed portions | Granted, as green-boxed portions contain highly confidential information regarding Intel's licenses, including the scope of Intel's license agreements and other confidential licensing information. Selwyn Decl. ¶ 17. |
| Exhibit 1 | Excerpt of the April 20, 2023 Expert Report of Ryan Sullivan, Ph.D | Green boxed portions | Granted, as green-boxed portions of pages 39 (paragraphs 79, 80), 42, 43, 45, 47, 52-56, 169 (paragraph 301), 170, 180-186, 188, 190-191, 194-195, 196 (paragraph 364), 204-211, 216-218, Attachment B-1 and B-2 of Exhibit 1 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; Intel's manufacturing capacity; and the source code for accused products.  Selwyn Decl. ¶ 18a.<br><br>Furthermore, green-boxed portions of pages 9, 39 (paragraph 82), 40, 41, 91-98, 100-101, 109, 114, 125, 139, 141, 143, 144, 166, 171, 176-187, 190-191, 196 (paragraph 366), 197-199, 201-202, 205-207, 212-214, 219-232, 237, 247-248, Attachments D-1, D-2, D-3, D-6, D-7, D-8, F-7, F-8, F-9, G-2, H-1, H-2, H-3, H-4, I-1, I-2, I-3, I-4, I-5, J-1 through J-19, K-1, L-1, L-2, M-6, M-7, N-1, N-8, N-10, N-11, N-14 reveal highly confidential information regarding Intel's financial decisions such as Intel's revenues, profits and costs; Intel's quarterly profit bonus program; sales volume; market research about willingness to pay for various features; market research regarding how features will affect Intel's competitiveness; analysis regarding how implementation of certain design choices could affect Intel's costs; and Intel's pricing strategy, including discounts and rebates. Selwyn Decl. ¶ 18b.<br><br>Furthermore, green-boxed portions of Attachments F-1, F-2, F-3, F-4, F-6, L-3, M-9, M-10 through M-16 could be used to derive Intel's confidential financial information, including product price and the volume of |

6

| | | | |
|---|---|---|---|
| | | | Intel's sales. *Id.*<br><br>Furthermore, green-boxed portions of Attachments N-1, N- 4, N-5, N-10, N-11, N-12, N-13, N-14, N-15 reveal confidential MMIDs (unique identifier Intel assigns to products). Intel's sales, billing, and pricing records are kept based on MMIDs and therefore these confidential MMIDs could reveal to competitors Intel's confidential strategy decisions regarding how Intel subdivides its products into different MMIDs, packaging of Intel's products, pricing, and other confidential business strategy information. *Id.*<br><br>Furthermore, green-boxed portions of pages 66, 77-84, 239, and Attachment E-1 of Exhibit 1 reveal highly confidential information regarding Intel's licenses, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Selwyn Decl. ¶ 18c. |
| Exhibit 2 | Excerpt of the June 22, 2023 Reply Report of Ryan Sullivan, Ph.D | Green boxed portions | Granted, as green-boxed portions of 42-45, 86-88, 90-92, 95-99, 106, 107, 108, 110, 114-115, Attachments A-8, A-9, A-10 of Exhibit 2 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 19a.<br><br>Furthermore, green-boxed portions of pages 4, 48 (paragraph 95), 49, 50, 55, 74, 106, 108 (fn. 640), 111, 113, 114, 116-118, 120-124, 126, 128-130, Attachments J-7a, J-8a, J-9a, J-10a, O-1, O-4, O-5, O-6, O-7, O-8, O-9, and O-10 of Exhibit 2 reveal highly confidential information regarding Intel's financial decisions such as product pricing, Intel's revenues, profits and costs, Intel's quarterly profit bonus program, sales volume, confidential analysis regarding the financial benefit to Intel of certain features and Intel's pricing strategy. Selwyn Decl. ¶ 19b.<br><br>Furthermore, green-boxed portions of pages |

