UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | Case No. 17-cv-05671-BLF<br><br>**ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**<br><br>[Re: ECF Nos. 542, 546, 550] |

Before the Court are VLSI Technology LLC's ("VLSI") Administrative Motions regarding its Daubert Motion to Exclude Damages Opinions of Intel's Experts (ECF No. 544) and its Daubert Motion to Exclude Technical Opinions of Intel's Experts (ECF No. 545):

1. Administrative Motion to Consider Whether Another Party's Material Should Be Sealed re: VLSI's Motion to Exclude Damages Opinions of Intel's Experts, and Exhibits Thereto. ECF No. 542.

2. Administrative Motion to Consider Whether Another Party's Material Should Be Sealed re VLSI's Daubert Motion to Exclude Technical Opinions of Intel's Experts. ECF No. 546.

3. Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (Correction of ECF No. 546). ECF No. 550.

For the reasons described below, the Administrative Motions are GRANTED.

**I.   BACKGROUND**

VLSI filed its Daubert Motion to Exclude Damages Opinions of Intel's Experts ("Damages Motion") on July 25, 2023. ECF No. 544. That same day, VLSI filed an Administrative Motion to File Under Seal regarding VLSI's information in the Motion. ECF No. 542. Intel Corporation

("Intel") filed a declaration and exhibits in support of VLSI's administrative motion. ECF Nos. 618, 619. NXP Semiconductors USA, Inc., NXP Semiconductors B.V. and Freescale Semiconductor Inc. (collectively "NXP") also filed a declaration in support of VLSI's administrative motion. ECF No. 621. VLSI did not name NXP in ECF No. 542, but the Court nonetheless considers NXP's declaration in the interest of judicial economy.

VLSI filed its Daubert Motion to Exclude Technical Opinions of Intel's Experts ("Technical Motion") on July 25, 2023. ECF No. 545. The next day, VLSI filed an Administrative Motion to File Under Seal regarding VLSI's information in the Motion. ECF No. 546. VLSI subsequently filed a correction to ECF No. 546 with updated exhibits. ECF No. 550. Intel filed a declaration and exhibits in support of VLSI's Administrative Motion. ECF Nos. 620, 622.

## II. LEGAL STANDARD

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178–79.

Records attached to motions that are "not related, or only tangentially related, to the merits of a case," however, are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action."). Parties moving to seal the documents attached to such motions must meet the lower "good cause" standard of Rule

26(c). *Kamakana*, 447 F.3d at 1179 (internal quotations and citations omitted). This standard requires a "particularized showing," *id.*, that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

### III. DISCUSSION

The documents at issue in VLSI's motions to seal are associated with its *Daubert* motions. These opinions concern infringement and invalidity of the patents at issue in the case, available damages for the alleged infringement, and efforts to strike or exclude expert opinions. These issues are "more than tangentially related to the merits of [the] case" and therefore the parties must provide "compelling reasons" for maintaining the documents under seal. *See Ctr. for Auto Safety*, 809 F.3d at 1101; *see also Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-5659 WHA, 2021 WL 1091512, at *1 (N.D. Cal. Feb. 10, 2021).

#### A. ECF No. 542 (Damages Motion)

##### i. Intel

Intel seeks to seal selected portions of VLSI's Damages Motion and its exhibits. Intel writes that licensing information should be sealed because "[p]ublic disclosure of information regarding the payment terms from Intel's license agreements, the scope of Intel's license agreements and other terms from Intel's agreements could negatively affect Intel's future licenses and settlements and negotiations for such agreements." ECF No. 618 ¶ 13. Intel adds that financial information should be sealed because "[d]isclosure of information regarding Intel's financials and financial decisions—such as product pricing; discounts and criteria Intel uses for pricing; and Intel's revenue, profits, and costs—would provide competitors and potential counterparties with unfair insight into Intel's business strategies and cost/benefit analyses." *Id.* ¶ 15. Intel contends that it " has narrowly identified for redaction with yellow highlighting the portions of VLSI's *Daubert* memorandum that reveal highly confidential licensing information." *Id.* ¶ 17.

