# EXHIBIT A

Mark D. Selwyn (CA SBN 244180)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Mark.Selwyn@wilmerhale.com

William F. Lee (*pro hac vice*)
*Joseph J. Mueller (pro hac vice)*
Louis W. Tompros (*pro hac vice*)
Dominic E. Massa (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
William.Lee@wilmerhale.com
Louis.Tompros@wilmerhale.com
Dominic.Massa@wilmerhale.com

Amanda L. Major (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Amanda.Major@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth St., Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
Mindy.Sooter@wilmerhale.com

*Attorneys for Defendant*
INTEL CORPORATION

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>                    Plaintiff,<br><br>     vs.<br><br>INTEL CORPORATION,<br><br>                    Defendant. | Case No. 5:17-cv-05671-BLF<br><br>**INTEL CORPORATION'S SECOND AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO VLSI TECHNOLOGY LLC'S COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**<u>Demand for Jury Trial</u>** |

Defendant Intel Corporation ("Intel") hereby answers Plaintiff VLSI Technology LLC's ("VLSI") Complaint for Patent Infringement (the "Complaint") as follows:

1.      Intel admits that Plaintiff, VLSI, filed a Complaint against Intel.

## THE PARTIES[1]

2.      Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and therefore denies them.

3.      Intel admits that it is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 2200 Mission College Blvd., Santa Clara, CA 95054.

## JURISDICTION

4.      Intel admits that this action purports to be arising under the patents laws of the United States.  The second sentence of Paragraph 4 of VLSI's Complaint sets forth conclusions of law to which no response is required.  To the extent a response is deemed to be required, Intel admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Paragraph 5 of VLSI's Complaint sets forth conclusions of law to which no response is required.  To the extent a response is deemed to be required, Intel admits that this Court has personal jurisdiction over Intel.

## VENUE

6.      Paragraph 6 of VLSI's Complaint sets forth conclusions of law to which no response is required.  To the extent a response is deemed to be required, Intel admits that venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b).  Intel admits that it has regular and established places of business in the Northern District of California at its principal place of

---

[1] For ease of reference, Intel utilizes the headings used in VLSI's Complaint.  In so doing, Intel does not admit any of the allegations contained in those headings.  In addition, Intel's responses to VLSI's allegations correspond to the numbered paragraphs in the Complaint.

business at 2200 Mission College Blvd., Santa Clara, CA 95054.  Intel denies the remaining allegations set forth in Paragraph 6.

**INTRADISTRICT ASSIGNMENT**

7.      Paragraph 7 of VLSI's Complaint sets forth conclusions of law to which no response is required.  To the extent a response is deemed to be required, Intel admits that pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

**FACTUAL ALLEGATIONS**

8.      Intel admits that Intel is one of the world's largest manufacturers of microprocessors for server, desktop, and mobile applications.  Intel admits that Intel's Core families of microprocessors (named i3, i5, and i7) are widely used in Dell, HP Inc., Acer, Lenovo, and other desktop and notebook computers.  Intel admits that Intel's Xeon families of microprocessors are advanced performance microprocessors used in server, network, and storage applications.  Intel admits that Intel's Atom microprocessors are used in mobile phones and tablets.  Intel admits that its sales revenues were less than $60 billion in 2016 and that most of that revenue was attributable to the sale of microprocessors.  Intel admits that it also manufactures electronic devices other than microprocessors, including Field Programmable Gate Arrays (FPGAs).  Intel denies the remaining allegations in Paragraph 8.

9.      Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 9, and therefore denies them.  Intel denies the remaining allegations in Paragraph 9.

10.      Intel admits that United States Patent No. 7,268,588 ("the '588 Patent") is entitled "Cascadable Level Shifter Cell" and was issued on September 11, 2007, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 10, and therefore denies them.  Intel admits that Exhibit 1 purports to be a copy of the '588 Patent.

11.      Intel admits that United States Patent No. 7,675,806 ("the '806 Patent") is entitled "Low Voltage Memory Device and Method Thereof" and was issued on March 9, 2010, but

denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 11, and therefore denies them.  Intel admits that Exhibit 2 purports to be a copy of the '806 Patent.

12.     Intel admits that United States Patent No. 7,706,207 ("the '207 Patent") is entitled "Memory with Level Shifting Word Line Driver and Method Thereof" and was issued on April 27, 2010, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 12, and therefore denies them.  Intel admits that Exhibit 3 purports to be a copy of the '207 Patent.

13.     Intel admits that United States Patent No. 7,709,303 ("the '303 Patent") is entitled "Process for Forming an Electronic Device Including a Fin-Type Structure" and was issued on May 4, 2010, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 13, and therefore denies them.  Intel admits that Exhibit 4 purports to be a copy or the '303 Patent.

14.     Intel admits that United States Patent No. 8,004,922 ("the '922 Patent") is entitled "Power Island With Independent Power Characteristics for Memory and Logic" and was issued on August 23, 2011, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 14, and therefore denies them.  Intel admits that Exhibit 5 purports to be a copy of the '922 Patent.

15.     Intel admits that United States Patent No. 8,020,014 ("the '014 Patent") is entitled "Method for Power Reduction and a Device Having Power Reduction Capabilities" and was issued on September 13, 2011, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in

the second sentence of Paragraph 15, and therefore denies them.  Intel admits that Exhibit 6 purports to be a copy of the '014 Patent.

16.     Intel admits that United States Patent No. 8,268,672 ("the '672 Patent") is entitled "Method of Assembly and Assembly Thus Made" and was issued on September 18, 2012, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 16, and therefore denies them.  Intel admits that Exhibit 7 purports to be a copy of the '672 Patent.

17.     Intel admits that United States Patent No. 8,566,836 ("the '836 Patent") is entitled "Multi-Core System on Chip" and was issued on October 22, 2013, but denies that it is a valid or properly issued patent.  Intel is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 17, and therefore denies them. Intel admits that Exhibit 8 purports to be a copy of the '836 Patent.

### FIRST COUNT[2]

18.     Intel admits that U.S. Patent No. 7,268,588 is entitled "Cascadable Level Shifter Cell" and lists Hector Sanchez, Carlos A. Greaves, Jim P. Nissen, and Xinghai Tang as the named inventors.  Intel admits that Exhibit 1 purports to be a copy of the '588 Patent.  Intel denies the remaining allegations of Paragraph 18 of VLSI's Complaint.

19.     Intel admits that it makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7 microprocessors; Xeon microprocessors; Atom microprocessors, and other Intel microprocessors.  Intel denies the remaining allegations set forth in Paragraph 19 of VLSI's Complaint.

---

[2] The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all challenged claims of U.S. Patent No. 7,268,588 unpatentable, and VLSI dropped its infringement allegations for U.S. Patent No. 7,268,588.  This patent is thus no longer at issue in this action.

4           INTEL'S SECOND AMENDED
ANSWER, DEFENSES, AND
COUNTERCLAIMS TO VLSI'S
COMPLAINT

20.     Intel admits that the Intel i3-6300 Core Processors contain level shifters.  Intel denies the remaining allegations in Paragraph 20 of VLSI's Complaint.

21.     Intel denies the allegations set forth in Paragraph 21 of VLSI's Complaint.

22.     Intel denies the allegations set forth in Paragraph 22 of VLSI's Complaint.

23.     Intel denies the allegations set forth in Paragraph 23 of VLSI's Complaint.

24.     Intel denies the allegations set forth in Paragraph 24 of VLSI's Complaint.

25.     Intel denies the allegations set forth in Paragraph 25 of VLSI's Complaint.

26.     Intel denies the allegations set forth in Paragraph 26 of VLSI's Complaint.

27.     Intel denies the allegations set forth in Paragraph 27 of VLSI's Complaint.

28.     Intel denies the allegations set forth in Paragraph 28 of VLSI's Complaint.

29.     Intel denies the allegations set forth in Paragraph 29 of VLSI's Complaint.

30.     Intel denies the allegations set forth in Paragraph 30 of VLSI's Complaint.

31.     Intel denies the allegations set forth in Paragraph 31 of VLSI's Complaint.

32.     Intel denies the allegations set forth in Paragraph 32 of VLSI's Complaint.

33.     Intel denies the allegations set forth in Paragraph 33 of VLSI's Complaint.

34.     Intel denies the allegations set forth in Paragraph 34 of VLSI's Complaint.

## SECOND COUNT[3]

35.     Intel admits that U.S. Patent No. 7,675,806 ("the '806 Patent") is entitled "Low Voltage Memory Device and Method Thereof" and lists Bradford Hunter, David Burnett, Troy Cooper, Prashant Kenkare, Ravindraj Ramaraju, Andrew Russell, Shayan Zhang, and Michael Snyder as the named inventors.  Intel admits that Exhibit 2 purports to be a copy of the '806 Patent.  Intel denies the remaining allegations in Paragraph 35 of VLSI's Complaint.

---

[3] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers under U.S. Patent No. 7,675,806 a certain covenant not to sue, and all counts of VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

36.     Intel admits it makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7 microprocessors; Xeon microprocessor; Atom microprocessors; and other Intel microprocessors.  Intel denies the remaining allegations in Paragraph 36 of VLSI's Complaint.

37.     Intel admits that the '806 Accused Products are devices.

38.     Intel admits that the Intel i3-5010 Core Processors contain cache memory.  Intel denies the remaining allegations in Paragraph 38 of VLSI's Complaint.

39.     Intel admits that the Intel i3-5010 Core Processors contain cache memory.  Intel denies the remaining allegations in Paragraph 39 of VLSI's Complaint.

40.     Intel admits that the Intel i3-5010 Core Processors implement a cache control protocol.  Intel denies the remaining allegations set forth in Paragraph 40 of VLSI's Complaint.

