**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>INTEL CORPORATION,<br><br>   Defendant. | Case No. 17-cv-05671-BLF<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND ANSWER**<br><br>[Re: ECF No. 809] |

On December 4, 2023, the Federal Circuit reversed a Texas district court's denial of Intel Corporation's ("Intel") motion for leave to amend its answer to add a defense that it is licensed to use VLSI Technology LLC's ("VLSI") patents. *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1351 (Fed. Cir. 2023). Before the Court is a motion for leave to amend involving the same parties and the same license in a separate case. Intel has filed a Motion for Leave to File a Second Amended Answer, Defenses, and Counterclaims. ECF No. 809 ("Mot."); ECF No. 827 ("Reply"). Intel seeks to amend its counterclaims to add a license counterclaim, which the parties have litigated in this Court for over two years as an affirmative defense. *See* ECF No. 809-1 ¶¶ 87–118. VLSI opposes the motion. ECF No. 822 ("Opp.").

The Court finds the motion suitable for disposition without a hearing. *See* Civ. L.R. 7-1(b). For the reasons discussed below, the Court GRANTS Intel's motion.

**I.    BACKGROUND**

On October 2, 2017, VLSI brought this action—its first of several lawsuits against Intel—asserting that Intel products infringe eight of its patents. ECF No. 1. In its "Amended Answer, Defenses, and Counterclaims," filed on December 21, 2021, Intel alleged as its seventh affirmative defense that "Intel is not liable for infringement because it possesses a license and full release of

1   liability with respect to all patents asserted in VLSI's Complaint." ECF No. 334 ¶ 145.

2         The parties proceeded through IPR and later full discovery in this action, after which four
3   patents remained at summary judgment: U.S. Patent No. 8,566,836 ("'836 Patent"), U.S. Patent
4   No. 8,004,922 ("'922 Patent"), U.S. Patent No. 7,675,806 ("'806 Patent"), and U.S. Patent No.
5   8,268,672 ("'672 Patent"). On December 7, 2023, the Court granted summary judgment that Intel
6   does not infringe the asserted claims of the '836 and '922 Patents and that the '922 Patent is
7   invalid, but denied Intel's motion for summary judgment that Intel does not infringe the asserted
8   claims of the '806 and '672 Patents. ECF No. 772 at 55. In a supplemental order issued after the
9   Federal Circuit's ruling in *VLSI Tech.*, 87 F.4th 1332, the Court denied Intel and VLSI's cross
10  motions for summary judgment on Intel's license defense and determined that the defense was
11  legally valid but that disputed factual issues should be decided at trial based on the narrow
12  question of whether VLSI and certain Finjan entities are under common control of Fortress
13  Investment Group. ECF No. 781 at 16–17. At a hearing on January 4, 2024, previously scheduled
14  for argument on the parties' *Daubert* motions pertaining to the '806 and '672 Patents, VLSI
15  advised the Court that it would not be proceeding on its claims regarding the remaining patents
16  and shortly thereafter, VLSI granted Intel an "unconditional covenant not to sue as to the '806 and
17  '672 Patents" and dismissed all claims relating to those two patents. ECF No. 798-2 at 2; ECF
18  No. 801. At the January 4, 2024 hearing, the Court questioned whether "trial can go forward on
19  the licensing defense" for the '836 and '922 Patents, and requested further briefing. ECF No. 797
20  ("Hrg. Tr.") at 27:22–25. After briefing, the Court found it lacked jurisdiction, ruling that "Intel
21  cannot proceed to trial on its affirmative defense that it is licensed to use the '836 and '922
22  Patents" because no live claims remained before the Court. ECF No. 807 at 8. Two days later,
23  Intel filed the instant motion to amend. Trial is set to begin on March 25, 2024, less than two
24  months from now.

25  **II.   LEGAL STANDARD**

26        The Federal Circuit applies "regional circuit law when reviewing a district court's decision
27  regarding motions for leave to file an amended complaint." *Healthier Choices Mgmt. Corp. v.*
28  *Philip Morris USA, Inc.*, 65 F.4th 667, 675 (Fed. Cir. 2023).

In the Ninth Circuit, a party seeking to amend a scheduling order must show "good cause" for such relief. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). District court judges are guided by the following principles in exercising their discretion under Rule 16. The Ninth Circuit teaches that "[o]nce the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings[,] that rule's standards control[ ]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). "The district court 'is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion.'" *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011) (quoting *Johnson*, 975 F.2d at 607).

