**PUBLIC REDACTED VERSION**

1   Mark D. Selwyn (CA SBN 244180)
    WILMER CUTLER PICKERING
2      HALE AND DORR LLP
    2600 El Camino Real, Suite 400
3   Palo Alto, California 94306
    Telephone: (650) 858-6000
4   Facsimile: (650) 858-6100
    Mark.Selwyn@wilmerhale.com
5
6   William F. Lee (*pro hac vice*)
    Joseph J. Mueller (*pro hac vice*)
7   Louis W. Tompros (*pro hac vice*)
    Dominic E. Massa (*pro hac vice*)
8   WILMER CUTLER PICKERING
       HALE AND DORR LLP
9   60 State Street
    Boston, MA  02109
10  Telephone: (617) 526-6000
    Facsimile: (617) 526-5000
11  William.Lee@wilmerhale.com
    Joseph.Mueller@wilmerhale.com
12  Louis.Tompros@wilmerhale.com
    Dominic.Massa@wilmerhale.com
13

Amanda L. Major (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Amanda.Major@wilmerhale.com

Mary V. Sooter (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventeenth St., Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Fax: (720) 274-3133
Mindy.Sooter@wilmerhale.com

*Attorneys for Defendant*
INTEL CORPORATION

14
15              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
16                   **SAN JOSE DIVISION**
17

18  VLSI TECHNOLOGY, LLC,

19                           Plaintiff,

20        v.

21  INTEL CORPORATION,

22                           Defendant.

23

Case No. 5:17-cv-05671-BLF-NC

**DEFENDANT INTEL CORPORATION'S
OPPOSITION TO PLAINTIFF VLSI
TECHNOLOGY LLC'S MOTION TO
DISMISS INTEL'S SECOND AMENDED
ANSWER, DEFENSES, AND
COUNTERCLAIMS**

Judge:  Hon. Beth Labson Freeman

24
25
26
27
28

INTEL'S OPPOSITION TO VLSI'S MOTION TO
DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

    A.   VLSI's Serial Lawsuits Against Intel ........................................................... 2

    B.   Intel's License To VLSI's Patents ................................................................ 3

    C.   This Court's Summary Judgment Decision On The License Issues ............................ 4

    D.   VLSI's Attempts To Avoid The License Trial And Start Over In Texas .................... 4

    E.   This Court Grants Intel's Motion To Amend ................................................. 6

III. ARGUMENT ........................................................................................................... 6

    A.   Intel Has Properly Pleaded Its License Counterclaim As Part Of This Action. ........... 6

        1.   The plain language of the Finjan License allows it to be pleaded as a declaratory judgment counterclaim.................................................... 6

        2.   VLSI's arguments regarding the forum selection clause are without merit. ...................................................................................... 7

        3.   Even if VLSI's interpretation were correct, the correct remedy would be transfer for trial in Delaware, not dismissal of the counterclaim. .............. 11

    B.   This Court Has Jurisdiction Over Intel's License Counterclaim. ............................ 14

        1.   This Court has jurisdiction based on VLSI's other infringement actions and based on potential additional infringement actions VLSI could file........ 14

        2.   This Court also has jurisdiction based on VLSI's ongoing infringement allegations in this case. ................................................................ 16

        3.   This Court properly allowed Intel to plead a license counterclaim to cure the Court's prior concerns regarding jurisdiction. ........................... 18

    C.   This Court Should Not Decline Jurisdiction Over Intel's License Counterclaim. .................................................................................... 19

        1.   This Court should resolve Intel's license counterclaim in this first-filed infringement action in the interests of judicial economy............................. 20

        2.   This Court should reject VLSI's other arguments for declining jurisdiction over Intel's license counterclaim. .................................... 22

    D.   This Court Should Reject VLSI's Argument That Intel's Counterclaim Fails To State A Claim Upon Which Relief Can Be Granted. ................................... 25

IV.  CONCLUSION ....................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*ABB Inc. v. Cooper Industries, LLC,*
    635 F.3d 1345 (Fed. Cir. 2011)...................................................................................9, 17

5

*Abeyta v. DMCG, Inc.,*
    No. 22-cv-07089-SI, 2023 WL 2918741 (N.D. Cal. Apr. 12, 2023)......................................11

6

7

*Altvater v. Freeman,*
    319 U.S. 359 (1943)...............................................................................................................17

8

9

*Apple Inc. v. VoIP-Pal.com, Inc.,*
    506 F. Supp. 3d 947 (N.D. Cal. 2020) .................................................................................20

10

*Arkema Inc. v. Honeywell International, Inc.,*
    706 F.3d 1351 (Fed. Cir. 2013)............................................................................................15

11

12

*Atlantic Marine Construction Co., Inc. v. United States District Court for the Western*
    *District of Texas,*
    571 U.S. 49 (2013)...........................................................................................................11, 12

13

14

*B. Braun Medical, Inc. v. Abbott Laboratories,*
    124 F.3d 1419 (Fed. Cir. 1997)............................................................................................17

15

16

*Boba Inc. v. Blue Box Opco LLC,*
    No. 19-cv-00304-H-NLS, 2019 WL 2140597 (S.D. Cal. May 15, 2019) ...............................9

17

*United States v. Boe,*
    543 F.2d 151 (C.C.P.A. 1976) ............................................................................................19

18

19

*Carborundum Co. v. Molten Metal Equipment Innovations, Inc.,*
    72 F.3d 872 (Fed. Cir. 1995)................................................................................................17

20

21

*Cardinal Chemical Co. v. Morton International, Inc.,*
    508 U.S. 83 (1993)...............................................................................................................16

22

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper,*
    254 F.3d 882 (9th Cir. 2001) ..............................................................................................18

23

24

*D'Arbonne Bend LLC et al. v. Pierce Partners III, LLC,*
    No. LA CV19-04040, 2020 WL 10786670 (C.D. Cal. Feb. 19, 2020) ..................................12

25

26

*Dodocase VR, Inc. v. Merchsource, LLC,*
    767 F. App'x 930 (Fed. Cir. 2019) ........................................................................................8

27

*Electronics for Imaging, Inc. v. Coyle,*
    394 F.3d 1341 (Fed. Cir. 2005)......................................................................................20, 22

28

*Fellowship of Christian Athletes v. San Jose Unified School District Board of
    Education*,
    82 F.4th 664 (9th Cir. 2023) ...................................................................................19

*Fireman's Fund Insurance Co. v. M.V. DSR Atlantic*,
    131 F.3d 1336 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ...................................8

*Fort James Corp. v. Solo Cup Co.*,
    412 F.3d 1340 (Fed. Cir. 2005)...............................................................................16

*Fox Group, Inc. v. Cree, Inc.*,
    819 F. Supp. 2d 520 (E.D. Va. 2011) .....................................................................17

*Futurewei Technologies, Inc. v. Acacia Research Corp.*,
    737 F.3d 704 (Fed. Cir. 2013)..................................................................................20

*Gypsy Jeans International, Ltd. Corp. v. Chancey*,
    No. 05cv1558, 2006 WL 8455439 (S.D. Cal. Mar. 28, 2006).................................12

*Integrated Global Concepts, Inc. v. j2 Global, Inc.*,
    No. C-12-03434-RMW, 2013 WL 3297108 (N.D. Cal. June 28, 2013) .................17

*Intel Corp. v. Fortress Investment Group, LLC*,
    C.A. No. 2021-0021-MTZ, 2021 WL 4470091 (Del. Ch. Ct. Sept. 30, 2021)............... *passim*

*Intel Corp. v. Fortress Investment Group, LLC*,
    511 F. Supp. 3d 1006 (N.D. Cal. 2021) ..................................................................10

*Kershaw v. Blinken*,
    No. 2:22-cv-00708-SSS-SKx, 2022 WL 18673288 (C.D. Cal. Dec. 6, 2022) .......19

*Lawson Steel, Inc. v. All State Diversified Products, Inc.*,
    No. 1:10-cv-1750, 2010 WL 5147905 (N.D. Ohio Nov. 23, 2010)........................13

*Lucent Technologies, Inc. v. Newbridge Networks Corp.*,
    168 F. Supp. 2d 181 (D. Del. 2001)........................................................................17

*Madison Services, Inc. v. United States*,
    90 Fed. Cl. 673 (2009) ............................................................................................19

*McKinley v. Kaplan*,
    177 F.3d 1253 (11th Cir. 1999) ..............................................................................19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...........................................................................................14, 15

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
    518 F.3d 897 (Fed. Cir. 2008).................................................................................15

*Morongo Band of Mission Indians v. California State Board of Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ...................................................................................19

*National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. City Savings,
    F.S.B.*,
    28 F.3d 376 (3d Cir. 1994)........................................................................................17

*National Presto Indusries, Inc. v. Dazey Corp.*,
    107 F.3d 1576 (Fed. Cir. 1997)................................................................................19

*Nielsen v. Thermo Manufacturing Systems, LLC*,
    No. 8:17cv471, 2018 WL 1383182 (D. Neb. Mar. 19, 2018)..................................12

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
    25 F.4th 998 (Fed. Cir. 2022) ....................................................................................8

*Osborn ex rel. Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) .....................................................................................6, 7

*Philadelphia Indemnification Insurance Co. v. Chicago Title Insurance Co.*,
    771 F.3d 391 (7th Cir. 2014) .....................................................................................9

*Powertech Technology Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011)..................................................................................8

*Public Service Commission of Utah v. Wycoff Co.*,
    344 U.S. 237 (1952)....................................................................................................9

*Publicis Communication v. True North Communications Inc.*,
    132 F.3d 363 (7th Cir. 1997) .....................................................................................8

