UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br>                    Plaintiff,<br><br>        v.<br><br>INTEL CORPORATION,<br>                    Defendant. | Case No.  17-cv-05671-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**<br><br>[Re:  ECF No. 868] |

Litigation over Intel Corporation's ("Intel") claimed license covering VLSI Technology LLC's ("VLSI") patent portfolio has been hotly pursued in three jurisdictions, including two separate trips to the Federal Circuit.  Before this Court is the third motion in as many months regarding Intel's various pleadings claiming that it is licensed to use VLSI's patent portfolio.  In January, Intel sought to bring to trial as a standalone defense its two-year-old license defense despite VLSI voluntarily dismissing all unadjudicated patent infringement claims.  Finding the remaining claims moot, the Court denied Intel's request.  ECF No. 807.  Intel then sought leave to amend its answer to replead the affirmative defense as a counterclaim, which the Court granted.  ECF No. 841.

Now, VLSI moves to dismiss the license counterclaim on the grounds that the license's forum selection clause requires that as pled it may only be heard in Delaware, that the Court lacks jurisdiction, that the first-filed rule bars this Court from hearing the claim, and that Intel's counterclaim fails to state a claim.  ECF No. 868  ("Mot."); ECF No. 888 ("Reply").  Intel opposes.  ECF No. 876 ("Opp.").  This matter is suitable for determination without oral argument.  *See* Civ. L.R. 7-1(b).  For the following reasons, the motion to dismiss is GRANTED.

\\

United States District Court<br>Northern District of California

## I.   BACKGROUND

On October 2, 2017, VLSI brought this action, asserting that Intel products infringe eight of its patents.  ECF No. 1.  In its "Amended Answer, Defenses, and Counterclaims," filed on December 21, 2021, Intel alleged as its seventh affirmative defense that "Intel is not liable for infringement because it possesses a license and full release of liability with respect to all patents asserted in VLSI's Complaint."  ECF No. 334 ¶ 145.  Intel additionally brought sixteen counterclaims, two each for the eight originally asserted patents, claiming 1) non-infringement of each patent, and 2) invalidity of each patent.  *See id.* ¶¶ 6–85.

VLSI also filed infringement actions against Intel in China, Texas, and Delaware.  The Delaware infringement actions have since been dismissed.  *See VLSI Technology LLC v. Intel Corp.*, No. 1:18-cv-00966, ECF No. 998 (D. Del.); *VLSI Technology LLC v. Intel Corp.*, No. 1:19-cv-00426, ECF No. 15 (D. Del.).  Intel filed a complaint in the Delaware Chancery Court in which it sought resolution of the license issues, but the Chancery Court declined jurisdiction and wrote that Intel could present its license defense in this Court or in Delaware District Court, where one action had not yet been dismissed.  *Intel Corp. v. Fortress Investment Group, LLC*, C.A. No. 2021-0021-MTZ, 2021 WL 4470091, at *9 (Del. Ch. Ct. Sept. 30, 2021) .

The parties proceeded through IPR and later full discovery in this action, after which four patents remained at summary judgment: U.S. Patent No. 8,566,836 ("'836 Patent"), U.S. Patent No. 8,004,922 ("'922 Patent"), U.S. Patent No. 7,675,806 ("'806 Patent"), and U.S. Patent No. 8,268,672 ("'672 Patent").  On December 7, 2023, the Court granted summary judgment that Intel does not infringe the asserted claims of the '836 and '922 Patents and that the '922 Patent is invalid, but denied Intel's motion for summary judgment that Intel does not infringe the asserted claims of the '806 and '672 Patents.  ECF No. 772 at 55.  In a supplemental order issued after the Federal Circuit's ruling in *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332 (Fed. Cir. 2023), the Court denied Intel and VLSI's cross motions for summary judgment on Intel's license defense and determined that the defense was legally valid but that disputed factual issues should be decided at trial based on the narrow question of whether VLSI and certain Finjan entities are under common control of Fortress Investment Group.  ECF No. 781 ("Supp. SJ Order") at 16–17.  At a hearing on