| | | | |
|---|---|---|---|
| | | | 61-63, 70-71, and Attachments O-11 and O-12 could be used to derive Intel's confidential financial information, including product price and the volume of Intel's sales. *Id.* <br><br> Furthermore, green-boxed portions of pages 5, 48 (paragraph 94), 136-137, and 143 of Exhibit 2 reveal highly confidential information regarding Intel's licenses, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 2 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Selwyn Decl. ¶ 19c. |
| Exhibit 3 | Excerpt of the April 20, 2023 Expert Report of Mark J. Chandler | Green boxed portions | Granted, as green-boxed portions of pages 107-108, 110-121, 123, 167, 180, 189, 190, 191, and Appendix A at 5 of Exhibit 3 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 20a. <br><br> Furthermore, green-boxed portions of pages 104, 107-109, 121 (paragraphs 332, 333), 122-129, 131-133, 146, 166, 172, 173, 181, 186, 191 (paragraphs 526, 528, 529), 192 (paragraph 532), Appendix A at 3, and Appendix B of Exhibit 3 reveal highly confidential information regarding Intel's financial decisions such as product pricing; Intel's revenues, profits, and costs; sales volume analysis regarding the financial benefit to Intel of certain features; and analysis of the importance of features, including to revenue and customer demand and resulting marketing strategy. Selwyn Decl. ¶ 20b. <br><br> Furthermore, green-boxed portions of pages 129-130 of Exhibit 3 include confidential competitive analysis, along with recommended responses. *Id.* |

|  |  |  |  |
|---|---|---|---|
|  |  |  | Furthermore, green-boxed portions of pages 63, 70-89, 92-96, 134, 136-138, 140, 150, 152, 154, 156-158, 160, 163, 164, 168, 175, 176, 187, and 192 (paragraph 531) of Exhibit 3 reveal highly confidential information regarding Intel's licenses, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 3 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Selwyn Decl. ¶ 20c. |
| Exhibit 4 | Excerpt of the June 22, 2023 Reply Expert Report of Mark J. Chandler | Green boxed portions | Granted, as green-boxed portions reveal highly confidential licensing information, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 4 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Selwyn Decl. ¶ 21. |
| Exhibit 5 | Excerpt of the April 20, 2023 Expert Report of Thomas M. | Green boxed portions | Granted, as green-boxed portions of pages 67-69, 72-78, 228, 230-231, 243-251, 264-270, 284-289, 301-309, 324-331, 346-352, 443-475, 485-487, 489, 494-496, 562-571, 574, 639, 642-647, 649-651, and 653-656 of Exhibit 5 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 22a.<br><br>Furthermore, green-boxed portions of pages 472-475, and Exhibits C and D of Exhibit 5 reveal highly confidential information regarding Intel's financial decisions such as product pricing; Intel's revenues, profits, and costs; and analysis of the pricing impact of certain product features. Selwyn Decl. ¶ 22b.<br><br>Furthermore, green-boxed portions of page 575 of Exhibit 5 reveal highly confidential |

| | | | |
|---|---|---|---|
| | | | information regarding Intel's licenses, including the scope of Intel's license agreements. Selwyn Decl. ¶ 22c. |
| Exhibit 6 | Excerpt of the June 22, 2023 Reply Expert Report of Thomas M. Conte. | Green boxed portions | Granted, as green-boxed portions of pages 60, 63-65, 97, 123, 125, 126, 212-213, 220, 227, 230-232, 294, 297, 298, 300-308, and 336 of Exhibit 6 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 23a.<br><br>Furthermore, green-boxed portions of pages 63, 65 (paragraph 141), 126, 220, 230-231 of Exhibit 6 reveal highly confidential information regarding Intel's financial decisions such as analysis of the pricing impact of certain product features and analysis of the importance of features, including to revenue and customer demand and resulting marketing strategy. Selwyn Decl. ¶ 23b. |
| Exhibit 7 | Excerpt of the April 20, 2023 Expert Report of Dr. William Henry Mangione-Smith | Green boxed portions | Granted, as green-boxed portions of 42-49, 51-62, 66, 69-70, 72-74, 78-79, 81-114, 117, 122, 123, 127, 128, 130, 132, 138, 140, 142, 144, 147, 152, 159-183, 185, 187, 190, and Materials Considered at 6-8 of Exhibit 7 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products.  Selwyn Decl. ¶ 24a.<br><br>Furthermore, green-boxed portions of pages 59, 61-62, 162-183, and 187 of Exhibit 7 reveal highly confidential information regarding the financial impact to Intel and Intel's customers of specific Intel features and designs, including |