The Court finds that compelling reasons exist to seal the highlighted portions of the document. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored. The Court's ruling is summarized below:

| ECF or Exhibit No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| | VLSI's Memorandum | Yellow highlighted portions | Granted, as yellow highlighted portions of VLSI's memorandum on page 11 reveals highly confidential licensing information regarding payment terms. Selwyn Decl. ¶ 17. |
| Ex. 1 | Excerpt from the transcript of the deposition of Patrick Fay | Yellow highlighted portions | Granted, as yellow highlighted portions of Exhibit 1 on page 34 reveals highly confidential technical information regarding design details and/or operation of accused features in Intel's products. Selwyn Decl. ¶ 18. |
| Ex. 2 | Excerpt from June 1, 2023 Rebuttal Expert Report of Patrick Fay | Yellow highlighted portions | Granted, as yellow highlighted portions of Exhibit 2 on pages 85-92 reveals highly confidential technical information regarding design details and/or operation of accused features in Intel's products. Selwyn Decl. ¶ 19a.<br><br>Furthermore, yellow highlighted portions of Exhibit 2 on pages 282-83, 289, 293, 304, 314, 324, 333, 339, 374, 422, and 447 reveal highly confidential information regarding Intel's licenses, including payment terms from Intel's license agreements, the scope of Intel's license agreements, and other confidential licensing information. Selwyn Decl. ¶ 19b. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 2 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. |

4

|   |   |   | Public disclosure of these counterparties could provide competitors and potential counterparties to licensing, acquisition, and settlement agreements with an unfair insight into Intel's business strategies. Id. Likewise, public disclosure of the patents covered by a license agreement could reveal confidential information about the scope of the patent license and provide insight into the structure of Intel's licenses and licensing strategy. Id. |
|---|---|---|---|
| Ex. 4 | Excerpt from June 1, 2023 Rebuttal Expert Report of Lauren R. Kindler | Yellow highlighted portions | Granted, as yellow highlighted portions of Exhibit 4 on pages 67 (paragraph 145), 75 (paragraph 157), 95 (paragraph 186), 121 (paragraph 222, fn. 457) reveal highly confidential technical information regarding design details and/or operation of accused features in Intel's products.  Selwyn Decl. ¶ 20a.<br><br>Furthermore, yellow highlighted portions of Exhibit 4 on pages 66 (paragraph 143.d, fn.198), 73-74 (paragraph b, fn.235), 80 (paragraph 166.b, fn.264), 87 (paragraph 175.f, fn.302), 94 (paragraph 184.d, fn.334), 106-7 (paragraph 202.b, fn. 390), 112-13 (paragraph 211.b, fn. 416), 120 (paragraph 220.e, fn.450), 126 (paragraph 229.a, fn. 480) reveal highly confidential information regarding Intel's sales. Selwyn Decl. ¶ 20b.<br><br>Furthermore, yellow highlighted portions of Exhibit 4 on pages 65-67, 73-75, 79-81, 86-88, 93-95, 106-108, 112-114, 118-121, and 126-127 reveal highly confidential information regarding Intel's licenses, including payment terms from Intel's license agreements, the scope of Intel's license agreements, and other confidential licensing information. Selwyn Decl. ¶ 20c. Intel also seeks to seal the names of the counterparties to these agreements in Exhibit 4 because the names of counterparties to Intel's agreements are maintained in confidence by Intel, and Intel is under confidentiality obligations to the counterparties not to reveal that information. Public disclosure of these counterparties could provide competitors and potential counterparties to licensing, acquisition, and settlement |

| | | | |
|---|---|---|---|
| | | | agreements with an unfair insight into Intel's business strategies. Id. Likewise, public disclosure of the patents covered by a license agreement could reveal confidential information about the scope of the patent license and provide insight into the structure of Intel's licenses and licensing strategy. Id. Moreover, public disclosure of the patents covered by a license agreement in conjunction with the expert's analysis of those patents could provide competitors with insight into the technical functionality of Intel's products. Id. |
| Ex. 6 | Excerpt from June 1, 2023 Rebuttal Expert Report of M. Ray Perryman | Yellow highlighted portions | Granted, as yellow highlighted portions of Exhibit 6 on page 65 (paragraph 136, fn. 243, fn. 244) reveal highly confidential technical information regarding design details and/or operation of accused features in Intel's products. Selwyn Decl. ¶ 21a.<br><br>Furthermore, yellow highlighted portions of Exhibit 6 on pages 58, 59, 64, and 65 (paragraph 134) reveal highly confidential information regarding Intel's financial decisions including Intel's strategy for pricing and the criteria Intel uses for pricing, and Intel's revenue, profits, and costs. Selwyn Decl. ¶ 21b.<br><br>Furthermore, yellow highlighted portions of Exhibit 6 on page 29 reveal highly confidential information regarding Intel's licensing negotiation strategy. Selwyn Decl. ¶ 21c. |
| Ex. 8 | Excerpt from June 22, 2023 Reply Report of Ryan Sullivan | Yellow highlighted portions | Granted, as yellow highlighted portions of Exhibit 8 on pages 48 (paragraph 95), 49, 50, 74, and 81-84 reveal, or could be used to derive, highly confidential information regarding Intel's financial decisions, including Intel's strategy for pricing and the criteria Intel uses for pricing, and Intel's revenue, profits, and costs and sales volume. Selwyn Decl. ¶ 22a.<br><br>Furthermore, yellow highlighted portions of Exhibit 8 on page 48 (paragraph 94) reveal highly confidential information regarding Intel's licensing negotiation strategy. Selwyn Decl. ¶ 22b. |