41.     Intel admits that the Intel i3-5010 Core Processors include at least one processing core.  Intel denies the remaining allegations in Paragraph 41 of VLSI's Complaint.

42.     Intel denies the allegations set forth in Paragraph 42 of VLSI's Complaint.

43.     Intel denies the allegations set forth in Paragraph 43 of VLSI's Complaint.

44.     Intel denies the allegations set forth in Paragraph 44 of VLSI's Complaint.

45.     Intel denies the allegations set forth in Paragraph 45 of VLSI's Complaint.

46.     Intel denies the allegations set forth in Paragraph 46 of VLSI's Complaint.

47.     Intel denies the allegations set forth in Paragraph 47 of VLSI's Complaint.

48.     Intel denies the allegations set forth in Paragraph 48 of VLSI's Complaint.

49.     Intel denies the allegations set forth in Paragraph 49 of VLSI's Complaint.

50.     Intel denies the allegations set forth in Paragraph 50 of VLSI's Complaint.

51.     Intel denies the allegations set forth in Paragraph 51 of VLSI's Complaint.

**THIRD COUNT[4]**

52.     Intel admits that United States Patent No. 7,706,207 ("the '207 Patent") is entitled "Memory with Level Shifting Word Line Driver and Method Thereof" and lists Thomas W. Liston, Shahnaz P. Chowdhury-Nagle, and Perry H. Pelley, III as the named inventors.  Intel admits that Exhibit 3 purports to be a copy of the '207 Patent.  Intel denies the remaining allegations in Paragraph 52 of VLSI's Complaint.

53.     Intel admits that it makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7 microprocessors; Xeon microprocessors; Atom microprocessors; and other Intel microprocessors.  Intel denies the remaining allegations in Paragraph 53 of VLSI's Complaint.

54.     Intel admits that the Intel i3-5010 Core Processors contain cache memory.  Intel further admits that the Intel i3-5010 Core Processors contain processor cores.  Intel denies the remaining allegations in Paragraph 54 of VLSI's Complaint.

55.     Intel denies the allegations set forth in Paragraph 55 of VLSI's Complaint.

56.     Intel denies the allegations set forth in Paragraph 56 of VLSI's Complaint.

57.     Intel admits that the Intel i3-5010 Core Processors include a bit cell array.  Intel denies the remaining allegations in Paragraph 57 of VLSI's Complaint.

58.     Intel denies the allegations set forth in Paragraph 58 of VLSI's Complaint.

59.     Intel denies the allegations set forth in Paragraph 59 of VLSI's Complaint.

60.     Intel denies the allegations set forth in Paragraph 60 of VLSI's Complaint.

61.     Intel denies the allegations set forth in Paragraph 61 of VLSI's Complaint.

62.     Intel denies the allegations set forth in Paragraph 62 of VLSI's Complaint.

63.     Intel denies the allegations set forth in Paragraph 63 of VLSI's Complaint.

64.     Intel denies the allegations set forth in Paragraph 64 of VLSI's Complaint.

---

[4] On February 21, 2023, VLSI represented that it would not present an infringement case against Intel regarding U.S. Patent No. 7,706,207.  As a result, this patent is no longer at issue in this action.

65.     Intel denies the allegations set forth in Paragraph 65 of VLSI's Complaint.

66.     Intel denies the allegations set forth in Paragraph 66 of VLSI's Complaint.

67.     Intel denies the allegations set forth in Paragraph 67 of VLSI's Complaint.

68.     Intel denies the allegations set forth in Paragraph 68 of VLSI's Complaint.

## FOURTH COUNT[5]

69.     Intel admits that U.S. Patent No. 7,709,303 ("the '303 Patent") is entitled "Process for Forming an Electronic Device Including a Fin-Type Structure" and lists James D. Burnett, Leo Matthew, and Byoung W. Min as the named inventors.  Intel admits that Exhibit 4 purports to be a copy or the '303 Patent.  Intel denies the remaining allegations in Paragraph 69 of VLSI's Complaint.

70.     Intel admits that it makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7 microprocessors; Xeon microprocessors; Atom microprocessors; and other Intel microprocessors.  Intel denies the remaining allegations in Paragraph 70 of VLSI's Complaint.

71.     Intel admits that the Intel Core i7-6700 Processors are manufactured through a series of steps.  Intel denies the remaining allegations in Paragraph 71 of VLSI's Complaint.

72.     Intel admits that the Intel Core i7-6700 Processors include a plurality of NMOS and PMOS transistors.  Intel denies the remaining allegations in Paragraph 72 of VLSI's Complaint.

73.     Intel denies the allegations set forth in Paragraph 73 of VLSI's Complaint.

74.     Intel denies the allegations set forth in Paragraph 74 of VLSI's Complaint.

75.     Intel denies the allegations set forth in Paragraph 75 of VLSI's Complaint.

76.     Intel denies the allegations set forth in Paragraph 76 of VLSI's Complaint.

77.     Intel denies the allegations set forth in Paragraph 77 of VLSI's Complaint.

---

[5] The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all challenged claims of U.S. Patent No. 7,709,303 unpatentable and VLSI dropped its infringement allegations for U.S. Patent No. 7,709,303.  Thus this patent is no longer at issue in this action.

78.     Intel denies the allegations set forth in Paragraph 78 of VLSI's Complaint.

79.     Intel denies the allegations set forth in Paragraph 79 of VLSI's Complaint.

**FIFTH COUNT**

80.     Intel admits that U.S. Patent No. 8,004,922 ("the '922 Patent") is entitled "Power Island With Independent Power Characteristics for Memory and Logic" and lists David R. Evoy, Peter Kapporth, and Pineda De Gyvez as the named inventors.  Intel admits that Exhibit 5 purports to be a copy of the '922 Patent.  Intel denies the remaining allegations in Paragraph 80 of VLSI's Complaint.

81.     Intel admits it makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7 microprocessors; Xeon microprocessors; Atom microprocessors; and other Intel microprocessors.  Intel denies the remaining allegations in Paragraph 81 of VLSI's Complaint.

82.     Intel denies the allegations set forth in Paragraph 82 of VLSI's Complaint.

83.     Intel admits that the Intel Core i3-6300 Processors include a flip flop.  Intel denies the remaining allegations in Paragraph 83 of VLSI's Complaint.

84.     Intel denies the allegations set forth in Paragraph 84 of VLSI's Complaint.

85.     Intel denies the allegations set forth in Paragraph 85 of VLSI's Complaint.

86.     Intel denies the allegations set forth in Paragraph 86 of VLSI's Complaint.

87.     Intel denies the allegations set forth in Paragraph 87 of VLSI's Complaint.

88.     Intel denies the allegations set forth in Paragraph 88 of VLSI's Complaint.

89.     Intel denies the allegations set forth in Paragraph 89 of VLSI's Complaint.

90.     Intel denies the allegations set forth in Paragraph 90 of VLSI's Complaint.

91.     Intel denies the allegations set forth in Paragraph 91 of VLSI's Complaint.

92.     Intel denies the allegations set forth in Paragraph 92 of VLSI's Complaint.

93.     Intel denies the allegations set forth in Paragraph 93 of VLSI's Complaint.

94.     Intel denies the allegations set forth in Paragraph 94 of VLSI's Complaint.

95.     Intel denies the allegations set forth in Paragraph 95 of VLSI's Complaint.

96.     Intel denies the allegations set forth in Paragraph 96 of VLSI's Complaint.

1

### SIXTH COUNT[6]

2     97.     Intel admits that United States Patent No. 8,020,014 ("the '014 Patent") is entitled

3     "Method for Power Reduction and a Device Having Power Reduction Capabilities" and lists

4     Michael Priel, Dan Kuzmin, Anton Rozen, and Leonid Smolyanski as the named inventors.  Intel

5     admits that Exhibit 6 purports to be a copy of the '014 Patent.  Intel denies the remaining

6     allegations in Paragraph 97 of VLSI's Complaint.

7     98.     Intel makes, uses, sells, offers to sell, and/or imports Intel Core i3, i5, and i7

8     microprocessors; Xeon microprocessors; Atom microprocessors; and other Intel

9     microprocessors.  Intel denies the remaining allegations in Paragraph 98 of VLSI's Complaint.

10    99.     Intel denies the allegations set forth in Paragraph 99 of VLSI's Complaint.

11    100.    Intel states that the document cited speaks for itself and therefore no response is

12    required.  To the extent that a response is required, Intel denies the allegations set forth in

13    Paragraph 100 of VLSI's Complaint.

14    101.    Intel denies the allegations set forth in Paragraph 101 of VLSI's Complaint.

15    102.    Intel denies the allegations set forth in Paragraph 102 of VLSI's Complaint.

16    103.    Intel denies the allegations set forth in Paragraph 103 of VLSI's Complaint.

17    104.    Intel denies the allegations set forth in Paragraph 104 of VLSI's Complaint.

18    105.    Intel denies the allegations set forth in Paragraph 105 of VLSI's Complaint.

19    106.    Intel denies the allegations set forth in Paragraph 106 of VLSI's Complaint.

20    107.    Intel denies the allegations set forth in Paragraph 107 of VLSI's Complaint.

21    108.    Intel denies the allegations set forth in Paragraph 108 of VLSI's Complaint.

22

23    [6] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers

24    and customers under U.S. Patent No. 8,020,014 a certain covenant not to sue and all counts of

25    VLSI's complaint regarding this patent have been dismissed without prejudice and all counts of

26    Intel's counterclaims regarding this patent are dismissed without prejudice.  Dkt. 459 at 1-2; Dkt.

27    460.