A Rule 16 "good cause" analysis "is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Johnson*, 975 F.2d at 609. "Unlike Rule 15(a)'s liberal amendment policy . . . , Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* Courts may take into account any resulting prejudice to the opposing party, but "the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (quoting *Johnson*, 975 F.2d at 609).

If the moving party establishes "good cause" to modify the scheduling order, "it must then demonstrate that its motion is also proper under Rule 15." *Rodarte v. Alameda Cnty.*, No. 14-cv-00468-KAW, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15, 2015) (citing *Johnson*, 975 F.2d at 608). Under Rule 15(a), a party may amend its pleading once as a matter of course within 21 days of serving it. Fed. R. Civ. P. 15(a)(1). Further amendment of the pleadings is allowed with the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a)(2). The factors considered when determining whether to grant leave to amend include: "(1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Ciampi v. City of Palo Alto*, No. 09-CV-02655-LHK, 2010 WL 5174013, at *2

3

1  (N.D. Cal. Dec. 15, 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "This policy is to
2  be applied with extreme liberality."  *Farnan*, 654 F.3d at 985 (quoting *Eminence Cap., LLC v.*
3  *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)).  "Absent prejudice, or a strong showing of any
4  of the remaining [*Foman*] factors, there exists a presumption under Rule 15(a) in favor of granting
5  leave to amend."  *Ibid.*

**III.  DISCUSSION**

Two issues are before the Court:  (1) whether Intel has shown good cause to amend the scheduling order under Rule 16 and (2) whether Intel has shown that its proposed amendment to its Answer, Defenses, and Counterclaims is proper under Rule 15.  The Court considers each issue in turn.

**A.  Leave to Amend Scheduling Order Under Rule 16**

As stated above, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.*

Intel argues that there is good cause to amend the case schedule because it sought leave of the court to file the license issue as a counterclaim just two days after the Court ruled that Intel could not proceed to trial on the license issue as an affirmative defense.  Mot. at 5.  Intel adds that before VLSI dismissed the '806 and '672 Patents, "there was simply no need for such a counterclaim."  *Id.* at 6.

VLSI responds that Intel was not diligent because Intel has known the underlying facts supporting the license issue "at least as early as November 2020," and yet decided not to plead it as a counterclaim until now, over three years later.  Opp. at 3–4.  VLSI also argues that Intel delayed amendment because the counterclaim is "improper."  *Id.* at 4.  VLSI further argues that any amendment would require additional discovery and would prejudice VLSI.  *Id.* at 5–6.

The Court finds that Intel was diligent in seeking leave to amend.  Although VLSI correctly notes that trial is scheduled to begin less than two months from now and Intel has known about the license issue for years, it oversimplifies the timeline.  Intel pled the license issue as an

4

affirmative defense in 2021, ECF No. 334, and had no reason then to add a duplicative counterclaim. The license issue remained live as an affirmative defense to alleged infringement of the asserted patents throughout discovery and summary judgment until only weeks ago when VLSI tactically chose to dismiss the remaining asserted patents, while preserving its appeal rights on the '836 and '922 Patents, a move that ended the Court's jurisdiction over any of Intel's affirmative defenses. *See* ECF Nos. 801, 807. Two days after the Court issued its order, Intel moved to amend its answer. *See* ECF Nos. 807, 809. This timeline demonstrates that Intel moved to amend its answer as soon as it was clear that amendment was necessary to continue to pursue the license issue. On this record, the Court finds that dismissal of the license defense changed the tenor of the case, and that event was the motivating factor behind Intel's request. Further, the Court finds that this amendment does not create any meaningful case management issues.

Furthermore, the Court finds that any prejudice to VLSI is minimal. Intel's 2021 pleading of the issue as an affirmative defense clearly placed VLSI on notice of the claim and provided VLSI with the full opportunity to obtain discovery and develop its arguments to defeat the substance of the license issue. To that point, the parties have already conducted discovery on the substantive merits of the license issue, and the parties' cross summary judgment motions reduced the issue to the narrow factual question of whether Fortress controls VLSI and Finjan. ECF No. 781. Furthermore, any challenges by VLSI to the license issue not already addressed by the Court are largely questions of law or based on the factual record already developed. Thus, the prejudice to VLSI, if any, is minimal.