*In re Qualcomm Antitrust Litigation*,
    No. 17-md-02773-JSC, 2023 WL 121983 (N.D. Cal. Jan. 6, 2023)........................13

*RJ v. Cigna Health & Life Insurance Co.*,
    625 F. Supp. 3d 951 (N.D. Cal. 2022) .....................................................................13

*Scott v. Tesoro Ref. & Marketing Co., LLC*,
    No. 20-cv-04875-JSW, 2021 WL 9553715 (N.D. Cal. Mar. 1, 2021) .....................12

*In re Shorenstein Hays-Nederlander Theaters LLC Appeals*,
    213 A.3d 39 (Del. 2019) ..............................................................................6, 7, 9, 25

*Silicon Image, Inc. v. Genesis Microchip Inc.*,
    395 F.3d 1358 (Fed. Cir. 2005)................................................................................18

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004) ...................................................................................18

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)..................................................................................................13

*Swearinger v. Paskenta Band of Nomlaki Indians Tribal Business Council*,
  No. C 13-2642 CW, 2013 WL 4567456 (N.D. Cal. Aug. 27, 2013) .......................................19

*Texas Instruments Inc. v. Tessera, Inc.*,
  231 F.3d 1325 (Fed. Cir. 2000)..........................................................................................8

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:21-cv-57-ADA, 2022 WL 1261322 (W.D. Tex. Apr. 21, 2022) ....................................3

*VLSI Technology LLC v. Intel Corp.*,
  87 F.4th 1332 (Fed. Cir. 2023) ......................................................................................3, 4

*In re VoIP-Pal.com*,
  No. 2022-123, 2022 WL 843418 (Fed. Cir. Mar. 22, 2022)...................................................15

*In re VoIP-PAL.com, Inc.*,
  845 F. App'x 940 (Fed. Cir. 2021) ................................................................................20, 21, 22

*We Shall Overcome Foundation v. The Richmond Organization, Inc.*,
  No. 16cv2725(DLC), 2018 WL 400776 (S.D.N.Y. Jan. 12, 2018) .......................................16

*Westwood v. Brott*,
  No. 22-cv-03374-CRB, 2022 WL 17418975 (N.D. Cal. Dec. 5, 2022) ................................17

**Statutes and Rules**

12 U.S.C. § 1821...........................................................................................................17

28 U.S.C. § 1404....................................................................................................11, 12, 13

Federal Rule of Civil Procedure 12 ..............................................................................11, 12, 13

Federal Rule of Civil Procedure 15 ...................................................................................6

Federal Rule of Civil Procedure 16 .................................................................................5, 6

Federal Rule of Civil Procedure 54 .................................................................................18

**Docketed Cases**

*VLSI Technology LLC v. Intel Corp.*,
  No. 1:18-cv-00966 (D. Del.)..............................................................................................2

*VLSI Technology LLC v. Intel Corp.*,
  No. 1:19-cv-00426 (D. Del.)..............................................................................................2

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:19-cv-00254 (W.D. Tex.)..........................................................................................2

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:19-cv-00255 (W.D. Tex.) ................................................................................... 2

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:19-cv-00256 (W.D. Tex.) ................................................................................... 2

*VLSI Technology LLC v. Intel Corp.*,
  No. 1:19-cv-00977 (W.D. Tex.) ................................................................................... 2

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:21-cv-00057 (W.D. Tex.) ................................................................................... 2

*VLSI Technology LLC v. Intel Corp.*,
  No. 6:21-cv-00299 (W.D. Tex.) ................................................................................... 2

*VLSI Technology LLC v. Intel (China) Co.*,
  No. (2019) Hu 73 Zhi Min Chu No. 356 (Shanghai) ................................................... 3

*VLSI Technology LLC v. Intel Corp.*,
  No. (2021) Yue 03 Min Chu No. 5853 (Shenzhen) ..................................................... 3

\* Citations to "Mot." are to Plaintiff VLSI Technology LLC's Notice of Motion and Motion to Dismiss Intel's Second Amended Answer, Defenses, and Counterclaims, Dkt. 869-2.

\*\* Citations to "Ex. __" are to the exhibits attached to the Declaration of Mark Selwyn filed herewith.

**PUBLIC REDACTED VERSION**

I.      **INTRODUCTION**

VLSI's motion to dismiss is its latest attempt to avoid this Court's final resolution of the licensing issues and to start all over again in Texas, despite the Texas court deferring to this Court's adjudication of those issues.  After this Court denied Intel's and VLSI's cross motions for summary judgment on Intel's affirmative license defense and found that a jury should resolve the sole factual dispute as to whether Fortress has common control over VLSI and Finjan, VLSI has resorted to desperate measures in an attempt to prevent this Court from trying this single remaining license issue and to instead relitigate *all* license issues in Texas.  Now that this Court has granted Intel's motion to amend to plead the license issues in the form of a counterclaim and the Texas court has deferred to this Court in view of the advanced stage of these proceedings, VLSI has filed both a mandamus petition to the Federal Circuit to challenge this Court's order and this motion to dismiss Intel's license counterclaim.  VLSI's motion to dismiss should be denied because its arguments are without merit.

*First*, the Finjan License allows Intel to plead it as a " ████████████████ " to not only asserted VLSI claims but also " ██████████████████ ."  That is exactly what Intel has done here by pleading the license as a defensive counterclaim to both ongoing infringement actions brought by VLSI *and* potential infringement actions that VLSI *may attempt* in the future.  Intel's actions are consistent with the direction from the Delaware Chancery Court, which declined jurisdiction over a declaratory judgment license claim and ruled that Intel could present the license issues in the existing district court litigation, including "in the first-filed forum, the California Action." *Intel Corp. v. Fortress Inv. Grp., LLC*, 2021 WL 4470091, at *9 & n.77 (Del. Ch. Ct. Sept. 30, 2021).

*Second*, while VLSI incorrectly asserts that Intel's license counterclaim does not qualify as a " ████ " under the Finjan License, it also contradicts itself by arguing that the counterclaim is nothing more than a defense for jurisdictional purposes.  This Court correctly rejected VLSI's jurisdictional arguments in granting Intel's motion to amend and should do so again.  This Court has jurisdiction over Intel's license counterclaim because there is a substantial controversy between Intel and VLSI with respect to the '836 and '922 patents in this case, VLSI's pending infringement cases in Texas and China, and other patents for which there is an imminent risk that VLSI may sue Intel.  Moreover, the Court has not entered final judgment and thus has retained jurisdiction over the license counterclaim.

***Third***, in an obvious effort to avoid this Court's summary judgment ruling and to start all over in Texas, VLSI asks this Court to exercise its discretion and defer to the Texas court. But the Texas court deferred to this Court in the interests of judicial economy given the advanced stage of the license issues here. While VLSI previously prevented Intel from pursuing the license issues in Texas by opposing Intel's motion to amend, the parties have litigated the license issues in this Court since December 2021, when VLSI consented to Intel adding a license defense. Indeed, this case is the ***only*** pending case to have progressed through discovery on the license issues, and the Court has now issued a summary judgment order in which it has resolved every issue regarding the license with the exception of one factual question regarding whether Fortress has common control over VLSI and Finjan. As this Court previously stated, "it is clear that the license defense is ready to be submitted to a jury and this Court is in a position expeditiously to resolve this dispute." Dkt. 807 at 2.

This Court should reject VLSI's latest attempt at forum shopping, deny VLSI's motion to dismiss, and "reset trial on an expedited basis." *See* Dkt. 860.

## II.  STATEMENT OF FACTS

### A.  VLSI's Serial Lawsuits Against Intel

VLSI was formed in 2016 by Fortress Investment Group ("Fortress"), a New York-based hedge fund, for the purpose of acquiring patents from NXP Semiconductor. Dkt. 844 at 15-18 (¶¶ 150-157), 22 (¶ 168), 43 (¶ 107). Since its formation, VLSI's only business has been asserting former NXP patents against Intel across multiple jurisdictions. *Id.* at 16-17 (¶¶ 151-153), 18-20 (¶¶ 158-160).

Beginning with the instant suit filed in California, VLSI has sued Intel across the United States and in China. In October 2017, VLSI filed this action in which it originally asserted eight patents. Dkt. 1. VLSI next sued Intel in the District of Delaware in June 2018, where it asserted five additional patents. No. 1:18-cv-00966, Dkt. 1 (D. Del.). VLSI then filed a second Delaware action in March 2019, asserting six more patents against Intel. No. 1:19-cv-00426, Dkt. 1 (D. Del.). One month later, VLSI voluntarily dismissed that action and re-filed it as three separate actions (with two additional patents) in the Western District of Texas. *Id.*, Dkt. 15 (D. Del.); No. 6:19-cv-00254, Dkt. 1 (W.D. Tex.) (now No. 6:21-cv-00057) ("First Texas Case"); No. 6:19-cv-00255, Dkt. 1 (W.D. Tex.) (now No. 6:21-cv-00299); No. 6:19-cv-00256, Dkt. 1 (W.D. Tex.) (now No. 1:19-cv-00977) ("Third Texas

1    Case"). VLSI also filed two actions in China in which it asserted two additional patents. No. (2019)

2    Hu 73 Zhi Min Chu No. 356 (Shanghai); No. (2021) Yue 03 Min Chu No. 5853 (Shenzhen).

3        In total, VLSI has asserted 23 patents against Intel across these cases and sought more than

4    $22 billion in damages. Dkt. 844 at 18-20 (¶¶ 159-160).