January 4, 2024, previously scheduled for argument on the parties' *Daubert* motions pertaining to the '806 and '672 Patents, VLSI advised the Court that it would not be proceeding on its claims regarding the remaining patents and shortly thereafter, VLSI granted Intel an "unconditional covenant not to sue as to the '806 and '672 Patents" and dismissed all claims relating to those two patents. ECF No. 798-2 at 2; ECF No. 801. At the January 4, 2024 hearing, the Court questioned whether trial could go forward on the license defense for the '836 and '922 Patents, for which the Court found no infringement, and requested further briefing. ECF No. 797 at 27:22–25. After briefing, the Court found it lacked jurisdiction to proceed to trial on the affirmative defenses, ruling that "Intel cannot proceed to trial on its affirmative defense that it is licensed to use the '836 and '922 Patents" because no live claims remained before the Court. ECF No. 807 at 8.

Two days later, Intel filed a motion to amend its answer to add a counterclaim that it is licensed to use VLSI's patents, which this Court granted upon a finding of good cause. ECF No. 854. While the Court found that amendment was not futile, it noted that "VLSI ha[d] briefed several possible deficiencies with Intel's proposed counterclaim that may need to be explored further in subsequent briefing such as a motion to dismiss[.]" *Id.* VLSI took up the Court's offer with the instant motion to dismiss, and the Court vacated the trial date and all corresponding pretrial deadlines pending the outcome of the instant motion, noting that "[i]f this case proceeds, the Court will reset trial on an expedited basis." ECF No. 860.

VLSI next filed a Petition for a Writ of Mandamus in the Federal Circuit challenging the Court's order granting Intel's motion to amend. *In re: VLSI Technology LLC*, No. 24-116, (Fed. Cir.); ECF Nos. 850, 851, 855. The Federal Circuit issued a brief order dismissing the petition, holding that VLSI has "not shown the district court abused its discretion in finding good cause for Intel to amend its answer to add a counterclaim." *In re: VLSI Technology LLC*, No. 24-116, 2024 WL 1152537, at *2 (Fed. Cir. Mar. 18, 2024). The Federal Circuit declined to address subject matter jurisdiction, leaving this Court to address it "in the first instance" and advising that VLSI, if unsuccessful, can "meaningfully raise these challenges on appeal after final judgment." *Id.*

\\

\\

## II.    LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Id.*; *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The party asserting subject matter jurisdiction "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1029 (9th Cir.), *cert. denied*, 144 S. Ct. 190 (2023).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

United States District Court
Northern District of California

III.   DISCUSSION

VLSI's motion to dismiss consists of four arguments: 1) the Finjan License Agreement bars Intel from asserting it as a counterclaim, Mot. at 5–12; 2) the Court does not have subject matter jurisdiction, *id.* at 12–18; 3) Intel fails to state a claim, *id.* at 18; and 4) the first-filed rule compels the claim to be transferred to Texas, *id.* at 18–25.  The Court addresses the arguments in the order presented by VLSI.

**A.   Forum Selection Clause**

The Court begins with VLSI's first argument, that the Finjan License Agreement's forum selection clause compels dismissal.  The parties do not dispute that section 9.1 allows Intel to plead the Finjan License Agreement as an affirmative defense.  Rather, the parties' key disagreement is about whether Intel may plead the Finjan License Agreement as a standalone counterclaim under section 9.1 outside of Delaware and remain in conformance with of the forum selection clause in section 11.4.  VLSI argues that the forum selection clause unambiguously bars Intel from bringing a standalone claim outside of Delaware, Mot. at 7–10, and that the counterclaim should therefore be dismissed for *forum non conveniens*, *id.* at 10–12.  Intel responds that section 9.1 allows the standalone counterclaim to be pled here, and alternatively that if the Court finds that the counterclaim cannot be pled here, that this action should be transferred to Delaware, not dismissed.  The Court addresses the two issues in turn.