10

| | | | identifying on a customer specific basis the concerns expressed by that customer and financial implications for that customer. Selwyn Decl. ¶ 24b. |
|---|---|---|---|
| Exhibit 8 | Excerpt of the June 1, 2023 Rebuttal Expert Report of Dr. William Henry Mangione-Smith | Green boxed portions | Granted, as green-boxed portions of pages 117-120, 122, and Materials Considered at 7-8 of Exhibit 8 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 25a.<br><br>Furthermore, green-boxed portions of pages 116, 119, 122, and 123 of Exhibit 8 reveal highly confidential information regarding Intel's financial decisions such as Intel's revenues and costs, sales volume, and analysis of the financial impact to Intel and Intel's customers of specific Intel features and designs. Selwyn Decl. ¶ 25b. |
| Exhibit 9 | Excerpt of the June 22, 2023 Reply Report of Dr. William Henry Mangione-Smith | Green boxed portions | Granted, as green-boxed portions of Exhibit 9 except for the green-boxed portions of Section XIV.B of the Table of Contents found on pages ii-iii (which are addressed separately below) reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 26a.<br><br>Furthermore, green-boxed portions of Section XIV.B of the Table of Contents found on pages ii-iii of Exhibit 9 reveal highly confidential information regarding Intel's licenses. In particular, Intel seeks to seal the names of the counterparties to these agreements in Exhibit 9 because the names of counterparties to Intel's agreements are maintained in confidence by |

11

| | | | |
|---|---|---|---|
| | | | Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Selwyn Decl. ¶ 26b. |
| Exhibit 10 | Excerpt of the April 20 Expert Report of Dean P. Neikirk | Green boxed portions | Granted, as green-boxed portions of Exhibit 10 except for the green-boxed portions of paragraph 320 on page 151 (which are addressed separately below) reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 27a.<br><br>Furthermore, green-boxed portions of paragraph 320 on page 151 of Exhibit 10 reveal highly confidential information regarding Intel's costs. Selwyn Decl. ¶ 27b. |
| Exhibit 11 | Excerpt of the June 22, 2023 Reply Report of Dean P. Neikirk | Green boxed portions | Granted, as green-boxed portions reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 28. |
| Exhibit 13 | Excerpt of the transcript of the deposition of Mark J. Chandler | Green boxed portions | Granted, as green-boxed portions reveal highly confidential licensing information, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 13 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Selwyn Decl. ¶ 29. |

12

| Exhibit 16 | Intel License Agreement | Green boxed portions | Granted, as green-boxed portions reveal highly confidential licensing information, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Selwyn Decl. ¶ 30. |
|---|---|---|---|
| Exhibit 17 | Intel License Agreement | Green boxed portions | Granted, as green-boxed portions reveal highly confidential licensing information, including payment terms from Intel's license agreements and the scope of Intel's license agreements. Selwyn Decl. ¶ 30. |
| Exhibit 18 | Excerpt of the June 1, 2023 Rebuttal Report of Lauren Kindler | Green boxed portions | Granted, as green-boxed portions reveal highly confidential licensing information, including regarding the scope of Intel's license agreements. Selwyn Decl. ¶ 31. |
| Exhibit 20 | Excerpt of the June 1, 2023 Rebuttal Report of John Kubiatowicz | Green boxed portions | Granted, as green-boxed portions reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 32. |
| Exhibit 22 | Excerpt of the transcript of the deposition of William Mangione-Smith | Green boxed portions | Granted, as green-boxed portions reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 33. |
| Exhibit 23 | Excerpt of the May 16, 2023 Supplemented Expert Report of Dr. William Henry Mangione-Smith | Green boxed portions | Granted, as green-boxed portions of pages 42-63, 67, 70-71, 73-75, 79-80, 82-115, 118, 123-124, 128-129, 131, 133, 139, 141, 143-147, 149, 152-155, 159-183, 185, 188, 190, and Materials Considered at 6-8 of Exhibit 8 reveal details and operation of accused product features and features considered for incorporation into Intel products; the development and testing of accused product features; Intel's process recipes; and the source code for accused products. Selwyn Decl. ¶ 34a.<br><br>Furthermore, green-boxed portions of pages 59, 61-63, 162-183, and 187 of Exhibit 23 reveal highly |