\\

   **ii. NXP**

NXP seeks to seal selected portions of VLSI's Damages Motion and its exhibits. NXP writes that the information should be sealed because "the exhibits that NXP seeks to seal all relate to highly-confidential information regarding its past and current intellectual property licensing and monetization practices, activities, capabilities, and efforts. Public disclosure of this information would provide NXP's competitors with sensitive information regarding NXP's internal business practices, as well as its relationships with other companies in the semiconductor industry and the patent licensing industry, thus disadvantaging NXP in future business and contract negotiations. It would also adversely affect NXP's efforts to enter into intellectual property arrangements with other companies." ECF No. 621 ¶¶ 7-11. NXP contends that it "narrowly tailored its proposed redactions only to information that maintains in confidence in the regular course of its business." *Id.* ¶ 6.

The Court finds that compelling reasons exist to seal the highlighted portions of the document. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored. The Court's ruling is summarized below:

| ECF or Exhibit No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| ECF 542-5 Ex. 4 to VLSI's Motion to Exclude Damages Opinions | Excerpts from the June 1, 2023 Rebuttal Expert Report of Lauren Kindler | Blue-boxed portions in ¶¶ 91- 92, 143, 154-155, 157. | Granted, as the document identifies and describes (1) confidential patent agreements entered into between NXP/Freescale and other parties, (2) confidential intellectual property licensing and monetization practices, activities, capabilities, and efforts by NXP and Freescale, and (3) confidential testimony from current and former employees of NXP and Freescale regarding its intellectual property practices. See infra ¶¶ 6-11. |

7

| ECF 542-7 Ex. 6 to VLSI's Motion to Exclude Damages Opinions | Excerpts from the June 1, 2023 Rebuttal Expert Report of Dr. M. Ray Perryman | Blue-boxed portions in ¶¶ 68-69. | Granted, as the document identifies and describes confidential intellectual property licensing and monetization practices, activities, capabilities, and efforts by NXP and Freescale. *See infra* ¶¶ 6, 8. |

### B.     ECF No. 546 (Technical Motion)

Intel seeks to seal selected portions of VLSI's Technical Motion and its exhibits. Intel writes that licensing information should be sealed because "[m]aintaining the confidentiality of technical information about Intel's product design and operation, including for proposed designs, and manufacturing processes is critical to Intel's business. Knowledge of this information by third parties would put Intel at a competitive disadvantage in future product development and in its business dealings as its competitors could incorporate that information into their own development strategies and products to gain an unfair advantage over Intel in the market." ECF No. 620 ¶ 11. Intel contends that it " narrowly tailored to the design details, operation and manufacturing processes of accused product features and certain Intel product prior art." *Id.* ¶ 15.

The Court finds that compelling reasons exist to seal the highlighted portions of the document. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) (finding "technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard.). The Court also finds that the request is narrowly tailored. The Court's ruling is summarized below:

| ECF or Exhibit No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| | VLSI's Motion to Strike Certain Portions of Intel's Technical Expert Reports | Yellow highlighted portions | Granted, as yellow highlighted portions contain highly confidential technical information regarding design details, operation and manufacturing processes of accused product features. Selwyn Decl. ¶¶ 13, 15. |

| | | | |
|---|---|---|---|
| Ex. 6 | Excerpt of Rebuttal Expert Report of Patrick Fay, Ph.D. | Yellow highlighted portions | Granted, as yellow highlighted portions contain highly confidential technical information regarding design details, operation and manufacturing processes of accused product features. Selwyn Decl. ¶¶ 13, 15. |
| Ex. 8 | Excerpt of Expert Report of Patrick Fay, Ph.D. | Yellow highlighted portions | Granted, as yellow highlighted portions contain highly confidential technical information regarding design details, operation and manufacturing processes of certain Intel product prior art. Selwyn Decl. ¶¶ 14-15. |

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. VLSI's Administrative Motion (ECF No. 542) is GRANTED.

2. VLSI's Administrative Motion (ECF No. 546, as corrected by ECF No. 550) is GRANTED.

Dated: October 16, 2023

_____
BETH LABSON FREEMAN
United States District Judge