28

1    109.    Intel denies the allegations set forth in Paragraph 109 of VLSI's Complaint.

2    **SEVENTH COUNT[7]**

3    110.    Intel admits that United States Patent No. 8,268,672 ("the '672 Patent") is entitled

4    Method of Assembly and Assembly Thus Made" and lists Nicolaas Johannes Anthonius Van

5    Veen and Hendrik Pieter Hochstenbach as the named inventors.  Intel admits that Exhibit 7

6    purports to be a copy of the '672 Patent.  Intel denies the remaining allegations in Paragraph 110

7    of VLSI's Complaint.

8    111.    Intel denies the allegations set forth in Paragraph 111 of VLSI's Complaint.

9    112.    Intel admits that it makes, uses, sells, offers to sell, and/or imports Stratix 10 Field

10   Programmable Gate Arrays (FPGAs) and other products that incorporate Embedded Multi-die

11   Interconnect Bridge technology.  Intel denies the remaining allegations in Paragraph 112 of

12   VLSI's Complaint.

13   113.    Intel admits that the Stratix 10 FPGA includes a core fabric chip with a

14   semiconductor substrate.  Intel denies the remaining allegations in Paragraph 113 of VLSI's

15   Complaint.

16   114.    Intel that the Stratix 10 FPGA includes a core fabric chip.  Intel denies the

17   remaining allegations in Paragraph 114 of VLSI's Complaint.

18   115.    Intel denies the allegations set forth in Paragraph 115 of VLSI's Complaint.

19   116.    Intel denies the allegations set forth in Paragraph 116 of VLSI's Complaint.

20   117.    Intel denies the allegations set forth in Paragraph 117 of VLSI's Complaint.

21   118.    Intel denies the allegations set forth in Paragraph 118 of VLSI's Complaint.

22   119.    Intel denies the allegations set forth in Paragraph 119 of VLSI's Complaint.

---

[7] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers under U.S. Patent No. 8,268,672 a certain covenant not to sue and all counts of VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

120.    Intel denies the allegations set forth in Paragraph 120 of VLSI's Complaint.

121.    Intel denies the allegations set forth in Paragraph 121 of VLSI's Complaint.

122.    Intel denies the allegations set forth in Paragraph 122 of VLSI's Complaint.

123.    Intel denies the allegations set forth in Paragraph 123 of VLSI's Complaint.

124.    Intel denies the allegations set forth in Paragraph 124 of VLSI's Complaint.

**EIGHTH COUNT**

125.    Intel admits that United States Patent No. 8,566,836 ("the '836 Patent") is entitled "Multi-Core System on Chip" and lists Ravindraraj Ramaraju, David R. Bearden, and William C. Moyer as the named inventors.  Intel admits that Exhibit 8 purports to be a copy of the '836 Patent.  Intel denies the remaining allegations in Paragraph 125 of VLSI's Complaint.

126.    Intel admits it makes, uses, sells, offers to sell, and/or imports Core i7 Extreme Edition processor and Core i7-69xx/68xx processor families, on which Turbo Boost Max Technology 3.0 can be used.  Intel denies the remaining allegations in Paragraph 126 of VLSI's Complaint.

127.    Intel admits that the Intel Core i7 Extreme Edition processor and Intel Core i7 69xx/68xx processor families include multi-core processing devices.  Intel denies the remaining allegations in Paragraph 127 of VLSI's Complaint.

128.    Intel denies the allegations set forth in Paragraph 128 of VLSI's Complaint.

129.    Intel states that the document cited speaks for itself and therefore no response is required.  To the extent that a response is required, Intel denies the allegations set forth in Paragraph 129 of VLSI's Complaint.

130.    Intel denies the allegations set forth in Paragraph 130 of VLSI's Complaint.

131.    Intel denies the allegations set forth in Paragraph 131 of VLSI's Complaint.

132.    Intel denies the allegations set forth in Paragraph 132 of VLSI's Complaint.

133.    Intel denies the allegations set forth in Paragraph 133 of VLSI's Complaint.

134.    Intel denies the allegations set forth in Paragraph 134 of VLSI's Complaint.

135.    Intel denies the allegations set forth in Paragraph 135 of VLSI's Complaint.

136.    Intel denies the allegations set forth in Paragraph 136 of VLSI's Complaint.

137.    Intel denies the allegations set forth in Paragraph 137 of VLSI's Complaint.

138.    Intel denies the allegations set forth in Paragraph 138 of VLSI's Complaint.

139.    Intel denies the allegations set forth in Paragraph 139 of VLSI's Complaint.

## PRAYER FOR RELIEF

Intel denies that VLSI is entitled to the relief requested or to any other relief.

Intel denies all allegations of VLSI's Complaint not specifically admitted above.

## DEMAND FOR JURY TRIAL

Intel admits that VLSI has requested a jury trial pursuant to Rule 38(b).

## DEFENSES

By alleging the Defenses set forth below, Intel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part. For its Defenses to VLSI's Complaint, Intel alleges as follows:

## FIRST DEFENSE

## (Non-Infringement)[8]

140.    Intel has not infringed and is not infringing,  directly, contributorily, or by inducement, any valid or enforceable claim of U.S. Patent Nos. 7,268,588 ("the '588 Patent"), 7,675,806 ("the '806 Patent"), 7,706,207 ("the '207 Patent"), 7,709,303 ("the '303 Patent"), 8,004,922 ("the '922 Patent"), 8,020,014 ("the '014 Patent"), 8,268,672 ("the '672 Patent"), and

---

[8] VLSI has dropped its infringement allegations for U.S. Patent Nos. 7,268,588, 7,706,207, and 7,709,303, and thus these patents are no longer at issue in this action.   VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers certain covenants not to sue regarding U.S. Patent Nos. 7,675,806, 8,268,672, and 8,020,014, and all counts of VLSI's complaint and all counts of Intel's counterclaims regarding these patents have been dismissed.  Dkt. 459 at 1-2; Dkt. 460; Dkt. 801 at 1.

8,566,836 ("the '836 Patent") (collectively, "the Asserted Patents"), either literally or under the doctrine of equivalents, willfully or otherwise.

**SECOND DEFENSE**

**(Invalidity)**

141.    The asserted claims of the Asserted Patents are invalid for failure to comply with the conditions of patentability, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

**THIRD DEFENSE**

**(Prosecution History Estoppel)**

142.    By reason of proceedings in the United States Patent and Trademark Office during prosecution of the patents-in-suit, including *inter partes* review, and specifically statements, arguments, amendments, assertions, and/or representations made by or on behalf of the applicant(s) and/or assignee(s) for the Asserted Patents, VLSI is estopped from construing or otherwise applying the claims of the Asserted Patents to cover any product, method, or service of Intel under the Doctrine of Equivalents.

**FOURTH DEFENSE**

**(Equitable Defenses)**

143.    VLSI's claims are barred in whole or in part by equitable estoppel (including, without limitation, judicial estoppel and administrative estoppel), laches, and/or waiver.

**FIFTH DEFENSE**

**(Preclusion of Costs)**

144.    To the extent that any claim of the Asserted Patents is held to be invalid, VLSI must be precluded from recovering costs related to this action pursuant to 35 U.S.C. § 288.

**SIXTH DEFENSE**

**(Limitation on Damages / Failure to Mark)**

145.    To the extent that VLSI seeks damages otherwise accruing prior to six years before it filed its Complaint, such damages are barred by 35 U.S.C. § 286.  The relief sought by

1   VLSI based on Intel's alleged infringement of the Asserted Patents is further limited by 35

2   U.S.C. § 287 to the extent the owner(s) of the Asserted Patents, and/or their licensees, failed to

3   mark allegedly practicing products.

## SEVENTH DEFENSE

### (License)

6       146.    Intel is not liable for infringement because it possesses a license and full release

7   of liability with respect to all patents asserted in VLSI's Complaint.

8       147.    Intel is licensed to the Asserted Patents pursuant to a Patent Settlement

9   Agreement between Intel, Finjan Software, Inc., Finjan, Inc., (the latter two together, the "Finjan

10  Parties") and each party's Affiliates ("Patent License").  The Finjan License is attached hereto as

11  Exhibit 9.  Under the terms of the Patent License, Intel became licensed and released from

12  liability with respect to the Asserted Patents on July 24, 2020, when VLSI and the Finjan Parties

13  came under the common control of Fortress Investment Group LLC.

## EIGHTH DEFENSE

### (Unclean Hands)

16      148.    VLSI cannot obtain relief, including injunctive relief, as a result of unclean hands

17  in connection with the acquisition and enforcement of the Asserted Patents.

18      149.    VLSI has engaged in a multifaceted, illegal scheme to monetize dubious patents

19  by improperly exploiting litigation asymmetries and using a business model that enables it to

20  misuse the litigation process.