The Ninth Circuit's *Farnan* decision further supports the Court's finding. There, the defendant moved under Rule 16 to add a qualified immunity defense after summary judgment. *Farnan*, 654 F.3d at 982. The district court granted leave to amend, and the Ninth Circuit affirmed, holding that the district court did not abuse its discretion in concluding that "the tenor of the case changed significantly" when the district court issued its summary judgment ruling and "that this event, rather than any bad faith or dilatory purpose, motivated [the defendant's] request[.]" *Id.* at 984. The court also found that the plaintiff was not prejudiced because "he was put on notice that qualified immunity was at issue when the intervenors raised the defense on [the

defendant's] behalf in their answer, long before the parties filed their motions for summary judgment." *Id.* at 985. Similarly, VLSI's dismissal of the remaining asserted patents after summary judgment changed the tenor of the instant matter. Regarding prejudice, the Court notes that VLSI was on notice of the license defense for at least two years when Intel sought to bring it as a counterclaim.

VLSI argues that Intel's decision to wait until now to assert the license as a counterclaim is "likely because" it would have been improper or "violated the agreement's forum selection clause." Opp. at 3. Under the Rule 16 criterion, the Court finds that the substantive merit of the claim is not relevant and concludes that the timing of the proposed amendment does not reflect bad faith or dilatory purpose. Whether the proposed amendment is futile will be addressed under Rule 15.

Additionally, VLSI argues that Intel "cannot satisfy Rule 16's standard unless it can show that it did not know the facts underlying the substance of the claim before the scheduling order's deadline." Opp. at 3-4. But the cases VLSI relies on are distinguishable because in each case, the moving party was unable to explain delays before amending. *See, e.g.*, *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023) (the plaintiffs "offer[ed] no explanation for why they needed eight months to obtain [information] and move to amend the complaint"); *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 765 (9th Cir. 2017) (the defendants offered no reason for their delay); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (moving party "[did] not address good cause under Rule 16(b)"). Here, Intel's proposed amendment is explained by the recent change in the tenor of the case after summary judgment. And VLSI's characterization that Intel sat on the license for three years before deciding to plead it now ignores that Intel pled the license two years ago as an affirmative defense.

VLSI also argues that just because "it is now strategically beneficial to assert its affirmative defense as a counterclaim is no argument at all." Opp. at 4   But VLSI's arguments that the move is strategic are purely speculative.

VLSI also argues that it is prejudiced because it agreed to dismiss its claims on the '806 and '672 Patents in reliance on Intel's representations about its affirmative defenses. Specifically,

6

1  VLSI contends that Intel "had the opportunity at the January 4 hearing to state that it planned to
2  assert its affirmative defense as an independent claim," but instead "made clear statements to the
3  contrary." *Id.* at 5.  VLSI claims that it "relied on these representations, and on the pleadings
4  being long closed, in providing a covenant not to sue." *Id.* at 6.  Although it is undisputed that the
5  pleadings were long since closed, the transcript of the January 4, 2024 hearing does not reveal any
6  "clear statements" or "representations" made by Intel regarding its intention to convert its license
7  defense into a license counterclaim.  To the contrary, it was VLSI who first addressed the issue of
8  committing to dismiss its claims on the '806 and '672 Patents if it lost is appeal on the '836 and
9  '922 Patents. Hrg. Tr. 5:17–24.  This proposal was made in support of VLSI's request to stay the
10 case pending appeal.  After Intel articulated its objection, VLSI further sweetened the pot by
11 committing to enter into a "rock solid" covenant not to sue with respect to the '806 and '672
12 Patents. *Id.* 15:13–19, 21:9.  VLSI committed to dismissing those claims. *Id.* 15:22–16:1.
13 Nothing in the transcript shows that Intel promised or even suggested it would only proceed on its
14 affirmative defense.  To the extent that VLSI presumed Intel would not seek leave to amend to
15 convert the license dispute to a counterclaim, nothing in the record supports that speculation.
16      Accordingly, the Court finds under its broad discretion that Intel has shown good cause
17 under Rule 16 for leave to amend the scheduling order. *Farnan*, 654 F.3d at 984; *Johnson*, 975
18 F.2d at 607.  By bringing a license counterclaim instead of a license affirmative defense, Intel's
19 proposed amendment changes only the name of the dispute, not its substance.