5        **B.    Intel's License To VLSI's Patents**

6        In July 2020, three years after VLSI filed this action, Fortress—which formed and controls

7    VLSI—acquired control of Finjan Holdings, LLC ("FHL"). Dkt. 844 at 44 (¶ 112). That acquisition

8    triggered Intel's rights under a 2012 License to practice patents owned by FHL's subsidiaries and their

9    "Affiliates," a broadly defined term that includes VLSI because VLSI and FHL are under the common

10   control of Fortress. *Id.* at 42-43 (¶¶ 103-106), 44 (¶ 117). Under the Finjan License, Intel was required

11   to seek resolution of any agreement-related disputes through a mandatory Dispute Resolution Process.

12   Dkt. 843-3 § 9.3. Intel initiated that process in August 2020 by sending notice to FHL, VLSI, and

13   Fortress that Fortress's acquisition of FHL meant Intel had a license to VLSI's asserted patents.

14       With trial approaching in the First Texas Case, Intel moved to stay that case in September

15   2020, and moved to amend its answer to add the license defense in November 2020. *See VLSI Tech.*

16   *LLC v. Intel Corp.*, 87 F.4th 1332, 1349-50 (Fed. Cir. 2023). While those motions were pending in

17   Texas, Intel filed a complaint in the Delaware Chancery Court in which it sought resolution of the

18   license issues there. *See Intel*, 2021 WL 4470091, at *3. The Chancery Court, however, ruled that

19   Intel could present its license defense in the existing district court litigations, including "in the first-

20   filed forum, the California Action." *Id.* at *9 & n.77. Intel also pursued its license defense in the

21   District of Delaware where the court allowed Intel's motion to amend over VLSI's opposition. *VLSI*,

22   1:18-cv-00966, Dkt. 772 (D. Del.). The Delaware court, however, did not resolve the license defense

23   because the parties agreed to dismiss all claims and counterclaims as part of a stipulated agreement

24   ending that case, with "neither party … paying any amount to the other party." *Id.*, Dkt. 998 (D. Del.).

25       In Texas, at VLSI's urging, the court denied Intel's motion to add its license defense in March

26   2022, on the grounds that Intel's motion was untimely, amendment was futile, and VLSI would be

27   prejudiced because trial already occurred. *VLSI Tech. LLC v. Intel Corp.*, 2022 WL 1261322, at *2-4

28   (W.D. Tex. Apr. 21, 2022). The Federal Circuit recently reversed the Texas court, holding that Intel

should have been allowed to amend its answer to add its license defense. *VLSI*, 87 F.4th at 1349-52.

Meanwhile, in this action, which was stayed between March 2019 and September 2021, VLSI consented to Intel amending its answer to add the license defense in December 2021. Dkt. 330; Dkt. 334 ¶¶ 145-146. In the over two years since then, the parties actively litigated the license issues.

**C.    This Court's Summary Judgment Decision On The License Issues**

After discovery closed in February 2023, the parties filed cross motions for summary judgment on Intel's license defense. *See* Dkt. 579-3 at 18-21; Dkt. 588-2 at 1-15. Intel also moved for summary judgment of no infringement for the '836, '922, '806, and '672 patents and of invalidity for the asserted claims of the '922 patent. Dkt. 579-3 at 1-18.

On December 7, 2023, the Court granted summary judgment of no infringement for the '836 and '922 patents and of invalidity for the asserted '922 patent claims, but denied Intel's motion for summary judgment of no infringement for the '806 and '672 patents. Dkt. 772 at 55.

On December 20, 2023, the Court then issued a 19-page summary judgment opinion in which it denied Intel's and VLSI's cross motions for summary judgment on Intel's license defense. Dkt. 781. The Court rejected every one of VLSI's legal arguments regarding the license defense, including by holding that (1) "under Delaware law … non-signatory entities meeting the definition of 'Affiliates' (as defined by the Finjan License Agreement) of the Finjan Parties can be bound by the agreement, including later acquired or formed 'Affiliates'" and (2) "patents belonging to Affiliates of Finjan, as defined by the Finjan License Agreement, are subject to the license to Intel described therein." *Id.* at 14, 19. The Court determined that the defense should be decided at trial based on the narrow factual question of whether VLSI and the Finjan Parties are "Affiliates" under the license (which turns on the question of whether VLSI and the Finjan Parties are both under Fortress's control). *Id.* at 16-17.

**D.    VLSI's Attempts To Avoid The License Trial And Start Over In Texas**

Shortly after the Court's summary judgment orders, VLSI attempted to avoid the imminent trial on Intel's license defense by moving to vacate the trial date and stay the case pending its appeal from the district court's summary judgment order. Dkt. 788. When this Court rejected that motion, VLSI "mov[ed] down [its] list" of options, Dkt. 797 at 5:14-7:10, 15:6-21, 17:23-25, and voluntarily granted Intel a covenant not to enforce the '806 and '672 patents, Dkt. 797 at 15:13-19; Dkt. 798-2 at

1; Dkt. 799.  This Court then ordered briefing to determine whether "trial can go forward on the licensing defense" for the '836 and '922 patents.  Dkt. 797 at 27:22-25.

Intel explained that this Court had jurisdiction to hold a trial on the license defense because VLSI's covenant did not include the '836 and '922 patents, and the Court's interlocutory summary judgment ruling did not deprive it of jurisdiction to consider the defense as an additional, alternative ground for final judgment in Intel's favor on those patents.  Dkts. 798, 804-1.  In response, VLSI argued that this Court lacked jurisdiction over the license issue because "Intel is not seeking a trial on a counterclaim; it is seeking a trial on an affirmative defense."  Dkt. 803 at 3-4.

On January 24, 2024, the Court sided with VLSI.  Dkt. 807.  Although the Court noted that "it is clear that the license defense is ready to be submitted to a jury and this Court is in a position expeditiously to resolve this dispute," it held that "Intel's affirmative defenses were mooted by the Court's summary judgment order—which found in part that Intel does not infringe the asserted claims of the '836 and '922 Patents and that the '922 Patent is invalid—and VLSI's covenant not to sue and subsequent dismissal of the '806 and '672 Patents."  *Id.* at 2, 8.  The Court explained that "[c]ritical to this analysis is the fact that Intel only seeks trial on an affirmative defense; it did not assert the license defense as a counterclaim."  *Id.* at 3.  The Court rejected VLSI's argument that "Intel may not now seek to amend its answer to assert a new counterclaim long after the deadline has run" and explained "Rule 16 permits Intel to ***seek*** to amend the scheduling order in order to amend its answer, upon a showing of 'good cause and with the judge's consent.'"  *Id.* at 8.  Two days after the Court's ruling, Intel moved to amend its pleadings to add a license counterclaim.  Dkt. 809.

Meanwhile, VLSI moved for a scheduling order on the license defense in Texas—even though the mandate had not issued from the Federal Circuit's decision in the First Texas Case, and even though the Texas court had not yet ruled on pending post-trial motions in the Third Texas Case.  *See* Dkts. 827-2, 827-3.  VLSI made clear that its intent was to wipe the slate clean, have the Texas court ignore this Court's rulings, and relitigate all license issues already decided in this Court.  The Texas court denied VLSI's motion and stated that:

> The Court notes that the Northern District of California has set a jury trial
> for March 25, 2024 in a case between VLSI and Intel with a factual dispute

1    regarding the licensing issue underlying VLSI's motion.  The Court should

2    deny [VLSI's motion for a scheduling order] *in favor of judicial economy*.

3  Dkt. 833-1 (citation omitted and emphasis added).

4       **E.    This Court Grants Intel's Motion To Amend**

5       On February 9, 2024, this Court granted Intel's motion to amend to add the license

6  counterclaim.  Dkt. 841.  This Court determined that Intel had shown good cause for its amendment

7  under Rule 16 because "Intel was diligent in seeking leave to amend … as soon as it was clear that

8  amendment was necessary to continue to pursue the license issue," Intel's "amendment does not create

9  any meaningful case management issues," and "any prejudice to VLSI is minimal."  *Id.* at 4-7.  The

10  Court also held that Intel had shown that amendment was appropriate under Rule 15 because Intel did

11  not act in bad faith in seeking leave to amend, there was "no undue delay by Intel," "any prejudice to

12  VLSI is minimal," and "Intel's proposed counterclaim is not futile."  *Id.* at 7-13.

13  **III.    ARGUMENT**

14       **A.    Intel Has Properly Pleaded Its License Counterclaim As Part Of This Action.**

15       VLSI's request to dismiss Intel's license counterclaim based on the Finjan License forum

16  selection clause is contrary to the plain language of the Finjan License and unsupported by VLSI's

17  arguments.  In the alternative, even under VLSI's theory that the forum selection clause prevents

18  moving forward with Intel's license counterclaim in this venue (which to be clear, it does not), the

19  proper remedy would be transfer to the District of Delaware for a trial, not dismissal.

20       **1.    The plain language of the Finjan License allows it to be pleaded as a**

21            **declaratory judgment counterclaim.**

22       "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should

23  be that which would be understood by an objective, reasonable third party."  *Osborn ex rel. Osborn v.*

24  *Kemp*, 991 A.2d 1153, 1159 (Del. 2010).  Courts must "interpret contracts 'as a whole and … give

25  each provision and term effect, so as not to render any part of the contract mere surplusage,'" and "not

26  read a contract to render a provision or term meaningless or illusory."  *In re Shorenstein Hays-*

27  *Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019) (quoting *Osborn*, 991 A.2d at 1159).