**1.  The Finjan License Agreement**

In 2012, Intel entered into an agreement with certain Finjan entities, whereby Intel received a "perpetual, irrevocable license" to "Finjan's Patents[.]" ECF No. 579-17 ("Finjan License Agreement") § 3.1; *id.* § 1.10 (defining Finjan's Patents).  Relevant, to this motion, the Finjan License Agreement contains the following forum selection clause:

> 11.4 <u>Governing Law</u>. This Agreement shall be interpreted in accordance with and governed by federal law or, where applicable, the laws of the State of Delaware, without giving effect to the choice-of-law rules of Delaware. All disputes and litigation regarding this Agreement and matters connected with its performance shall be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware pursuant to 10 Del. C. Section 346 or the United States District Court for the District of Delaware.

*Id.* § 11.4 (emphasis in original).  The Finjan License Agreement also contains a clause addressing how the license may be pled, used, or otherwise enforced:



*Id.* § 9.1 (emphasis in original).  The agreement further defines "Claim" as:

*Id.* § 1.5 (emphasis in original).

### 2.  The Forum Selection Clause Unambiguously Bars Intel's Counterclaim

The parties' forum selection clause arguments center around the tension between section 9.1 and section 11.4.  VLSI argues that section 9.1 allows the license defense to be used in any forum as an affirmative defense, but that allowing the Finjan License Agreement to be pled as a standalone claim outside of Delaware would make section 9.1 an exception that would swallow the forum selection clause whole.  Mot. at 8.  Intel responds that section 9.1 "only makes sense if it encompasses declaratory judgment counterclaims because that is the only way to plead a defense to a claim ███████████████ Opp. at 10 (quoting Finjan License Agreement § 9.1).

The parties do not dispute that Delaware law governs the Finjan License Agreement.  *See* Supp. SJ Order at 2.  "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."  *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).  Courts must "interpret contracts 'as a whole and … give each provision and term effect, so as not to render any part of the contract mere surplusage,'" and "not read a contract to render a provision or term meaningless or illusory."  *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del.

United States District Court
Northern District of California

1   2019) (quoting *Osborn*, 991 A.2d at 1159).  "When the contract is clear and unambiguous," courts

2   "will give effect to the plain-meaning of the contract's terms and provisions."  *Id.* at 56–57

3   (quoting *Osborn*, 991 A.2d at 1159–60).

4         Here, the Finjan License Agreement requires that "[a]ll disputes and litigation regarding

5   this Agreement and matters connected with its performance shall be subject to the exclusive

6   jurisdiction of the Court of Chancery of the State of Delaware . . . or the United States District

7   Court for the District of Delaware."  Finjan License Agreement § 11.4 (emphasis in original).  On

8   its own, this is a standard forum selection clause that clearly and unambiguously states that the

9   Finjan License Agreement must be litigated in one of two Delaware forums.

10        The question then is the extent to which section 9.1 limits the forum selection clause.

11  Section 9.1 states, ███████████████████████████████████████████████

12  ███████████████████████████████████████████████

13  ███████████   *Id.* § 9.1.  The parties do not dispute that section creates a limited carveout to the

14  forum selection clause that Intel may plead the license as an affirmative defense in an

15  infringement action, regardless of the forum the action is brought in.  Mot. at 7–8; Opp. at 7.

16        Intel's argument focuses instead on "prospective claims," which the Court interprets to

17  mean infringement claims that have not yet been brought.  Specifically, Intel argues that section

18  9.1 creates an "exception" to the forum selection clause that permits a "declaratory judgment

19  counterclaim" against "prospective claims that ██████████."  Opp. at 7.  On this, the Court

20  agrees with Intel; section 9.1 allows Intel to plead a claim or counterclaim against "prospective

21  claims."  But the next step in Intel's argument, that the "Finjan License [Agreement] does not

22  place any limits as to ***how*** a defense can be pleaded" for prospective claims, *id.*, is incorrect.

23  Section 9.1 might not place any limit on how or where to plead a standalone license claim to ward

24  off prospective but threatened infringement suits, but the forum selection clause in section 11.4

25  does place limits on venue for affirmative claims not asserted in defense against other claims, and

26  section 9.1 does not create an exception to the forum selection clause.  Nor does section 9.1

27  implicitly remove venue restrictions for pleadings that are a defense to "prospective claims."