| | | | |
|---|---|---|---|
| | | | confidential information regarding the financial impact to Intel and Intel's customers of specific Intel features and designs, including identifying on a customer specific basis the concerns expressed by that customer and financial implications for that customer. Selwyn Decl. ¶ 34b. |
| Exhibit 24 | Internal Intel Email | Green boxed portions | Granted, as green-boxed portions reveal highly confidential technical information regarding the design, development, and operation of Intel's product features. Selwyn Decl. ¶ 35. |

### B. ECF No. 537

The second motion before the court is Intel's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection with Intel's Memorandum of Points and Authorities In Support Of Its Omnibus *Daubert* Motion and Exhibits 1-15, 18, 20, 22, and 23 thereto. ECF No. 537. The motion pertains to information VLSI may want redacted material contained Intel's Omnibus *Daubert* Motion and Exhibits. *Id.*

VLSI writes that the information should be sealed because it includes "highly confidential information concerning VLSI's damages theories in this case, VLSI's licensing efforts and history, and specific details regarding the terms of VLSI's agreements with NXP Semiconductors." ECF No. 635 ¶ 7. VLSI contends that the analysis is narrowly tailored because "VLSI is only seeking to seal the specific sections that reflect VLSI's highly-confidential and proprietary damages analyses for the patents-in-suit. These conclusions rely not only on confidential information, but also on proprietary analysis of public information." *Id.* ¶ 10.

The Court finds that compelling reasons exist to seal the highlighted portions of the documents. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1

(N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored.  The Court's ruling is summarized below:

| ECF or Ex. No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| ECF No. 536<br>Ex. 1 to Intel's Omnibus *Daubert* Motion | April 20, 2023 Opening Report of Dr. Ryan Sullivan | Blue highlighted portions at pp. ix–x; ¶¶ 21, 23, 25-26, 28-29, 170-73, 218, 220–21, 225, 229, 231–37, 252–256, 263–66, 268, 270, 272, 277, 280, 282, 285–85, 291, 294, 297–98, 308, 312–31, 348, 352, 362, 365, 367, 369, 371–73, 379, 381–83, 384, 398, 404, 410, 412, 430, 436, 442–46, 448, 450, 512 | Granted, as the blue-highlighted portions contain highly confidential and proprietary damages analyses and methodologies for the patents-in-suit, public disclosure of which could result in significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. Wen Decl. ¶¶ 9– 15. |
| Ex. 2 to Intel's Omnibus *Daubert* Motion | Excerpts of the June 22, 2023 Reply Report of Dr. Ryan Sullivan | Blue highlighted portions at p. ii; ¶¶ 14, 114, 116, 119–20, 122, 142–45, 172, 179, 182–84, 194, 211–12, 223, 230, 233, 235-236, 238–41, 250, 252, 263–64, 269, 276; Attachments A-10, O-7, O-9 | Granted, as the blue-highlighted portions contain highly confidential and proprietary damages analyses and methodologies for the patents-in-suit, public disclosure of which could result in significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. Wen Decl. ¶¶ 9–15. |