21      150.    VLSI is the product of an arrangement between its hedge-fund parent, Fortress

22  Investment Group LLC ("Fortress") and semiconductor manufacturer NXP USA, Inc.—which,

23  along with its affiliated entities (collectively, "NXP"), formerly owned all of the 300+ patents in

24  VLSI's portfolio—to create and finance VLSI as a patent assertion entity controlled by Fortress,

25  which is wholly owned by SoftBank Group Corp. ("SoftBank").  The sole purpose of VLSI is to

26  monetize patents acquired from NXP with funds provided by Fortress.  Indeed, Fortress—which

27  manages $53.9 billion of assets—has created a multiple investment funds, pooling hundreds of

28

1    millions of dollars to fund intellectual property litigation against technology companies. *See*

2    Lloyd, *Fortress's latest patent fund could top $900 million*, IAM-Media, Apr. 9, 2021, available

3    at https://www.iam-media.com/finance/fortresss-latest-patent-fund-could-top-900-million;

4    Fortress History Q2 2021, https://www.fortress.com/about#history.

5        151.    VLSI's monetization efforts are not focused on pursuing meritorious cases. To

6    the contrary, VLSI's monetization scheme assumes that it will not prevail on the vast majority of

7    its patent claims and instead relies on the volume of patents asserted and serial litigation in

8    multiple courts at the same time. VLSI has deployed patent after patent in case after case and

9    court after court against Intel with the threat of ever more litigation. VLSI's model assumes that,

10   over the course of various summary judgment, trial, administrative, and appellate proceedings,

11   most of the patent claims will be found not infringed, invalid, and/or unenforceable. VLSI views

12   its successive waves of litigation as opportunities for one claim of one patent to survive and

13   serve as the basis for a bloated damages award. To facilitate this scheme, VLSI is seeking

14   billions of dollars in damages based on patent valuations that are divorced from the particulars of

15   any patent and instead are a function of its improper monetization scheme. Among the patents

16   that VLSI has obtained from NXP are the eight patents VLSI originally asserted against Intel in

17   this case. VLSI has separately asserted five patents against Intel in U.S. District Court for the

18   District of Delaware, and eight different patents against Intel in three separate cases in U.S.

19   District Court for the Western District of Texas. These patents constitute only a fraction of the

20   portfolio that VLSI obtained from NXP for $35 million, but for which VLSI claims many

21   billions of dollars in damages for their alleged infringement.

22       152.    In addition, VLSI's improper monetization scheme exploits litigation

23   asymmetries between VLSI and Intel in an effort to impede Intel's ability to defend itself. VLSI

24   is structured and operates to take advantage of the fact that, as an entity that does not

25   manufacture or sell any products and has no business other than patent enforcement, it has no

26   reputation or ongoing relationships that it risks by adopting unreasonable litigation practices. It

27   can impose disproportionate discovery and other litigation costs on Intel, including because:

28

1    VLSI had no role in developing or prosecuting the patents it obtained from NXP nor in

2    negotiations leading to their transfer; and VLSI has two employees and few documents to

3    produce in discovery.  VLSI's discovery and other litigation costs related to enforcing the former

4    NXP patents purchased with funds provided by Fortress are thus a small fraction of what those

5    costs would otherwise have been but for the scheme, and much of the evidence relevant to Intel's

6    defenses—other than documents related to the accused products themselves—is in the hands of

7    putative third parties (including Fortress and NXP) rather than the entity that has brought suit

8    (VLSI).  The result is that there is an increased burden on Intel to obtain evidence and to mount a

9    complete defense to VLSI's assertions—thereby increasing the likelihood of, for example, an

10   erroneous failure to find invalidity and/or unenforceability.

11          153.    VLSI's misconduct harms the public (including Intel) by subverting the integrity

12   of the patent system and the courts, and renders its assertion of the remaining six Asserted

13   Patents violative of principles of equity.  The Asserted Patents are unenforceable against Intel

14   because of VLSI's (and its predecessors-in-interest's) unclean hands.

15                    **VLSI's Improper Patent Monetization Scheme Is Hatched**

16          154.    In January 2016, Fortress and NXP began developing a scheme to monetize

17   NXP's patents.  At the time, NXP's patent portfolio was very large, and the marginal value that

18   any one patent contributed to the portfolio as a whole was relatively low.  NXP was therefore

19   seeking a way to increase the value of its portfolio through licensing and litigation without

20   having to "go against [its] customers" and otherwise appearing "litigious itself."

21   FORTRESS00048522; FORTRESS00050321 at 50333.

22          155.    Among the options NXP and Fortress considered were a "Financing Option" in

23   which NXP would retain ownership of all patents and be the named plaintiff in enforcement

24   actions funded by Fortress.  They also considered a "Corporate Carve Out" in which Fortress

25   would purchase a division of NXP along with some of its patents.  A third option was a

26   "Privateering Option" in which the patents would be transferred to a new, non-practicing entity

27   formed solely to carry out enforcement.  *See* FORTRESS00001621.  Under all three options,

28

Fortress does not directly acquire any patents and is therefore not a named party to any ensuing litigation.  In fact, Fortress does not own any patents in its own name.

156.    Ultimately, Fortress and NXP settled on the Privateering Option, to be accomplished through Fortress's creation of VLSI to obtain patents from NXP and then assert them in litigation.  The terms of the arrangement were spelled out in a June 30, 2016 Patent Purchase and Cooperation Agreement ("PPCA").  As part of the Privateering Option, NXP maintains a financial stake in VLSI's assertion of the former NXP patents—namely, up to 40% of the proceeds above a certain level.  Fortress, too, maintains a financial stake, as it, for example, invests up to 5% in some of the funds that in turn invest in VLSI.

157.    Fortress formed VLSI on June 27, 2016—days before it acquired the NXP patents—as an indirect subsidiary managed by a board of directors comprised primarily and/or entirely of Fortress employees.  One of the purposes of setting up VLSI this way was to create distance between VLSI and Fortress and its funds in the event of litigation.  Nevertheless, VLSI operates at the behest of Fortress and is funded through Fortress investment funds.

**VLSI's Monetization Scheme Relies On Improper**
**High-Volume Assertions And Serial Litigation**

158.    VLSI's business is to monetize patents owned by NXP.  But its model assumes that it will not (and need not) prevail on most of its claims.  Rather than licensing and litigating based on the merits of individual patents, VLSI engages in serial litigation.  VLSI deploys patent after patent in case after case—so far, exclusively against Intel—with the threat of ever more patent assertions and ever more litigation.  VLSI's model assumes that, over the course of various summary judgment, trial, administrative, and appellate proceedings, most of the patent claims will be found not infringed, invalid, and/or unenforceable, but the higher the volume of asserted claims across numerous proceedings, the higher the likelihood that one claim of one patent will survive and serve as the basis for an oversized damages award.

159.    VLSI began its torrent of litigation against Intel in October 2017:

---

Case No. 5:17-cv-05671-BLF                18        INTEL'S SECOND AMENDED
                                                   ANSWER, DEFENSES, AND
                                                   COUNTERCLAIMS TO VLSI'S
                                                   COMPLAINT

- On October 2, 2017, VLSI filed this suit against Intel, asserting eight patents acquired from NXP against virtually every one of Intel's microprocessors sold since 2011 (the "California Action"). Despite VLSI's aggressive litigation strategy in this case, it has suffered numerous setbacks, including losing various discovery and damages related disputes that were brought before the Court. After the Patent Trial and Appeals Board instituted *inter partes* review proceedings, finding that challenged claims of six of the eight Asserted Patents were more likely than not unpatentable, this Court stayed the case with VLSI's agreement.

- VLSI next set its sights on Delaware. On June 28, 2018, VLSI sued Intel in the District of Delaware, asserting five different patents against many of the same products accused in the California Action (the "Delaware I Action").

- On March 1, 2019—the same day VLSI agreed to stay this case—VLSI sued Intel again the District of Delaware, asserting six other patents against many of the same products at issue in the previous cases (the "Delaware II Action").

- In the wake of the court in Delaware's ruling dismissing certain of VLSI's indirect and willful infringement claims in this case, and faced with the possibility that the court would grant Intel's motion to consolidate the Delaware II Action with Delaware I, thus reducing the number of actions it had pending against Intel, VLSI again shifted its strategy in hopes of obtaining a more favorable outcome elsewhere. On April 11, 2019, one day after Intel filed its reply brief in support of its motion to consolidate—and without any warning—VLSI dismissed the Delaware II Action and filed three suits in the Western District of Texas (the "Texas Actions") that same day, asserting the same six patents at issue in the Delaware II Action, as well as two additional patents.

- VLSI subsequently filed two suits against Intel in China, asserting one patent in each action.

- Thus, VLSI's patent assertion scheme against Intel expanded to seven cases and twenty-three patents in five courts in the United States and China.

160.    The patents at issue in the seven suits VLSI has pending against Intel comprise less than 10% of the portfolio VLSI acquired from NXP for $35 million.  Yet VLSI earlier disclosed that it claimed up to $7.1 billion in connection with the eight patents originally asserted in this action.  VLSI also sought damages in excess of $2 billion and $3 billion in two prior trials against Intel, and it seeks multiple billions of dollars in damages based on the patents at issue in the other pending cases.  These damages claims are untethered to reality or the particulars of any patent.  On information and belief, it appears that VLSI will attempt to justify damages of about a billion dollars from Intel for each patent it asserts.

161.    Further, VLSI's patent monetization scheme is intended to circumvent constraints that would otherwise be imposed by the possibility of an award of sanctions or attorneys' fees.  VLSI does not generate any revenue on its own.  Instead, VLSI's operations, including this litigation, are funded with Fortress investment funds.  VLSI is undercapitalized.  *See* VLSI-18-966DE00054887-894.  VLSI does not maintain sufficient funds to pay any significant liabilities, but instead operates with a "runway" of capital designed to cover only a few months of limited litigation and related expenses.  *See* VLSI-18-966DE00054438.  Thus, the possibility of an award of sanctions and attorneys' fees does not deter VLSI from asserting unsupported claims and damages demands.