20      **B.     Leave to Amend Complaint Under Rule 15(a)(2)**

21      The remaining question before the Court is whether Intel has shown that amendment is
22 appropriate under Federal Rule of Civil Procedure 15(a)(2).  The Court considers "(1) bad faith on
23 the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the
24 proposed amendment." *Ciampi*, 2010 WL 5174013, at *2 (citing *Foman*, 371 U.S. at 182).  The
25 Court addresses the *Foman* factors in turn.

26      **1.  Bad Faith**
27      First, Intel argues that its proposed amendment is not in bad faith because it does not seek
28 to add parties or prolong the litigation, and in fact wants to proceed to trial on schedule. Mot. at 7.

7

1  VLSI responds that the proposed amendment "demonstrates **bad faith** under Rule 15," is merely a tactical attempt to "prolong the litigation before a Court which lacks subject matter jurisdiction," manufacture jurisdiction, and improperly rebrand an affirmative defense as a counterclaim.  Opp. at 6–8 (citations and quotations omitted, emphasis in original).

The Court agrees with Intel.  "Bad faith in the context of a motion to amend a complaint to add parties or claims typically involves the moving party's efforts to prolong the litigation or destroy diversity jurisdiction." *Narog v. City of Redwood City*, No. C-13-03237 DMR, 2014 WL 3421166, at *3 (N.D. Cal. July 14, 2014) (collecting cases).  VLSI does not argue that Intel's proposed amendment destroys diversity jurisdiction; to the contrary, VLSI claims the amendment would not restore jurisdiction.  To the extent that the proceedings may be prolonged, VLSI has made no showing that any potential delays are unreasonable. *See id.*; *Padilla v. Sears, Roebuck & Co.*, No. 5:12-CV-00653 EJD, 2012 WL 5505071 at *2 (N.D. Cal. Nov. 13, 2012).

VLSI cites several cases for the proposition that Intel's proposed amendment is an improper attempt to manufacture jurisdiction and rebrand its affirmative defense.  In *Bonin v. Calderon* the court found that proposed amendments consisted of "theories [that] should have been pleaded in his petition originally" or were "either duplicative of existing claims or patently frivolous."  59 F.3d 815, 846 (9th Cir. 1995).  In *Westwood v. Brott*, the court dismissed counterclaims that were wholly redundant of affirmative defenses.  2022 WL 17418975, at *4 (N.D. Cal. Dec. 5, 2022).  Both cases are distinguishable.  Here, Intel already advanced the license issue as an affirmative defense in its Amended Answer, Defenses, and Counterclaims, ECF No. 334, and the license issue is not frivolous. *See* ECF No. 781.  Furthermore, had Intel initially pled both an affirmative defense and counterclaim, it might have been redundant, but that is no longer the issue.

VLSI argues that Intel "is seeking this amendment for strategic advantage following an adverse ruling."  Opp. at 9 (citing *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986)).  But *Acri* is distinguishable.  There, the plaintiffs sought leave to amend their complaint under Rule 15 to seek damages for emotional distress after oral argument on the summary judgment motion. *Id.* at 1395.  The Ninth Circuit held that "the district court did

1  not abuse its discretion in denying leave to amend" where it found, *inter alia*, that the plaintiffs
2  delayed in bringing the claims "to avoid the possibility of an adverse summary judgment ruling."
3  *Id.* at 1398–99. Unlike the plaintiffs in *Acri*, Intel did not seek to avoid adjudication of the merits
4  of the license issue; both parties brought motions for summary judgment on the license defense.
5  And to the extent VLSI seeks to argue that Intel is jurisdictionally and contractually barred from
6  litigating the license issue as a counterclaim, it may do so after Intel amends.
7      Finally, VLSI argues that the Texas court could resolve the license issue, Opp. at 7, but
8  that is not relevant to whether Intel's proposed amendment is in good faith.

### 2. Undue Delay

10      Second, Intel argues that it did not unduly delay in seeking leave to amend because it did
11  so two days after the Court ordered that it could not proceed to trial on Intel's affirmative
12  defenses. Mot. at 7. VLSI responds that Intel's amendment "represents undue delay" because
13  Intel was dilatory and because trial is scheduled less than two months from now. Opp. at 7.
14      The Court finds no undue delay by Intel. As noted above, Intel diligently sought to amend
15  its answer to add the license counterclaim only two days after the Court found that Intel could not
16  proceed to trial with the license affirmative defense.