28  "When the contract is clear and unambiguous," courts "will give effect to the plain-meaning of the

1    contract's terms and provisions." *Id.* at 56-57 (quoting *Osborn*, 991 A.2d at 1159-1160).

2           Under the plain meaning of the Finjan License, Intel has properly pleaded a declaratory

3    judgment license counterclaim before this Court.  Although the Finjan License provides that "[a]ll

4    disputes and litigation regarding this Agreement and matters connected with its performance shall be

5    subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware … or the United

6    States District Court for the District of Delaware," Dkt. 843-3 [Finjan License] § 11.4, it also provides

7    an exception such that the Finjan License "████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████," *id.* § 9.1

9    (emphasis added).  The plain language of the Finjan License thus allows it to be pleaded "███████████

10   ██████████████," and not only as an affirmative defense. *Id.* (emphasis added).

11          Moreover, while the Finjan License provides that it may be pleaded "████████████████████

12   ████" to claims that "████████████" or "████████," it also expressly provides that it may be

13   pleaded "██████████████████████" to claims that "██████████████." *Id.* (emphasis added).

14   The Finjan License does not place any limits as to ***how*** a defense can be pleaded.  And in fact, the only

15   way to plead a "█████████████████████████" is by bringing a declaratory judgment

16   counterclaim like the one Intel is asserting here.  That is, the only way to give meaning to the contract

17   terms "██████████████" is by permitting Intel to bring a declaratory judgment counterclaim that

18   sets out the substance of Intel's license defense against prospective claims that ████████████.  And

19   as noted above, the Delaware Chancery Court declined jurisdiction over a declaratory judgment

20   license claim and ruled that Intel could present the license issues in the existing district court litigation,

21   including "in the first-filed forum, the California Action." *Intel*, 2021 WL 4470091, at *9 & n.77.

22                 **2.      VLSI's arguments regarding the forum selection clause are without merit.**

23          VLSI's arguments that the Finjan License does not allow a party to plead "an independent

24   claim upon which the Court may base its jurisdiction," Mot. 6, should be rejected.

25          ***First***, VLSI argues that "[t]he Federal Circuit has conclusively determined that forum selection

26   clauses barring 'litigation … relating to' patent license agreements require dismissal of claims related

27   to patent enforcement, including claims for declaratory relief." Mot. 6-7.  But none of VLSI's cited

28   cases involves a situation where a defendant asserted a declaratory judgment counterclaim as a defense

to both ongoing and future infringement actions, and there is no indication that any of the cases involved a license explicitly stating that it could be "██████████████████████████," as is the case here. *Supra* § III.A.1; *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329-1331 (Fed. Cir. 2000) (interpreting "litigation" in forum selection clause of particular agreement to encompass ITC proceedings); *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) (reversing dismissal of declaratory judgment claim filed in California where forum selection clause provided that "claim[s] shall be filed in the state or federal courts in California"); *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930, 934-935 (Fed. Cir. 2019) (interpreting "dispute arising out of or under this Agreement" in forum selection clause to include PTAB petitions); *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1005-1006 (Fed. Cir. 2022) (interpreting forum selection clause that covers "all Potential Actions arising under U.S. law relating to patent infringement or invalidity" to include IPR petitions); *see also Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1340 (9th Cir. 1997), *as amended* (Mar. 10, 1998) (finding unavailability of *in rem* proceedings in Korea did not render forum selection clause unenforceable, without any indication that there was a dispute as to the scope of the forum selection clause); *Publicis Commc'n v. True N. Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997) (interpreting forum selection clause without identifying any provision that allowed claim at issue to be pleaded as counterclaim).

**Second**, while VLSI asserts that the Finjan License permitted Intel to rely on the license only when pleaded as a defense, and not as a counterclaim, Mot. 7-9, VLSI does not cite any case supporting that narrow interpretation. Instead, VLSI simply points to cases that cite background principles of contract interpretation without ever applying those principles to the plain language in the Finjan License. VLSI also claims that its narrow interpretation of Section 9.1 of the Finjan License is supported by the use of both "████" and "████" in that section, and argues that allowing a declaratory judgment counterclaim based on the license would "create a sweeping 'declaratory judgment' exception" to the forum selection clause in Section 11.4. Mot. 8-9. But VLSI never grapples with the full language of Section 9.1, which does not place *any* limits on the form in which such a defense must be raised. VLSI does not point to any reason grounded in the language of the

1  Finjan License as to why raising a license defense as an affirmative defense is permissible, but raising

2  a declaratory judgment counterclaim for the same license agreement is not.  And VLSI avoids

3  explaining how its interpretation of the license would not render the language that allows the license

4  to be pleaded as a "███████████████████████████████████████" mere

5  surplusage. *See Shorenstein*, 213 A.3d at 57 (rejecting contract interpretation that would "render[] the

6  definition of 'Shorenstein Entity' and 'Nederlander Entity' in the preamble to the LLC Agreement

7  mere surplusage").  Again, the only way to plead a defense to a claim that "████████████████" is

8  by bringing a declaratory judgment counterclaim. *Supra* § III.A.1.

9  VLSI narrowly focuses on the meaning of the word "██████" in isolation and argues that

10  Intel's interpretation "contradicts Delaware law." Mot. 9.  But there is no reason to consider the

11  meaning of the word "██████" in the abstract because the Finjan License provides that it may be

12  pleaded as a "██████████████" to any claim that "███████████."  In any event, while

13  VLSI identifies no case where a Delaware court analyzing forum selection issues has directly

14  confronted the question of whether the term "██████" can encompass declaratory judgment

15  counterclaims, courts regularly refer to declaratory judgment claims as "defenses." *See, e.g.*, *ABB Inc.*

16  *v. Cooper Indus., LLC*, 635 F.3d 1345, 1349-1350 (Fed. Cir. 2011) (referring to declaratory judgment

17  non-infringement claim as raising a "state law license defense"); *Public Serv. Comm'n of Utah v.*

18  *Wycoff Co.*, 344 U.S. 237, 248 (1952) (explaining that declaratory judgment plaintiff "is seeking to

19  establish a defense against a cause of action which the declaratory defendant may assert"); *Boba Inc.*

20  *v. Blue Box Opco LLC*, 2019 WL 2140597, at *4-5 (S.D. Cal. May 15, 2019) (finding that ***language***

21  ***in license "reserv[ing] all defenses" enabled defendant to bring counterclaim "challenging the***

22  ***validity of the … patent in defense to a claim of patent infringement***" (emphases added)); *see also*

23  Mot. 16 (referring to Intel's counterclaim as a "defense to infringement claims").  VLSI's cited case,

24  Mot. 8, does not hold otherwise as it simply states that "[a]n affirmative defense is not a 'claim.'"

25  *Philadelphia Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014).

26  Here, in the context of analyzing the Finjan License, there is even more reason to interpret the

27  term "██████" to encompass declaratory judgment "counterclaims" as the License refers to a "███

28  ████████████████████████████████." Dkt. 843-3 § 9.1 (emphases added).

As explained above, the plain meaning of that clause only makes sense if it encompasses declaratory judgment counterclaims because that is the only way to plead a defense to a claim "███████ ████." *Supra* § III.A.1. And while VLSI complains that this interpretation creates a "declaratory judgment" exception to the forum selection clause, Mot. 9, VLSI does not (and cannot) assert that this interpretation would render the forum selection clause a nullity, as the clause would still apply to bar the initiation of other claims—including, for example, breach of contract claims.

**Third**, VLSI argues that "Intel's current interpretation of the Finjan License directly contradicts its explicit representations before the Western District of Texas, District of Delaware, and Delaware Chancery Court." Mot. 10-12. But the Delaware Chancery Court rejected Intel's arguments in declining jurisdiction over Intel's affirmative claim seeking a declaration that Intel is licensed. The Delaware Chancery Court declined jurisdiction because Intel "has an adequate remedy at law in the form of a license defense in the infringement actions." *Intel*, 2021 WL 4470091, at *1. In so ruling, the court noted that "***it appears Intel may present its license defense in the first-filed forum, the California Action***"—without ever suggesting that Intel could only "present its license defense" as an affirmative defense and not as a declaratory judgment counterclaim. *Id.* at *9 n.77 (emphasis added). As explained above, it can be pleaded as a counterclaim. *Supra* pp. 6-10. Thus, the Delaware Chancery Court in fact contemplated that Intel would bring the license defense in this action, and Intel has done so by pleading it in the form of a declaratory judgment counterclaim.

**Finally**, apparently recognizing that the Finjan License allows Intel to plead its license counterclaim in this forum, VLSI argues that "this Court does not have subject matter jurisdiction over the license defense." Mot. 9-10. But VLSI's jurisdictional arguments should be rejected as explained below. *See infra* § III.B.[1]

---

[1] VLSI also includes a conclusory assertion that Intel's declaratory judgment counterclaim would be barred by res judicata based on an antitrust complaint that Intel and Apple brought against Fortress and its patent assertion entities. Mot. 10 n.3. But VLSI is wrong because the antitrust case had nothing to do with the Finjan License and did not involve the same claim or cause of action. *See Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1020-29 (N.D. Cal. 2021).

10     Intel's Opposition To VLSI's Motion To Dismiss

3.      **Even if VLSI's interpretation were correct, the correct remedy would be transfer for trial in Delaware, not dismissal of the counterclaim.**

Even under VLSI's theory that the Finjan License requires Intel's counterclaim to be brought in Delaware (which, as explained above, is incorrect), VLSI is wrong to suggest that the proper remedy is dismissal under either the doctrine of *forum non conveniens* or Fed. R. Civ. P. 12(b)(6).  Instead, the correct remedy would be transfer to Delaware—where a trial could be held—and not dismissal.