28  Rather, such a reading would allow Intel to bring a declaratory judgment action in any forum

United States District Court
Northern District of California

7

against "prospective claims," thus eviscerating the forum selection clause for a substantial subset of possible causes of action.  Intel further argues that "the only way to plead a 'defense to any Claims that ███████████████ is by bringing a declaratory judgment counterclaim like the one Intel is asserting here."  Opp. at 7.  Intel is at least somewhat correct.  It can bring a separate declaratory relief action.  And contrary to Intel's interpretation of the Delaware Chancery Court's ruling, that court only declined jurisdiction over Intel's declaratory judgment claim that Intel is licensed to use VLSI's patents based on jurisdictional rules unique to the Chancery Court.  The Chancery Court ruled that Intel could litigate the license in district court as a defense to already pending patent infringement claims, and thus there was no need to invoke the jurisdiction of the Chancery Court.  *Intel v. Fortress*, 2021 WL 4470091, at *9 & n.77.  This conclusion does not deprive Intel of a forum to adjudicate the license claim.  As an affirmative defense, it remains active in the Texas case, and if that case concludes without resolving the license issue, then Intel could file its claim in Delaware.

Accordingly, the Court finds that the forum selection clause requires that a standalone claim or counterclaim that the Finjan License Agreement grants Intel a license to use VLSI's patents must be brought in Delaware Chancery Court or Delaware District Court.  Intel cannot plead its standalone counterclaim here.

### 3.  Dismissal Under Rule 12(b)(6) for *Forum Non Conveniens* is Appropriate

Having found that the forum selection clause requires Intel's standalone counterclaim be litigated in Delaware, the Court turns to the parties' dispute about whether the Court should dismiss or transfer the action.  VLSI contends that the Court should dismiss Intel's affirmative claim under Rule 12(b)(6) for *forum non conveniens*.  Mot. at 2.  Intel responds that "*forum non conveniens* does not apply, and that the proper remedy instead is transfer to the federal forum" governed by 28 U.S.C. § 1404, which in this case is the District of Delaware.  Opp. at 11.

In *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, the Supreme Court held that 28 U.S.C. § 1404(a) is the proper "mechanism for enforcement of forum-selection clauses that point to a particular federal district," and expressly declined to consider "whether defendant in a breach-of-contract action should be able to obtain dismissal under Rule 12(b)(6) if the plaintiff

files suit in a district other than the one specified in a valid forum-selection clause."  571 U.S. 49,

61 (2013).  In the Ninth Circuit, whether a Rule 12(b)(6) motion is a proper mechanism for

enforcing a forum selection clause is an unsettled question.  *See RJ v. Cigna Health & Life Ins.*

*Co.*, 625 F. Supp. 3d 951, 968 (N.D. Cal. 2022).  But since *Atl. Marine*, a few out-of-circuit courts

have permitted parties to assert a forum selection clause in a Rule 12(b)(6) motion.  *See Claudio-*

*De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) ("Absent a clear

statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum

selection clauses is still permissible in this Circuit."); *Smith v. Aegon Cos. Pension Plan*, 769 F.3d

922, 934 (6th Cir. 2014) (affirming Rule 12(b)(6) dismissal predicated on enforcing a forum

selection clause); *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (finding Rule 12(b)(6)

is an acceptable means of enforcing a forum selection clause).  And other district courts within the

Ninth Circuit have come to the same conclusion.  *See Cigna Health*, 625 F. Supp. 3d at 968;

*Verifone, Inc. v. A CAB, LLC*, No. 15-157 GMN, 2016 WL 4480686, at *2 (D. Nev. Aug. 24,

2016) *Mix v. Neeb*, No. 14-1594 KJM, 2014 WL 6469130, at *2 (E.D. Cal. Nov. 17, 2014).