15

| | | | |
|---|---|---|---|
| Ex. 3 to Intel's Omnibus *Daubert* Motion | Excerpts of the April 20, 2023 Opening Report of Mark Chandler | Blue highlighted portions at ¶¶ 213–15, 219–24, 227–28, 230–44, 247, 254, 256, 271–72, 280–83, 359, 363–65, 387, 395–96, 402, 414, 422, 427, 442–43, 465, 495, 522–23; Appendix A | Granted, as the blue-highlighted portions reflect highly-confidential and proprietary damages analyses of licenses produced in this case, including royalty rates and licensing terms. Wen Decl. ¶ 9. Disclosure of this information could cause significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. *See id.* ¶¶ 9–15. |
| Ex. 4 to Intel's Omnibus *Daubert* Motion | Excerpts of the June 22, 2023 Reply Report of Mark Chandler | Blue highlighted portions at ¶¶ 350, 422, 445–46, 449–50, 454–55, 458, 460, 465, 467; Exhibit 13; Appendix A | Granted, as the blue-highlighted portions reflect highly-confidential and proprietary damages analyses of licenses produced in this case, including royalty rates and licensing terms. Wen Decl. ¶ 9. Disclosure of this information could cause significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. *See id.* ¶¶ 9–15. |
| Ex. 6 to Intel's Omnibus Daubert Motion | Excerpts of the June 22, 2023 Reply Report of Dr. Thomas Conte | Blue highlighted portions at ¶¶ 86, 603, 606–10, 630, 632–33 | Granted, as the blue-highlighted portions reflect highly-confidential and proprietary technical analyses for two of the patents-in-suit, including proprietary performance testing and analysis of physical accused products. Wen Decl. ¶¶ 16. Disclosure of this information could cause significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. *See id.* ¶¶ 18–21. |
| Ex. 7 to Intel's Omnibus Daubert | Excerpts of the April 20, 2023 Opening Report of Dr. William Mangione-Smith | Blue highlighted portions at ¶¶ 74–76, 436, 438, 460 | Granted as the document pertains to a confidential stipulation to satisfy its obligations under the agreement. *See id.* ¶ 17. |

| Ex. 9 to Intel's Omnibus Daubert | Excerpts of Dr. Mangione-Smith's Reply Report re: '922 Patent | Blue highlighted portions at ¶¶ 314–15, 317 | Granted, as the blue-highlighted words reflect VLSI's highly-confidential and proprietary damages analysis for the '922 Patent. Wen Decl. ¶¶ 8, 16. Public disclosure of this information could cause significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. *See id.* ¶¶ 9–14, 18–21. |
|---|---|---|---|
| Ex. 10 to Intel's Omnibus Daubert | Excerpts of Dr. Neikirk's Opening Expert Report | Blue highlighted portions at ¶¶ 314–315, 317 | Granted, as the yellow-highlighted portions reflect highly-confidential and proprietary technical damages analyses for the '672 Patent. Wen Decl. ¶¶ 17. Disclosure of this information could cause significant competitive and business harms to VLSI, as well as unfair advantage to Intel and other potential license counterparties. *See id.* ¶¶ 19–22. |

**C.     ECF No. 538**

The third motion before the court is Intel's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection with Intel's Memorandum of Points and Authorities In Support Of Its Omnibus *Daubert* Motion and Exhibits 1-15, 18, 20, 22, and 23 thereto. ECF No. 538. The motion pertains to information NXP may want redacted material contained Intel's Omnibus *Daubert* Motion and Exhibits. *Id.*[1]

NXP writes that the information should be sealed because "all relate to highly-confidential information regarding its past and current intellectual property licensing and monetization practices, activities, capabilities, and efforts. Public disclosure of this information would provide NXP's competitors with sensitive information regarding NXP's internal business practices, as well as its relationships with other companies in the semiconductor industry and the patent licensing

---

[1] The declaration also sought to seal portions of other motions and exhibits, which the Court will address in a forthcoming order.

17

industry, thus disadvantaging NXP in future business and contract negotiations. It would also adversely affect NXP's efforts to enter into intellectual property arrangements with other companies." ECF No. 625 ¶ 7. NXP states it "has narrowly tailored its proposed redactions only to information that maintains in confidence in the regular course of its business." *Id.* ¶ 6.