162.    Of the 23 patents VLSI has asserted against Intel, Intel has prevailed on a finding on the merits with respect to all asserted claims of seven of the 23 patents: The PTAB determined all challenged claims of two of the patents asserted in this action (the '588 and '303 patents) and two of the patents asserted in Delaware I (U.S. Patent Nos. 6,212,633 and 7,247,552) were unpatentable in inter partes review. *Intel Corp. v. VLSI Tech. LLC*, IPR2019-01197, Paper No. 40 (P.T.A.B. February 16, 2021); *Intel Corp. v. VLSI Tech. LLC*, IPR2019-

01198, -01199, -01200, Paper No. 49 (P.T.A.B. February 3, 2021); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01035, Paper No. 32 (P.T.A.B. February 4, 2020); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01105, Paper No. 44 (P.T.A.B. December 2, 2019). Intel prevailed on a motion for summary judgment of noninfringement with respect to U.S. Patent No. 8,156,357. *VLSI Tech. LLC v. Intel Corp.*, 6:21-cv-00057-ADA (W.D. Tex.) (Dkt. 573). And, following a six-day trial, a jury found that Intel does not infringe U.S. Patent Nos. 6,366,522 and 6,633,187. *VLSI Tech. LLC v. Intel Corp.*, 6:21-cv-00299-ADA (W.D. Tex.) (Dkt. 549).

163.    With respect to two other patents—the '922 patent (asserted in this case) and U.S. Patent No. 8,081,026 (asserted in Delaware I)—the PTAB determined that a subset of the claims challenged in *inter partes* review were unpatentable. *Intel Corp. v. VLSI Tech. LLC*, IPR2019-01194, -01195, Paper No. 29 (P.T.A.B. January 12, 2021); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01033, -01144, Paper No. 32 (P.T.A.B. February 6, 2020).

164.    VLSI's monetization model thus subverts the integrity of the patent system and the litigation process, thereby harming the public (and Intel).

**VLSI Improperly Exploits Litigation Asymmetries Attributable To Its Status As A Newly Formed Patent Assertion Entity**

165.    One significant aspect of VLSI's illegitimate monetization scheme is its exploitation of the advantages it enjoys because it exists solely for purposes of monetizing patents formerly held by NXP.[9]  These tactics have led to an increased burden on Intel to obtain evidence and to mount a complete defense to VLSI's assertions—thus increasing the likelihood of, for example, an erroneous failure to find invalidity or unenforceability.

166.    On information and belief, from the outset of Fortress's and NXP's collaboration to devise a means for obtaining exorbitant returns on NXP's patents, they embarked on a scheme

---

[9] In fact, the name VLSI Technology LLC derives from a now-defunct practicing entity, VLSI Technology Inc., which was purchased by one of NXP's subsidiaries.

1    to try to shield their own documents from later being subject to discovery. Simultaneously, they

2    have ensured that VLSI has only the bare minimum in the way of documents.

3        167.    For instance, at the very first meeting between NXP and Fortress, in January

4    2016, NXP and Fortress purportedly entered into a common interest and joint defense agreement

5    to shield their communications and documents from discovery in later litigation. The PPCA

6    states: "[T]he Parties understand and expect that the Assigned Patents may be subject to

7    litigation. Therefore, this Agreement serves as written confirmation of the Parties' oral

8    community of interests and joint defense agreement, which the Parties agreed to upon the

9    commencement of negotiations of this Agreement on or about January 8, 2016."

10   VLSI00043359. (Notably, ruling on Intel's motion to compel production of documents withheld

11   as privileged by NXP in connection with this action, Magistrate Judge Cousins ruled that,

12   because Fortress and NXP structured the PPCA so that NXP transferred its legal interests in the

13   patents to VLSI, the common legal interest exception to waiver of attorney-client privilege did

14   not apply to communications between NXP and Fortress/VLSI, resulting in NXP's production of

15   documents it had previously withheld as privileged.)

16       168.    NXP and Fortress proceeded to negotiate the terms of what would become the

17   PPCA, with the bulk of the negotiations occurring in April, May, and June of 2016. Fortress

18   then formed VLSI on June 27, 2016—just three days before NXP and *VLSI* (not Fortress) signed

19   the PPCA on June 30, 2016. As a result, VLSI has limited documentation regarding negotiation

20   of the agreement by which the asserted patents were transferred to it, including regarding

21   negotiation of the financial terms relating to the transfer of the patents. And despite Intel's

22   extensive efforts to secure documentation regarding negotiation of financial terms from NXP and

23   Fortress in this and the other litigations VLSI has filed against Intel, both have persistently

24   resisted—with Fortress initially claiming such documents would be protected by privilege, and

25   NXP claiming it does not make written records of price negotiations, even though NXP's own

26   document production shows the opposite. *See, e.g.*, NXP-VLSI-DDEL_0020700 at 20702-

27   20703.

28

169.     The sum total of documents that NXP transferred to VLSI along with the patents consisted of a "corporate file wrapper" for each patent containing assignments, correspondence for the Patent and Trademark Office, original figures, and notes by the inventor, presentations by the inventor during the evaluation of the idea, attorney notes, and other papers relating to preparation of the patent filings.  These files did not contain, for instance, documents the named inventors kept relating to their work, or documentation concerning NXP's prior attempts to sell or transfer any of the asserted patents.  Only through Intel's extensive discovery efforts has it come to light that NXP in fact previously transferred, or entered into option agreements concerning, three of the eight patents originally asserted in this case.  Likewise, VLSI has also avoided obtaining additional documentation (*e.g.*, patent prosecutors' files) that could provide further evidence regarding the misconduct engaged in by those involved in prosecuting the patents now held by VLSI.

170.     Further contributing to the paltry evidence VLSI has relating to the claims and defenses in this case, on information and belief, Fortress maintains control of VLSI's board of directors and directs its activities.  In fact, as of September 25, 2020, two of VLSI's three board members were Fortress employees.  The third board member is VLSI's CEO, who Fortress found through a consulting firm and whose functions appear to be predominantly ministerial.

171.     As a result, VLSI has produced minimal documentation, the majority of which are publicly available documents such as patent file histories and/or documents that do not pertain to the eight patents asserted in this action.  In an attempt to divert attention away from its paltry document production, VLSI has at times pointed to **Fortress's** document production in response to Intel's subpoenas.  But Fortress—like NXP—has routinely hidden behind its non-party status to avoid providing full discovery.  For instance, Fortress has unilaterally, and over Intel's objection, redacted from documents otherwise responsive to Intel's document subpoena material it purportedly regards as not relevant to issues in the case.

172.     To further demonstrate how VLSI has sought to improperly exploit its position as a transferee of patents that was created especially for their enforcement, it has alleged in this case

---

Case No. 5:17-cv-05671-BLF                23         INTEL'S SECOND AMENDED
                                                     ANSWER, DEFENSES, AND
                                                     COUNTERCLAIMS TO VLSI'S
                                                     COMPLAINT

1    that "Intel has been aware of the '303 Patent and that it infringes the '303 Patent since at least

2    May 30, 2014.  On May 30, 2014, VLSI's predecessor-in-interest to the '303 Patent, Freescale

3    Semiconductor, Inc., provided Intel with a detailed claim chart notifying Intel of the '303 Patent

4    and documenting infringement …."  Dkt. No. 1, ¶ 77.  VLSI made the same allegations against

5    Intel in connection with the '014 Patent.  *See* Dkt. No. 1, ¶ 105.  Based on these allegations,

6    VLSI is pursuing indirect infringement claims and willful infringement allegations as of the May

7    2014 timeframe.  *Id.* ¶¶ 78, 105.  But as VLSI well knows—as evidenced by documents VLSI

8    has produced—Freescale's May 30, 2014 provision of exemplary claim charts for certain of its

9    patents to Intel occurred "under the terms of [a Freescale-Intel] NDA [*i.e.*, non-disclosure

10   agreement]."  *See* VLSI00002269.

11        173.    The Freescale-Intel NDA expressly states that the discussions were not "intended

12   to be and must not be used by the disclosing party as a basis for or evidence of notice of

13   intellectual property rights infringement."  89610DOC00000265 (September 2013 Addendum to

14   Corporate NDA ¶ 3).  The NDA also prohibits NXP[10] from relying on the disclosure itself or the

15   existence or content of discussions or investigations between the two "as evidence that any later

16   alleged infringement was willful," or "that any later alleged inducement of infringement satisfies

17   the knowledge or intent elements of a claim for inducement infringement."  *Id.*  Thus, VLSI

18   asserts pre-suit willful infringement and induced infringement that NXP could not itself have

19   asserted against Intel with respect to a patent VLSI obtained from NXP to assert against Intel and

20   as to which NXP has a financial interest in the outcome.

21        174.    VLSI's reliance on the communications between Intel and Freescale is improper

22   for at least two reasons.  First, VLSI wholly ignores the prior commitments of its predecessor-in-

23   interest with respect to the '014 and '303 patents.  Second, even though NXP agreed to the NDA

24

25

26   ───────────────
     [10] Freescale Semiconductors changed its name to NXP USA, Inc. in 2016, after having been

27   acquired by NXP Semiconductors N.V.

28

1  restrictions on use, VLSI is "working together" with NXP to monetize the patents and is

2  obligated to share up to 40% of all proceeds over a certain level with NXP.[11]

3  **VLSI's Infringement Allegations Are Unsupported**

4  175.    As part of its monetization scheme, VLSI is unconcerned with the merits of its

5  patent assertions.  Instead, VLSI seeks to impermissibly expand the bounds of the Asserted

6  Patents to cover inventions and products that are far different from the purported inventions

7  described in the patents.

8  176.    For instance, after VLSI disclaimed independent claim 9 during the IPR

9  proceeding, all the remaining asserted claims of the '207 patent require a specific structure for a

10  "word line driver," including at least a "second transistor" having gate electrode coupled to a

11  "voltage *reference*." ('207 claim 1, 10).  VLSI has known or reasonably should have known

12  since the filing of the Complaint that none of the accused processors have the required structure.

13  Nevertheless, VLSI continues to argue assert the '207 patent based on the dubious argument that

14  a "first voltage reference" can be a *non*-reference signal.