### 3. Prejudice

18      Third, Intel argues that VLSI is not prejudiced because the parties "license issue has been a
19  part of this case since Intel amended its answer in December 2021," "the parties have completed
20  discovery in this action[,] and this Court has already resolved the parties' cross motions for summary
21  judgment on the license defense." Mot. at 7–8. VLSI responds that "a new *claim*, which implicates
22  the license's forum selection clause, provides a compelling justification for discovery" and that the
23  additional discovery would prejudice VLSI. Opp. at 7–8 (emphasis in original).
24      The Court finds that any prejudice to VLSI is minimal. As noted above, the parties have
25  already conducted discovery and motion practice on the license issue. VLSI has not outlined what
26  kind of additional discovery would be required to enforce a forum selection clause, but the Court
27  has no reason to believe that additional discovery, if necessary, would be particularly burdensome.
28  And a modest postponement of the trial date could be considered to accommodate briefing on a

9

1    motion to dismiss if VLSI wishes to file such a motion.

####    4. Futility

Finally, Intel argues that its proposed counterclaim is not futile because the Court retains jurisdiction to resolve the license issue and ruled at summary judgment that there were triable issues of fact. Mot. at 9. VLSI responds that Intel's amendments are futile because 1) Intel's counterclaim does not create jurisdiction for the court, 2) the Court would be required to dismiss or transfer the counterclaim, 3) declaratory judgment is inappropriate here, and 4) the Finjan License itself prohibits a counterclaim. Opp. at 8–10.

VLSI's arguments seem particularly ironic in light of the Federal Circuit's very recent reversal of an order denying leave to amend to add this very same license dispute as an affirmative defense in *VLSI Tech.*, 87 F.4th 1332. The Federal Circuit concluded that the finding of futility was "wrong as a matter of law," *id.* at 1351, and directed the matter to proceed on a fully developed motion to dismiss. This Court takes guidance from the Federal Circuit, and on this basis, finds that Intel's proposed counterclaim is not futile.

To be more specific, VLSI's four futility arguments fail at this juncture. First, VLSI claims that the counterclaim does not create jurisdiction for the Court because it is redundant of Intel's affirmative defenses. Opp. at 8. Intel replies that the counterclaim "does not merely relate to the '836 and '922 patents, but also to VLSI's entire patent portfolio." Reply at 1.

The Court agrees with Intel. As discussed above, Intel's counterclaim seeks "declaratory judgment that it is licensed to all patents owned by VLSI." ECF No. 809-1 ¶ 118. Thus, it is not redundant of Intel's affirmative defenses.

Second, VLSI argues that amendment is futile because the Court would be required to stay, dismiss, or transfer the counterclaim to Texas. Opp. at 8–9. Intel replies that this Court should decide the license defense because discovery is further along here and that the instant action is the "***first action***." Reply at 2 (emphasis in original).

The Court finds that it is not clear at this stage that it would be required to stay, dismiss, or transfer the counterclaim. "When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment

10

1    action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the
2    infringement action." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir.
3    2013). "But the rule is not absolute; exceptions may be made if justified by 'considerations of
4    judicial and litigant economy, and the just and effective disposition of disputes.'" *Id.* (quoting
5    *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)). "Justification for an
6    exception may be found in 'the convenience and availability of witnesses, [the] absence of
7    jurisdiction over all necessary or desirable parties, . . . the possibility of consolidation with related
8    litigation, or considerations relating to the real party in interest.'" *Id.* (quoting *Genentech, Inc. v.
9    Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). "Application of the first-to-file rule is
10   generally a matter for a district court's discretion, exercised within governing legal constraints."
11   *Id.*

12   The Court notes, however, that in *Futurewei*, the infringement suit was filed first, and a
13   separate declaratory relief action was later filed in a different judicial district. The facts in this
14   case are quite dissimilar. Namely, VLSI brought the instant infringement action in this forum
15   before it brought any action in Texas. Thus, it is not clear at this stage that any Texas action is
16   "first-filed." Even if the instant matter is a second-filed action, whether the case should be
17   transferred is "generally a matter for a district court's discretion," *id.*, and the Court will not
18   prejudge at this stage whether or not the *Futurewei* exceptions apply. *See VLSI Tech. LLC*, 87
19   F.4th at 1351.