**First**, where a forum selection clause points to a federal forum (as is the case here), the United States Supreme Court has made clear that *forum non conveniens* does not apply, and that the proper remedy instead is transfer to the federal forum.  *See Atlantic Marine Constr., Co. v. United States Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 60 (2013) (explaining that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," but that "for the subset of cases in which the transferee forum is within the federal court system … Congress has replaced the traditional remedy of outright dismissal with transfer"); *Abeyta v. DMCG, Inc.*, 2023 WL 2918741, at *2 (N.D. Cal. Apr. 12, 2023) (denying motion to dismiss because "'a forum-selection clause may be enforced by a motion to transfer under § 1404(a),' not 'a motion to dismiss under [§ 1406(a)] or Rule 12(b)(3)'").  Given this precedent, it is not surprising that VLSI does not cite a single case after *Atlantic Marine* that grants dismissal under the doctrine of *forum non conveniens* based on a forum selection clause that permits a federal forum.  *See* Mot. 2, 6-12.

**Second**, VLSI's motion should be treated as a motion to transfer venue under 28 U.S.C. § 1404(a) because Rule 12(b)(6) is not the proper vehicle for enforcement of a forum selection clause. Although the Supreme Court in *Atlantic Marine* did not consider whether Rule 12(b)(6) may be used to enforce a forum selection clause, it noted that "[e]ven if a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, that would not change our conclusions that § 1406(a) and Rule 12(b)(3) are not proper mechanisms to enforce a forum-selection clause and that § 1404(a) [for forum-selection clauses that point to a federal court] and the *forum non conveniens* doctrine [for forum-selection clauses that point exclusively to a state or foreign forum] provide appropriate enforcement mechanisms."  571 U.S. at 61.  As explained in *Atlantic Marine*, a forum selection clause "does not render venue in a court 'wrong' or 'improper,'" and therefore "the clause may be enforced through a

1   motion to transfer under § 1404(a)" as opposed to a motion to dismiss.  *Id.* at 59.

2          At least one court in this District has correctly recognized that this remedy applies regardless

3   of whether a movant attempts to enforce a forum selection clause through the more traditional avenue

4   of a motion to dismiss for improper venue or a motion under Rule 12(b)(6).  *See Scott v. Tesoro Refin.*

5   *& Mktg. Co.*, 2021 WL 9553715, at *4-5 (N.D. Cal. Mar. 1, 2021) (holding that alleged violations of

6   a forum selection clause do not "warrant a Rule 12(b)(6) dismissal," but instead, "the proper

7   enforcement mechanism is a motion to transfer pursuant to … section 1404(a)").  And while courts in

8   this District have not reached consensus regarding whether a motion to dismiss under Rule 12(b)(6)

9   may be used to enforce a forum selection clause, and the Ninth Circuit has not yet ruled conclusively

10   on this question, Ninth Circuit and Supreme Court precedent support those courts that have found that

11   transfer, and not dismissal, is the proper mechanism to enforce a forum selection clause.

12          For example, the Ninth Circuit has recognized that attempts to enforce a forum selection clause

13   under Rule 12(b)(6) should be considered as arguments regarding improper venue.  In *Argueta v.*

14   *Banco Mexicano, S.A.*, the Ninth Circuit concluded that the movant's motion to dismiss based on a

15   forum selection clause should not be treated as a Rule 12(b)(6) motion, but rather "as a Rule 12(b)(3)

16   motion" based on "improper venue."  87 F.3d 320, 324 (9th Cir. 1996); *see Gypsy Jeans Int'l Ltd. v.*

17   *Chancey*, 2006 WL 8455439, at *2 (S.D. Cal. Mar. 28, 2006) (converting motion to dismiss under

18   Rule 12(b)(6) to a Rule 12(b)(3) motion for improper venue).  Although this decision was prior to

19   *Atlantic Marine*'s holding that motions for improper venue based on a forum selection clause should

20   be heard under § 1404(a), not Rule 12(b)(3), it supports subsequent decisions holding that a forum

21   selection clause should be treated as a venue issue and that transfer—not dismissal—is therefore the

22   appropriate enforcement mechanism.  *See D'Arbonne Bend LLC v. Pierce Partners III, LLC*, 2020

23   WL 10786670, at *5 (C.D. Cal. Feb. 19, 2020) (holding that "motion to dismiss under Rule 12(b)(6)

24   is not considered on the merits and is MOOT," and that "[i]nstead, the forum selection issue is

25   considered under 28 U.S.C. § 1404"); *Scott*, 2021 WL 9553715, at *4-5; *Nielsen v. Thermo Mfg. Sys.,*

26   *LLC*, 2018 WL 1383182, at *5 (D. Neb. Mar. 19, 2018) ("Because the Supreme Court has specifically

27   prescribed the appropriate means to enforce a forum-selection clause—either a motion to transfer

28   under 28 U.S.C. § 1404(a) or through the doctrine of *forum non conveniens* … the Court finds

1   [Defendants] are not entitled to enforce the forum-selection clause through Rule 12(b)(6)."). *But see*

2   *RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 968-69 (N.D. Cal. 2022) (adopting rule from

3   other circuits that Rule 12(b)(6) "is an acceptable means of enforcing a forum selection clause").

4          Although other courts in this circuit (including within this district) and in other circuits, *see*

5   Mot. 12, have disagreed, the unique issues present when analyzing a forum selection clause favor

6   enforcement through transfer over dismissal.  For example, courts have noted procedural differences

7   between challenges to venue based on a forum selection clause and motions to dismiss under Rule

8   12(b)(6), including that "dismissal for failure to state a claim under Rule 12(b)(6) is a judgment on the

9   merits" whereas "[c]hallenges to venue … generally do not cause prejudice to the merits of the non-

10  moving party's claims because the case is merely moved to and adjudicated in a new location."

11  *Lawson Steel, Inc. v. All State Diversified Prods., Inc.*, 2010 WL 5147905, at *5 (N.D. Ohio Nov. 23,

12  2010), *report and recommendation adopted*, 2010 WL 5150159 (N.D. Ohio Dec. 13, 2010).   In

13  addition, the fact that Congress provided alternative mechanisms to challenge venue under Rule

14  12(b)(3) and § 1404(a) suggests that these serve a different purpose than Rule 12(b)(6) and should not

15  be conflated.  *Compare Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988) ("Section 1404(a)

16  is intended to place discretion in the district court to adjudicate motions for transfer according to an

17  'individualized, case-by-case consideration of convenience and fairness.' … The flexible and

18  individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the

19  parties' private expression of their venue preferences."), *with In re Qualcomm Antitrust Litig.*, 2023

20  WL 121983, at *13 (N.D. Cal. Jan. 6, 2023) ("The Court must dismiss a complaint under [Rule]

21  12(b)(6) 'where the pleadings fail to state a claim upon which relief can be granted.'").

22         For these reasons, should the Court find that the forum selection clause requires adjudication

23  of Intel's counterclaim in Delaware (which, as explained above, it should not), the appropriate remedy

24  is transfer to the District of Delaware under § 1404(a), and not dismissal.  Although this Court

25  previously expressed concerns about the potential of transferring to Delaware, Dkt. 866 at 17:22-18:8,

26  this Court has already allowed the license counterclaim into this case and the District of Delaware is

27  familiar with the licensing issues as they were previously litigated through discovery and summary

28  judgment briefing before the case was dismissed by agreement of the parties before resolution of the

1   summary judgment motions.  Moreover, transferring to Delaware for trial will allow the court in

2   Delaware to efficiently bring the license issues to a close by taking the case in its current posture and

3   then holding a trial, rather than having to supervise a new case from the very beginning.

4          But again, the Court need not do this because the counterclaim can and should be heard here.

5       **B.     This Court Has Jurisdiction Over Intel's License Counterclaim.**

6          This Court has jurisdiction over Intel's counterclaim for a declaratory judgment that it is

7   licensed to VLSI's patents because "the facts alleged, under all the circumstances, show that there is

8   a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

9   reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549

10  U.S. 118, 127 (2007).  Intel's license counterclaim presents a substantial controversy between Intel

11  and VLSI because it addresses the '836 and '922 patents that VLSI intends to continue to pursue in

12  this case, as well as VLSI's entire patent portfolio, including patents presently asserted in other

13  jurisdictions, foreign counterparts of patents VLSI previously asserted, and other patents for which

14  prior owner NXP committed to provide VLSI claim charts.  VLSI's jurisdictional arguments are

15  meritless and should be rejected.