While transfer under section 1404 and dismissal under Rule 12(b)(6) are both within the

Court's discretion, dismissal under Rule 12(b)(6) is far more appropriate in this instance.  Other

than the new counterclaim, all other claims have been adjudicated or Intel has advised that it will

not proceed on those claims and thus they are subject to dismissal.  The adjudicated claims on the

'836 and '922 Patents are ready for appellate review once the Court enters final judgment.  Intel

argues that Court should transfer "the case in its current posture," Opp. at 14, which the Court

interprets to mean including all other claims and counterclaims before the Court.  But if the entire

case is transferred to Delaware and the Federal Circuit reverses any part of the Court's summary

judgment ruling, a Delaware court would be saddled with a six-year-old case including numerous

rulings not its own.  The Court elects not to risk placing such a burden on another court.

Nor is it appropriate to sever the counterclaim from the rest of the case.  It is not clear that

a Delaware District Court has jurisdiction over a standalone license counterclaim.  *See* Mot. at 11;

ECF No. 869-9 (where Intel argued in its September 11, 2020 motion to stay the District of

Delaware case that a Delaware District Court would not have jurisdiction because Intel and VLSI

1   are not diverse).  Even if a Delaware District Court has jurisdiction, there is still no guarantee it

2   has the time and resources to quickly put on a trial to "efficiently bring the license issues to a

3   close[.]"  Opp. at 14.  And even if a Delaware District Court has both jurisdiction and the

4   resources to timely put on a trial, that court would not be barred from reconsidering any of this

5   Court's previous orders.  Intel promises simplicity, but it is far more likely that transfer would

6   create more problems than it would solve.

7          Accordingly, the Court grants VLSI's motion to dismiss Intel's counterclaim that it is

8   licensed to use VLSI's patents.  Dismissal is without prejudice.  Intel is free to argue this defense

9   in its ongoing Texas litigation, before any Delaware District Court or Chancery Court with

10  jurisdiction, or any court (including this Court) as an affirmative defense to live infringement

11  claims.

12         This decision delays (perhaps significantly) Intel's chance at swift resolution of its

13  litigation against VLSI, and starting over in Texas is hardly an efficient use of the judiciary's and

14  parties' resources given the two-plus years spent litigating the license before this Court.  But Intel

15  bargained for and agreed to the Finjan License Agreement, and the agreement's forum selection

16  clause is clear: venue for a standalone license counterclaim is not proper in this forum.

17     **B.    Subject Matter Jurisdiction**

18         The Court now addresses VLSI's second argument, whether the Court has jurisdiction to

19  hear the counterclaim.  The Supreme Court has repeatedly held that an "actual controversy" must

20  exist through all stages of the litigation.  "A case becomes moot—and therefore no longer a 'Case'

21  or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the

22  parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

23  91 (2013) (internal quotations omitted).  Such cases are "outside the jurisdiction of the federal

24  courts."  *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018).

25         VLSI argues that the Court "should have proceeded to final judgment" after it found that

26  Intel's affirmative defenses were moot, and that that the Declaratory Judgment Act does not confer

27  subject matter jurisdiction for Intel's counterclaim.  Mot. at 12–14.  Intel responds that "the Court

28  retained jurisdiction over the action before entering final judgment" and that the litigation here, in

1    Texas, and in China, plus the remaining patents that would be subject to the license demonstrate

2    the existence of a substantial controversy that satisfies the case-or-controversy requirement.  Opp.

3    at 14–15, 18.

4           A court has jurisdiction over a claim for declaratory relief if "the facts alleged, under all

5    the circumstances, show that there is a substantial controversy, between parties having adverse

6    legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

7    judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "Related litigation

8    involving the same technology and the same parties is relevant in determining whether a

9    justiciable declaratory judgment controversy exists on other related patents."  *Arkema Inc. v.*

10   *Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (quoting *Teva Pharms. USA, Inc. v.*

11   *Novartis Pharms. Corp.*, 482 F.3d 1330, 1344–45 (Fed. Cir. 2007)).