The Court finds that compelling reasons exist to seal the highlighted portions of the documents. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored. The Court's ruling is summarized below:

| ECF or Ex. No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| ECF No. 536-4 Ex. 1 to Intel's Omnibus *Daubert* Motion | Excerpts from the April 20, 2023 Opening Report of Ryan Sullivan, Ph.D. | Blue-boxed portions in ¶¶ 170-174, 179. | Granted, as the document identifies and describes (1) confidential patent agreements entered into between NXP/Freescale and other parties; and (2) confidential intellectual property licensing and monetization practices, activities, capabilities, and efforts by NXP and Freescale. *See infra* ¶¶ 6–10. |
| ECF No. 536-5 Ex. 2 to Intel's Omnibus *Daubert* Motion | Excerpts from the June 22, 2023 Reply Report of Ryan Sullivan, Ph.D. | Blue-boxed portions at p. ii; ¶¶ 14, 251-252, 264, 269, 276. | Granted, as the document identifies and describes (1) confidential patent agreements entered into between NXP/Freescale and other parties, and (2) confidential intellectual property licensing and monetization practices, activities, capabilities, and efforts by NXP and Freescale. *See infra* ¶¶ 6-10. |
| ECF No. 536-6 Ex. 3 to Intel's | Excerpts from the April 20, 2023 Report of Mark | Blue-boxed portions in ¶¶ 78, 414, 427, 474. | Granted, as the document identifies and describes testimony from former |

18

| Omnibus *Daubert* Motion | J. Chandler | | NXP/Freescale employees regarding confidential intellectual property licensing and monetization practices, activities, capabilities, and efforts by NXP and Freescale. *See infra* ¶¶ 6-7, 9-10. |
|---|---|---|---|

### D. ECF No. 539

Since no party filed declarations in support of this administrative motion, the administrative motion (ECF No. 539) is denied.

### E. ECF No. 540

The Court addresses three declarations submitted in connection with ECF No. 540. ECF No. 608, 630; ECF No. 609; ECF No. 615.

Thomas Mavrakakis submitted a declaration and exhibits on behalf of requesting to seal portions of Exhibits 1, 4, and 13 of Intel's Omnibus *Daubert* Motion. ECF No. 608, 630.[2] The declaration does not contain a chart, but Mavrakakis attached exhibits showing narrow redactions corresponding to patent purchase agreements. The Mavrakakis declaration details how disclosure of the highlighted information would harm IBM's business by "providing unfair insight into IBM's business strategies." ECF No. 608 at ¶ 5. The Court agrees with IBM that this meets the compelling interest standard and is narrowly tailored.

Boaz Brickman submitted a declaration on behalf of IPValue Management, Inc., IPValue Management Group, LLC, and Tahoe Research, Ltd. ECF No. 609. The declaration does not seek additional redactions, but instead states that the parties Brickman represents "rely on Intel to make the appropriate requests for sealing or redacting documents." ECF No. 609 ¶ 6. As described *supra*, the Court grants ECF No. 617, so it does not conduct any further analysis with respect to this declaration.

Elizabeth J. Kuttilla submitted a declaration on behalf of UNMRI. ECF No. 615. The declaration seeks to seal and keep secret all portions of Exhibit 3 of Intel's Omnibus Daubert Motion (ECF No. 536-6; ECF No. 541-6), save limited exceptions. ECF No. 615 ¶¶ 10-11. The

---

[2] The declaration also sought to seal portions of Exhibits 2 and 7 to Intel's Daubert Opposition, which the Court will address in a forthcoming order.

declaration states in a conclusory manner that "[t]here are no less restrictive alternatives to the sealing requested. *Id.* ¶ 12. Exhibit 3 is a 100+ page expert report and UNMRI does not provide any explanation as to why the entire document needs to be sealed. Therefore, the Court finds that the request is overly broad and not narrowly tailored.

### F. ECF No. 551

Since no party filed declarations in support of this administrative motion, the administrative motion (ECF No. 551) is denied.

### G. ECF No. 552

Since no party filed declarations in support of this administrative motion, the administrative motion (ECF No. 552) is denied.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. ECF No. 617 is GRANTED.
2. ECF No. 537 is GRANTED.
3. ECF No. 538 is GRANTED.
4. ECF No. 539 is DENIED.
5. ECF No. 540 is GRANTED with respect to information sought by IBM, IPValue Management, Inc., IPValue Management Group, LLC, and Tahoe Research, Ltd. to be sealed. The motion is DENIED with respect to information sought by UNMRI to be sealed.
6. ECF No. 551 is DENIED.
7. ECF No. 552 is DENIED.

Dated: September 26, 2023

BETH LABSON FREEMAN
United States District Judge

20