15  177.    As another example, after claims 1-2, 7-8, and 17 were cancelled during the IPR

16  proceedings, all the remaining claims of the '922 patent require either (1) a "reference power

17  converter" (claims 4-6, 18-19); or (2) a control structure where a portion of a power island is

18  "externally controlled from outside the power island" *and* a portion that is "internally controlled

19  from inside the power island" (claim 3).  VLSI has known or reasonably should have known

20  since the filing of the Complaint that none of the accused processors have either required

21  structure.  Nevertheless, VLSI continues to assert the '922 patent without any credible argument

22  identifying either structure in the accused products.

23  178.    As another example, VLSI has asserted the '672 patent in connection with Intel's

24  Stratix 10 and Kaby Lake G products.  However, the evidence that VLSI includes in its

25

26  [11] VLSI Brief in Opposition to Intel Motion to Change Venue, *VLSI Tech. LLC v. Intel Corp.*, No.

27  6:19-cv-00254 (W.D. Tex.), D.I. 41, at 1.

28

infringement contentions plainly demonstrates that the asserted claims are not satisfied.  For example, under the Court's construction, claims 3 and 12 require a solder "bump" to be on top of the claimed solder layer on the first chip, but the documents and images VLSI relies on show that there is no solder bump on top of a solder layer; there is simply a copper pillar and a single solder.  Nevertheless, VLSI continues to assert the '672 patent without any credible argument that the claims are satisfied.

* * *

179.   Accordingly, for the reasons set forth above, VLSI cannot obtain relief because of its unclean hands.

### NINTH DEFENSE

### (Ensnarement)

180.   To the extent that VLSI claims infringement under the Doctrine of Equivalents, VLSI's claims are barred under the Ensnarement Doctrine, which prohibits VLSI from asserting an infringement theory under the Doctrine of Equivalents that encompasses, or "ensnares," the prior art.

### RESERVATION OF ADDITIONAL DEFENSES

181.   Intel reserves any and all additional defenses available under Section 35 of the United States Code, the rules, regulations, or laws related thereto, the Federal Rules of Civil Procedure, the Rules of this Court, and/or otherwise in law or equity, now existing, or later arising, as may be discovered.

### COUNTERCLAIMS

For its counterclaims against VLSI, Counterclaim Plaintiff Intel alleges as follows:

### PARTIES AND JURISDICTION

1.   Intel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Santa Clara, California.

2.      VLSI alleges that it is a limited liability company organized and existing under the laws of the State of Delaware.

3.      This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201-2202.

4.      This is an action for declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Thus, this Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a), in combination with 28 U.S.C. §§ 2201-2202.  An actual controversy exists under the Declaratory Judgment Act because VLSI has asserted infringement of the '588, '806, '207, '303, '922, '014, '672, and '836 Patents (collectively, the "Asserted Patents") by Intel and is asserting infringement of the '922 and '836 Patents, and Intel denies those assertions.  This Court also has jurisdiction over Count XVII of Intel's Counterclaims because VLSI has asserted and is asserting infringement of patents in other jurisdictions as well.

5.      This Court alternatively has supplemental jurisdiction over the related state law claim for relief (Count XVII) pursuant to 28 U.S.C. § 1367.  An actual controversy exists with respect to Count XVII because Intel asserts it has a license to VLSI's '836 and '922 patents not yet dismissed in this matter, as well as to VLSI's entire patent portfolio, which includes patents that VLSI has alleged that Intel infringes and foreign counterparts of patents that VLSI has asserted against Intel.

6.      Personal jurisdiction and venue in this District are proper because VLSI sued Intel in this Court.

INTEL'S SECOND AMENDED
ANSWER, DEFENSES, AND
COUNTERCLAIMS TO VLSI'S
COMPLAINT

1

## COUNT I – NON-INFRINGEMENT OF THE '588 PATENT[12]

2      7.      Intel repeats and realleges the allegations set forth in paragraphs 1 through 5 of

3  this Counterclaim, above, as if set forth fully herein.

4      8.      VLSI claims that it is the owner of all rights, title, and interest in and to the '588

5  Patent.  VLSI has expressly charged Intel with infringement of the '588 Patent by filing a

6  Complaint for Patent Infringement against Intel on October 2, 2017.

7      9.      Intel has not been and is not now infringing, contributorily infringing, or inducing

8  infringement of any valid or enforceable claim of the '588 Patent.  In light of VLSI's Complaint

9  for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this

10  patent.

11      10.      Accordingly, a valid and justiciable controversy has arisen and exists between

12  VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

13  duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

14  this time so that the parties may ascertain their respective rights and duties.

15      11.      Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not

16  infringing, the '588 Patent, (b) it has not contributed to, and is not contributing to, infringement

17  of the '588 Patent, and (c) it has not induced, and is not inducing, infringement of the '588

18  Patent.

19

20

21

22

23

24

25      [12]   The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all

26  challenged claims of U.S. Patent No. 7,268,588 unpatentable, and VLSI dropped its infringement

27  allegations for U.S. Patent No. 7,268,588.  This patent is thus no longer at issue in this action.

28

1

## <u>COUNT II – INVALIDITY OF THE '588 PATENT[13]</u>

2

    12.    Intel repeats and realleges the allegations set forth in paragraphs 1 through 10 of

3

this Counterclaim, above, as if set forth fully herein.

4

    13.    Intel contends that the claims of the '588 Patent are invalid for failure to comply

5

with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103

6

and 112.

7

    14.    Intel is informed and believes, and on that basis alleges, that VLSI contends that

8

the '588 Patent is valid and enforceable.

9

    15.    Accordingly, a valid and justiciable controversy has arisen and exists between

10

VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

11

duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

12

this time so that the parties may ascertain their respective rights and duties.

13

    16.    Intel is entitled to a declaratory judgment that the claims of the '588 Patent are

14

invalid.

15

## <u>COUNT III – NON-INFRINGEMENT OF THE '806 PATENT[14]</u>

16

    17.    Intel repeats and realleges the allegations set forth in paragraphs 1 through 15 of

17

this Counterclaim, above, as if set forth fully herein.

18

19

20

21

[13] The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all

22

challenged claims of U.S. Patent No. 7,268,588 unpatentable, and VLSI dropped its infringement

23

allegations for U.S. Patent No. 7,268,588.  This patent is thus no longer at issue in this action.

24

[14] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers

25

and customers under U.S. Patent No. 7,675,806 a certain covenant not to sue, and all counts of

26

VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's

27

counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

28

Case No. 5:17-cv-05671-BLF        29       INTEL'S SECOND AMENDED
ANSWER, DEFENSES, AND
COUNTERCLAIMS TO VLSI'S
COMPLAINT

18.     VLSI claims that it is the owner of all rights, title, and interest in and to the '806 Patent.  VLSI has expressly charged Intel with infringement of the '806 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

19.     Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '806 Patent.  In light of VLSI's Complaint for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

20.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

21.     Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '806 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '806 Patent, and (c) it has not induced, and is not inducing, infringement of the '806 Patent.

### <u>COUNT IV – INVALIDITY OF THE '806 PATENT[15]</u>

22.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 20 of this Counterclaim, above, as if set forth fully herein.

23.     Intel contends that the claims of the '806 Patent are invalid for failure to comply with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

---

[15] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers under U.S. Patent No. 7,675,806 a certain covenant not to sue, and all counts of VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

Case No. 5:17-cv-05671-BLF               30          INTEL'S SECOND AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO VLSI'S COMPLAINT

24.     Intel is informed and believes, and on that basis alleges, that VLSI contends that the '806 Patent is valid and enforceable.

25.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

26.     Intel is entitled to a declaratory judgment that the claims of the '806 Patent are invalid.

**COUNT V – NON-INFRINGEMENT OF THE '207 PATENT[16]**

27.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 25 of this Counterclaim, above, as if set forth fully herein.

28.     VLSI claims that it is the owner of all rights, title, and interest in and to the '207 Patent.  VLSI has expressly charged Intel with infringement of the '207 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

29.     Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '207 Patent.  In light of VLSI's Complaint for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

30.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

---

[16] On February 21, 2023, VLSI represented that it would not present an infringement case against Intel regarding U.S. Patent No. 7,706,207.  As a result, this patent is no longer at issue in this action.

31.     Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '207 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '207 Patent, and (c) it has not induced, and is not inducing, infringement of the '207 Patent.

### COUNT VI – INVALIDITY OF THE '207 PATENT[17]

32.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 30 of this Counterclaim, above, as if set forth fully herein.

33.     Intel contends that the claims of the '207 Patent are invalid for failure to comply with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

34.     Intel is informed and believes, and on that basis alleges, that VLSI contends that the '207 Patent is valid and enforceable.

35.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

36.     Intel is entitled to a declaratory judgment that the claims of the '207 Patent are invalid.

---

[17] On February 21, 2023, VLSI represented that it would not present an infringement case against Intel regarding U.S. Patent No. 7,706,207.  As a result, this patent is no longer at issue in this action.

1

## COUNT VII – NON-INFRINGEMENT OF THE '303 PATENT[18]

2      37.      Intel repeats and realleges the allegations set forth in paragraphs 1 through 35 of

3  this Counterclaim, above, as if set forth fully herein.

4      38.      VLSI claims that it is the owner of all rights, title, and interest in and to the '303

5  Patent.  VLSI has expressly charged Intel with infringement of the '303 Patent by filing a

6  Complaint for Patent Infringement against Intel on October 2, 2017.

7      39.      Intel has not been and is not now infringing, contributorily infringing, or inducing

8  infringement of any valid or enforceable claim of the '303 Patent.  In light of VLSI's Complaint

9  for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this

10  patent.