20   Third, VLSI argues that declaratory judgment is inappropriate here because the Texas
21   court is willing to resolve the license issue. VLSI argues that "Intel can and must litigate" the
22   license issue "in Texas, where the 'relevant, substantive claims to which it directly relates are
23   being litigated.'" Opp. at 9–10 (quoting *Futurewei*, 737 F.3d at 710). Intel replies that the Court
24   should "reject VLSI's attempt to wipe the slate clean and start over in Texas" because "no
25   discovery has occurred on the license issues in Texas, the mandate has not issued in one Texas
26   case, and there are post-trial motions still pending in the other." Reply at 2.

27   As discussed above, the license counterclaim is not clearly futile on jurisdictional grounds,
28   nor is the Texas court's willingness to resolve the license issue relevant to this court's jurisdiction.

11

1           Fourth and finally, VLSI argues that the plain language of the Finjan License bars Intel

2   from bringing a counterclaim in this district.  Opp. at 10.  According to VLSI, "the Finjan License

3   prohibits signatories from bringing claims 'regarding this Agreement' or 'related to its

4   performance' outside of the 'Court of Chancery of the State of Delaware . . . or the United States

5   District Court for the District of Delaware.'"  *Id.* (quoting ECF No. 579-17 ("Finjan License") §

6   11.4).  VLSI also claims that the Finjan License "does not provide grounds for an independent

7   claim upon which this Court may base its jurisdiction."  *Id.*  VLSI also cites a motion to stay filed

8   by Intel in the Texas matter, where Intel wrote that it "agreed that a party seeking to enforce the

9   Finjan License could commence litigation in one of two enumerated [Delaware] venues."  ECF

10  No. 588-4 at 5.

11          Intel replies that the Finjan License provides that it "███████████████████

12  ████████████████████████████████████████████████████

13  ██████████"  Reply at 2 (quoting Finjan License § 9.1).  Intel argues that the language of

14  the license provides that the license "may be pleaded as a ███████ not only to claims that '███████

15  ███████' or '███████' but also to claims that '███████████████'" and that the only way to

16  do so is by "bringing a declaratory judgment counterclaim like the one Intel is asserting here."

17  *Ibid.* (emphasis in original).

18          The Court finds that it is not clear from the plain language of the Finjan License that the

19  license bars Intel from bringing the license issue as a counterclaim in this district such that

20  amendment is futile.  Whether the Finjan License may be used for an independent counterclaim is

21  a matter of contract interpretation, and Intel's counterclaim is not clearly meritless.  This issue will

22  benefit from a more developed record.  Furthermore, that Intel wrote under different

23  circumstances in a motion before another court that it "*could* commence litigation" in Delaware

24  does not bind it to commencing litigation *only* in Delaware.  Finally, when the Chancery Court

25  declined to hear Intel's license issue in September 2021, it wrote that Intel could pursue the license

26  issue in a then-pending action in Delaware district court (that has since been dismissed), or before

27  this Court.  *Intel Corp. v. Fortress Investment Grp.*, 2021 WL 4470091, at *9 n.77 (Del. Ch. Ct.

28  Sept. 30, 2021) ("it appears Intel may present its license defense in the first-filed ***forum***, the

California Action") (emphasis added). Thus, the court finds that the Chancery Court's opinion does not clearly foreclose litigation here such that amendment would be futile.

While VLSI has briefed several possible deficiencies with Intel's proposed counterclaim that may need to be explored further in subsequent briefing such as a motion to dismiss, none of its arguments convince the Court that Intel's proposed counterclaim is futile.

\*     \*     \*

Having found that all four *Foman* factors weigh in Intel's favor, the Court finds in its sound discretion to control its calendar, and with an eye to judicial efficiency, that amendment is appropriate under Rule 15. *Farnan*, 654 F.3d at 985; *Eminence*, 316 F.3d at 1051.

The Court cannot fail to observe that the parties seem to be playing four-way chess that includes their own tactical maneuvers and the related rulings of two federal district courts. What is clear is that this case was the earliest filed of the many VLSI-Intel disputes, VLSI chose to institute suit in the Northern District of California, and the parties have been actively litigating the license issue here for over two years, including lengthy summary judgment proceedings. In the interests of judicial efficiency, leave to amend is granted.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Intel's Motion for Leave to File a Second Amended Complaint is GRANTED. Intel SHALL file the amended answer immediately. VLSI SHALL respond to the amended answer within 14 days of the date of this order. If a motion to dismiss is filed, the Court sua sponte shortens time for Intel's response to seven days, and VLSI shall have seven days to file a reply.

Dated: February 9, 2024

_____
BETH LABSON FREEMAN
United States District Judge

13