16          **1.     This Court has jurisdiction based on VLSI's other infringement actions**
17                   **and based on potential additional infringement actions VLSI could file.**

18          VLSI's jurisdictional argument is based on the incorrect premise that "Intel cannot identify

19  any actual case or controversy to justify asserting a license claim ***within this proceeding***" and that

20  "[t]he claim's potential impact on the infringement claims pending in Texas is irrelevant for

21  establishing jurisdiction ***here***."  Mot. 13-15.  As this Court recognized, however, Intel's declaratory

22  judgment license counterclaim has broader implications beyond the particular patents VLSI asserted

23  in this one case because "Intel's counterclaim seeks 'declaratory judgment that it is licensed to all

24  patents owned by VLSI.'"  Dkt. 841 at 10.  While VLSI asserts that its "ownership of patents that may

25  or may not be subject to the Finjan License is wholly insufficient to create a case or controversy on its

26  own," Mot. 14, the counterclaim does not merely rely on VLSI's ownership of patents to establish

27  jurisdiction.  Instead, Intel relies on multiple factors that establish a live controversy, including:

28      • VLSI's pending infringement actions in Texas and China, Dkt. 844 at 41-42; *supra* § II.A;

- The existence of foreign counterparts of patents VLSI previously asserted against Intel, including foreign counterparts to the '672 patent that VLSI did not include in its covenant not to sue, Dkt. 844 at 42 (¶ 100);

- The existence of other patents for which the prior patent owner NXP committed to provide VLSI with claim charts, Dkt. 828-2, Recitals, §§ 1.1(ss), 3.2; Ex. 1, 132-33, 178-79, 194-95;

- Evidence that VLSI was created by Fortress for the sole purpose of obtaining patents from NXP and asserting them in litigation, Dkt. 844 at 17-18 (¶¶ 154-157); Ex. 2 at 913, 915; and

- VLSI's aggressive enforcement campaign against Intel in which VLSI has asserted 23 patents against Intel and sought more than $22 billion in damages to date, Dkt. 844 at 18-20 (¶¶ 158-160), 41-42 (¶¶ 93-101); *supra* § II.A.

These facts, when considered either individually or collectively, "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127; *see Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (there is "a sufficient affirmative act on the part of the patentee for declaratory judgment purposes" where patentee had accused declaratory judgment plaintiff of infringing rights with respect to closely related patent and foreign counterpart); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901-902 (Fed. Cir. 2008) (evidence of "an aggressive litigation strategy … amply supports a real and substantial dispute between these parties"); *In re VoIP-Pal.com, Inc.*, 2022 WL 843418, at *2 (Fed. Cir. Mar. 22, 2022) ("district court made a reasonable determination" that "prior patent infringement suit involving the same products and closely related patents provided strong support for there being an active controversy between the parties").

VLSI ignores most of these facts that give rise to jurisdiction here and instead only addresses the litigation in the Western District of Texas.  Mot. 13-14.  But even the Texas cases alone are enough for there to be controversy that confers jurisdiction on this Court because the license counterclaim could definitively resolve the infringement disputes in the Texas court.  VLSI's contrary argument based on *Tur v. YouTube, Inc.* is misplaced because that case involved an appellant seeking review of an interlocutory summary judgment denial after a case had already been dismissed voluntarily.  562 F.3d 1212, 1213-1214 (9th Cir. 2009).  *Tur* would thus be more analogous to VLSI voluntarily

dismissing its entire case, and then only after that, seeking review of the Court's summary judgment denial on Intel's license defense to prevent the potential preclusive effect of this Court's summary judgment denial in the Texas case.  Here, unlike *Tur*, Intel's license counterclaim is a standalone claim that gives rise to jurisdiction in this case as it will indisputably affect both this action, VLSI's other pending actions against Intel, and VLSI's entire patent portfolio.  Because there are both ongoing infringement actions brought by VLSI and a risk that VLSI may pursue additional infringement allegations, this Court has jurisdiction over Intel's declaratory judgment license counterclaim.

> ## 2. This Court also has jurisdiction based on VLSI's ongoing infringement allegations in this case.

This Court also has jurisdiction over Intel's counterclaim based on the '836 and '922 patents asserted in this suit.  While VLSI argues that Intel cannot assert a counterclaim based on the '836 and '922 patents because this Court has already granted summary judgment as to those patents, Mot. 15-16, VLSI has indicated that it intends to continue asserting the '836 and '922 patents by appealing this Court's summary judgment ruling.  A declaration that Intel is licensed to the '836 and '922 patents would provide an additional basis for entering final judgment against VLSI with respect to those patents.  For this reason, the Supreme Court has explained that a court's "decision to rely on one of two possible alternative grounds"—for example, "noninfringement rather than invalidity"—does ***not*** "strip it of *power* to decide the second question, particularly when its decree [i]s subject to" appellate review.  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993); *see Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2005) ("[T]he jury verdict holding that [defendant] did not infringe [plaintiff's] patents did not moot [defendant's] counterclaim for unenforceability nor did it act to divest the district court of jurisdiction to hear that unlitigated counterclaim."); *We Shall Overcome Found. v. The Richmond Org., Inc.*, 2018 WL 400776, at *1-2 (S.D.N.Y. Jan. 12, 2018) (trial could proceed on alternative grounds after granting summary judgment of no valid copyright, even though defendants tendered a covenant-not-to-sue as to remaining portions of their copyright).

The Supreme Court's decision in *Cardinal Chemical* thus contradicts VLSI's assertion that "courts have unanimously recognized that a finding of non-infringement also moots counterclaims based on defenses to infringement," Mot. 16.  VLSI's assertion is also inconsistent with its previous

1    position that this Court lacked jurisdiction over Intel's affirmative license defense based on the

2    "fundamental difference between affirmative defenses and independent claims."  Dkt. 803 at 4; *id.* at

3    3-4 ("Intel is not seeking a trial on a counterclaim; it is seeking a trial on an affirmative defense.").

4    VLSI's reliance on *Westwood v. Brott*, 2022 WL 17418975 (N.D. Cal. Dec. 5, 2022), and *Fox Group,*

5    *Inc. v. Cree, Inc.*, 819 F. Supp. 2d 520 (E.D. Va. 2011), are misplaced, including because *Westwood*

6    involved a court relying on its "discretion to dismiss a counterclaim," 2022 WL 17418975, at *3-4,

7    and neither case involved a situation like the one here where the counterclaim applies more broadly

8    than just to the infringement claims in this particular action, *supra* § III.B.1.

9        VLSI also asserts that "there can be no real dispute that Intel's license defense is not a

10   standalone claim for relief, but a defense to infringement claims."  Mot. 16.  As an initial matter, this

11   assertion is fatal to VLSI's forum selection clause arguments.  *Supra* pp. 7-10.  Moreover, parties

12   regularly plead noninfringement, invalidity, and license as standalone claims.  *See, e.g.*, *Altvater v.*

13   *Freeman*, 319 U.S. 359, 363 (1943) ("[T]he issue of validity may be raised by a counterclaim in an

14   infringement suit."); *Integrated Glob. Concepts, Inc. v. j2 Glob., Inc.*, 2013 WL 3297108, at *3 (N.D.

15   Cal. June 28, 2013) (where patentee "has asserted a claim of infringement[,] … claim for declaratory

16   relief of an implied license is an actual, non-abstract controversy, which the court may hear"); *ABB*,

17   635 F.3d at 1349-1352 (approving jurisdiction over declaratory judgment non-infringement claim).

18   VLSI's cases do not provide any guidance on the jurisdictional issues as *Lucent Technologies* and

19   *Carborundum* merely address the burden of proof where licenses were asserted as affirmative defenses

20   to patent infringement.  *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 241-

21   242 (D. Del. 2001); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 877-

22   878 (Fed. Cir. 1995).  *B. Braun Medical, Inc. v. Abbott Laboratories* held that a patent misuse

23   counterclaim cannot be converted into a claim for damages by "restyling it as a declaratory judgment

24   counterclaim"—but that is because "patent misuse simply renders the patent unenforceable."  124 F.3d

25   1419, 1428 (Fed. Cir. 1997).  And *National Union Fire Insurance Co. of Pittsburgh v. City Savings,*

26   *F.S.B.* explained that as used in 12 U.S.C. § 1821(d), "a claim (or a counterclaim) is essentially an

27   action which asserts a right to payment."  28 F.3d 376, 387, 394 (3d Cir. 1994).

28       Ultimately, while VLSI asserts that Intel's license counterclaim "still only provide[s] a defense

1    to infringement allegations the court disposed of at summary judgment," Mot. 17, Intel's counterclaim

2    is broader as it not only provides alternative grounds for judgment in Intel's favor on the '836 and

3    '922 patents, but also applies to VLSI's entire patent portfolio, *supra* § III.B.1.

4          **3.**      **This Court properly allowed Intel to plead a license counterclaim to cure**

5                  **the Court's prior concerns regarding jurisdiction.**

6       In an apparent attempt to seek reconsideration of the Court's order granting Intel's motion to

7    amend, VLSI next argues that "[o]nce the Court determined that it lacked jurisdiction" over Intel's

8    affirmative license defense, "amendment was not available as a means of curing the jurisdictional

9    defect." Mot. 17-18. But the Court retained jurisdiction over the action before entering final judgment.

10   *See Silicon Image, Inc. v. Genesis Microchip Inc.*, 395 F.3d 1358, 1363 (Fed. Cir. 2005) ("[T]he trial

11   court must dismiss, with or without prejudice, all of the claims as a predicate to a final judgment before

12   appellate jurisdiction may lie[.]").  While VLSI granted Intel a covenant not to sue as to the '806 and

13   '672 patents, "[t]he final judgment rule cannot be satisfied by stipulation of the parties." *Id.* at 1362.