12          Here, Intel alleges that VLSI has pursued Intel for infringement of the NXP patent

13   portfolio in several forums including Texas, Delaware, China, and California, beginning with this

14   action in 2017.  Amended Answer at 18–20 (¶¶ 158–160), 41–42 (¶¶ 93–101).  Furthermore, Intel

15   alleges that the entire NXP patent portfolio at issue in its patent infringement litigation with VLSI

16   is subject to the Finjan License Agreement.  See *id.*  The sprawling and vast nature of VLSI's

17   claims evince an aggressive and ongoing enforcement campaign against Intel, and the parties hotly

18   dispute whether Intel has a license to use the patents under the Finjan License Agreement.  Thus,

19   the Court finds that a "substantial controversy" exists between VLSI and Intel that warrants the

20   issuance of a declaratory judgment.  *See Arkema*, 706 F.3d  at 1358 (litigation in related U.S. and

21   European litigation "create[d] a sufficient affirmative act on the part of the patentee for declaratory

22   judgment purposes"); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir.

23   2008) (evidence of "intent to continue an aggressive litigation strategy . . . support[ed] a real and

24   substantial dispute between these parties.").

25          VLSI divides up and individually attacks possible contributing factors, arguing that each

26   factor on its own does not create a substantial controversy.  *See, e.g.*, Reply at 7 ("prior suit

27   premised on other patents cannot alone create a real and immediate controversy") (quoting *Prasco,*

28   *LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339, 1341 (Fed. Cir. 2008)).  The Court, however,

United States District Court
Northern District of California

1   does not look at only one factor in isolation, but considers them all together: the ongoing actions

2   in Texas and China, the existence of foreign counterparts of patents VLSI previously asserted

3   against Intel, *see Arkema*, 706 F.3d  at 1358, and the existence of remaining patents in VLSI's

4   portfolio that it could assert against Intel.

5          Furthermore, because the Court finds that a substantial controversy exists without

6   considering facts relating only to the '836 and '922 Patents, the Court need not address VLSI's

7   argument regarding cases that proceeded to trial on invalidity defenses after finding no

8   infringement.  *See* Reply at 9 (collecting cases).

9          Finally, VLSI argues that "once subject matter jurisdiction has been lost, a court may not

10  cure that defect by allowing amendment of the pleadings."  Mot. at 13; *see Nat'l Presto Indus.,*

11  *Inc. v. Dazey Corp.*, 107 F.3d 1576, 1580 (Fed. Cir. 1997) ("A court without jurisdiction ***must***

12  simply announce its lack of jurisdiction and ***dismiss the proceeding***.") (emphasis added);

13  *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir.

14  1988) ("If jurisdiction was lacking, then the court's various orders, including that granting leave to

15  amend the complaint, were nullities.").  But in these cases, the trial court's jurisdiction over the

16  entire case was defective from the get-go.  Such is not the case here.  If the Court's jurisdiction

17  over the entire case was defective, it would be required to dismiss the proceeding and not enter

18  final judgment on the claims adjudicated at summary judgment, an untenable outcome not sought

19  by either party.  *See* Mot. at 12; Opp. at 18.

20         Thus, the Court finds that Intel's counterclaim alleges facts showing a substantial

21  controversy that warrants the issuance of a declaratory judgment.  *See MedImmune*, 549 U.S. at

22  127; *Micron Tech.*, 518 F.3d at 901.

23  **C.    Failure to State a Claim and First-Filed Rule**

24         VLSI makes two additional arguments: that Intel's Amended Answer fails to state a claim,

25  and that even if this Court has jurisdiction, and even if the Forum Selection Clause does not

26  compel dismissal or transfer to Delaware, this Court must still transfer Intel's counterclaim to the

27  Western District of Texas under the first-filed rule.  The Court need not reach either issue, having

28  found that the case should be dismissed under Rule 12(b)(6) for *forum non conveniens*.

United States District Court
Northern District of California

**IV.    ORDER**

      For the foregoing reasons, IT IS HEREBY ORDERED that Intel's counterclaim that it is licensed to use VLSI's patents is DISMISSED WITHOUT PREJUDICE to being pled in the proper forum.

Dated: March 29, 2024

                            _____

                            BETH LABSON FREEMAN
                            United States District Judge

United States District Court
Northern District of California