11      40.      Accordingly, a valid and justiciable controversy has arisen and exists between

12  VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

13  duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

14  this time so that the parties may ascertain their respective rights and duties.

15      41.      Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not

16  infringing, the '303 Patent, (b) it has not contributed to, and is not contributing to, infringement

17  of the '303 Patent, and (c) it has not induced, and is not inducing, infringement of the '303

18  Patent.

19

20

21

22

23

24

25  [18] The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all

26  challenged claims of U.S. Patent No. 7,709,303 unpatentable and VLSI dropped its infringement

27  allegations for U.S. Patent No. 7,709,303.  Thus this patent is no longer at issue in this action.

28

## COUNT VIII – INVALIDITY OF THE '303 PATENT[19]

42.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 40 of this Counterclaim, above, as if set forth fully herein.

43.     Intel contends that the claims of the '303 Patent are invalid for failure to comply with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

44.     Intel is informed and believes, and on that basis alleges, that VLSI contends that the '303 Patent is valid and enforceable.

45.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

46.     Intel is entitled to a declaratory judgment that the claims of the '303 Patent are invalid.

## COUNT IX – NON-INFRINGEMENT OF THE '922 PATENT

47.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 45 of this Counterclaim, above, as if set forth fully herein.

48.     VLSI claims that it is the owner of all rights, title, and interest in and to the '922 Patent.  VLSI has expressly charged Intel with infringement of the '922 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

49.     Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '922 Patent.  In light of VLSI's Complaint

---

[19] The Patent Trial and Appeal Board of the United States Patent and Trademark Office found all challenged claims of U.S. Patent No. 7,709,303 unpatentable and VLSI dropped its infringement allegations for U.S. Patent No. 7,709,303.  Thus this patent is no longer at issue in this action.

for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

50.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

51.     Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '922 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '922 Patent, and (c) it has not induced, and is not inducing, infringement of the '922 Patent.

## COUNT X – INVALIDITY OF THE '922 PATENT

52.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 50 of this Counterclaim, above, as if set forth fully herein.

53.     Intel contends that the claims of the '922 Patent are invalid for failure to comply with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

54.     Intel is informed and believes, and on that basis alleges, that VLSI contends that the '922 Patent is valid and enforceable.

55.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

56.     Intel is entitled to a declaratory judgment that the claims of the '922 Patent are invalid.

## COUNT XI – NON-INFRINGEMENT OF THE '014 PATENT[20]

57.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 55 of this Counterclaim, above, as if set forth fully herein.

58.     VLSI claims that it is the owner of all rights, title, and interest in and to the '014 patent.  VLSI has expressly charged Intel with infringement of the '014 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

59.     Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '014 Patent.  In light of VLSI's Complaint for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

60.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

61.     Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '014 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '014 Patent, and (c) it has not induced, and is not inducing, infringement of the '014 Patent.

---

[20] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers under U.S. Patent No. 8,020,014 a certain covenant not to sue and all counts of VLSI's complaint regarding this patent have been dismissed without prejudice and all counts of Intel's counterclaims regarding this patent are dismissed without prejudice.  Dkt. 459 at 1-2; Dkt. 460.

1

## COUNT XII – INVALIDITY OF THE '014 PATENT[21]

2      62.    Intel repeats and realleges the allegations set forth in paragraphs 1 through 60 of

3   this Counterclaim, above, as if set forth fully herein.

4      63.    Intel contends that the claims of the '014 Patent are invalid for failure to comply

5   with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103

6   and 112.

7      64.    Intel is informed and believes, and on that basis alleges, that VLSI contends that

8   the '014 Patent is valid and enforceable.

9      65.    Accordingly, a valid and justiciable controversy has arisen and exists between

10  VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

11  duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

12  this time so that the parties may ascertain their respective rights and duties.

13     66.    Intel is entitled to a declaratory judgment that the claims of the '014 Patent are

14  invalid.

15

## COUNT XIII – NON-INFRINGEMENT OF THE '672 PATENT[22]

16     67.    Intel repeats and realleges the allegations set forth in paragraphs 1 through 65 of

17  this Counterclaim, above, as if set forth fully herein.

18

---

19  [21] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers

20  and customers under U.S. Patent No. 8,020,014 a certain covenant not to sue and all counts of

21  VLSI's complaint regarding this patent have been dismissed without prejudice and all counts of

22  Intel's counterclaims regarding this patent are dismissed without prejudice.  Dkt. 459 at 1-2; Dkt.

23  460.

24  [22] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers

25  and customers under U.S. Patent No. 8,268,672 a certain covenant not to sue and all counts of

26  VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's

27  counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

28

68.     VLSI claims that it is the owner of all rights, title, and interest in and to the '672 Patent.  VLSI has expressly charged Intel with infringement of the '672 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

69.     Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '672 Patent.  In light of VLSI's Complaint for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

70.     Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

71.     Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '672 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '672 Patent, and (c) it has not induced, and is not inducing, infringement of the '672 Patent.

## <u>COUNT XIV – INVALIDITY OF THE '672 PATENT[23]</u>

72.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 70 of this Counterclaim, above, as if set forth fully herein.

73.     Intel contends that the claims of the '672 Patent are invalid for failure to comply with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

---

[23] VLSI has granted to Intel, its affiliates and their respective former, current, and future suppliers and customers under U.S. Patent No. 8,268,672 a certain covenant not to sue and all counts of VLSI's complaint regarding this patent have been dismissed with prejudice and all counts of Intel's counterclaims regarding this patent have been dismissed without prejudice.  Dkt. 801 at 1.

74. Intel is informed and believes, and on that basis alleges, that VLSI contends that the '672 Patent is valid and enforceable.

75. Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

76. Intel is entitled to a declaratory judgment that the claims of the '672 Patent are invalid.

### COUNT XV – NON-INFRINGEMENT OF THE '836 PATENT

77. Intel repeats and realleges the allegations set forth in paragraphs 1 through 75 of this Counterclaim, above, as if set forth fully herein.

78. VLSI claims that it is the owner of all rights, title, and interest in and to the '836 Patent.  VLSI has expressly charged Intel with infringement of the '836 Patent by filing a Complaint for Patent Infringement against Intel on October 2, 2017.

79. Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any valid or enforceable claim of the '836 Patent.  In light of VLSI's Complaint for Patent Infringement, there exists an actual controversy between VLSI and Intel regarding this patent.

80. Accordingly, a valid and justiciable controversy has arisen and exists between VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

81. Intel is entitled to a declaratory judgment that: (a) it has not infringed, and is not infringing, the '836 Patent, (b) it has not contributed to, and is not contributing to, infringement of the '836 Patent, and (c) it has not induced, and is not inducing, infringement of the '836 Patent.

1

## COUNT XVI – INVALIDITY OF THE '836 PATENT

2       82.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 80 of

3   this Counterclaim, above, as if set forth fully herein.

4       83.     Intel contends that the claims of the '836 Patent are invalid for failure to comply

5   with the conditions for patentability, including, but not limited to, 35 U.S.C. §§ 101, 102, 103

6   and 112.

7       84.     Intel is informed and believes, and on that basis alleges, that VLSI contends that

8   the '836 Patent is valid and enforceable.

9       85.     Accordingly, a valid and justiciable controversy has arisen and exists between

10  VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

11  duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

12  this time so that the parties may ascertain their respective rights and duties.

13      86.     Intel is entitled to a declaratory judgment that the claims of the '836 Patent are

14  invalid.

15  ## COUNT XVII – DECLARATORY JUDGMENT THAT INTEL IS LICENSED TO

16  ## VLSI'S PATENTS

17      87.     Intel repeats and realleges the allegations set forth in paragraphs 1 through 86 of

18  this Counterclaim, above, as if set forth fully herein.

19      88.     Intel contends that it has a license to the Asserted Patents, as well as to all patents

20  owned by VLSI.

21      89.     Intel is informed and believes, and on that basis alleges, that VLSI contends that

22  Intel is not licensed to any of its patents.

23      90.     Accordingly, a valid and justiciable controversy has arisen and exists between

24  VLSI and Intel.  Intel desires a judicial determination and declaration of the respective rights and

25  duties of the parties herein.  Such a determination and declaration is necessary and appropriate at

26  this time so that the parties may ascertain their respective rights and duties.

27

28

91.     Intel is entitled to a declaratory judgment that it has a valid license to all patents owned by VLSI, including the patents asserted in this case.

92.     The basis for Intel's claim is set forth more fully below.

**A.  VLSI Engages In Patent Monetization Campaign Against Intel**

93.     Beginning in 2017, VLSI began filing successive patent infringement lawsuits against Intel.  It eventually filed seven lawsuits against Intel, alleging infringement of a total of twenty-three patents.

94.     On October 2, 2017, VLSI filed this patent infringement lawsuit against Intel in the U.S. District Court for the Northern District of California.  VLSI originally alleged that Intel infringed U.S. Patent Nos. 7,268,588; 7,676,806; 7,706,207; 7,709,303; 8,004,922; 8,020,014; 8,268,672; and 8,566,836.

95.     VLSI subsequently dropped several of these patents from the case and, on December 7, 2023, this Court granted Intel's motion for summary judgment that it does not infringe the '836 or '922 patents, and that the '922 patent is invalid.  Dkt. 772 at 55.  VLSI subsequently dismissed with prejudice its claims regarding the '806 and '672 patents.  Dkt. 799.  VLSI has not withdrawn, dismissed, or granted a covenant not to sue on its claims regarding the '836 or '922 patent.  To the contrary, VLSI has stated that it intends to appeal the summary judgment ruling on the '836 or '922 patent with the goal of continuing to assert those patents against Intel.