14   Moreover, there remained a case and controversy because VLSI did not grant Intel a covenant on the

15   '836 and '922 patents, and this Court was also of course free to "revise[] at any time" its summary

16   judgment order with respect to the '836 and '922 patent "before the entry of a judgment adjudicating

17   all the claims and all the parties' rights and liabilities."  *See* Fed. R. Civ. P. 54(b); *see also City of Los*

18   *Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) (court "retains

19   jurisdiction over an interlocutory order—and thus may reconsider, rescind, or modify such an order—

20   until a court of appeals grants a party permission to appeal"); *United States v. Smith*, 389 F.3d 944,

21   948 (9th Cir. 2004) (similar).  Thus, although the Court determined that it would not have jurisdiction

22   to try Intel's affirmative license defense (a point which Intel still disputes), the Court never determined

23   that it lacked jurisdiction over the entire action and never entered final judgment.[2]

24       VLSI's cases are all distinguishable as they involved situations where jurisdiction was lacking

25   from the outset of the case and/or judgment had already entered such that the court was without power

26

---

27   [2] Indeed, the Court could not have entered final judgment without first adjudicating or dismissing

28   Intel's counterclaim for invalidity of the '836 patent.

1    to take any action.  *See* Mot. 17-18; *National Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1580-

2    1583 (Fed. Cir. 1997) (court lacked jurisdiction because parties' dispute over settlement agreement

3    was filed ***after*** consent judgment had entered and underlying litigation had already terminated); *United*

4    *States v. Boe*, 543 F.2d 151, 157, 159 (C.C.P.A. 1976) (where "jurisdiction is clearly lacking" at the

5    outset because "Customs Court was clearly devoid of jurisdiction over the subject civil action,"

6    "further proceedings cannot be permitted"); *Morongo Band of Mission Indians v. Cal. State Bd. of*

7    *Equalization*, 858 F.2d 1376, 1380-81 & n.2 (9th Cir. 1988) ("In the present case, the district court

8    *lacked* jurisdiction at the outset.").  Here, by contrast, there is no dispute that this Court had jurisdiction

9    over this action at the outset and that the underlying action was never terminated, such that at "all

10   stages of review," this Court has retained jurisdiction.  *See Fellowship of Christian Athletes v. San*

11   *Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 681 (9th Cir. 2023).  The parties are thus free to

12   file additional motions at any time before judgment enters.  Were VLSI's position to be accepted, a

13   court could never reconsider a jurisdictional ruling before final judgment is entered, revise a summary

14   judgment order, or grant a party leave to amend to plead additional facts after granting a motion to

15   dismiss.  But that is simply not the law.  *See Swearinger v. Paskenta Band of Nomlaki Indians Tribal*

16   *Bus. Council*, 2013 WL 4567456, at *2 (N.D. Cal. Aug. 27, 2013) ("An action should not be dismissed

17   for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is

18   clear that the jurisdictional deficiency cannot be cured by amendment."); *Kershaw v. Blinken*, 2022

19   WL 18673288, at *3 (C.D. Cal. Dec. 6, 2022) (holding that although subsequent events mooted claim

20   and deprived court of jurisdiction, plaintiff could amend complaint to assert claims under different

21   statute); *Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 682 (2009) (permitting plaintiff to cure

22   jurisdictional defect by amending complaint to add new claims); *McKinley v. Kaplan*, 177 F.3d 1253,

23   1258 (11th Cir. 1999) (permitting plaintiff to cure jurisdictional defect by amending complaint because

24   there is "nothing illegitimate about a plaintiff seeking a new type of relief when intervening events

25   occur during the pendency of litigation that makes the originally sought relief impossible").

26        **C.      This Court Should Not Decline Jurisdiction Over Intel's License Counterclaim.**

27            Unable to show that Intel's license counterclaim is contrary to the forum selection clause or

28   that this Court lacks jurisdiction over that counterclaim, VLSI asks this Court to exercise its ***discretion***

to decline jurisdiction over the license counterclaim here under the first-filed rule and the policy underlying the Declaratory Judgment Act.  VLSI's request is without any merit and should be denied.

> **1.**     **This Court should resolve Intel's license counterclaim in this first-filed infringement action in the interests of judicial economy.**

"The question of whether to decline jurisdiction over a declaratory judgment action under the first-to-file rule is governed by Federal Circuit law."  *In re VoIP-PAL.com, Inc.*, 845 F. App'x 940, 942 (Fed. Cir. 2021).  The Federal Circuit's precedent "makes clear that the rule is not absolute, and exceptions may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'"  *Id.* (quoting *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)).  Indeed, "[t]he first-to-file rule is 'intended to avoid conflicting decisions and promote judicial efficiency.'"  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 958 (N.D. Cal. 2020).  Application of the first-to-file rule "is ultimately committed to the district court's discretion."  *VoIP-PAL.com*, 845 F. App'x at 942.  VLSI argues that the first-to-file rule requires that the license issues be adjudicated alongside the Texas infringement claims.  Mot. 19-21.  But this action was the first-filed case, Intel's license counterclaim applies to VLSI's entire patent portfolio, and efficiency dictates that this Court resolve Intel's license counterclaim, as the Texas court recognized.

*First*, it is undisputed that "VLSI brought the instant infringement action in [the California] forum before it brought any action in Texas."  Dkt. 841 at 11.  There has been no final judgment in this case and no dismissal of all claims; the case was still live and pending when the Court allowed Intel to add its declaratory judgment counterclaim.  *Supra* § III.B.3.  This case is the first-filed action, and cases like *Futurewei* are inapplicable.  *See Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 706-707 (Fed. Cir. 2013) (declining jurisdiction over declaratory judgment claim that was filed *after* a separate non-infringement action was filed in a different court).  Finding this action to be the first-filed action is consistent with the conclusion reached by the Delaware Chancery Court, which noted that "it appears Intel may present its license defense in the first-filed forum, the California Action."  *Intel*, 2021 WL 4470091, at *9 n.77.  Even under VLSI's theory that the first-filed forum should be determined based on where the licensing issues were first litigated instead of where infringement allegations were first brought, Mot. 20, the licensing issues were first added to this case

1    (in December 2021, with VLSI's consent and shortly after the stay was lifted), and not in Texas (which

2    denied Intel's motion to amend in March 2022, and thereby prevented Intel from adding the license

3    issues to the Texas cases).  Dkt. 330.  Thus, the license issues were first litigated in this forum and

4    have proceeded through fact discovery and a summary judgment ruling.

5           ***Second***, VLSI incorrectly asserts that the license counterclaim only addresses infringement

6    issues that are pending in Texas.  Mot. 19-21.  As explained above, Intel's license counterclaim

7    provides an alternative ground for judgment in Intel's favor for the '836 and '922 patents that VLSI

8    asserts in this action, applies to the infringement actions asserted by VLSI in Texas ***and in China***, and

9    applies to other infringement actions that VLSI may pursue in the future.  *Supra* §§ III.B.1, III.B.2.

10          ***Third***, even under VLSI's theory that this case is not the first-filed (which, as explained above,

11   it is), this Court should exercise its discretion to keep jurisdiction over Intel's license counterclaim

12   based on "considerations of judicial and litigant economy, and the just and effective disposition of

13   disputes."  *VoIP-PAL.com*, 845 F. App'x at 942.  As this Court recognized, it is far closer to resolution

14   of the licensing issues than the Texas court.  Dkt. 797 at 10:22-11:10 ("I'm ahead of my good friend,

15   Judge Albright [on the license defense issue.]").  "[T]he parties have already conducted discovery on

16   the substantive merits of the license issue, and the parties' cross summary judgment motions reduced

17   the issue to the narrow factual question of whether Fortress controls VLSI and Finjan."  Dkt. 841 at 5.

18   The license issue "is ready to be submitted to a jury and this Court is in a position expeditiously to

19   resolve this dispute."  Dkt. 807 at 2.

20          By contrast, in the actions pending before the Texas court, no discovery has occurred on the

21   licensing issues, a mandate has not yet issued formally remanding the case after appeal in the First

22   Texas Case, and the court has not yet resolved post-trial motions in the Third Texas Case.  Moreover,

23   those Texas cases have other issues in addition to the license issues that may need to be resolved

24   should they proceed to re-trial, including damages issues.  Therefore, this Court is far closer to

25   resolving the license issues, which could be accomplished with a shorter and simpler trial in this case

26   than would be required in Texas, and could further streamline or eliminate the need for a trial in the

27

28

1   Texas cases.[3]  Indeed, the Texas court recently found that "judicial economy" favored deferring to the
2   California court.  Dkt. 833-1.

3       Under these circumstances, this Court should reject VLSI's attempt to start anew in Texas.  *See*
4   *VoIP-PAL.com*, 845 F. App'x at 942-943 (denying mandamus where "it would be far less efficient for
5   the Western District of Texas to resolve these cases based on the Northern District of California's
6   familiarity with the overlapping issues" and "[t]he Western District of Texas has stayed proceedings").

7           **2.      This Court should reject VLSI's other arguments for declining jurisdiction**
8                     **over Intel's license counterclaim.**

9       VLSI next argues that this Court should decline to exercise jurisdiction over Intel's declaratory
10  judgment license counterclaim based on certain criteria applied by the Ninth Circuit.  Mot. 21-25.  But
11  Ninth Circuit law does not apply here.  To the contrary, the Federal Circuit has explained that "whether
12  to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed
13  suit for patent infringement … falls within [the Federal Circuit's] exclusive subject matter jurisdiction"
14  and the Federal Circuit "do[es] not defer to the procedural rules of the regional circuits nor [is it] bound
15  by their decisions."  *Electronics for Imaging*, 394 F.3d at 1345-1346.  As explained above, under
16  Federal Circuit law, this Court should not decline jurisdiction over Intel's license counterclaim.  *Supra*
17  § III.C.1.  Even if Ninth Circuit law applied, however, the factors cited by VLSI all favor exercising
18  jurisdiction over Intel's license counterclaim.

19      ***First***, while VLSI accuses Intel of forum shopping, Mot. 22-23, the opposite is true.  After this
20  Court rejected VLSI's legal arguments in denying the parties' cross motions for summary judgment
21  on the license defense and determined that the only remaining factual question turned on whether

23  [3] Although VLSI has argued that it would assert new counterclaims and seek additional discovery
24  should its motion to dismiss be denied, it has not provided any details regarding which counterclaims
25  or what discovery would be necessary.  As this Court noted, "any challenges by VLSI to the license
26  issue not already addressed by the Court are largely questions of law or based on the factual record
27  already developed," and there is "no reason to believe that additional discovery, if necessary, would
28  be particularly burdensome."  Dkt. 841 at 5, 9.