96.     On June 28, 2018, VLSI filed a patent infringement lawsuit against Intel in the U.S. District Court for the District of Delaware.  VLSI originally alleged that Intel infringed U.S. Patent Nos. 7,246,027; 7,247,552; 7,523,331; 8,081,026; and 6,212,633.  VLSI voluntarily dismissed its claims in that suit on December 27, 2022.  *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, Dkt. 998 (D. Del. Dec. 27, 2022).

97.     On April 11, 2019, VLSI filed three patent infringement lawsuits against Intel in the U.S. District Court for the Western District of Texas.  VLSI originally alleged that Intel

infringed U.S. Patent Nos. 8,156,357; 7,523,373; 7,725,759; 7,793,025; 7,606,983; 7,292,485; 6,633,187; and 6,366,522.

98.     The three actions in the Western District of Texas all proceeded to trial in 2021 and 2022:  the first case resulted in a $2.18 billion jury verdict, which the Federal Circuit subsequently reversed; the second case resulted in a defense verdict for Intel; the third case resulted in a $949 million jury verdict, as to which post-trial motions are pending.

99.     On May 5, 2019, VLSI filed two patent infringement lawsuits against Intel in China, one in Shanghai (the "Shanghai Lawsuit") and one in Shenzhen (the "Shenzhen Lawsuit").  In the Shanghai Lawsuit, VLSI alleged that Intel infringed Chinese patent ZL201080024173.7.  That patent was found not to be infringed, which VLSI is currently appealing.  In the Shenzhen Lawsuit, VLSI alleged that Intel infringed Chinese patent ZL201410094015.9.  That patent was found to be invalid.

100.    Moreover, VLSI has over one hundred additional patents in its portfolio that it purchased from NXP.  These include foreign counterparts of patents it has asserted against Intel, such as Chinese patent CN100583432C.

101.    VLSI has sought billions of dollars in its litigation campaign against Intel, and there is currently a nearly billion-dollar verdict still live against Intel.

102.    But as of August 2020, Intel has a license to all of VLSI's patents.  VLSI's litigations should never have moved forward after that point, and Intel therefore brings this claim to confirm its license rights under VLSI's patents.

**B.  Finjan and Intel Enter Into a Patent License**

103.    On November 20, 2012, Finjan, Inc. and Finjan Software, Inc. (collectively, the "Finjan Parties") entered into a Confidential Settlement and Patent License Agreement ("Patent License") with Intel.  Ex. 9, Preamble.

104.    The Patent License grants to "Intel" a "nonexclusive, perpetual, irrevocable license under Finjan's Patents…."  Ex. 9, §3.1(a).  The Patent License defines "Finjan's Patents" to encompass "all Patent Rights" with a first effective filing date during the "Capture Period" that

1    "Finjan" "owned or controlled at any time on or after November 6, 2012."  Ex. 9, §§1.10, 1.4.

2    "Finjan" is defined as Finjan Software, Inc. and Finjan, Inc., "each signing on their own behalf

3    and on behalf of their respective Affiliates (collectively 'Finjan')."  Ex. 9, Preamble. "Affiliates"

4    is defined as "any Person that, now or hereafter, directly or indirectly through one or more entities,

5    controls or is controlled by, or is under common control with" the Finjan Parties.  Ex. 9, §1.2.

6        105.    "Control" is defined as "the possession, direct or indirect, of the power to direct the

7    management and policies of a Person, whether through the ownership of any percentage of voting

8    interests of such Person, through contract or otherwise."  Ex. 9, §1.2.

9        106.    The Patent License therefore extends a license to patents owned by Affiliates of the

10   Finjan Parties.  This includes Affiliates who did not sign the Patent License as well as future and

11   later-formed Affiliates.  *See* Dkt. 781 at 8 ("under Delaware law in certain circumstances, a non-

12   signatory created after a contract is signed can still be bound by the contract."), 11, 12 ("The Finjan

13   License Agreement also plainly states that it binds future and later-formed affiliates…. Delaware

14   law thus allows later-formed entities to be bound.").

15                    **C.  Fortress Created and Controls VLSI**

16       107.    In 2016, Fortress Investment Group ("Fortress") created VLSI in order to acquire

17   patents from NXP and engage in monetization of NXP's patents.

18       108.    Fortress describes itself as "a highly diversified global investment manager with

19   approximately $49.9 billion of assets under management as of September 30, 2020."  A portion of

20   Fortress's business is patent monetization, including creating and controlling non-practicing

21   entities to engage in patent monetization activities.

22       109.    Fortress employees led and directed the negotiations with NXP for the purchase of

23   VLSI's patents; VLSI was not created until shortly before the transaction was complete.

24       110.    Fortress then ensured that it retained control over VLSI in several ways.  Among

25   other reasons, Fortress maintains control over VLSI through VLSI's board of directors.  Fortress

26   employees assign board members to VLSI's board of directors, and a majority of VLSI's board

27   has always been made up of Fortress employees.

28

111.    In addition, Fortress maintains control over VLSI's finances.  Fortress implemented an independent CFO function to oversee VLSI's expenses and maintains access to VLSI's bank account.  Fortress also approves any funding request from VLSI and keeps only limited funds in VLSI's bank account.

### D.  Fortress Acquired and Controls Finjan

112.    In July 2020, Fortress Affiliates acquired Finjan Holdings, Inc. (later converted to Finjan Holdings LLC ("FHL")), whose subsidiaries include the Finjan Parties.

113.    From 2018 to 2020, Fortress employees engaged in due diligence prior to the acquisition.  These efforts included numerous meetings with FHL and review of FHL's patent license agreements.

114.    After Fortress investment committees approved the investment, CFIP Goldfish Holdings LLC ("Goldfish Holdings") and CFIP Goldfish Merger Sub Inc. (collectively, "Goldfish Entities") were formed solely for the purpose of acquiring FHL.

115.    Fortress filed a Schedule Tender Offer jointly with FHL and the Goldfish Entities, which states: "Parent [Goldfish Holdings] is controlled by Fortress Operating Entity I LP…, FIG Corp., … and Fortress Investment Group LLC…."  After the transaction, Goldfish Holdings became the parent and sole member of FHL.

116.    Fortress has since maintained control over FHL.  Among other reasons, Fortress employees have always constituted a majority of FHL's board of directors, and Fortress approves FHL's requests for funding.

### E.  Intel Has a License to VLSI's Patents

117.    Following the 2020 acquisition, Fortress now controls both FHL and VLSI.  Under the terms of the 2012 Patent License, VLSI is therefore an "Affiliate" of FHL, and VLSI's patents are subject to the license to Intel.  *See* Dkt. 781 at 19 (concluding that "patents belonging to Affiliates of Finjan, as defined by the Finjan License Agreement, are subject to the license to Intel described therein").

INTEL'S SECOND AMENDED
ANSWER, DEFENSES, AND
COUNTERCLAIMS TO VLSI'S
COMPLAINT

118.    Intel is therefore entitled to a declaratory judgment that it is licensed to all patents owned by VLSI.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Defendant and Counterclaim Plaintiff Intel demand a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Intel respectfully requests entry of judgment in its favor and against VLSI as follows:

a.  Dismissing VLSI's Complaint in its entirety, with prejudice;

b.  Declaring that Intel has not been and is not now infringing, contributorily infringing, or inducing infringement of any claims of the Asserted Patents;

c.  Declaring that the claims of the Asserted Patents are invalid;

d.  Declaring that Intel is licensed to all patents owned by VLSI;

e.  Awarding to Intel its costs, expenses, and reasonable attorneys' fees, pursuant to 35 U.S.C. § 285; and

f.  Granting Intel such other and further relief as this Court may deem just and proper in the circumstances.

1   Dated:  January 26, 2024               Respectfully submitted,

2                                          */s/ Mark D. Selwyn*

3                                          Mark D. Selwyn (CA SBN 244180)
                                           Wilmer Cutler Pickering Hale and Dorr LLP
4                                          2600 El Camino Real, Suite 400
                                           Palo Alto, California 94306
5                                          Telephone:  (650) 858-6000
                                           Facsimile:  (650) 858-6100
6                                          Mark.Selwyn@wilmerhale.com

7
                                           William F. Lee (*pro hac vice*)
8                                          Joseph J. Mueller (*pro hac vice*)
                                           Louis W. Tompros (*pro hac vice*)
9                                          Dominic E. Massa (*pro hac vice*)
                                           Wilmer Cutler Pickering Hale and Dorr LLP
10                                         60 State Street
                                           Boston, MA  02109
11                                         Telephone: (617) 526-6000
                                           Facsimile: (617) 526-5000
12                                         William.Lee@wilmerhale.com
                                           Louis.Tompros@wilmerhale.com
13                                         Dominic.Massa@wilmerhale.com

14                                         Amanda L. Major (*pro hac vice*)
                                           Wilmer Cutler Pickering Hale and Dorr LLP
15                                         1875 Pennsylvania Avenue NW
                                           Washington, DC 20006
16                                         Telephone: (202) 663-6000
                                           Facsimile: (202) 663-6363
17                                         Amanda.Major@wilmerhale.com

18                                         Mary V. Sooter (pro hac vice)
                                           Wilmer Cutler Pickering Hale and Dorr LLP
19                                         1225 Seventeenth St., Suite 2600
                                           Denver, CO 80202
20                                         Telephone: (720) 274-3135
                                           Fax: (720) 274-3133
21                                         Mindy.Sooter@wilmerhale.com

22
                                           *Attorneys for Defendant Intel Corporation*
23

24

25

26

27

28
     Case No. 5:17-cv-05671-BLF              46      INTEL'S SECOND AMENDED
                                                     ANSWER, DEFENSES, AND
                                                     COUNTERCLAIMS TO VLSI'S
                                                     COMPLAINT