**PUBLIC REDACTED VERSION**

1   VLSI and the Finjan Parties are under common control of Fortress, VLSI has taken extreme measures

2   to avoid the license trial here and start over in Texas.  *Supra* § II.D.  In this Court, VLSI consented to

3   Intel adding the license defense in the first place and "the parties have already conducted discovery on

4   the substantive merits of the license issue, and the parties' cross summary judgment motions reduced

5   the issue to the narrow factual question of whether Fortress controls VLSI and Finjan." Dkt. 841 at 5.

6   By contrast, in Texas, VLSI prevented Intel from adding the license defense to the case in the first

7   place and the license issues are thus at an incipient stage.[4]  Thus, contrary to VLSI's suggestions

8   otherwise, Intel seeks a prompt resolution of the license issues, and it is VLSI that seeks to block that

9   path forward, wipe the slate clean, and start anew in Texas.

10        ***Second***, VLSI's complaint of "needlessly duplicative litigation," Mot. 23, rings hollow.  ***VLSI***,

11   and not Intel, ***filed*** this litigation.  In fact, since its formation in 2016, VLSI has done nothing other

12   than sue Intel for infringement and has filed eight actions across five jurisdictions accusing Intel of

13   infringing 23 different patents.  *Supra* § II.A.  If not for VLSI's serial litigation against Intel and

14   deliberate strategy of splitting its claims, there would be no risk of "duplicative litigation" at all.

15        ***Third***, Intel's license counterclaim could indisputably resolve all aspects of VLSI's global

16   assertion campaign against Intel by providing Intel with a full and complete license to VLSI's patent

17   portfolio.  While VLSI asserts that Intel's counterclaim is unnecessary and may proceed at "significant

18   expense to the parties," Mot. 23, it is actually VLSI's suggestion that the Texas court start all over on

19   the licensing issues that would subject the parties to unnecessary expense.  As this Court recognized,

20   the sole remaining factual license issue "is ready to be submitted to a jury and this Court is in a position

21   expeditiously to resolve this dispute."  Dkt. 807 at 2.  Whereas that issue is primed to be tried here as

22   a standalone counterclaim, VLSI is suggesting that the Texas court waste court and party resources by

23   starting over on the license issues and by holding potentially unnecessary trials on other issues as well.

24   _____

25   [4] While VLSI asserts that Intel has "declined for months even to file an amended answer … despite

26   VLSI's stipulation that it may do so," Mot. 22-23, Intel needs the Texas court's leave to file such an

27   amended answer—leave which was previously denied at ***VLSI's*** urging—and the Texas court has

28   deferred to this Court's resolution of the license issues before it moves forward on the license defense.

1   **Fourth**, there can be no dispute that Intel's declaratory judgment license counterclaim will

2   serve the useful purpose of clarifying whether Intel has a full and complete license to VLSI's patent

3   portfolio.  VLSI asserts that Intel "has undeniably **not** brought this declaratory judgment counterclaim

4   to clarify its rights amidst the threat of **future** litigation," Mot. 24, but that is simply not true.  Intel's

5   license counterclaim could resolve both the ongoing infringement actions brought by VLSI and

6   potential infringement actions that VLSI could bring in the future.  *Supra* § III.B.1.

7   **Fifth**, VLSI incorrectly asserts that the license counterclaim "is brought only to decide an issue

8   before another district court."  Mot. 24.  As explained above, the license counterclaim will provide

9   complete certainty and could put an end to VLSI's global patent assertion campaign against Intel, now

10  and in the future.  *Supra* §§ III.B.1, III.B.2.

11  **Sixth**, although VLSI ignores this factor, there can be no dispute that the counterclaim will not

12  result in entanglement between the federal and state court system, as the Delaware Chancery Court

13  declined jurisdiction and ruled that Intel could present the license issues in the existing federal cases,

14  including "in the first-filed forum, the California Action."  *Intel*, 2021 WL 4470091, at *9 & n.77.

15  **Seventh**, VLSI asserts that "allowing Intel's license defense to be litigated in Texas is more

16  convenient for both the parties and the respective courts," Mot. 24, but that ignores the current state

17  of the licensing issues in both courts.  As explained above, and as this Court previously recognized,

18  the sole remaining license issue in this case "is ready to be submitted to a jury and this Court is in a

19  position expeditiously to resolve this dispute."  Dkt. 807 at 2.  By contrast, VLSI is attempting to start

20  all over in Texas and relitigate issues that have already been resolved here.  There is nothing

21  convenient for either the parties or the courts in engaging in this kind of duplicative litigation on the

22  licensing issues.  Further, certain Fortress and Finjan witnesses live within the subpoena power of this

23  Court, but would not be within the subpoena power of the Texas court.  And while VLSI asserts that

24  "the live claims in Texas are moving forward," Mot. 24, if Intel prevails on the sole remaining license

25  issue here, the Texas actions would not need to move forward as they would be resolved by Intel's

26  license.  Moreover, contrary to VLSI's suggestion, Mot. 24-25, there may be no need for any trial in

27  Texas anyway as the patent in one of the Texas cases has been held to be invalid by the Patent Office

28  and the Texas court is considering post-trial motions that could resolve the other Texas case.  Thus,

1  the convenience of the parties actually favors moving forward with proceedings here instead of Texas,

2  consistent with what the Texas court has already decided.  Dkt. 833-1.

3        ***Finally***, VLSI repeats its reliance on the first-to-file rule, but as explained above, this case is

4  the first-filed case and "considerations of judicial and litigant economy, and the just and effective

5  disposition of disputes" favor resolving the license issues in this forum.  *Supra* § III.C.1.

6        **D.**      **This Court Should Reject VLSI's Argument That Intel's Counterclaim Fails To**

7              **State A Claim Upon Which Relief Can Be Granted.**

8        In a preview of what VLSI intends to do if this Court were to decline jurisdiction and defer to

9  Texas (which, as explained above, this Court should not do), VLSI attempts to relitigate issues already

10  decided by arguing that "Intel's claim should also be dismissed for failure to state a claim upon which

11  relief can be granted."  Mot. 18.  But this Court correctly rejected VLSI's legal arguments regarding

12  the license counterclaim in denying VLSI's motion for summary judgment and finding that

13  "*Shorenstein* and *MicroStrategy* map directly onto the instant matter."  Dkt. 781 at 8-11.  The Court

14  correctly held that (1) "under Delaware law … non-signatory entities meeting the definition of

15  'Affiliates' (as defined by the Finjan License Agreement) of the Finjan Parties can be bound by the

16  agreement, including later acquired or formed 'Affiliates'" and (2) "patents belonging to Affiliates of

17  Finjan, as defined by the Finjan License Agreement, are subject to the license to Intel described

18  therein."  Dkt. 781 at 14, 19.  While VLSI asserts that "Intel's allegations of control fail to state a

19  claim that VLSI is bound to the Finjan License," Mot. 18, Intel has explained how Fortress created

20  and controls VLSI and acquired and controls Finjan, Dkt. 844 at 43-44 (¶¶ 107-116).  This Court

21  previously rejected VLSI's reliance on authorities outside the contract for the meaning of control and

22  determined that "[w]hether VLSI and the Finjan Parties are under common control by Fortress is an

23  issue of fact" for the jury.  Dkt. 781 at 16.

24  **IV.**     **CONCLUSION**

25        For the foregoing reasons, this Court should deny VLSI's motion to dismiss and should instead

26  "reset trial on" Intel's license counterclaim "on an expedited basis."  *See* Dkt. 860.  The time has come

27  to finally resolve the license issues relating to VLSI's years-long litigation campaign against Intel, and

28  both the law and the equities support this Court doing exactly that.

1

Respectfully submitted,

2

Dated: March 1, 2024

3

*/s/ Mark D. Selwyn*

4

Mark D. Selwyn (CA SBN 244180)
WILMER CUTLER PICKERING
  HALE AND DORR LLP

5

2600 El Camino Real, Suite 400
Palo Alto, California 94306

6

Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

7

Mark.Selwyn@wilmerhale.com

8

William F. Lee (*pro hac vice*)
Joseph J. Mueller (*pro hac vice*)

9

Louis W. Tompros (*pro hac vice*)

10

Dominic E. Massa (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP

11

60 State Street

12

Boston, MA  02109
Telephone: (617) 526-6000

13

Facsimile: (617) 526-5000
William.Lee@wilmerhale.com

14

Joseph.Mueller@wilmerhale.com
Louis.Tompros@wilmerhale.com

15

Dominic.Massa@wilmerhale.com

16

Amanda L. Major (*pro hac vice*)
WILMER CUTLER PICKERING

17

  HALE AND DORR LLP

18

2100 Pennsylvania Avenue NW
Washington, DC 20037

19

Telephone: (202) 663-6000
Facsimile: (202) 663-6363

20

Amanda.Major@wilmerhale.com

21

Mary V. Sooter (*pro hac vice*)
WILMER CUTLER PICKERING

22

  HALE AND DORR LLP
1225 Seventeenth St., Suite 2600

23

Denver, CO 80202
Telephone: (720) 274-3135

24

Fax: (720) 274-3133
Mindy.Sooter@wilmerhale.com

25

*Counsel for Defendant*

26

Intel Corporation

27

28